**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

MARK J. PATANE, *et al.*,
     *Plaintiffs,*

    v.

NESTLÉ WATERS NORTH AMERICA,
INC.,
     *Defendant.*

No. 3:17-cv-01381 (JAM)

## ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

In these consolidated actions, plaintiffs allege that the marketing of "Poland Spring" water is an enormous fraud. They claim that Poland Spring water products are fraudulently labeled and sold as "spring water" despite not meeting the requirements for "spring water" as defined by law. Defendant Nestlé Waters North America Inc. ("Nestlé") has moved to dismiss the complaints. Although I reject many of Nestlé's arguments, I agree with Nestlé that plaintiffs' claims are all preempted by federal law. Accordingly, I will grant the motion to dismiss and dismiss the complaint in this action as well as the complaint in all but one of the consolidated actions.[1]

### BACKGROUND

The principal complaint in these consolidated class actions has been filed in the docket of *Patane v. Nestlé Waters North America, Inc.*, 3:17-cv-01381(JAM). It alleges that Nestlé has long marketed its ubiquitous Poland Spring water products as "100% Natural Spring Water,"

---

[1] The consolidated cases include: *Krinsky v. Nestlé Waters North America, Inc.*, 3:17-cv-01474(JAM); *Lilly v. Nestlé Waters North America, Inc.*, 17-cv-01566(JAM); *Brown v. Nestlé Waters North America, Inc.*, 3:17-cv-01746(JAM); and *Ray v. Nestlé Waters North America Inc.*, 3:17-cv-01944(JAM).

1

despite the fact that it is not "spring water" as that term is very specifically defined by federal law.

By way of background, the federal Food, Drug and Cosmetic Act (FDCA) establishes basic definitions (known as "standards of identity") for food products and prohibits the false labeling of such food products.[2] In accordance with its regulatory authority under the FDCA, the U.S. Food and Drug Administration (FDA) has promulgated a detailed regulatory definition of "spring water" that distinguishes it from other kinds of water that may be marketed for public sale. *See* 21 C.F.R. § 165.110(a)(2)(vi).

According to the FDA, if a water product is to be labeled and sold as "spring water," the water must be "derived from an underground formation from which water flows naturally to the surface of the earth," and there must be a "natural force causing the water to flow to the surface through a natural orifice." *Ibid.* The FDA's regulation further provides that "spring water" can be "collected only at the spring or through a bore hole tapping the underground formation feeding the spring," and that if it is collected "with the use of an external force," the water must be "from the same underground stratum as the spring, as shown by a measurable hydraulic connection using a hydrogeologically valid method between the bore hole and the natural spring, and shall have all the physical properties, before treatment, and be of the same composition and quality, as the water that flows naturally to the surface of the earth." *Ibid.*

---

[2] *See* 21 U.S.C. § 301 *et seq.* Some of the significant provisions of the FDCA include: 21 U.S.C. § 321 (defining the term "food" to include any "articles used for food or drink for man or other animals"); 21 U.S.C. § 341 (authorizing administrative regulations to establish a "reasonable definition and standard of identity" for "any food"); 21 U.S.C. § 343(a) (providing that "food shall be deemed to be misbranded" if "its labeling is false or misleading in any particular"); 21 U.S.C. § 343(g) (providing that "food shall be deemed to be misbranded . . . [i]f it purports to be or is represented as a food for which a definition and standard of identity has been prescribed by regulations as provided by section 341 of this title, unless (1) it conforms to such definition and standard"); 21 U.S.C. § 393(b) (providing in relevant part that the FDA "shall—(1) promote the public health by . . . taking appropriate action on the marketing of regulated products in a timely manner . . . [and shall] with respect to such products, protect the public health by ensuring that—(A) foods are safe, wholesome, sanitary, and properly labeled").

Plaintiffs allege that Nestlé sells about a billion gallons of Poland Spring water every year but that not one drop of it is actually "spring water" within the FDA's definition. Plaintiffs insist that Poland Spring water is ordinary groundwater and surface water that Nestlé draws from a series of artificial springs in Maine. The bulk of plaintiffs' 325-page complaint is devoted to detailing how the water produced at eight specific Poland Spring sites in Maine does not meet the FDA's "spring water" requirements. Doc. #1 at 65–279.

According to plaintiffs, Nestlé labels its Poland Spring water as "spring water" so that it may fraudulently charge consumers a higher price than they would be willing to pay for non-spring water products. Plaintiffs have allegedly relied on Nestlé's mislabeling of its water and overpaid for Poland Spring water.

Although the crux of the complaint is that Poland Spring water does not comply with federal law, it is undisputed that the FDCA does not give rise to a private federal cause of action for violation of the FDA's "spring water" regulation. Accordingly, the complaint alleges only state law causes of action. The first two counts of the complaint allege general state common law claims for fraud and breach of contract on behalf of a nationwide class whose members have purchased Poland Spring water since November 5, 2003. The next nine counts on behalf of individual state sub-classes allege violations of various consumer fraud and unfair trade practice statutes of Connecticut, Maine, Massachusetts, New Hampshire, New Jersey, New York, Rhode Island, and Vermont.[3] All of these counts of the complaint are premised on a common allegation

_____

[3] The state consumer statutes alleged to be violated include: Connecticut Unfair Trade Practices Act, CONN. GEN. STAT. ANN. §§ 42-110a–42-110q; Maine Unfair Trade Practices Act, ME. STAT. tit. 5, §§ 205-a–214; Maine Uniform Deceptive Trade Practices Act, ME. STAT. tit. 10 §§ 1211–1216; Massachusetts Consumer Protection Act, MASS. GEN. LAWS ch. 93A, §§ 1–11; New Hampshire Consumer Protection Act, N.H. REV. STAT. ANN. §§ 358-a:1–358-a:13; New Jersey Consumer Fraud Act, N.J. STAT ANN. §§ 56:8-1, et seq.; New York General Business Law § 349, N.Y. GEN. BUS. LAW § 349; New York General Business Law § 350, N.Y. GEN. BUS. LAW § 350; Rhode Island Unfair Trade Practices and Consumer Protection Act, R.I. GEN. LAWS §§ 6-13.1-1–16-13.1-29; Vermont Consumer Fraud Act, VT. STAT. ANN. tit. 9, § 2451, et seq.

that Poland Spring water is mislabeled as "spring water" in violation of federal law. Nestlé has filed a motion to dismiss plaintiffs' claims for multiple reasons I will discuss below.

<h1 style="text-align:center">DISCUSSION</h1>

Nestlé moves to dismiss under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction and under Fed. R. Civ. P. 12(b)(6) for failure to state a claim. The standard that governs such a motion is well established: a complaint may not survive unless it alleges facts that taken as true give rise to plausible grounds to sustain the Court's subject matter jurisdiction and to sustain plaintiffs' claims for relief. *See, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Kim v. Kimm*, 884 F.3d 98, 103 (2d Cir. 2018); *Lapaglia v. Transamerica Cas. Ins. Co*., 155 F. Supp. 3d 153, 155–56 (D. Conn. 2016). Because a federal court should ordinarily resolve any doubts about the existence of subject matter jurisdiction prior to considering the merits of a complaint, *see, e.g*., *Singh v. United States Citizenship & Immigration Servs*., 878 F.3d 441, 445 (2d Cir. 2017), I will first consider Nestlé's arguments that challenge the Court's jurisdiction before turning to Nestlé's merits arguments.

### *Constitutional Standing*

Nestlé first argues that plaintiffs have no standing as required to sustain this Court's jurisdiction over the complaint. In accordance with the Constitution's "case-or-controversy" requirement, a federal court lacks jurisdiction over a lawsuit unless a plaintiff alleges a concrete and particularized injury-in-fact that is fairly traceable to a defendant's wrongful conduct and redressable by a court order. *See, e.g.*, *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016); *Crupar-Weinmann v. Paris Baguette Am., Inc*., 861 F.3d 76, 79 (2d Cir. 2017).

The allegations here easily suffice to meet the requirements for constitutional standing. Plaintiffs allege that they relied on Nestlé's representation that Poland Spring water was "100%

Natural Spring Water," and because of this reliance they paid a higher price for Poland Spring water than they would have paid for alternative water products.[4] If Nestlé indeed mislabeled its water as plaintiffs claim, it is plausible to conclude that plaintiffs chose to buy Poland Spring water and paid more for it than for non-spring-water alternatives. It is likewise plausible to conclude that Nestlé was well aware of the likely effect that labeling its water as "100% Natural Spring Water" would have on consumer preferences. The facts alleged plausibly establish an injury-in-fact caused by Nestlé's alleged wrongful conduct and redressable by an award of damages. *See, e.g.*, *Estrada v. Johnson & Johnson*, 2017 WL 2999026, at *13 (D.N.J. 2017) (collecting cases); *Kacocha v. Nestlé Purina Petcare Co.*, 2016 WL 4367991, at *7 (S.D.N.Y. 2016).

Nestlé argues that plaintiffs could not have been deceived because it has been sued many times before on the same grounds. According to Nestlé, these prior lawsuits and attendant media coverage put plaintiffs on notice that Poland Spring's "spring water" labels were false. But the possibility that any prior lawsuits or media coverage put plaintiffs on notice of anything is a fact question that is not suitable for me to resolve at the pleading stage on a motion to dismiss. Moreover, Nestlé's argument ignores Nestlé's own steadfast denials in prior lawsuits that it was mislabeling Poland Spring water. Nestlé cannot have it both ways: that plaintiffs somehow "knew" Nestlé's labels were false but that Nestlé's labels were *not* in fact false. Plaintiffs have standing to maintain their claims.[5]

---

[4] *See Patane* complaint, Doc. #1 at 11 (¶ 23), 18–22 (¶ 42); *Krinsky* complaint, 3:17-cv-01474(JAM), Doc. #1 at 28 (¶¶ 100–102), 31-32 (¶¶ 120–21); *Lilly* complaint, 3:17-cv-01566(JAM), Doc. #1 at 2 (¶ 3), 30 (¶¶ 117–19), 31-32 (¶¶ 127, 131), *Brown* complaint, 3:17-cv-01746(JAM), Doc. #1 at 2 (¶¶ 2), at 75 (260–62); *Ray* complaint, 3:17-cv-01944(JAM), Doc. #1 at 5 (¶ 15), 214 (¶¶ 614–16).

[5] Because I conclude that plaintiffs have standing to pursue their claims, there is no need for me to address at this time Nestlé's further argument that plaintiffs have no standing to seek injunctive relief.

### *The Rooker-Feldman Doctrine*

Nestlé next argues that the Court lacks subject matter jurisdiction because of the *Rooker-Feldman* doctrine. "*Rooker-Feldman* bars the federal courts from exercising jurisdiction over claims 'brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.'" *Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 94 (2d Cir. 2015) (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)).

According to Nestlé, plaintiffs are in essence complaining about an injury caused by Nestlé's settlement in November of 2003 of a similar class action lawsuit that was filed in a state court of Illinois. *See* Doc. #53-2 at 5 (*Ramsey v. Nestlé Waters N. Am.*, No. 03 CHK 817 (Ill. Cir. Ct., Nov. 5, 2003) (final judgment and order of dismissal with settlement agreement)). That class action—referred to by the parties as "the *Ramsey* action"—involved a nationwide class of plaintiffs who purchased Poland Spring water from January 1, 1996, to November 5, 2003. Doc. #53-2 at 8. Nestlé relies in particular on a provision of the *Ramsey* settlement agreement stating that "[t]he Parties agree that Defendant shall be permitted to continue to bottle, label and sell Poland Spring brand bottled water as 'spring water' using all of the spring water sources it has used since January 1, 1996," and that "[n]othing in this Settlement Agreement shall require that Defendant relabel its Poland Spring brand spring water products as anything other than spring water or alter its spring water advertising in any way with respect to the spring water sources it has used since January 1, 1996." Doc. #53-2 at 33–34.

Nestlé's argument relies on a misunderstanding of the scope of the *Rooker-Feldman* doctrine. The *Rooker-Feldman* doctrine does not apply merely because there has been a prior state court action or merely because the settlement of a prior state court action has not foreclosed

a defendant from continuing to engage in the conduct that forms the basis for a later federal action. Instead, the *Rooker Feldman* doctrine applies only if it can be said that the prior state court action has *caused* the federal plaintiff's injuries: "[T]he plaintiff must complain of injuries caused by a state-court judgment," and "[t]he causation requirement is only satisfied if 'the third party's actions are produced by a state court judgment and not simply ratified, acquiesced in, or left unpunished by it.'" *Sykes*, 780 F.3d at 94 (quoting *Hoblock v. Albany Cty. Bd. of Elections*, 422 F.3d 77, 85, 88 (2d Cir. 2005)).

Here the provision relied on by Nestlé at best does no more than ratify Nestlé's future conduct (and only as to those particular sources of sources of water it has used since 1996). The *Ramsey* action involved purchasers of Poland Spring water *before* November 5, 2003, while the current action involves purchasers of Poland Spring water *after* November 5, 2003. The agreement by a prior class of plaintiffs in *Ramsey* to allow Nestlé to continue some of its conduct is precisely the kind of ratification or acquiescence that does not meet the more demanding causation requirement for the *Rooker-Feldman* doctrine. *See, e.g.*, *Green v. City of New York*, 438 F. Supp. 2d 111, 121 (E.D.N.Y. 2006) (prior state court settlement agreements did not "cause" later federal court plaintiff's injury despite fact that settlement agreements allowed conduct by defendant that was later challenged in federal court). Plaintiffs' alleged injuries here are caused by Nestlé's purported ongoing, post-*Ramsey* course of deceptive conduct and not by what the state court in *Ramsey* ordered or by what the prior parties to the *Ramsey* judgment agreed. Accordingly, the *Rooker-Feldman* doctrine does not deprive the Court of subject matter jurisdiction over this case.

### *Release and Res Judicata*

In a similar vein, Nestlé argues that plaintiffs' claims are foreclosed by the *Ramsey* settlement agreement. According to Nestlé, the *Ramsey* settlement precludes plaintiffs' class action for at least two reasons: (1) the *Ramsey* settlement agreement expressly released Nestlé from plaintiffs' claims, and (2) the *Ramsey* settlement agreement triggers the rule of *res judicata*. I don't agree with either of these arguments.

As an initial matter, the record does not presently allow for a conclusion that the *Ramsey* class is the same as or is in privity with the current proposed class of plaintiffs. The *Ramsey* action involved purchasers and consumers of Poland Spring water from 1996 to the date of final judgment on November 5, 2003. Doc. #53-2 at 8. By contrast, the present plaintiffs and proposed class include only purchasers after November 5, 2003. Doc. #1 at 16–22, 285. Is it possible that one or more of the present class plaintiffs purchased Poland Spring water both before and after November 5, 2003? Likely so. But there is an insufficient factual record at this time to determine the degree of overlap between these two classes, and it would be speculative for me to categorically conclude at this initial pleading stage that *all* named plaintiffs and prospective class members who purchased or consumed Poland Spring water after November 5, 2003 also did so before November 5, 2003.[6]

The *Ramsey* settlement agreement defines "released claims" in relevant part to include claims "that were asserted, that could or might have been asserted in any pleading or amended pleading." Doc. #53-2 at 25–26 (definition of "released claims"). The agreement further provides

---

[6] For argument's sake I will assume—as Nestlé urges—that "[a] class member of a previous class action is bound by the judgment in the class action" and that "[j]udgments in a class action are binding on all the members of a class and those who may become members of a class." *Hooker v. Simon*, 2010 WL 3516662, at *2 (E.D. Cal. 2010) (citing *Dosier v. Miami Valley Broadcasting Corp.*, 656 F.2d 1295, 1298 (9th Cir. 1981), and *L.A. Unified Sch. Dist. v. L.A. Branch NAACP*, 714 F.2d 935, 942 (9th Cir.1983)). The fact remains that the *Ramsey* class was time-limited to purchasers and consumers prior to November 5, 2003, such that it cannot be said that purchasers after that date ever became a member of the *Ramsey* class.

that "the Released Claims include all claims, rights, demands, causes of action, liabilities, or suits, including Unknown Claims, as of the Effective Date." *Id.* at 46; *id.* at 47–48 (same). The "Effective date" was 30 days after entry of the final judgment in 2003. *Id.* at 49. These terms do not suggest that the release applies to immunize forever any unlawful conduct that occurred after the date of the release.

As noted above, the *Ramsey* settlement agreement also provides that "[t]he Parties agree that Defendant shall be permitted to continue to bottle, label and sell Poland Spring brand bottled water as 'spring water' using all of the spring water sources it has used since January 1, 1996." *Id.* at 33. But this provision applies to only a limited number of Poland Spring water facilities that were operational from 1996 to 2003 and at most binds only plaintiffs who purchased or consumed Poland Spring water prior to November 5, 2003, not those who only bought later. This provision does not furnish grounds to conclude across the board that *all* present plaintiffs and prospective class members have released any claims concerning the full range of Poland Spring sources that have produced water since November 5, 2003. Indeed, even Nestlé does not make this categorical a claim, speculating instead that plaintiffs are "*likely* members of the *Ramsey* class" and that "[m]any of them *probably* purchased or consumed Poland Spring prior to the date of the *Ramsey* Final Judgment." Doc. #53-1 at 32 (emphasis added).

Under Illinois law, contractual releases that release a party from future liability "are strictly construed against the benefiting party and must spell out the intention of the parties with great particularity." *Stratman v. Brent*, 291 Ill. App. 3d 123, 137 (1997) (internal quotations and citation omitted). Accordingly, future claims that are "not in existence at the time of the release's execution will be included in the release only if there is 'a clear expression of intent to that effect.'" *Fed. Deposit Ins., Corp v. FBOP Corp*, 2017 WL 5891033, at *10 (N.D. Ill. 2017)

(quoting *Chubb v. Amax Coal Co.*, 466 N.E.2d 369, 372 (Ill. App. 1984)). There is no clear expression of intent in the settlement agreement to prevent all claims against Nestlé by anyone who purchased Poland Spring water after November 5, 2003.

Nestlé's argument based on the *Ramsey* judgment's permanent injunction is unavailing for the same reason. The judgment states that "[r]eleasers are permanently barred and enjoined from commencing or prosecuting any direct or representative action . . . that involves or asserts any of the Released Claims." Doc. #53-2 at 18; *id.* at 25 (same). Because I conclude that plaintiffs have not released any of the claims at issue here, this injunction is inapplicable.

Similar reasons belie Nestlé's *res judicata* argument. To determine the preclusive impact of a state court judgment, a federal court is "required to apply the preclusion law of the rendering state." *Conopco, Inc. v. Roll Int'l*, 231 F.3d 82, 87 (2d Cir. 2000). Under Illinois law, the doctrine *of res judicata* bars later litigation where "(1) there was a final judgment on the merits rendered by a court of competent jurisdiction, (2) there is an identity of cause of action, and (3) there is an identity of parties or their privies." *Nowak v. St. Rita High Sch.*, 197 Ill. 2d 381, 390 (2001).

I have already explained why there is not necessarily an identity of parties or privies. Nor is there necessarily an identity of cause of action. The Illinois Supreme Court has adopted the "transactional test" for determining whether an identity of cause of action exists. *See River Park, Inc. v. City of Highland Park*, 184 Ill. 2d 290, 311 (1998). Under the transactional test, "claims will be considered the same cause of action for purposes of *res judicata* if they arise from a single group of operative facts." *Ibid.* Whether a group of facts constitutes one transaction or series of transactions is a pragmatic determination that requires considering "whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and

whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." *Altair Corp. v. Grand Premier Tr. & Inv., Inc.*, 318 Ill. App. 3d 57, 62 (App. Ct. Ill. 2000) (quotations and citation omitted).

Sensibly enough, *res judicata* does not apply if "the wrong suffered by the plaintiff is of a recurrent or ongoing nature." *Id.* at 63. This rule applies to a "defendant's continuing course of conduct, even if related to conduct complained of in an earlier action." *D'Last Corp. v. Ugent*, 288 Ill. App. 3d 216, 222 (1997). In such a case "the doctrine of *res judicata* does not bar claims for continuing conduct complained of in the second lawsuit that occur after judgment has been entered in the first lawsuit." *Ibid.* (citing *Lawlor v. Nat'l Screen Serv. Corp.*, 349 U.S. 322, 327–28 (1955)); *see also TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 499-502 (2d Cir. 2014) (same). Because plaintiffs' claims are wholly based on alleged ongoing conduct that post-dates the *Ramsey* settlement, I conclude that *res judicata* does not apply. The *Ramsey* settlement agreement does not preclude this action.[7]

### *Preemption under the FDCA*

Nestlé argues that plaintiffs' claims are all preempted by federal law. Federal law may preempt state law in various ways. Sometimes Congress *expressly* preempts state law by statute, and other times state law may be *impliedly* preempted if Congress has occupied an entire field or if a state law somehow conflicts with or otherwise stands as an obstacle to the purpose of a federal law. *See generally Oneok, Inc. v. Learjet, Inc.*, 135 S. Ct. 1591, 1595 (2015); *Marentette v. Abbott Labs., Inc.*, 886 F.3d 112, 117 (2d Cir. 2018). In general, for a court to conclude that Congress has preempted state law, Congress's intent to preempt—whether express or implied—

---

[7] In view of my conclusion that plaintiffs have not released their claims against Nestlé and are not barred by *res judicata* because of the *Ramsey* judgment, there is no need for me to address plaintiffs' claim that the *Ramsey* settlement was invalidly procured by collusive means.

must be "clear and manifest." *Wyeth v. Levine*, 555 U.S. 555, 565 (2009); *New York State Rest. Ass'n v. New York City Bd. of Health*, 556 F.3d 114, 123 (2d Cir. 2009) (discussing preemption principles in specific context of the FDCA).

Nestlé's preemption argument requires me to focus on two separate provisions of the FDCA. The first provision expressly preempts the States from imposing any "standard of identity" for food products (such as spring water) that is "not identical to [the FDCA] standard of identity." 21 U.S.C. § 343-1(a)(1).[8] The unmistakable terms of this provision preempt any state requirement that would define "spring water" differently from how it is defined under the FDCA. Whether a State may act by means of a state statute, a state regulation, or a common law requirement, the result is the same: a State may not impose a "spring water" requirement that varies in scope or substance from the federal definition under the FDCA. *See, e.g.*, *In re PepsiCo, Inc., Bottled Water Mktg. & Sales Practices Litig.*, 588 F. Supp. 2d 527, 532 (S.D.N.Y. 2008).

The second significant provision of the FDCA is one that provides that "[a]ll such proceedings for the enforcement, or to restrain violations, of this chapter shall be by and in the name of the United States." 21 U.S.C. § 337(a). What this provision reflects is that only the federal government—not private parties—may enforce violations of the FDCA. *See, e.g.*, *POM*

---

[8] "(a) [N]o State or political subdivision of a State may directly or indirectly establish under any authority or continue in effect as to any food in interstate commerce—(1) any requirement for a food which is the subject of a standard of identity established under [21 U.S.C. § 341] that is not identical to such standard of identity or that is not identical to the requirement of [21 U.S.C. § 343(g)]." 21 U.S.C. § 343-1(a)(1). Congress has separately provided that this provision "shall not be construed to preempt any provision of State law, unless such provision is expressly preempted under [section 343–1] of the [FDCA]." Nutrition Labeling and Education Act of 1990, Pub. L. No. 101–535, § 6(c)(1), 104 Stat. 2353, 2364 (uncodified); *see also New York State Rest. Ass'n*, 556 F.3d at 123 (citing this provision); *In re Farm Raised Salmon Cases*, 42 Cal. 4th 1077, 1091 (2008) (citing this provision and noting that "Congress's decision not to expressly supplant private claims based on those state laws authorized by section 343–1 should be interpreted as its considered decision to continue to allow states to provide such private remedies").

*Wonderful LLC v. Coca-Cola Co.*, 134 S. Ct. 2228, 2235 (2014). (noting that "the FDCA and its regulations provide the United States with nearly exclusive enforcement authority").

Although § 337(a) does not expressly preempt state law, it has long been understood to have an implied preemptive effect. In *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341 (2001), plaintiffs pressed a state law claim of fraud based on allegations that a defendant had misled the FDA in connection with the approval of a medical device. The Supreme Court recognized that the FDCA "leaves no doubt that it is the Federal Government rather than private litigants who are authorized to file suit for noncompliance with" FDCA requirements. *Id.* at 349 n.5 (citing 21 U.S.C. § 337(a)). Because the FDCA reserves to the federal government the exclusive authority to decide if or how the FDCA will be enforced, the Supreme Court in *Buckman* understood this to impliedly preempt a state law claim based on conduct that was wrongful solely because it violated the FDCA.[9]

The Second Circuit has noted that there can be no state law cause of action if a plaintiff's "true goal is to privately enforce alleged violations of the FDCA." *PDK Labs, Inc. v. Friedlander*, 103 F.3d 1105, 1113 (2d Cir. 1997). In equal measure, the Sixth Circuit has observed that "[t]he [FDCA] statute's public enforcement mechanism is thwarted if savvy plaintiffs can label as arising under a state law for which there exists a private enforcement mechanism a claim that in substance seeks to enforce the FDCA." *Loreto v. Procter & Gamble Co.*, 515 F. App'x 576, 579 (6th Cir. 2013). It would not mean much for Congress to foreclose

---

[9] *See* 531 U.S. at 348 ("we hold that the plaintiffs' state-law fraud-on-the-FDA claims conflict with, and are therefore impliedly pre-empted by, federal law"); *id.* at 353 (noting that "the fraud claims exist solely by virtue of the FDCA disclosure requirements," that "were plaintiffs to maintain their fraud-on-the-agency claims here, they would not be relying on traditional state tort law which had predated the federal enactments in questions," and that "the existence of these federal enactments is a critical element in their case," such that the state law fraud claim "is therefore pre-empted by" the FDCA).

private enforcement of the FDCA if this meant that any plaintiff could end-run this restriction by suing to enforce the FDCA under the guise of a state law claim for relief.

Taken together, these two provisions of the FDCA—§ 343-1(a)(1) and § 337(a)—have a broad preemptive effect on state law claims like those at issue in this case. On the one hand, § 343-1(a)(1) precludes the States from adopting their own self-styled definitions or labeling requirements for "spring water" that differ or depart from the federal standards. On the other hand, § 337(a)—as interpreted in *Buckman*—forecloses state law causes of action that are predicated on a violation of the FDCA rather than on some independent provision or requirement of state law.

The upshot is that only a narrow range of state law claims involving mislabeling of "spring water" may escape preemption by the FDCA. In order to survive preemption, a state law claim must rely on an independent state law duty that parallels or mirrors the FDCA's requirement for "spring water," but must not solely and exclusively rely on violations of the FDCA's own requirements.

As Judge Posner has put it in a similar context, a State "can impose the *identical* requirement or requirements, and by doing so be enabled . . . to enforce a violation of the [FDCA] as a violation of state law." *Turek v. Gen. Mills, Inc*., 662 F.3d 423, 426 (7th Cir. 2011). Yet a plaintiff may not simply dress up a generic state law claim of wrongful conduct to prosecute conduct that is "wrong" only because it happens to violate the federal law requirements of the FDCA:

> [T]he conduct on which the claim is premised must be the type of conduct that would traditionally give rise to liability under state law—and that would give rise to liability under state law even if the FDCA had never been enacted. If the defendant's conduct is not of this type, then the plaintiff is effectively suing for a violation of the FDCA (no matter how the plaintiff labels the claim), and the plaintiff's claim is thus impliedly preempted under *Buckman.*

*Loreto*, 515 F. App'x at 579 (quoting *Riley v. Cordis Corp.*, 625 F. Supp. 2d 769, 777 (D. Minn. 2009)).

The kind of state law claim that may survive preemption is well demonstrated in the California Supreme Court's decision *In re Farm Raised Salmon Cases*, 42 Cal. 4th 1077 (2008). There the California Supreme Court considered a lawsuit against various grocery stores alleging that they were selling artificially colored farmed salmon without disclosing to customers the use of color additives. The lawsuits were based on various California consumer protection laws that were in turn predicated on the violation of another California law—the Sherman Food, Drug, and Cosmetic Law—that required food product labeling to reflect the use of artificial food colors and that also expressly incorporated all of the FDCA's requirements as the state law of California. *Id.* at 1086–87. The California Supreme Court concluded that state law claims based on the Sherman Law were not expressly preempted because the Sherman Law mirrored in substance the FDCA's requirements. *Id.* at 1094–99. Not was there was no implied preemption under § 337(a) because state law created an independent state law duty, such that it could not be said that the claim was merely an attempt to enforce the FDCA. *See also In re Trader Joe's Tuna Litig.*, 289 F. Supp. 3d 1074, 1082–85 (C.D. Cal. 2017) (§ 337(a) does not preempt food labeling claim premised on California's Sherman Law because the Sherman Law creates a separate state law duty by incorporating FDCA standards as a matter of state law).

It is one thing for a State like California to outright adopt an FDCA standard and then for a plaintiff to sue under state law for the violation of that standard. But it is wholly another thing for a State *not* to adopt or mirror an FDCA standard and then for a plaintiff to sue under a generic state law claim (such as for fraud, breach of contract, or unfair trade practices) that would not be actionable absent a violation of the FDCA standard.

15

Where a state law claim would not exist but for a FDCA regulation, § 337(a) impliedly preempts the claim. For example, in *Verzani v. Costco Wholesale Corp.*, 2010 WL 3911499 (S.D.N.Y. 2010), the district court concluded that a food mislabeling claim brought under New York's generic deceptive trade practices law (N.Y. Gen. Bus. Law § 349) was preempted by the FDCA. Citing *Buckman*, the court noted that "[t]he FDCA lacks a private right of action and therefore Verzani cannot rely on it for purposes of asserting a state-law consumer claim under G.B.L. § 349." *Id.* at 3. Plaintiff Verzani's "persistent allegations that Costco's labeling of the Shrimp Tray violates the FDCA and the Food and Drug Administration's regulations on the labeling of 'shrimp cocktails' indicates that his true purpose is to privately enforce alleged violations of the FDCA, rather than to bring a claim for unfair and deceptive business practices under G.B.L. § 349." *Ibid.* (citing *PDK Labs*, 103 F.3d at 1113). The Second Circuit affirmed by summary order the district court's judgment "[f]or substantially the same reasons set forth in the district court's thorough and well-reasoned memoranda and orders." *Verzani v. Costco Wholesale Corp.*, 432 F. App'x 29, 30 (2d Cir. 2011).

Thus, "in New York and many other states, courts have concluded that where a state has not adopted statutes that expressly mirror the FDCA, like California's Sherman Law, a plaintiff's claim that relies on the defendant's failure to comply with federal regulations is impliedly preempted." *In re Trader Joe's Tuna Litig.*, 289 F. Supp. 3d at 1086 (citing cases). "Where, like here, a plaintiff's true purpose is to enforce federal regulations, masquerading as a state-law claim where the state has not adopted a parallel statutory scheme is not sufficient to escape preemption." *Ibid.*

All that makes sense to me, and I think it is clear here that plaintiffs' claims are preempted by § 337(a) of the FDCA. The principal complaint alleges that Nestlé's Poland Spring

water products "are falsely advertised and sold fraudulently to consumers *because they do not comply with the FDA's 'standard of identity' for spring water*, which defines genuine spring water and specifies the manner in which spring water must be 'collected' (or extracted) from the earth." Doc. #1 at 12 (¶ 26) (emphasis added). The complaint goes on to describe in detail how the collection of Poland Spring water at multiple sites in Maine fails to comply with what the FDA requires. *See, e.g.*, *id.* at 12–16 (¶¶ 27–41) (summary of plaintiffs' allegations); *id.* at 287 (¶ 879(c)) (describing common questions of law for class certification basis to include "[w]hether Poland Spring Water complies with FDA regulations concerning bottled spring water").

More telling still, the complaint proclaims that because the "FDA lacks resources to police and enforce all of its regulations," the enforcement of the FDA's rules is "largely dependent upon . . . private civil lawsuits such as this one." Doc. #1 at 39 (¶ 106). Of course, that very ambition—to pursue a private cause of action under the FDCA—is exactly what § 337(a) and *Buckman* forbid.

Each and every one of plaintiffs' claims are wholly FDCA-dependent. Plaintiffs' principal claim of fraud for nationwide class relief refers solely to FDA regulations rather than any provisions of state law. *Id.* at 290–91 (¶¶ 890–900). Plaintiffs' breach-of-contract claim for nationwide class relief similarly relies on plaintiffs' allegation that the product delivered by Nestlé was not "genuine spring water," previously defined by reference solely to FDA regulations. *Id.* at 292 (¶ 907). Plaintiffs' various state law claims cite specific consumer protection statutes, but each of these generic consumer protection statutes are alleged to be violated because of Nestlé's recurring failure to comply with the FDA's federal standard for spring water. *Id.* at 293 (¶ 915), 295 (¶ 926), 297 (¶ 939), 298–99 (¶ 948), 301–02 (¶¶ 961, 965, 967), 306 (¶ 986), 310 (¶ 1007), 314–15 (¶¶ 1031, 1034), 319 (¶ 1056).

As if all this weren't enough, plaintiffs' own briefing likewise concedes that "[p]laintiffs' claims are based entirely on their allegation that 'Defendant Nestle Water's Poland Spring Water products are falsely advertised and sold fraudulently to consumers because they do not comply with the FDA's 'standard of identity' for spring water, which defines genuine spring water and specifies the manner in which spring water must be 'collected' (or extracted) from the earth.'" Doc. #72 at 41–42 (quoting Compl. ¶ 26). Indeed, plaintiffs concede that their "claims are all co-existent with the FDCA and FDA regulations and will rise or fall based solely on whether they can prove that Poland Spring Water fails to meet the FDA's identity standard." *Id.* at 42.

This case is similar to *Loreto v. Procter & Gamble Co.*, 515 F. App'x 576 (6th Cir. 2013), in which the Sixth Circuit addressed a lawsuit against Procter & Gamble for its cold medicine labeling that represented "that taking Vitamin C can blunt the effects of a cold." *Id.* at 579. The plaintiffs advanced claims under state consumer laws based on two theories of liability: (1) that the products were illegal because the label did not comply with FDCA requirements, and (2) that the label was false or misleading. The court held that the first theory was impliedly preempted under *Buckman* because it "depends entirely upon an FDCA violation—*i.e.*, the *only* reason Procter & Gamble's products were allegedly 'illegal' was because they failed to comply with FDCA labeling requirements." *Id.* at 579. In contrast, the court allowed the second theory to proceed because it would be actionable under state tort law regardless whether it was also required by the FDCA. In other words, the label's representation about the efficacy of Vitamin C was misleading because—entirely apart from the FDCA—the claims were allegedly factually false.

Plaintiffs' claims in this case are comparable to the first theory in *Loreto*. Plaintiffs allege that Poland Spring's labels are fraudulent and misleading because they violate the FDA spring

water identity regulation. Absent the FDA's specific standard of identity requirements for "spring water," plaintiffs would have no claims at all.[10]

Plaintiffs argue by way of footnote that *Buckman* is limited to the medical devices context. Doc. #72 at 42 n.9. I don't agree. Although it is true that *Buckman* involved medical devices, the key provision on which it relied—§ 337(a) of the FDCA—was part of the original FDCA when enacted in 1938. *See* Federal Food, Drug, and Cosmetic Act of 1938, Pub. L. No. 75-717, ch. 675, § 307, 52 Stat. 1040, 1046 (1938). Section 337(a) makes clear that it is the federal government—not the States or private parties—that retains exclusive authority to enforce provisions of the FDCA. This provision of general application lacks any indication that it applies only in the medical devices context rather than across the full range of matters regulated by the FDCA.[11]

Plaintiffs further rely on the Supreme Court's decision in *Bates v. Dow Agrosciences, LLC*, 544 U.S. 431 (2005), in which the Supreme Court rejected a preemption challenge under an

---

[10] The complaint alleges in part that Poland Spring labels "are misleading under FDA rules" because they "depict pristine scenes of water flowing down a verdant hillside or a forest pond to convey an image of natural purity." Doc. #1 at 8. Plaintiffs do not mention these pictorial-based allegations in their briefing or suggest that these allegations may withstand preemption even if their other allegations do not. To the contrary, plaintiffs insist that their "claims are premised entirely on the allegation that Nestle's Poland Spring water does not meet the FDA's standard of identity for 'spring water.'" Doc. #72 at 39. Accordingly, I conclude that these claims about the pictorial representation on Poland Spring labels are similarly dependent on the FDA's spring water definition or otherwise are subject to express preemption under § 343-1(a)(1).

[11] Nor do I conclude that *Buckman* is inapplicable or distinguishable on any other grounds. Despite the fact that none of the parties cite or discuss it, I have also considered the Second Circuit's decision in *Desiano v. Warner-Lambert & Co.*, 467 F.3d 85 (2d Cir. 2006), *aff'd per curiam by an equally divided court sub nom. Warner-Lambert Co., LLC v. Kent*, 552 U.S. 440 (2008). The *Desiano* decision includes an extensive discussion of *Buckman*. *See* 487 F.3d at 92–96. Although *Desiano* declined to find that *Buckman* preempted a state law claim, I do not understand *Desiano* to categorically limit *Buckman* solely to claims of fraud-on-the-FDA as distinct from claims of fraud-on-the-public where the fraud depends wholly on what the FDA requires in the first instance. *Desiano* notes concerns about preserving the prerogatives of traditional state tort law and that traditional state tort law does not protect against fraud on the FDA. Equally so, traditional state tort law does not encompass claims for conduct that is wrongful only because it runs afoul of what the FDA requires. Ultimately, *Desiano* concludes that *Buckman* did not preempt a plaintiff's state law claims because these claims "are not premised principally (let alone exclusively) on a drug maker's failure to comply with federal disclosure requirements," but involved "a wide range of putative violations of common law duties long-recognized by Michigan's tort regime." *Id.* at 95. Here there is no similar analogue to a state law claim that does not rise or fall on the basis of what the FDCA requires.

express preemption provision of another statute—the Federal Insecticide, Fungicide, and Rodenticide Act (FIFRA)—that barred state law labeling requirements "in addition to or different from" those required under that statute. *Id.* at 443. Plaintiffs contend that *Bates* "really controls here, not the narrow *Buckman* line of cases." Doc. #111 at 42. I don't agree. *Bates* did not even concern the FDCA, much less did it concern the preemptive scope of § 337(a) or a similar federal-exclusivity-of-enforcement provision. Nor did *Bates* cite or discuss *Buckman*. In any event, to the extent that the reasoning in *Bates* has persuasive value here, *Bates* at best supports plaintiffs' claim against *express* preemption under § 343-1(a)(1) of the FDCA but has nothing to say about why there should not be *implied* preemption under § 337(a) of the FDCA.[12]

In short, despite the efforts plaintiffs make to clothe their claims in the garb of state law, the reality is that they are suing solely to enforce the FDCA's federal "spring water" standard. That is what *Buckman* and § 337(a) do not allow. Accordingly, I will dismiss the complaints on the ground that they are impliedly preempted by § 337(a) of the FDCA.[13]

### *Dismissal of Consolidated Actions*

Four other class action lawsuits were filed after the filing of the *Patane* complaint and have been consolidated before me with this case. Just like the *Patane* complaint, these complaints assert nationwide and/or multi-state common law claims for fraud and/or breach of

---

[12] Similarly, to the extent that plaintiffs heavily rely on the reasoning of the district court in *Vermont Pure Holdings, Ltd. v. Nestlé Waters N. Am. Inc.*, 2006 WL 839486 (D. Mass. 2006), they overlook that the court in *Vermont Pure* followed *Bates* without citing or discussing *Buckman*.

[13] Because I conclude that this action is impliedly preempted under § 337(a) of the FDCA, I need not consider for now Nestlé's alternative argument (Doc. #53-1 at 48–54) that plaintiffs' claims are expressly preempted to the extent that plaintiffs effectively seek to invoke and enforce "spring water" requirements that differ from those set forth under the FDCA and accompanying regulations. Nor is it necessary for me to consider at this time Nestlé's highly fact-laden arguments that state regulators have authorized its actions in a manner that precludes plaintiffs' breach of contract claim and that qualifies Nestlé for a "safe harbor" from enforcement of state consumer protection statutes. I will also not consider for now Nestlé's argument that I should defer to the primary jurisdiction of the FDA. Similarly, I decline at this point to address plaintiffs' equally fact-laden arguments about Nestlé's alleged corruption of state regulatory processes.

contract or breach of express warranty, as well as sub-class claims for violation of particular consumer protection statutes of particular states. [14] As best as I can tell, all of these complaints essentially seek to enforce the FDA's "spring water" standard rather than any "spring water" standard that has been independently established or adopted under any state law.

The consolidated cases *Krinsky v. Nestlé Waters North America, Inc.*, 3:17-cv-01474, and *Lilly v. Nestlé Waters North America, Inc.*, 3:17-cv-01566, were consolidated with the *Patane* case prior to Nestlé's filing of the motion to dismiss. *See Patane* docket, Docs. #40, #41. Nestlé's motion to dismiss expressly requests the dismissal of the *Patane*, *Krinsky*, and *Lilly* complaints. Doc. #53 at 1. The *Brown* case was consolidated with this case after Nestlé's motion to dismiss was filed, but the parties stipulated that the motion to dismiss would apply equally to the *Brown* case. *See Brown v. Nestlé Waters North America, Inc.*, 3:17-cv-01746, Doc. #23 at 2–4. Because the *Krinsky*, *Lilly*, and *Brown* complaints are similar in material respects to the *Patane* complaint, I will dismiss each of the consolidated complaints for the same reason as discussed above: that they are preempted by § 337(a) of the FDCA.

The *Ray* case was not consolidated with this case until after the motion to dismiss was filed, and the *Ray* plaintiffs did not stipulate that the motion to dismiss filed in *Patane* would apply equally to the *Ray* action. *See Ray v. Nestlé Waters North America Inc.*, 3:17-cv-01944, Doc. #24 (stipulation that Nestlé would have 30 days after the Court's ruling on the motion to dismiss to reply to the *Ray* complaint). Because the *Ray* complaint is similar in all material

---

[14] *See Krinsky v. Nestlé Waters North America, Inc.*, 3:17-cv-01474 (alleging nationwide class claim for "fraud" and sub-class claims under New York, New Jersey, and New Hampshire consumer protection statutes); *Lilly v. Nestlé Waters North America, Inc.*, 3:17-cv-01566 (alleging nationwide class claim for "fraud" and 25-state class claim for breach of express warranty); *Brown v. Nestlé Waters North America, Inc.*, 3:17-cv-01746 (alleging nationwide class claim for breach of contract and sub-class claims under New York, Connecticut, and Pennsylvania consumer protection statutes); and *Ray v. Nestlé Waters North America Inc.*, 3:17-cv-01944 (alleging nationwide breach of contract claim and sub-class claims under New Jersey, New York, Connecticut, Massachusetts, Rhode Island, Vermont, New Hampshire, and Maine consumer protection statutes).

respects to the *Patane* complaint, it looks to me like my ruling here would apply with equal force to the *Ray* complaint. But because *Ray* was not subject to the motion to dismiss, I will not dismiss the case at this time. This ruling is without prejudice to Nestle's filing of a motion to dismiss the *Ray* complaint within 30 days and for the *Ray* plaintiffs to file any response.

### CONCLUSION

For the foregoing reasons, Nestlé's motion to dismiss (Doc. #53) is GRANTED, and the following complaints are dismissed: *Patane v. Nestlé Waters North America, Inc.*, 3:17-cv-01381, *Krinsky v. Nestlé Waters North America, Inc.*, 3:17-cv-01474, *Lilly v. Nestlé Waters North America, Inc.*, 17-cv-01566, and *Brown v. Nestlé Waters North America, Inc.*, 3:17-cv-01746. This ruling is without prejudice to plaintiffs' filing of amended complaints within 30 days that state any proper claims not preempted by federal law.

It is so ordered.

Dated at New Haven this 17th day of May 2018.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge