UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| MARK J. PATANE, JULIE HARDING, HEATHER HARRIGAN, STEPHEN S. SHAPIRO, CATHERINE PORTER, ERICA RUSSELL, TINA MORETTI, BRIDGET KOPET, JENNIFER S. COLE, BENJAMIN A. FLETCHER, DIANE BOGDAN, and MICHAEL BROWN, Individually and on Behalf of All Others Similarly Situated, | : : : : : : : : : | CIVIL ACTION NO. 17-cv-01381 (JAM) |
| Plaintiffs, | : : | |
| v. | : : : | |
| NESTLE WATERS NORTH AMERICA, INC., | : : : | |
| Defendant. | : | JUNE 25, 2018 |

**NESTLÉ WATERS' RESPONSE REGARDING SEALING OF FIRST AMENDED COMPLAINT (REQUEST TO SEAL PARAGRAPHS 558 AND 567)**

Nestlé Waters North America Inc. ("Nestlé Waters") requests that the Court grant the motion to seal as to two paragraphs in the complaint only: paragraphs 558 and 567.[1] (It does not seek sealing of the other redactions included in plaintiffs' amended complaint filed at docket 150). These two "evidentiary" allegations – a photograph staged by moving rocks off of a drainage pipe at the site, with a breathless pretense of having uncovered something unknown, and allegations about water chemistry results from a drainage pipe instead of the natural springs visibly flowing a few feet away to the right and left of it – should remain confidential for now, and not included in the public file. Nestlé Waters does not allow people onto its spring sites to

---

[1] Nestle Waters is submitting with this response a declaration of Thomas Mayhew, who attended plaintiffs' site inspection. Nestle Waters requests to file under seal the declaration of Thomas Mayhew filed in support of this motion. If the Court denies the motion to seal paragraphs 558 and 567, then the request to file this declaration under seal may also be denied.

create staged photos for the purpose of putting its springs in a false light, and it does not allow people to come onto its spring sites to take water tests, particularly if the people are going to present the water tests as being tests of the spring when they didn't test the spring at all. The Court should not allow its permission for early discovery site inspections to be abused by making public these "raw, untested" discovery materials.

**FACTUAL BACKGROUND**

At the Evergreen Spring site, there are a number of areas where natural springs flow at the surface. One area of natural springs flows downhill from the back of the site to a small pond bordered by a man-made rock wall. Mayhew Decl. ¶ 2-3. The small pond, surrounded by a rock wall, is itself also spring-fed: while plaintiffs were there, they observed an area on the pond bottom with "boiling sand," where water flowing from below the pond bottom causes sand to repeatedly jump, then sink back down, in the spring's current. Mayhew Decl. ¶¶ 2, 4-8.

In addition to the flow into the pond from natural springs further back on the site, and the natural spring within the pond, there is a third source of water into the pond: a white drainage pipe in the photos in paragraphs 558, which is normally covered by rocks. Mayhew Decl. ¶ 12. The water in the small pond then exits into a culvert that goes under an access road, and flows into Wards Brook. Mayhew Decl. ¶ 13.

Plaintiffs focus on the white pipe, and allege photos of the pipe in paragraph 558 as if it were the natural spring. They tested water emerging into the pond from this drainage pipe – but inexplicably, not from the visible flowing water in the sand boil a few feet to the right, or the spring flow entering the pond a few feet to the left – and allege limited excerpts of the results of their "test" in paragraph 567. Mayhew Decl. ¶¶ 10-11.

Nestlé Waters takes steps to preserve the confidentiality of images and water test results from its sites, and designated the information in paragraphs 558 and 567 as confidential under the protective order to preserve its confidentiality.  Mayhew Decl. ¶ 11.

## ANALYSIS

In docket 152, the Court ordered:

> ORDER RE RESPONSE TO MOTION TO SEAL. The Court does not permit the filing of documents under seal absent clear and compelling reasons that are narrowly tailored by sealing. See D. Conn. L. Civ. R. 5(e)(3). Plaintiffs have filed a motion to seal portions of the amended complaint on grounds that defendant may have grounds for sealing. The Court's rules provide that "[a] confidentiality order or protective order entered by the Court to govern discovery shall not qualify as an order to seal documents for purposes of this rule." Ibid. Defendant may file a response to plaintiffs' motion to seal by June 25, 2018, if it has a basis for sealing; absent the filing of such a response demonstrating with particularity why such portions as redacted by plaintiffs of the amended complaint should remain under seal, the Court intends to deny plaintiffs' motion to seal.

Some of the types of "clear and compelling reasons" recognized as sufficient to justify sealing are set forth in *United States v. Amodeo*, 71 F.3d 1044 (2d Cir. 1995).  In that case, the court explained the presumption of access to documents filed with the Court, to create accountability for the judiciary system by providing confidence in the conscientiousness, reasonableness, and honesty of judicial proceedings.  Id. at 1048.  However, it further explained that courts recognize that the judicial system also involves a "vast amount of not only irrelevant but also unreliable material," and that "[u]nlimited access to every item turned up in the course of litigation would be unthinkable.  Reputations would be impaired, personal relationships ruined, and businesses destroyed on the basis of misleading or downright false information." *Id.* at 1048-49.  Because of this, courts are allowed to seal records, redact pleadings and motions, and in appropriate cases even hold sessions in closed courtrooms, to protect reputations and confidentiality.  In addition to considering reputational effects and privacy impacts, the Court "should consider the reliability of

the information." "Raw, unverified information should not be as readily disclosed as matters that are verified." *Id.* at 1051.

Here, paragraphs 558 and 567 are derived from the court-ordered site inspection of the Evergreen Spring site in Fryeburg, Maine, on December 5, 2017.[2]  Sealing should be granted concerning each.

Paragraph 558 includes an unverified allegation (with some degree of hyperbole and argument) and two cropped images of a small portion of a spring pool at the Evergreen Spring site.  It is unfair and misleading to make these images and allegation public because it is not how the site looks; it is how plaintiffs arranged for it to look.  The fact that they were permitted to rearrange stones during their site inspection does not justify making their staged photo public.  Making their photos public would damage Nestlé Waters by creating a false public image of its Evergreen Spring site.  Plaintiffs' allegation in paragraph 558 will be read as factual, particularly when combined with the photos that suggests Plaintiffs have "proof" that Plaintiffs discovered something about the spring.  But in fact, there was spring flow to both the right and the left of it, which Plaintiffs intentionally chose not to sample, and the cropping and excerpting of the video creates an unreliable and misleading image.

If this kind of information were made public at trial, Nestlé Waters would have ample opportunity to show the truth, including showing the entire videos from which the still images are excerpted and cropped.  But in the current posture of the case, a motion to dismiss the amended complaint cannot challenge the veracity of the Plaintiffs' allegations or show other information that would contextualize it.  Releasing raw, untested data from discovery can lead to

---

[2] At the time the inspections were sought, briefing was not yet complete on the motion to dismiss, and the court could not say that there was a strong likelihood that the motion would be granted.  The court later granted the motion to dismiss.

significant unfairness and business harm, and would do so here.  The photos and site inspection were conducted under the protection of a protective order that protected confidentiality, and the area is not open to the public.  Indeed, Plaintiffs have not filed any motion challenging the confidentiality of these images and test results.  The photos are thus of an area that is confidential, and combined with the fact that Plaintiffs rearranged the appearance to argue their case, the paragraph should not be in the public file to protect Nestlé Waters' legitimate interests in avoiding harm to its reputation from unfair, potentially misleading, and damaging disclosure of confidential information.

Paragraph 567 alleges certain chemistry results from water obtained by snaking a plastic tube out near the end of the white drainage pipe and pumping the water into a sample bottle.  Mayhew Decl. ¶ 10.  It is not a true test of the spring, although Plaintiffs claim that it is.  If the public reads this allegation, it will be to their detriment:  they will be misled into believing that Plaintiffs are saying something about the water that Nestlé Waters bottles.  The intended effect is to damage the brand and create pressure for settlement.  The allegation should remain under seal for now.  Nestlé Waters has a confidentiality interest in water tests conducted on its property, and has a legitimate interest in protecting its reputation by preventing widespread distribution of water quality testing data taken by people who have a financial motivation to misrepresent the source and nature of the test results.  The allegation is the kind of unverified raw data that *Amodeo* explains should not readily be disclosed, and adversary testing at a later stage may show that it is unreliable, false, or misleading.  It should not be included in the public file.

Nestlé Waters takes reasonable steps to protect the confidentiality of this kind of information, in part to avoid unwarranted damage to its reputation.  Access to the site is only by permission and is not open to the public.  Visitors are required to promise confidentiality, and are

only allowed to take photos with permission.  Visitors are not allowed to move rocks or anything else without permission.  Water sampling is likewise only with permission.  Plaintiffs only obtained access to Nestlé Waters' sites claiming a need for early discovery based on a complaint that has now been dismissed.  Moreover, Plaintiffs' counsel agreed to treat the results of the visit as confidential based on Nestlé Waters' designation under the protective order; the chemistry results and photos in paragraphs 558 and 567 are designated confidential.

Nestlé Waters proposes that redaction of these two paragraphs is narrowly tailored to the confidentiality interests at stake.  The world already knows, to the extent that anyone is curious and the press wants First Amendment access, that the case includes an allegation by Plaintiffs that Evergreen Spring is not a spring.  Plaintiffs can make, at this early stage of the proceedings, their false and misleading allegations that the pipe is a spring and the spring is a pipe; they can even deliberately ignore the spring and just sample water from a pipe; this motion is not about the merits of Plaintiffs' case.  The narrow remedy Nestlé Waters seeks is limited to restricting disclosure of otherwise confidential photos and chemistry results for the purpose of placing Nestlé Waters' site in a false and damaging light.  This raw, untested data obtained confidentially in discovery should remain protected by confidentiality at least until adversary testing at trial.  The unusual level of purported "evidentiary" detail in the First Amended Complaint should not be permitted to serve as an avenue for disclosure of these matters.

## **CONCLUSION**

For the foregoing reasons, the Court should grant the motion to seal, in order to maintain confidentiality of paragraphs 558 and 567. Plaintiffs should be ordered to file a version of the First Amended Complaint that redacts only paragraphs 558 and 567, and the unredacted version filed at docket 150 should remain sealed.

>
> DEFENDANT,
> NESTLÉ WATERS NORTH AMERICA INC.
>
> By: _/s/Jonathan B. Tropp_____
> Jonathan B. Tropp (ct11295)
> Day Pitney LLP
> One Canterbury Green
> Stamford, CT 06901
> Telephone: (203) 977-7337
> Fax: (203) 901-1733
> jbtropp@daypitney.com
>
> Jeffrey M. Garrod (admitted *pro hac vice*)
> Orloff, Lowenbach, Stifelman & Siegel, P.A.
> 101 Eisenhower Parkway, Suite 400
> Roseland, NJ 07068-1097
> Telephone: (973) 622-6200
> Fax: (973) 622-3073
> jmg@olss.com
>
> Thomas B. Mayhew (admitted *pro hac vice*)
> Farella, Braun & Martel LLP
> 235 Montgomery Street, 17th Floor
> San Francisco, CA 94104
> Telephone: (415) 954-4400
> Fax: (415) 954-4480
>
> Its Attorneys

32640\6762040.1