# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| MARK J. PATANE, JULIE HARDING, HEATHER HARRIGAN, STEPHEN S. SHAPIRO, CATHERINE PORTER, ERICA RUSSELL, TINA MORETTI, BRIDGET KOPET, JENNIFER S. COLE, BENJAMIN A. FLETCHER, DIANE BOGDAN and MICHAEL BROWN, Individually and on Behalf of All Others Similarly Situated, | : CIVIL ACTION NO. 17-cv-01381(JAM) : : : : : : : : : : |
| Plaintiffs, | : : |
| v. | : : |
| NESTLE WATERS NORTH AMERICA, INC., | : : : |
| Defendant. | : JULY 30, 2018 |

## DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(1) AND 12(b)(6)

Jonathan B. Tropp (ct11295)
Day Pitney LLP
One Canterbury Green
Stamford, CT 06901
Telephone: (203) 977-7337
Fax: (203) 901-1733
jbtropp@daypitney.com

Jeffrey M. Garrod (admitted *pro hac vice*)
Craig A. Ollenschleger (admitted *pro hac vice*)
Orloff, Lowenbach, Stifelman & Siegel, P.A.
101 Eisenhower Parkway, Suite 400
Roseland, NJ 07068-1097
Telephone: (973) 622-6200
Fax: (973) 622-3073
jmg@olss.com; co@olss.com
Attorneys for Defendant
Nestlé Waters North America Inc.

# TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES ......................................................................................... iii

PRELIMINARY STATEMENT ................................................................................... 1

RELEVANT ALLEGATIONS AND CONTENTIONS ............................................. 3

    A.    The Parties ...................................................................................................... 3

    B.    "Appropriate Regulatory Officials" Of Maine And Its Sister States Have Certified Poland Spring® Complies With The FDA Identity Standard .............. 3

        1.    Maine's And Other States' Regulators Have Issued NWNA Permits Authorizing Poland Spring® To Be Labeled And Sold As "Spring Water" In Their States .................................................................. 4

        2.    The FDA Confirms It Is "Appropriate" To Label Bottled Water As "Spring Water" If State Regulators Certify It Meets The FDA Identity Standard ................................................................................. 5

    C.    Plaintiffs' Complaint Challenges State Regulators' Determinations That Poland Spring® Is "Spring Water" Meeting The FDA Identity Standard ........... 6

ARGUMENT ................................................................................................................. 7

    I.    The *Burford* Abstention Doctrine Requires Dismissal For Lack of Jurisdiction ................................................................................................... 7

        A.    State Regulators Have Determined Poland Spring® Is "Spring Water" ................................................................................................. 8

        B.    Plaintiffs' Claims Collaterally Attack State Regulatory Determinations ......................................................................................... 12

        C.    The Second Circuit's *Bethphage* Test Strongly Favors Abstention In This Case ......................................................................................... 13

        D.    Timely, Adequate State-Court Review of Administrative Determinations Exists ................................................................................ 20

    II.    As This Court Has Held, Section 337(a) Prohibits Plaintiffs From Pursuing State-Law Claims To Privately Enforce The FDA Spring Water Identity Standard ......................................................................................... 21

    III.    Plaintiffs' Claims Are Barred By Express And Conflict Preemption Under The FDCA ................................................................................................... 36

        A.    The Federal Enforcement Scheme For Food Standards Of Identity ....... 38

        B.    The Federal Enforcement Scheme For The FDA Identity Standard ....... 39

        C.    Plaintiffs' State-Law Claims Are Expressly Preempted ......................... 40

        D.    Plaintiffs' State-Law Claims Are Conflict-Preempted ........................... 51

IV.    Plaintiffs' Statutory Claims Are Barred By Each State's Safe Harbor
       Exemption ................................................................................................. 57

V.     Plaintiffs Fail To Plausibly State A Claim For Common-Law Fraud ................ 67

VI.    Plaintiffs Fail To Plausibly State A Claim For Common-Law Breach of
       Contract ..................................................................................................... 69

VII.   This Case Should Be Referred To The FDA Under The Doctrine Of
       Primary Jurisdiction .................................................................................... 70

CONCLUSION .......................................................................................................... 74

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adamson v. Ortho-McNeil Pharmaceutical, Inc.*,
  463 F. Supp. 2d 496 (D.N.J. 2006) ...................................................................68

*Adkins v. VIM Recycling, Inc.*,
  644 F.3d 483 (7th Cir. 2011) ...........................................................................13

*AEI Life LLC v. Lincoln Benefit Life Co.*,
  892 F.3d 126 (2d Cir. 2018)..............................................................................69

*Alliance of Automobile Manufacturers, Inc. v. Currey*,
  984 F. Supp. 2d 32 (D. Conn. 2013), *aff'd*, 610 F. App'x 10 (2d Cir. 2015) ...........................8

*Altria Group, Ltd v. Good*,
  555 U.S. 70 (2008)............................................................................................51

*American Home Products Corp. v. Johnson & Johnson*,
  672 F. Supp. 135 (S.D.N.Y. 1987) .............................................................59, 60

*In re Anheuser-Busch Beer Labeling, Marketing & Sales Practices Litigation*,
  No. 1:13 MD 2448, 2014 WL 12659447(N.D. Ohio June 2, 2014), *aff'd*, 644
  F. App'x 515 (6th Cir. 2016) ...........................................................................66

*Animal Legal Defense Fund Boston, Inc. v. Provimi Veal Corp.*,
  626 F. Supp. 278 (D. Mass.) , *aff'd o.b.*, 802 F.2d 440 (1st Cir. 1986)............................29, 61

*Apotex Inc. v. Acorda Therapeutics, Inc.*,
  823 F.3d 51 (2d Cir. 2016)................................................................................60

*Arden House, Inc. v. Heintz*,
  612 F. Supp. 81 (D. Conn. 1985).....................................................................14

*Arizona v. United States*,
  567 U.S. 387 (2012)..........................................................................................37

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)....................................................................................22, 30

*Atlanta Machine Works v. Felthousen*,
  174 A.D. 65 (N.Y. App. Div. 1916) .................................................................70

*Atlantic Ambulance Corp. v. Cullum*,
  166 A.3d 260 (N.J. Super. Ct. App. Div. 2017)..............................................58

*Atlantis Community Inc. v. Adams*,
    453 F. Supp. 825 (D. Colo. 1978)..................................................................................42

*In re Aurora Dairy Corp. Organic Milk Marketing & Sales Practices Litigation*,
    621 F.3d 781 (8th Cir. 2010) ................................................................52, 53, 54, 56

*Barbuto v. Advantage Sales & Marketing, LLC*,
    78 N.E.3d 37 (Mass. 2017) ........................................................................................29

*Barry v. St. Paul Fire & Marine Insurance Co.*,
    555 F.2d 3 (1st Cir. 1977), *aff'd*, 438 U.S. 531 (1978)...............................16, 17, 21

*Berman Enterprises, Inc. v. Jorling*,
    3 F.3d 602 (2d Cir. 1993).............................................................................................8

*Bethphage Lutheran Services, Inc. v. Weicker*,
    965 F.2d 1239 (2d Cir. 1992).............................................13, 14, 17, 18, 19, 20

*Birdsong v. Nurture, Inc.*,
    275 F. Supp. 3d 384 (E.D.N.Y. 2018) ....................................................................57

*Blagbrough Family Realty Trust v. A&T Forest Products, Inc.*,
    917 A.2d 1221 (N.H. 2007) ......................................................................................32

*Blass v. Rite Aid of Connecticut, Inc.*,
    16 A.3d 855 (Conn. Super. Ct. 2009), *aff'd o.b.*, 16 A.3d 737 (Conn. 2011) .........28

*Bolinger v. First Multiple Listing Service, Inc.*,
    No. 2:10-CV-211-RWS, 2014 WL 4803155 (N.D. Ga. Sept. 26, 2014)................65

*Brower v. Campbell Soup Co.*,
    243 F. Supp. 3d 1124 (S.D. Cal. 2017)..................................................................44

*Buchholz v. Waterville Estates Ass'n*,
    934 A.2d 511 (N.H. 2007) ..................................................................................64, 68

*Buck v. American Airlines, Inc.*,
    476 F.3d 29 (1st Cir. 2007)........................................................................................30

*Buckman Co. v. Plaintiffs' Legal Committee*,
    531 U.S. 341 (2001)....................................................................................22, 24, 54

*Burford v. Sun Oil Co.*,
    319 U.S. 315 (1943).................................................................................... *passim*

*Cablevision of Boston, Inc. v. Public Improvement Commission of the City of Boston*,
    38 F. Supp. 2d 46 (D. Mass.), *aff'd* 184 F.3d 88 (1st Cir. 1999)............................61

*Canale v. Colgate-Palmolive Co.*,
   258 F. Supp. 3d 312 (2017) ........................................................................72

*Carlin v. Davidson Fink LLP*,
   852 F.3d 207 (2d Cir. 2017)........................................................................4

*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*,
   973 P.2d 527 (Cal. 1999) ..........................................................................63

*Charlton v. Town of Oxford*,
   774 A.2d 366 (Me. 2001)...........................................................................33

*Chavers v. Fleet Bank (RI), N.A.*,
   844 A.2d 666 (R.I. 2004) ..........................................................................62

*Chelsea Plaza Homes, Inc. v. Moore*,
   601 P.2d 1100 (Kan. 1979) .......................................................................63

*Chicago Faucet Shoppe, Inc. v. Nestlé Waters North America Inc.*,
   24 F. Supp. 3d 750 (N.D. Ill. 2014) ...............................................36, 39, 43

*Chiropractic America v. Lavecchia*,
   180 F.3d 99 (3d Cir. 1999).........................................................................14

*Chlorine Institute, Inc. v. Soo Line Railroad*,
   792 F.3d 903 (8th Cir. 2015) .....................................................................73

*U.S. ex rel. Chorches v. American Medical Response, Inc.*,
   865 F.3d 71 (2d Cir. 2017).........................................................................67

*Cipollone v. Liggett Group*,
   505 U.S. 504 (1992)...................................................................................42

*City of New York v. Smokes-Spirits.Com, Inc.*,
   911 N.E.2d 834 (N.Y. 2009)......................................................................27

*Coalition for Health Concern v. LWD, Inc.*,
   60 F.3d 1188 (6th Cir. 1995) .....................................................................19

*Colorado River Water Conservation Dist. v. United States*,
   424 U.S. 800 (1976)...................................................................................19

*Connelly v. Housing Authority of City of New Haven*,
   567 A.2d 1212 (Conn. 1990) .........................................................28, 60, 61

*Corbin v. Buchanan*,
   657 A.2d 170 (Vt. 1994)............................................................................31

*Cortlandt Street Recovery Corp. v. Hellas Telecommunications, S.à.r.l.*,
     790 F.3d 411 (2d Cir. 2015)...........................................................................................4

*Cronin v. State*,
     531 A.2d 929 (Vt. 1987), *overruled on other grounds by Libercent v. Aldrich*,
     539 A.2d 981 (Vt. 1987) .............................................................................................31

*Cruz v. TD Bank, N.A.*,
     2 N.E.3d 221 (N.Y. 2013)............................................................................................27

*Cytyc Corp. v. Neuromedical Systems, Inc.*,
     12 F. Supp. 2d 296 (S.D.N.Y. 1998)...........................................................................60

*Denny v. Barber*,
     576 F.2d 465 (2d Cir. 1978).........................................................................................74

*DePriest v. AstraZeneca Pharmaceuticals, L.P.*,
     351 S.W.3d 168 (Ark. 2009)........................................................................................68

*Dittmer v. County of Suffolk*,
     146 F.3d 113 (2d Cir. 1998).........................................................................................13

*Dittmer v. County of Suffolk*,
     59 F. App'x 375 (2d Cir. 2003) ...............................................................................19, 59

*Doug Grant, Inc. v. Greate Bay Casino Corp.*,
     232 F.3d 173 (3d Cir. 2000), *cert. denied*, 532 U.S. 1038 (2001)...........................58

*Doug Grant, Inc. v. Greate Bay Casino Corp.*,
     3 F. Supp. 2d. 518 (D.N.J. 1998), *aff'd*, 232 F.3d 173 (3d Cir. 2000), *cert.
     denied*, 532 U.S. 1038 (2001) .....................................................................................68

*Dudzik v. Leesona Corp.*,
     473 A.2d 762 (R.I. 1984).............................................................................................67

*Ellis v. Gallatin Steel Co.*,
     390 F.3d 461 (6th Cir. 2004) .............................................................................16, 17, 18

*Farina v. Nokia, Inc.*,
     625 F.3d 97 (3d Cir. 2010), *cert. denied*, 565 U.S. 928 (2011)...............................52

*Farkas v. D'Oca*,
     857 F. Supp. 300 (S.D.N.Y. 1994) ...............................................................................8

*In re Farm Raised Salmon Cases*,
     42 Cal. 4th 1077 (2008) ...................................................................................23, 24, 35

*Fay v. Erie Insurance Group*,
    723 A.2d 712 (Pa. Super. Ct. 1999) ........................................................................66

*Felis v. Downs Rachlin Martin PLLC*,
    133 A.3d 836 (Vt. 2015) ..........................................................................................67

*First of Maine Commodities v. Dube*,
    534 A.2d 1298 (Me. 1987).........................................................................14, 33, 65

*In re Fosamax (Alendronate Sodium) Product Liability Litigation*,
    No. CIV.A. 08-08, 2013 WL 1558697 (D.N.J. Apr. 11, 2013) ...............................60

*Fraker v. KFC Corp.*,
    No. 06-CV-1284, 2007 WL 1296571 (S.D. Cal. Apr. 30, 2007).......................23, 24

*Friends of Santa Fe County v. LAC Minerals, Inc.*,
    892 F. Supp. 1333 (D.N.M. 1995) ......................................................................16, 18

*Galper v. JP Morgan Chase Bank, N.A.*,
    802 F.3d 437 (2d Cir. 2015).....................................................................................37

*Gauthier v. Manchester School Dist.*,
    123 A.3d 1016 (N.H. 2015) ......................................................................................32

*Geier v. American Honda Motor Co.*,
    529 U.S. 861 (2000).............................................................................................37, 52

*Gomez v. Independent  Management of Delaware, Inc.*,
    967 A.2d 1276 (D.C. 2009) ......................................................................................63

*Goya Foods, Inc. v. Tropicana Products, Inc.*,
    846 F.2d 848 (2d Cir. 1988).....................................................................................71

*Greenfield v. Yucatan Foods, LP*,
    18 F. Supp. 3d 1371 (S.D. Fla. 2014) .....................................................................71

*Grocery Manufacturers of America, Inc. v. Gerace*,
    755 F.2d 993 (2d Cir.), *aff'd*, 474 U.S. 801 (1985) ...............................................19

*Grudkowski v. Foremost Insurance Co.*,
    556 F. App'x 165 (3d Cir. 2014)..............................................................................66

*Guiggey v. Bombadier*,
    615 A.2d 1169 (Me. 1992)........................................................................................67

*Hachamovitch v. DeBuono*,
    159 F.3d 687 (2d Cir. 1998).................................................................................13, 19

*Hammer v. American Kennel Club,*
   803 N.E.2d 766 (N.Y. 2003)..................................................................27

*Hampton Hospital v. Bresan,*
   672 A.2d 725 (N.J. Super. Ct. App. Div.), *certif. denied,* 677 A.2d 760 (N.J.
   1996) ..............................................................................................25, 58

*Hawks v. Hamill,*
   288 U.S. 52 (1933)..............................................................................8

*Hearring v. Sliwowski,*
   806 F.3d 864 (6th Cir. 2015) ............................................................42

*Heller v. Coca-Cola Co.,*
   646 N.Y.S.2d 524, 525-26 (N.Y. App. Div.), *leave to app. dism. in pt. &*
   *denied in pt.,* 89 N.Y.2d 856 (1996) ..................................................72

*Higgins v. Town of Swansea,*
   893 N.E.2d 352 (Mass. App. Ct. 2008) ..............................................29

*Hood v. Wholesoy & Co.,*
   No. 12-cv-5550-YGR, 2013 WL 3553979 (N.D. Cal. Jul. 12, 2013).........36, 71, 73

*Hooper Handling, Inc. v. Jonmark Corp.,*
   267 A.D.2d 1075 (N.Y. App. Div. 1999) ............................................70

*Husky International Electronics, Inc. v. Ritz,*
   136 S. Ct. 1581 (U.S. 2016)..............................................................67

*In re Insurance Stacking Litigation,*
   754 A.2d 702 (Pa. Super. Ct. 2000)....................................................66

*Jamison v. Longview Power, LLC,*
   493 F. Supp. 2d 786 (N.D. W.Va. 2007) ............................................16, 17, 18

*Jarrell v. Kaul,*
   123 A.3d 1022 (N.J. 2015)................................................................25

*Johnson v. Collins Entertainment Co.,*
   199 F.3d 710 (4th Cir. 1999), *reh'g en banc denied,* 204 F.3d 573 (4th Cir.
   2000) ..............................................................................................19

*Johnson v. Collins Entertainment Co.,*
   204 F.3d 573 (4th Cir. 2000) (Motz, J., dissenting) ..............................8

*In re Johnson,*
   13 A.3d 315 (N.H. 2011) ..................................................................32

*Judicial Watch, Inc. v. State*,
   892 A.2d 191 (Vt. 2005) ...........................................................................31, 64

*Kelley v. WWF Operating Co.*,
   Case No. 1:17-cv-117, 2017 WL 2445836 (E.D. Cal. Jun. 6, 2017) ......................71

*In re KIND LLC "Health & All Natural" Litigation*,
   209 F. Supp. 3d 689 (S.D.N.Y. 2016)..................................................................71

*La Vigne v. Costco Wholesale Corp.*,
   284 F. Supp. 3d 496 (S.D.N.Y. 2018)............................................................43, 44

*Laing v. Clair Car Connection*,
   No. CIV.A. CV-01-516, 2003 WL 1669624 (Me. Super. Ct. Jan. 29, 2003) ...................33, 65

*Langan v. Johnson & Johnson Consumer Cos.*,
   95 F. Supp. 3d 284 (D. Conn. 2015)....................................................................70

*Lemelledo v. Beneficial Management Corp. of America*,
   696 A.2d 546 (N.J. 1997).....................................................................................58

*Loreto v. Procter & Gamble Co.*,
   515 F. App'x 576 (6th Cir. 2013) ........................................................................35

*Lynch v. Conley*,
   853 A.2d 1212 (R.I. 2004)...................................................................................62

*Macomber v. Travelers Property & Casualty Corp.*,
   894 A.2d 240 (Conn. 2006) .................................................................................69

*Manahawkin Convalescent v. O'Neill*,
   43 A.3d 1197 (N.J. Super Ct. App. Div. 2012), *aff'd*, 85 A.3d 947 (N.J. 2014) ...................59

*Marcus v. AT&T Corp.*,
   938 F. Supp. 1158 (S.D.N.Y. 1996), *aff'd*, 138 F.3d 46 (2d Cir. 1998) ................................59

*Marentette v. Abbott Laboratories, Inc.*,
   886 F.3d 112, 117 (2d Cir. 2018)...............................................51, 52, 53, 54, 56, 57

*Marine Midland Bank v. John E. Russo Produce Co.*,
   405 N.E.2d 205 (N.Y. 1980)................................................................................67

*Meaunrit v. Pinnacle Foods Group, LLC*,
   No. C 09-4555 CW, 2010 WL 1838715 (N.D. Cal. May 5, 2010)..................................44, 51

*Medtronic, Inc. v. Lohr*,
   518 U.S. 470 (1996)............................................................................................37

*Mercer v. Gupta,*
    712 F.3d 756 (2d Cir. 2013)................................................................................58

*Naylor v. Case & McGrath, Inc.,*
    585 F.2d 557 (2d Cir. 1978)................................................................................18

*Nemphos v. Nestle Waters North America, Inc.,*
    775 F.3d 616 (4th Cir. 2015) ........................................36, 37, 38, 39, 40, 41, 43, 55

*New York SMSA Limited Partnership v. Clarkstown,*
    612 F.3d 97 (2d Cir. 2010)..................................................................................37

*New York State Restaurant Ass'n v. New York City Board of Health,*
    556 F.3d 114 (2d Cir. 2009).................................................................................48

*O'Hara v. Diageo-Guinness, USA, Inc.,*
    306 F. Supp. 3d 441 (D. Mass. 2018).................................................................61

*Organic Consumers Ass'n v. Hain Celestial Group, Inc.,*
    285 F. Supp. 3d 100 (D.D.C. 2018)....................................................................57

*Palumbo v. Waste Technologies Industries,*
    989 F.2d 156 (4th Cir. 1993) ....................................................15, 16, 17, 18

*Pediamed Pharmaceuticals, Inc. v. Breckenridge Pharmaceuticals, Inc.,*
    419 F. Supp. 2d 715 (D. Md. 2006)....................................................................24

*In re PepsiCo, Inc. Bottled Water Marking & Sales Practices Litigation,*
    588 F. Supp. 2d 527 (S.D.N.Y. 2008).................................................................40

*Phillips v. WellPoint, Inc.,*
    900 F. Supp. 2d 870 (S.D. Ill. 2012)...................................................................65

*PhotoMedex, Inc. v. Irwin,*
    601 F.3d 919 (9th Cir. 2010) ..............................................................................71

*Pineman v. Oechslin,*
    637 F.2d 601 (2d Cir. 1981)................................................................................19

*Prohias v. Pfizer, Inc.,*
    490 F. Supp. 2d 1228 (S.D. Fla. 2007) ..........................................................62, 68

*Psak, Graziano, Piasecki & Whitelaw v. Fleet Nat'l Bank,*
    915 A.2d 42 (N.J. Super. Ct. App. Div. 2007)....................................................69

*R.J. Gaydos Insurance Agency, Inc. v. National Consumer Insurance Co.,*
    773 A.2d 1132 (N.J. 2001)..................................................................................25

*Ramirez v. Autosport*,
    440 A.2d 1345 (1982) ...................................................................................70

*Reese v. Odwalla, Inc.*,
    30 F. Supp. 3d 935 (N.D. Cal. 2014) ............................................................71

*Riccio v. Ford Motors Credit Co.*,
    238 F.R.D. 44 (D. Mass. 2006) .....................................................................62

*Riegel v. Medtronic, Inc.*,
    552 U.S. 312 (2008) ...............................................................................42, 51

*Rogers v. Comcast Corp.*,
    55 F. Supp. 3d 711 (E.D. Pa. 2014), *app. dismissed*, No. 14-4520 (3d Cir. June
    15, 2015) .......................................................................................................62

*Rudolph Wurlitzer Manufacturing Co. v. United Realty & Amusement Co.*,
    94 A. 630 (N.J. E.&A. 1915) ........................................................................70

*Russell v. Dean Witter Reynolds, Inc.*,
    510 A.2d 972 (Conn. 1986) ..........................................................................28

*Sandoz Pharmaceuticals Corp. v. Richardson-Vicks, Inc.*,
    902 F.2d 222 (3d Cir. 1990) ..........................................................................71

*Schlessinger v. Valspar Corp.*,
    991 N.E.2d 190 (N.Y. 2013) .........................................................................27

*Schwartz v. Bedell*,
    178 N.Y.S. 397 (N.Y. App. Div. 1919) .........................................................70

*Shaoxing Aceco Blankets Co., Ltd. v. Aceco, Inc.*,
    670 F. App'x 8 (2d Cir. 2016) .......................................................................70

*Sojitz America Capital Corp. v. Keystone Equipment Finance Corp.*,
    88 F. Supp. 3d 59 (D. Conn. 2015) ...........................................................7, 14

*In re Star Gas Securities Litigation*,
    241 F.R.D. 428 (D. Conn. 2007) ...................................................................74

*Stuart v. Freiberg*,
    116 A.3d 1195 (Conn. 2015) .........................................................................67

*Studer v. Studer*,
    131 A.3d 240 (Conn. 2016) ...........................................................................28

*Summit Technology, Inc. v. High-Line Medical Instruments Co.*,
    933 F. Supp. 918 (C.D. Cal. 1996) ...............................................................71

*Sun Oil Co. v. Burford*,
   124 F.2d 467, 468 (5th Cir. 1941), *judg. vac. on reh'g*, 130 F.2d 10 (5th Cir.
   1942), *rev'd*, 319 U.S. 315 (1943) ............................................................................7

*Taradejna v. General Mills*,
   909 F. Supp. 2d 1128 (D. Minn. 2012) .................................................................72

*Tarzia v. State*,
   44 A.3d 1245 (R.I. 2012) .......................................................................................30

*Terrebonne v. Blackburn*,
   646 F.2d 997 (5th Cir. 1981) ...................................................................................5

*TicketNetwork, Inc. v. Darbouze*,
   133 F. Supp. 3d 442 (D. Conn. 2015) ......................................................................5

*Trazo v. Nestlé USA, Inc.*,
   No. 5:12-cv-2272, 2013 WL 4083218 (N.D. Cal. Aug. 9, 2013) ...........................57

*Tuohey v. Chenal Healthcare, LLC*,
   173 F. Supp. 3d 804 (E.D. Ark. 2016) ...................................................................58

*Turek v. General Mills, Inc.*,
   662 F.3d 423 (7th Cir. 2011), (N.D. Ill. 2010) ..............................................39, 41

*Union Ink Co., Inc. v. AT&T Corp.*,
   801 A.2d 361 (N.J. Super. Ct. App. Div.), *certif. denied*, 174 N.J. 547 (2002) .....................67

*United States v. Heicklen*,
   858 F. Supp. 2d 256 (S.D.N.Y. 2012) ...................................................................22

*United States v. Ragosta*,
   970 F.2d 1085 (2d Cir.), *cert. denied*, 506 U.S. 1002 (1992) ...............................67

*Van Der Stok v. Van Vorhees*,
   866 A.2d 972 (N.H. 2005) .....................................................................................67

*Verzani v. Costco Wholesale Corp.*,
   No. 09 CIV 2117 CM, 2010 WL 3911499 (S.D.N.Y. Sept. 28, 2010), *aff'd*,
   432 F. App'x 29 (2d Cir. 2011) ..............................................................................35

*Wachovia Bank, N.A. v. Burke*,
   414 F.3d 305 (2d Cir. 2005), *cert. denied sub nom.*, *Burke v. Wachovia Bank,
   N.A.*, 550 U.S. 913 (2007).......................................................................................48

*Weinberger v. Bentex Pharmaceuticals, Inc.*,
   412 U.S. 645 (1973)................................................................................................71

*Western Dermatology Consultants, P.C. v. VitalWorks, Inc.*,
   78 A.3d 167 (Conn. App. Ct. 2013), *aff'd*, 153 A.3d 574 (Conn. 2016)................................69

*Whitehall Co. v. Merrimack Valley Distributing Co.*,
   780 N.E.2d 479 (Mass. App. Ct. 2002) ....................................................................................29

*In re Whole Foods Market, Inc.*,
   163 F. Supp. 3d 385 (W.D. Tex. 2016)......................................................................................49

*Wilmington Trust, National Ass'n v. Estate of McClendon*,
   287 F. Supp. 3d 353 (S.D.N.Y. 2018).........................................................................................7

*Wilson v. Donegal Mut. Ins. Co.*,
   598 A.2d 1310 (Pa. Super. Ct. 1991) .......................................................................................67

*Estate of Witthoeft v. Kiskaddon*,
   733 A.2d 623 (Pa. 1999) ...........................................................................................................34

*Wyman v. Prime Discount Securities*,
   819 F. Supp. 79 (D. Me. 1993) .................................................................................................65

*Zimmerman v. Kent*,
   575 N.E.2d 70 (Mass. App. Ct. 1991) ......................................................................................67

**Statutes**

21 U.S.C. § 301, *et seq.*................................................................................................................1

21 U.S.C. § 332(a) .......................................................................................................................38

21 U.S.C. § 333(a) .......................................................................................................................38

21 U.S.C. § 334(a), (h) ................................................................................................................38

21 U.S.C. § 335a(b) .....................................................................................................................38

21 U.S.C. § 337 ............................................................................................................................48

21 U.S.C. § 337(a) .................................................................................................1, 21, 23, 25, 38, 54

21 U.S.C. § 337(b) ...........................................................................................19, 37, 39, 54, 55

21 U.S.C. § 341 ............................................................................................................................40

21 U.S.C. § 343-1(a)(1) .....................................................................................26, 39, 40, 50

28 U.S.C. § 1332(d) .......................................................................................................................3

*Conn. Gen. Stat. Ann.* § 4-183(a)................................................................................................20

*Conn. Gen. Stat. Ann.* § 21a-99 ...................................................................................28

*Conn. Gen. Stat. Ann.* § 21a-136 ................................................................................10

*Conn. Gen. Stat. Ann.* §§ 21a-136, -150 to -150j..........................................................14

*Conn. Gen. Stat. Ann.* § 21a-137 ................................................................................10

*Conn. Gen. Stat. Ann.* §§ 21a-138, -145 ....................................................................28

*Conn. Gen. Stat. Ann.* § 21a-141 ................................................................................10

*Conn. Gen. Stat. Ann.* § 21a-150e(c) ..........................................................................28

*Conn. Gen. Stat. Ann.* §§ 21a-150(14) and 21a-150e(c)..............................................27

*Conn. Gen. Stat. Ann.* §§ 21a-150 to -150j .................................................................61

*Conn. Gen. Stat. Ann.* § 42-110c(a)(1) .......................................................................60

*Mass. Gen. Laws Ann.* ch. 30A, §14...........................................................................20

*Mass. Gen. Laws Ann.* ch. 93A, § 3 ...........................................................................61

*Mass. Gen. Laws Ann.* ch. 94, § 10A......................................................................10, 29

*Mass. Gen. Laws Ann.* ch. 94, §§ 10C, 10F................................................................29

*Mass. Gen. Laws Ann.* ch. 94, § 192...........................................................................29

*Me. Rev. Stat. Ann.* tit. 5, § 208 .................................................................................65

*Me. Rev. Stat. Ann.* tit. 5, § 11001(1)..........................................................................20

*Me. Rev. Stat. Ann.* tit. 10, § 1214(1)(A) ....................................................................65

*Me. Rev. Stat. Ann.* tit. 10, § 1215 .............................................................................65

*Me. Rev. Stat. Ann.* tit. 22, § 2153 .............................................................................32

*Me. Rev. Stat. Ann.* tit. 22, §§ 2611-17 (Maine Safe Water Drinking Act) ...................9

*Me. Rev. Stat. Ann.* tit. 32, §§ 1751-1854 ..................................................................65

*Me. Rev. Stat. Ann.* tit 32, §§ 1801, 1851 ...................................................................9

*N.H. Rev. Stat. Ann.* § 143:12 ...............................................................................11, 14

*N.H. Rev. Stat. Ann.* § 146:11(I) .................................................................................32

*N.H. Rev. Stat. Ann.* §§ 146:11(I), 146:17 .................................................................32

*N.H. Rev. Stat. Ann.* § 358-A:3(I) ...........................................................................64

*N.H. Rev. Stat. Ann.* § 541:2 ..................................................................................21

*N.J. Stat. Ann.* § 12A:2-606(1)(c) ..........................................................................70

*N.J. Stat. Ann.* § 24:17-5 ................................................................................20, 25

*N.Y. Agric. & Mkts. Law* § 39 ...............................................................................27

*N.Y. Agric. & Mkts. Law* §§ 202-c, 214-b .............................................................27

*N.Y. Agric. & Mkts. Law* § 214-b ..........................................................................27

*N.Y. Gen. Bus. Law* §§ 349-350 ................................................................26, 59, 60

*N.Y. Gen. Bus. Law* § 349(d) .................................................................................59

*N.Y. Gen. Bus. Law* § 350-d .................................................................................59

*N.Y. Pub. Health Law* § 206(1)(f) ..........................................................................27

*N.Y. U.C.C. Law* § 2-606(1)(c) ..............................................................................70

1 *Pa. Cons. Stat. Ann.* § 1933 .................................................................................34

2 *Pa. Cons. Stat. Ann.* § 702 ..................................................................................21

3 *Pa. Cons. Stat. Ann.* § 5724 .................................................................................33

3 *Pa. Cons. Stat. Ann.* § 5729(a)(6) ........................................................................33

3 *Pa. Cons. Stat. Ann.* § 5736(a) .......................................................................33, 34

6 *R.I. Gen. Laws Ann.* § 6-13.1-4 ............................................................................62

21 *R.I. Gen. Laws* § 21-23-1 ............................................................................11, 14

21 *R.I. Gen. Laws Ann.* § 21-23-1 ...........................................................................30

21 *R.I. Gen. Laws Ann.* §§ 21-23-1 to -7 .................................................................62

21 *R.I. Gen. Laws Ann.* § 21-23-3 ...........................................................................30

21 *R.I. Gen. Laws Ann.* § 21-23-4 ...........................................................................29

21 *R.I. Gen. Laws Ann.* § 21-31-7 ...........................................................................30

42 *R.I. Gen. Laws Ann.* §42-35-15(a) ....................................................................21

43 *R.I. Gen. Laws Ann.* § 43-3-26 ..........................................................................30

*Vt. Stat Ann.* tit. 10, §1672(a) ...............................................................................63

*Vt. Stat. Ann.* tit. 10, §§ 1672(b) and 1673(f) ........................................................30

*Vt. Stat. Ann.* tit. 10, §1673(f)(3) ..........................................................................11

*Vt. Stat. Ann.* tit. 18, § 4053(a) .............................................................................31

*Vt. Stat. Ann.* tit. 18, §§ 4053(a), 4058 ............................................................31, 63

**Rules**

Fed. R. Civ. P. 9(b) ................................................................................................67

Fed. R. Civ. P. 12(b)(1) ........................................................................................2, 7

Fed. R. Evid. 201(b)(2) ...........................................................................................5

Me. R. Civ. P. 80C ................................................................................................20

N.J. R. Ct. 2:2-3(a)(2) ...........................................................................................20

N.Y. C.P.L.R. 7803 ...............................................................................................20

Vt. R. Civ. P. 74, 75 ..............................................................................................21

**Regulations**

21 C.F.R. 165.110(a)(2)(vi) ...............................................................................11, 22

21 C.F.R. § 101.14 ................................................................................................24

21 C.F.R. § 129.1 ..............................................................................................19, 36

21 C.F.R. § 129.3(a) ...........................................................................................5, 55

21 C.F.R. § 165.110 ..........................................................................3, 6, 12, 36, 37, 73

21 C.F.R. § 165.110(a) ......................................................................................10, 26

21 C.F.R. § 165.110(a)(1) .......................................................................................36

21 C.F.R. § 165.110(a)(2) .......................................................................................44

21 C.F.R. § 165.110(a)(2)(vi)
.................................................................................................1, 5, 22, 72

21 C.F.R. § 403(a)(1) ............................................................................................................24

1-1-331 *Code Me. R.* § 3-601.11 ...........................................................................................9

10-144-231 *Me. Code R.* §§ 1-11 .........................................................................................65

10-144-231 *Me. Code R.* § 1-B(B) .......................................................................................20

10-144-231 *Me. Code R.* § 1-C ............................................................................................33

10-144-231 *Me. Code R.* § 2 .................................................................................................32

10-144-231 *Me. Code R.* § 2 ...................................................................................................9

10-144-231 *Me. Code R.* § 3(J) .......................................................................................14, 33

10-144-231 *Me. Code R.* § 3(J)(1)(a)-(c) ..............................................................................9

10-144-231 *Me. Code R.* § 3(J)(3) .........................................................................................9

10-144-231 *Me. Code R.* § 3(J)(3)(a) .....................................................................................9

105 *Mass. Code Regs.* 500.090 .............................................................................................29

105 *Mass. Code Regs.* 500.090(B)-(D) ................................................................................10

105 *Mass. Code Regs.* 500.090(F)(2), (I)(2) ........................................................................10

105 *Mass. Code Regs.* 500.090(I)(2) ....................................................................................29

105 *Mass. Code Regs.* 500.090 to .094 ................................................................................14

105 *Mass. Code Regs.* 500.091(C)(2) ...................................................................................10

*N.H. Code Admin. R.*  He-P 2101.01(ab) .............................................................................31

*N.H. Code Admin. R.* He-P 2102.03 .....................................................................................31

*N.H. Code Admin R.* He-P 2104.02(a). ................................................................................11

*N.H. Code Admin. R.* He-P 2107.01(a), (b)(9), (c)(2) .........................................................11

*N.H. Code Admin. R.* He-P 2107.03(a) ...........................................................................11, 32

*N.J. Admin. Code* §§ 8:21-5.1 to -5.19 ................................................................................59

*N.J. Admin. Code* §§ 8:21-5.5 to .15 ...................................................................................14

*N.J. Admin. Code* § 8:21-5.5(a) ...............................................................................10, 25, 26

*N.J. Admin. Code* § 8:21-5.5(c) ...................................................................................25

*N.J. Admin. Code* § 8:21-5.15(a)-(b) ............................................................................10

*N.J. Admin. Code.* § 8:21-5.15(b)(1)-(3) ......................................................................10

*N.Y. Comp. Codes R. & Regs.* tit 10, §§ 5-6.1 to -6.18 ................................................60

*N.Y. Comp. Codes R. & Regs.* tit 10, § 5-6.2 .........................................................10, 27

*N.Y. Comp. Codes R. & Regs.* tit. 10, § 5-6.3(s) ...........................................................27

*N.Y. Comp. Code R. & Regs.* tit. 10, § 5-6.4(a) ............................................................10

*N.Y. Comp. Codes R. & Regs.* tit.10, § 5.6-4(c)(5) ......................................................26

*N.Y. Comp. Code R. & Regs.* tit. 10, § 5-6.12(a)(1), (4) ..............................................10

*N.Y. Comp. Codes R. & Regs.* tit 10, § 5-6.16 .............................................................14

*N.Y. Comp. Code R. & Regs.* tit. 10, § 5-6.16(a) .........................................................10

25 *Pa. Code* §§ 109.1 to .1307 ......................................................................................66

25 *Pa. Code* § 109.1005(a) ..............................................................................12, 14, 34

25 *Pa. Code* §§109.1005(e)(6), (7), .1007(a)(2), (3) ...................................................12

31-7 *R.I. Code R.* § 3:3.0 ..............................................................................................11

31-7 *R.I. Code R.* § 3:9.1.1(a) ......................................................................................11

31 *R.I. Code R.* §§ 31-7-3:1 to 3:16 ............................................................................62

216 *R.I. Code R.* §§ 10-4.3(A)(3)(s) to -4.10.1 ...........................................................11

216 *R.I. Code R.* §§ 50-10-4.1 to -4.4, -4.9 ................................................................62

216-50 *R.I. Code R.* § 10-4.3(A)(3)(s) ....................................................................29, 30

216-50 *R.I. Code R.* § 10-4.9(A) ..................................................................................11

216-50 *R.I. Code R.* § 10-4.9.2(A)(1) ..........................................................................11

216-50 *R.I. Code R.* § 10-4.10.2 ..................................................................................30

Vt. Admin. Code 12-030-003 ........................................................................................11

16-3 *Vt. Code R.* § 500:11.1 .........................................................................................14

16-3 *Vt. Code R.* § 500:11.1.1 ...........................................................................................11, 63

16-3 *Vt. Code R.* § 500:11.1.2(c) ....................................................................................11, 30, 31

16-3 *Vt. Code R.* § 500:11.1.2(d)(2), (7), (10), (g)(4)....................................................................11

*Vt. Code. R.* 12-030-003 §11.1.2(c) .........................................................................................30

## Other Authorities

136 Cong. Rec. 33427 (1990) ...................................................................................................54

136 Cong. Rec. 33428 (1990) ...................................................................................................38

136 Cong Rec. 33429 (1990) ....................................................................................................39

136 Cong. Rec. 35095 (1990) ...................................................................................................38

56 Fed. Reg. 28592, 28616 (Jun. 21, 1991) ...............................................................................39

58 Fed. Reg. 393 (Jan. 5, 1993) .................................................................................19, 36, 39, 55

58 Fed. Reg. 2462 (Jan. 6, 1993) ..............................................................................................39

60 Fed. Reg. 57076 (Nov. 13, 1995).................................................26, 39, 40, 45, 47, 48, 49, 50, 55, 72

## PRELIMINARY STATEMENT

Bottled water is subject to dual federal-state regulation in the United States under the federal Food, Drug and Cosmetic Act ("FDCA"), 21 U.S.C. §301, *et seq.*  Congress has empowered the U.S. Food and Drug Administration ("FDA") to prescribe food standards of identity balancing the interests of consumers and manufacturers.  In conjunction with their regulation of the safety and sanitary quality of bottled water, Congress and the FDA have enabled State Regulators to enforce compliance with the FDA Spring Water Identity Standard, 21 C.F.R. §165.110(a)(2)(vi) ("FDA Identity Standard").  [*See* ¶54].[1]  Bottled water cannot be labeled and sold as "spring water" without State Regulators first determining that the water complies with the FDA Identity Standard and issuing permits authorizing its sale.

State Regulators in Maine and eight other northeastern states have authorized Poland Spring® Brand 100% Natural Spring Water ("Poland Spring®") to be labeled and sold in their states as "spring water" based on their determinations that Poland Spring® meets the FDA Identity Standard.  Questioning the competency and integrity of the State Regulatory Agencies (particularly Maine's) making these compliance determinations and authorizing the sale of Poland Spring® as spring water, Plaintiffs filed a complaint alleging state-law claims seeking to permanently enjoin and declare unlawful the very conduct authorized by State Regulators.  This Court dismissed Plaintiffs' claims as impliedly preempted by 21 U.S.C. §337(a), the FDCA's prohibition against private enforcement of the FDCA and FDA Identity Standard.  [Doc. 141].

Returning to the same empty well, Plaintiffs allege in their Amended Complaint ("Complaint") the very same claims that were pled in their initial complaint and were dismissed as preempted by federal law.  Each count of the Complaint is premised on the allegation that Poland Spring® is falsely labeled as "spring water" because it does not comply with the FDA

---

[1] Paragraph citations are to Plaintiffs' Amended Complaint.  [Doc. 160].

Identity Standard, 21 C.F.R. §165.110(a)(2)(vi).  Every count, including the breach of contract

claim, seeks an injunction permanently enjoining the marketing and sale of Poland Spring® as

"spring water" because it does not comply with the FDA Identity Standard.  As multiple State

Regulators have exercised their authority and determined Poland Spring® complies with the

FDA Identity Standard, Plaintiffs' Complaint should be dismissed with prejudice for each of

these separate and independent legal grounds:

- *Burford* Abstention:  Pursuant to Fed. R. Civ. P. 12(b)(1), this Court must abstain from exercising jurisdiction over Plaintiffs' claims under *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943), which forecloses Plaintiffs from bringing state-law claims in this Court to challenge the validity of State Regulators' issuance of permits authorizing the sale of Poland Spring® as "spring water" compliant with the FDA Identity Standard.

- Implied Preemption:  Plaintiffs do not allege Defendant Nestlé Waters North America Inc. ("NWNA") violated an independent state-law identity standard, but that NWNA did not comply with the FDA Identity Standard.  As this Court has already held, the FDCA prohibits Plaintiffs' claims to privately enforce the FDA Identity Standard.

- Express & Implied Conflict Preemption:  The FDCA expressly and impliedly conflict-preempts Plaintiffs' claims.

- Safe Harbor Exemption:  Plaintiffs' statutory claims are barred under safe harbor exemptions by virtue of State Agencies' issuance of permits authorizing the sale of Poland Spring® as "spring water" compliant with the FDA Identity Standard.

- No Fraud:  Plaintiffs have not plausibly stated a common-law fraud claim, as NWNA's labeling and sale of Poland Spring® as "spring water" was not deceptive because it was in conformance with State Regulators' compliance determinations and authorizations to sell Poland Spring® as "spring water."

- No Breach of Contract:  This Court has previously determined Plaintiffs' breach of contract claim is impliedly preempted.  In addition, Plaintiffs have not plausibly stated a claim for breach of contract, as State Regulators' approvals to sell Poland Spring® as "spring water" means Plaintiffs received the benefit of their bargains.

Alternatively, this Court should dismiss this action in deference to the primary

jurisdiction of the FDA to exercise its expertise and authority in interpreting and applying the

FDA Identity Standard and determining whether Poland Spring® meets the FDA's standard.

## RELEVANT ALLEGATIONS AND CONTENTIONS

### A.  The Parties

Plaintiffs are residents of nine northeastern states.  [¶35].  NWNA is a Delaware corporation with its principal place of business in Stamford, Connecticut.  [¶36].  Subject matter jurisdiction is predicated upon diversity of citizenship, 28 U.S.C. §1332(d).  [¶38].  NWNA sells Poland Spring® in "PET" bottles through retail markets and in five-gallon containers to home and office customers.  [¶20].  Plaintiffs are retail customers who purchased Poland Spring® since November 5, 2003, or, in the case of three Plaintiffs (*i.e.*, Julie Harding, a New York resident; and Heather Harrigan and Stephen Shapiro, residents formerly of New Jersey and presently of New York), are home and office customers.  [¶35].

### B.  "Appropriate Regulatory Officials" Of Maine And Its Sister States Have Certified Poland Spring® Complies With The FDA Identity Standard

The federal government and the states regulate the labeling of food products.  [¶42]. Plaintiffs allege Congress amended the FDCA in 1990 "to ease the burden of interstate commerce by making food labeling requirements uniform throughout the country, sparing manufacturers from having to comply with a patchwork of often inconsistent regulations among the states."  [¶¶42-43].  Congress authorized the FDA to prescribe standards of identity for food products; foods subject to a standard of identity must comply with its requirements to be labeled as that type of food.  [¶44].  "The FDA adopted standards of identity for bottled drinking water products in November 1995," which "included a definition of 'spring water,' and appear currently at 21 C.F.R. §165.110."  [¶49].  As pled by Plaintiffs, to be "labeled lawfully as spring water," Poland Spring® must possess the characteristics set forth in 21 C.F.R. §165.110(a)(2)(vi).  [¶54].  Plaintiffs define the term "Identity Standard" as 21 C.F.R. §165.110(a)(2)(vi), to which they refer throughout the Complaint.  [¶54].

**1.  Maine's And Other States' Regulators Have Issued NWNA Permits Authorizing Poland Spring® To Be Labeled And Sold As "Spring Water" In Their States**

Poland Spring® is sourced from eight Maine spring sites:  Poland Spring (Poland Spring, Maine); Garden Spring (Poland, Maine); Clear Spring (Hollis, Maine); Evergreen Spring (Fryeburg, Maine); Cold Spring (Denmark, Maine); White Cedar Spring (Dallas Plantation, Maine); Spruce Spring (Pierce Pond Township, Maine); and Bradbury Spring (Kingfield, Maine). [¶¶102, 164, 324, 449, 536, 591, 655, 709, 754].

Plaintiffs allege that it is the job of state regulatory officials to ensure compliance with the FDA Identity Standard.  [¶796].  "Maine has adopted a regulatory structure designed to ensure compliance with its [FDA Identity Standard]," although Plaintiffs allege that "Maine has not properly enforced compliance against [NWNA]" because NWNA "has manipulated and compromised Maine's regulatory process."  [¶¶91, 796].  The environmental engineers, hydrogeologists, and staff members of Maine's Drinking Water Program ("Maine DWP") have the "responsibility for evaluating compliance with the Spring Water Identity Standard."  [¶¶89, 799].  If the Maine DWP determines a bottled water complies with the FDA Identity Standard, it will issue a spring water permit.[2]  [¶¶86, 91].  Since 1998, the Maine DWP "has continued to issue and renew Defendant's spring water permits," certifying that Poland Spring® meets the FDA Identity Standard and authorizing the labeling and sale of Poland Spring® as "spring water."[3]  [¶¶91, 99; *see* Doc. 53-3 at 7-11].  Although Plaintiffs contend the Maine DWP permits "were wrongly granted to Defendant and cannot be relied upon by other states or consumers" [*id.*

---

[2]Because Plaintiffs have referred to these documents in their Complaint, this Court can consider them in ruling on NWNA's motion to dismiss pursuant to Rule 12(b)(6).  *See Carlin v. Davidson Fink LLP*, 852 F.3d 207, 212 (2d Cir. 2017).  Of course, "[i]n deciding a Rule 12(b)(1) motion, the court may also rely on evidence outside the complaint."  *Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.à.r.l.*, 790 F.3d 411, 417 (2d Cir. 2015).
[3]*See* ¶¶90, 292, 310, 412, 439, 443, 459, 502, 569, 572, 579, 646, 648, 702, 703, 767.

at ¶91], on August 28, 2017, the Maine DWP confirmed in writing that all eight Poland Spring®

spring water sources:

1. Are approved by the DWP as public water supply sources.
2. Meet the U.S. FDA definition of 'spring water' according to 21 CFR 165.110(a)(2)(vi).
3. Are currently in compliance with CMR 10-144 Chapter 231, State of Maine Rules Relating to Drinking Water and CMR 10-144 Chapter 235, State of Maine Rules Relating to Bulk Water.  [Doc. 53-3 at 13[4]].

State Regulators in eight other states have also certified Poland Spring® as meeting the

FDA Identity Standard and have issued permits authorizing Poland Spring® to be labeled and

sold as "spring water" in their states.  [Doc. 53-3 at 15-29; Doc. 53-4 at 1-30; Declaration of

Kevin Mathews ("Mathews Decl."), Exhs. A-B].[5]

## 2. The FDA Confirms It Is "Appropriate" To Label Bottled Water As "Spring Water" If State Regulators Certify It Meets The FDA Identity Standard

The FDA has issued a guidance letter stating that if State Regulators determine that

Poland Spring® is in compliance with the requirements of the FDA Identity Standard, it is

"appropriate" to label Poland Spring® as "spring water."  [Doc. 53-3 at 6].  In a letter dated

February 10, 2017, the FDA explained how it weighs state regulatory approvals and supporting

hydrogeologic evidence with regard to the FDA Identity Standard.  This FDA guidance noted

that "21 C.F.R. §129.3(a) requires that source water be approved by state agencies having

approval authority."  [*Id.* at 5].  While "part 129 [regulating the safety and sanitary quality of the

water source] does not require that the government agency having jurisdiction identify or certify

that the source is a spring source," [*id.* (quoting 60 Fed. Reg. 57076, 57096 (Nov. 13, 1995))],

the FDA recognized that State Regulators' "'source approval' could include *evaluation of the*

---

[4]This Court may take judicial notice of this agency record in support of NWNA's motion.  *See* Fed. R. Evid. 201(b)(2); *TicketNetwork, Inc. v. Darbouze*, 133 F. Supp. 3d 442, 449 (D. Conn. 2015) (on motions to dismiss, district courts "may take judicial notice of matters of public record, including documents filed with public bodies."); *accord Terrebonne v. Blackburn*, 646 F.2d 997, 1000 n.4 (5th Cir. 1981) ("Absent some reason for mistrust, courts have not hesitated to take judicial notice of agency records and reports.").
[5]This Court may also take judicial notice of these agency records in support of NWNA's motion.  *See supra* note 4.

*type of source, however, the firm still must demonstrate* **to regulatory officials** that the source meets the requirement to be designated as 'spring water' under 21 CFR 165.110." [*Id.* (italics in original; bold added)]. Observing "some states have certification programs that evaluate whether bottled water may be designated as 'spring water' under state regulations that incorporate FDA's requirements under 21 CFR 165.110," the FDA confirmed: "If the state certification requirements [for designating bottled water as "spring water"] are consistent with 21 CFR 165.110," and "[i]f the water and its source satisfy [the requirements] for 'spring water' in 21 CFR 165.110, then the use of the term 'spring water' on the [Poland Spring®] product label would be appropriate." [*Id.* at 5-6].

### C. Plaintiffs' Complaint Challenges State Regulators' Determinations That Poland Spring® Is "Spring Water" Meeting The FDA Identity Standard

Notwithstanding the FDA's guidance that it is appropriate to label and sell Poland Spring® as "spring water" based upon State Regulators' determinations of compliance with the FDA Identity Standard, and notwithstanding State Regulators' determinations that Poland Spring® complies with the FDA Identity Standard, Plaintiffs allege Poland Spring® is falsely labeled as "spring water" because it does not meet the FDA Identity Standard, as interpreted by Plaintiffs. [¶¶54, 106, 323, 448, 535, 590, 654, 708, 753, 795]. According to Plaintiffs, Poland Spring® fails to satisfy any of the FDA Identity Standard requirements, including additional requirements which Plaintiffs have created and which are not found in 21 C.F.R. §165.110(a)(2)(vi). [¶¶54, 56-57, 59-60, 92-95, 97, 99, 255, 276, 293, 298, 459]. Claiming State Regulators have failed to properly enforce Poland Spring®'s compliance with these FDA Identity Standard requirements, Plaintiffs assert state common-law and statutory claims seeking to displace the FDA and State Regulators and substitute themselves as the decision-makers determining Poland Spring®'s compliance with the FDA Identity Standard.

# ARGUMENT

## I.  The *Burford* Abstention Doctrine Requires Dismissal For Lack of Jurisdiction

Plaintiffs' state-law claims not preempted under this Court's May 17 Order should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1), as this Court should decline to exercise jurisdiction over such claims pursuant to the *Burford* abstention doctrine.[6]  In *Burford*, plaintiffs attacked Texas Railroad Commission orders permitting land drilling, alleging "the Commission has, in effect, disregarded and violated its own rules and regulations in issuing the permit."  *Sun Oil Co. v. Burford*, 124 F.2d 467, 468 (5th Cir. 1941), *judg. vac. on reh'g*, 130 F.2d 10 (5th Cir. 1942), *rev'd*, 319 U.S. 315 (1943).  The Texas Legislature established the Commission to accommodate the diverse interests of market participants, which entailed delving into technical geological issues.  *Burford*, 319 U.S. at 319-21.  Given the genesis of this scheme and the complex decisions of local officials, the Supreme Court held that the far superior course was to allow state courts to review such decisions, as per the scheme's design, rather than to permit collateral attacks through the federal judiciary.  *Id.* at 332-34.  The alternative course was a "double system of review," resulting in "misunderstanding of local law," uneven application of standards, "and needless federal conflict with the State policy."  *Id.* at 327.

*Burford* calls on district courts to abstain from exercising their jurisdiction where "proper regard for the rightful independence of state governments in carrying out their domestic policy" so requires.  *Id.* at 316-18.  When state laws provide a "well organized system of regulation and review" of local activities, federal courts should not second-guess State Regulators'

---

[6]*See Sojitz Am. Capital Corp. v. Keystone Equip. Fin. Corp.*, 88 F. Supp. 3d 59, 61 (D. Conn. 2015) (motions to dismiss based upon *Burford* abstention are "properly styled as a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1)"); *accord Wilmington Tr., Nat'l Ass'n v. Estate of McClendon*, 287 F. Supp. 3d 353, 360 (S.D.N.Y. 2018).

determinations, but rather allow any challenges to those determinations to be adjudicated within that system. *Id.* at 327.

As this Court has recognized, "cases in which the state has delegated oversight of a scheme involving both statutes and regulations to a state agency in partnership with state courts" are considered perfect "[c]andidates for *Burford* abstention." *All. of Auto. Mfrs., Inc. v. Currey*, 984 F. Supp. 2d 32, 53 (D. Conn. 2013), *aff'd*, 610 F. App'x 10 (2d Cir. 2015).[7]  In short, "federal courts should not be doing the work of local zoning boards, of family courts, of railway commissions, of water conservation authorities, or the like." *Johnson v. Collins Entm't Co.*, 204 F.3d 573, 578 (4th Cir. 2000) (Motz, J., dissenting).  As explained below, "*Burford* abstention … require[s] dismissal" of Plaintiffs' Complaint in this case. *Berman Enters., Inc. v. Jorling*, 3 F.3d 602, 608 (2d Cir. 1993); *Farkas v. D'Oca*, 857 F. Supp. 300, 305 (S.D.N.Y. 1994).

## A.  State Regulators Have Determined Poland Spring® Is "Spring Water"

State Regulatory Agencies charged with regulating bottled water in each state implicated in this case have authorized NWNA to sell Poland Spring® bottled water as "spring water"— each state having issued NWNA a permit, certificate, or other official document memorializing its regulatory determination.  [Doc. 53-3 at 7-29; Doc. 53-4 at 1-30; Mathews Decl., Exhs. A-B].

Each of the Poland Spring® spring sources is located in Maine, which has primary jurisdiction over the regulation of those spring sources.  "Maine's bottled water industry is regulated by several agencies, including the Maine DEP, the Maine Department of Agriculture, Conservation and Forestry ("DACF"), and the Maine Department of Health and Human Services ("DHHS"), which includes Maine's Drinking Water Program ("DWP")."  [¶797].  "Maine has established a regulatory structure designed to ensure compliance with the [FDA Identity

---

[7]*Cf. Hawks v. Hamill*, 288 U.S. 52, 60-61 (1933) ("Caution and reluctance there must be in special measure where relief, if granted, is an interference … with the activities of state officers discharging in good faith their supposed official duties.") (Cardozo, J.).

Standard]" for spring water [¶796] and, since 2005, that regulatory structure has allocated to the DWP the "responsibility for evaluating compliance with the spring water [FDA] Identity Standard ... whose environmental engineers, hydrogeologists and staff members are alone responsible for ensuring compliance with the spring water Identity Standard in Maine" [¶799].[8] *See Me. Rev. Stat. Ann.* tit. 22, §§2611-17 (Maine Safe Water Drinking Act).  "The DWP also regulates Maine bottled water producers, including [NWNA], in other ways."  [¶800].  In issuing permits to NWNA to sell Poland Spring® spring water in Maine, the DWP reviewed and evaluated hydrogeologic reports "necessary for source approval."  10-144-231 *Me. Code R.* §3(J)(1)(a)-(c).  As a condition of a permit, "[t]he source water (i.e. spring, bore hole, well, etc.) of all bottled or bulk water offered or exposed for sale or distribution within the State of Maine … must receive prior approval from the [DWP]."  *Id.* §3(J)(3).  Maine's DWP performed its responsibilities in regulating Poland Spring®, as it determined Poland Spring®'s water sources comply with and **"[m]eet the U.S. FDA definition of 'spring water' according to 21 CFR §165.110(a)(2)(vi)."**[9]  [Doc. 53-3 at 13 (emphasis added); *see id.* at 7-11].

The statutorily-required approval to sell Poland Spring® in each of the other states included each State Regulatory Agency's determination that Poland Spring® complied with the FDA Identity Standard.  In determining Poland Spring® can be sold as "spring water," each State Regulatory Agency examined and accepted documentation from Maine establishing that Poland Spring® complied with the FDA Identity Standard.  The legal requirements established by each state that were used by its State Regulators to determine that Poland Spring® complied with the FDA Identity Standard and, therefore, was appropriately labeled as "spring water" are:

---

[8] Maine's drinking water regulations require that "[s]pring water must comply with ... 21 C.F.R. §165.110(a)(2)(vi) (definition of "spring water")."  10-144-231 *Me. Code R.* §§2, 3(J)(3)(a).
[9] To sell Poland Spring® as spring water in Maine, Maine Regulators must approve NWNA's application and issue a permit to NWNA.  *See Me. Rev. Stat. Ann.* tit 32, §§1801, 1851; 1-1-331 *Code Me. R.* §3-601.11.

- **New Jersey**:  The New Jersey Department of Health ("NJDOH") prohibits the sale of bottled water in New Jersey without obtaining a bottled water certification. *N.J. Admin. Code* §8:21-5.15(a)-(b).  To obtain this certification, NWNA had to submit an application identifying the "type of source" (*i.e.*, spring) and "the type and brand names of water being bottled"; "a letter of certification from the appropriate regulatory agency [*i.e.*, the Maine DWP] … verifying that the source supply and the facility has been inspected and is approved"; and "[a] copy of each product label ... for each size and type of bottled water." *Id.* §8:21-5.15(b)(1)-(3).  The NJDOH determined Poland Spring® complied with the requirement that [b]ottled water shall be labeled and conform with the nomenclature established under 21 CFR 165.110(a)(identity)." *Id.* §8:21-5.5(a); *see* Doc. 53-3 at 15-19.

- **New York**:  No entity can sell bottled water in New York "unless certified by the [Commissioner of Health] in accordance with the requirements of" the New York State Health Department's ("NYSHD") bottled water regulations. *N.Y. Comp. Codes R. & Regs.* tit 10, §5-6.2.  The NYSHD requires spring water sources "located outside New York State must be approved by the agency having jurisdiction" (*i.e.*, the Maine DWP), as complying with the requirements in the regulations cited by Plaintiffs [¶¶872, 885]. *Id.* §5-6.4(a).  In certifying Poland Spring® to be sold as "spring water" in New York, the NYSHD considered a statement from the Maine DWP approving NWNA's facility to bottle water for human consumption and the product's caps and labels. *Id.* §5-6.16(a); *see* Doc. 53-3 at 20-24.  Upon certification, the label must identify the product as "Spring Water" and exhibit the New York certification number. *Id.* §5-6.12(a)(1), (4); *see* ¶103; Mathews Decl., Exh. C.

- **Connecticut**:  The sale of bottled water in Connecticut requires a license from the Commissioner of Consumer Protection. *Conn. Gen. Stat. Ann.* §21a-136.  To obtain that license, an out-of-state bottler must provide a certificate from that state's regulator (*i.e.*, the Maine DWP) certifying compliance with all requirements of Connecticut beverage law. *Id.* §21a-137.  Those requirements include that all bottles must "comply with all labeling requirements for bottles and containers specified by the federal Food, Drug and Cosmetic Act." *Id.* §21a-141.  Connecticut determined that Poland Spring® complied with 21 C.F.R. §165.110(a) and licensed NWNA to sell Poland Spring® as "spring water" in Connecticut.  [*See* Doc. 53-3 at 25-29].

- **Massachusetts**:  The sale of bottled water in Massachusetts requires a permit from the Massachusetts Department of Public Health ("MDPH"). *Mass. Gen. Laws Ann.* ch. 94, §10A; 105 *Mass. Code Regs.* 500.090(B)-(D).  Bottlers using an out-of-state source must "provide documentation to the [MDPH] from the appropriate government agency [*i.e.*, the Maine DWP] regarding the type of water source to be used in finished products, as specified in 21 CFR 165.110 Bottled Water (e.g. well, spring, etc.)....  The [MDPH] will determine the type of source after the review of the information provided."  105 *Mass. Code Regs.* 500.091(C)(2).  MDPH regulations provide that "bottled water that does not comply with a standard of identity in 21 CFR §165.110(a) may not be marketed in Massachusetts," although compliance with 21 C.F.R. 165.110(a) may be relaxed in the discretion of the MDPH. *Id.* at 500.090(F)(2), (I)(2).  The MDPH determined Poland Spring® complied with 21 C.F.R. §165.110(a)(2)(vi) and issued permits authorizing its sale as "spring water" in Massachusetts.  [*See* Doc. 53-4 at 1-9].

- **Rhode Island**:  The sale of bottled water in Rhode Island requires a "bottlers' permit" from the Rhode Island Department of Health ("RIDOH").  21 *R.I. Gen. Laws* §21-23-1.  To obtain a bottlers' permit, RIDOH regulations required NWNA to submit bottle labels with the application and disclose the type of source water. 216-50 *R.I. Code R.* §10-4.9.2(A)(1) (eff. Dec. 20, 2017); 31-7 *R.I. Code R.* §3:9.1.1(a) (repealed Dec. 20, 2017).  Those regulations also required that "[s]ources of all bottled drinking water located outside of Rhode Island must be approved by the agency having jurisdiction" (*i.e.*, the Maine DWP). 216-50 *R.I. Code R.* §10-4.9(A) (eff. Dec. 20, 2017); 31-7 *R.I. Code R.* §3:3.0 (repealed Dec. 20, 2017).  Bottled water not complying with 21 C.F.R. §165.110(a)(2)(vi) may not be sold as "spring water" in Rhode Island (subject to the RIDOH waiving that requirement).  *Id.* §§10-4.3(A)(3)(s), -4.10.1.  The RIDOH determined Poland Spring® complied with 21 C.F.R. §165.110(a)(2)(vi) and issued a bottlers' permit to NWNA to sell Poland Spring® as "spring water" in Rhode Island.  [*See* Doc. 53-4 at 10-14].

- **Vermont**:  The sale of bottled water in Vermont requires a permit from the Secretary of the Vermont Agency of Natural Resources ("VANR"). 16-3 *Vt. Code R.* §500:11.1.1.[10]  Bottled water cannot be sold unless the "name, source, and location" of the spring are properly identified.  *Vt. Stat. Ann.* tit. 10, §1673(f)(3).  In applying for a permit, NWNA had to provide copies of Poland Spring® labels and disclose that Poland Spring®'s water source is a spring. 16-3 *Vt. Code R.* §500:11.1.2(d)(2), (7), (10), (g)(4).  To obtain a permit for its source located out-of-state, NWNA also had to submit "a statement from the appropriate regulatory agency with jurisdiction over the Bottled water system [*i.e.*, the Maine DWP] indicating that the facility has been approved to bottle or package water for human consumption."  *Id.* §500:11.1.2(c).  Vermont's order states that it reviewed NWNA's application and labels, and approved NWNA to sell Poland Spring® in Vermont with "springs" as its source, provided it "continues" to "comply" with all federal regulations, specifically 21 C.F.R. Part 165.  [Doc. 53-4 at 17; *see id.* at 15-25].

- **New Hampshire**:  The sale in New Hampshire of bottled water manufactured out-of-state requires "registration" by the New Hampshire Department of Health and Human Services ("NHDOH").  *N.H. Rev. Stat. Ann.* §143:12.  In granting registration to NWNA to sell Poland Spring®, which comes from an out-of-state spring source, the NHDOH reviewed and considered the "[s]ource of water used for … bottled water" (*i.e.*, spring water) and "a copy of the approval of the source for bottled water, including the approval for the designation 'spring water' … issued by the [Maine DWP, as the state] government agency with the authority to approve sources for bottled water."  *N.H. Code Admin. R.* He-P 2107.01(a), (b)(9), (c)(2).  "A registration shall be issued if ... [t]he labels are in compliance with He-P 2104," *id.* He-P 2107.03(a)(4); *cf. id.* He-P 2107.04(d), which requires they "state the name of the product in accordance with 21 CFR 165.110 and He-P 2104.03," *id.* He-P 2104.02(a).  "All bottled water labeling shall comply with the standard of identity of the water source as defined in 21 CFR 165.110."  *Id.* at He-P 2104.03(b).  When the NHDOH issued registration for Poland Spring®, it determined Poland Spring® complied with 21 C.F.R. 165.110(a)(2)(vi).  [Doc. 53-4 at 26-30].

---

[10]Alternatively cited as Vt. Admin. Code 12-030-003.

- **Pennsylvania**:  To sell bottled water in Pennsylvania, a bottler must obtain a permit from the Pennsylvania Department of Environmental Protection ("PDEP").    25 *Pa. Code* §109.1005(a).  In granting NWNA a bottled water permit, the PDEP considered the "approval of an out-of-State system's source and facilities by the agency having jurisdiction over drinking water in that state [*i.e.*, Maine DWP]" and "[a] copy of each label of identification to be affixed to each type of bottled water product and trade name distributed by the public water system," which identified the spring water source and included the PDEP's identification number.  *Id.* §§109.1005(e)(6), (7), .1007(a)(2), (3); *see* Mathews Decl., Exh. C.  Determining Poland Spring® complied with 21 C.F.R. §165.110, the PDEP issued permits authorizing NWNA to sell Poland Spring® as "spring water" in Pennsylvania.  [Mathews Decl., Exhs. A-C].

### B.  Plaintiffs' Claims Collaterally Attack State Regulatory Determinations

In issuing permits to NWNA to sell Poland Spring® as "spring water," each State Regulatory Agency determined that Poland Spring® complies with the FDA Identity Standard and is appropriately labeled as "spring water."  Plaintiffs' claims not only request this Court to specifically contradict and overrule the multiple determinations made by these State Agencies for decades, but to do the job of the FDA and State Regulators and to permanently enjoin NWNA from marketing and selling Poland Spring® as "spring water."

Plaintiffs allege that Maine's enforcement of the FDA Identity Standard "has been lax and ineffective, and state permits for extracting and transporting supposed spring water were wrongly granted to Defendant and cannot be relied upon by other states or consumers."  [¶91].  In Plaintiffs' view, Maine's State Regulators have relied on data and reports "which were in every instance factually deficient from a scientific perspective and were often manipulated and tailored to suit [NWNA's] business interests." [¶92].  Plaintiffs claim that over many years, Maine's State Regulators were negligent and incompetent in issuing and renewing NWNA's spring water permits.[11]  Plaintiffs allege Maine has not enforced compliance with the FDA Identity Standard because NWNA has "politically compromised Maine's spring water regulatory system" [¶81] and has "manipulated and compromised Maine's regulatory process" [¶796], such

---

[11] ¶¶93-99; 201; 291-93; 298; 309-10; 394; 412; 439; 443; 459; 518-20.

that Maine's issuance of spring water permits to NWNA has been the result of Maine's "conflict of interest." [¶¶803, 808]. Plaintiffs' opposition to NWNA's initial motion to dismiss neatly summarizes their arguments: "[A]ny permits that [NWNA] obtained from [Maine's] DWP are presumptively unreliable because the DWP was not properly performing its duties, and any spring water permits issued to [NWNA] were improperly obtained and cannot serve as the basis to establish that Poland Spring Water is or was 'spring water.'" [Doc. 72 at 63]. Plaintiffs contend Maine's permitting determinations "taint any approvals and licenses issued in the other seven [now, eight] states" because the other states seek "assurances from the regulator 'having jurisdiction' that the bottler is selling what it claims to be selling." [*Id.*]

### C.  The Second Circuit's *Bethphage* Test Strongly Favors Abstention In This Case

In *Bethphage Lutheran Services, Inc. v. Weicker*, 965 F.2d 1239, 1243 (2d Cir. 1992), the Second Circuit adopted a three-factor analysis for *Burford* abstention that examines "(1) the degree of specificity of the state regulatory scheme; (2) the need to give one or another debatable construction to a state statute; and (3) whether the subject matter of the litigation is traditionally one of state concern." *Hachamovitch v. DeBuono*, 159 F.3d 687, 697 (2d Cir. 1998) (*citing Bethphage*, 965 F.2d at 1243). These factors are "to be applied in a pragmatic, flexible manner with a view to the realities of the case at hand." *Bethphage*, 965 F.2d at 1244 (quoting *Moses H. Cone Mem. Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 21 (1983)).

Courts are most vigilant in enforcing the *Burford* doctrine when, as here, Plaintiffs engage in "a collateral attack on a final determination made by [a state administrative agency]." *Dittmer v. Cty. of Suffolk*, 146 F.3d 113, 117 (2d Cir. 1998).[12] Indeed, abstention is particularly appropriate when plaintiffs challenge "individualized fact-specific regulatory decision making,"

---

[12] *See Adkins v. VIM Recycling, Inc.*, 644 F.3d 483, 505-06 (7th Cir. 2011) (collecting cases from which courts abstained under *Burford* because they "amounted to improper collateral attacks on permitting decisions for which there were other channels for judicial review").

which would create "in the federal court a parallel regulatory review institution." *Chiropractic Am. v. Lavecchia*, 180 F.3d 99, 108 (3d Cir. 1999). This holds true even where a federal statute "has established a cooperative state-federal program wherein the states actually administer and oversee" the implementation of federal objectives. *Bethphage*, 965 F.2d at 1243; *Arden House, Inc. v. Heintz*, 612 F. Supp. 81, 86 (D. Conn. 1985).

This Court has summarized the *Burford* abstention doctrine squarely in terms of non-interference with decisions of administrative agencies:

> **Where timely and adequate state-court review is available, a federal court … must decline to interfere with the proceedings or orders of state administrative agencies**: (1) when there are difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case at bar; or (2) **where the exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern.**

*Sojitz*, 88 F. Supp. 3d at 63 (emphasis added) (quoting *New Orleans Public Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 361 (1989)).

When analyzed in conjunction with state bottled water regulatory schemes, Plaintiffs' Complaint warrants abstention in this case. The ***first*** *Bethphage* factor—the extent to which this federal court would be required to meddle in several complex state regulatory schemes—strongly favors abstention. Plaintiffs' claims launch a collateral attack on State Agencies' permitting determinations made pursuant to comprehensive schemes regulating the sale of bottled water, including spring water, that are specifically enforced by those State Agencies.[13]  As set forth above, these Agencies have promulgated specific regulations referencing the FDA Identity Standard, 21 C.F.R. §165.110(a)(2)(vi), and creating processes for their determining compliance with that standard when deciding to issue permits to sell "spring water."

---

[13] *See* 10-144-231 *Me. Code R.* §3(J); *N.J. Admin. Code* §§8:21-5.5 to .15; *N.Y. Comp. Codes R. & Regs.* tit 10, §5-6.16; *Conn. Gen. Stat. Ann.* §§21a-136, -150 to -150j; 105 *Mass. Code Regs.* 500.090 to .094; 21 *R.I. Gen. Laws* §21-23-1; 16-3 *Vt. Code R.* §500:11.1; *N.H. Rev. Stat. Ann.* § 143:12; 25 *Pa. Code* §109.1005(a).

Plaintiffs allege Maine's permits approving Poland Spring® as "spring water" are tainted and should be invalidated because Maine State Regulators either misinterpreted that standard, whether negligently or intentionally, or acted out of a conflict of interest. Plaintiffs are asking this federal court to jump into the sciences of geology, hydrogeology, and water chemistry, and to issue a permanent injunction prohibiting Poland Spring® being sold as "spring water," notwithstanding that "appropriate regulatory officials," who are themselves geologists and hydrogeologists, made decisions to issue spring water permits after evaluating and interpreting over twenty years of hydrogeologic reports and other data and analyzing them against the FDA Identity Standard. Plaintiffs acknowledge these State Agencies have made administrative determinations that Poland Spring® is properly labeled as "spring water," as it complies with the FDA Identity Standard, 21 C.F.R. §165.110(a)(2)(vi). Plaintiffs, however, simply disagree with how Maine and other State Regulators have determined that Poland Spring® complies with 21 C.F.R. §165.110(a)(2)(vi) and can be sold as "spring water."

A common subspecies of federal action for which the *Burford* doctrine calls for abstention is a suit against a private actor which has the inevitable effect of directly challenging a state agency determination. For example, in *Palumbo v. Waste Technologies Industries*, 989 F.2d 156, 158 (4th Cir. 1993), for more than ten years, defendants had "been working to obtain and maintain the state and federal permits necessary to begin operating [an] incinerator." Plaintiffs brought suit in federal court to enjoin the operation of the incinerator pursuant to a federal statute and the common law of nuisance, among other causes of action. *Id*. at 157. The Fourth Circuit dismissed federal-law aspects of the claim on statutory grounds and denied jurisdiction to others on *Burford* abstention grounds. *Id*. at 159. Engaging in a "count-by-count examination of the substance of plaintiffs' complaint," the court "confirm[ed] that it [was] at root

a collateral attack on the permitting decisions of the … Ohio EPA[].” *Id*. at 160.  In denying jurisdiction, the court noted “Ohio has taken great care to provide for specialized adjudication of its complicated environmental law scheme,” whereby initial applications are submitted to the Ohio EPA and screened by a board of experts, whose permitting decisions are appealable in state court. *Id*. at 159-60.  The court succinctly concluded “*Burford* forbids us to interfere.” *Id*. at 160.

Similarly, in *Ellis v. Gallatin Steel Co.*, 390 F.3d 461, 466 (6th Cir. 2004), two companies were operating on adjacent properties.  The state agency charged with administering federal Clean Air Act (“CAA”) requirements concluded defendants were a “single source” of pollution and needed an additional permit.  *Id*. at 468.  Private citizens brought suit in federal court, alleging defendants failed to obtain the permit, which also constituted a violation of the CAA, and charging the agency’s decisions “failed to apply or misapplied [its] lawful authority under [state] law and under the [CAA].”  *Id*. at 466.   The Sixth Circuit agreed that plaintiffs “were making a ‘collateral attack’ on the state permitting process,” over which federal review “would be disruptive … because it would require the district court to revisit earlier decisions made by” the state agency.  *Id.* at 479-80.  Affirming dismissal, the court concluded “such administrative claims offer a classic explanation for applying *Burford* abstention.”[14]  *Id*. at 481.

Likewise, in *Barry v. St. Paul Fire & Marine Insurance Co.*, 555 F.2d 3, 13 (1st Cir. 1977), *aff’d*, 438 U.S. 531 (1978), plaintiff-insureds and medical providers sued insurance companies for significant reimbursements for allegedly inflated insurance rates.  *Id.* at 12.  Plaintiffs claimed the state insurance commissioner had been misled by the carriers in approving

---

[14]*See Jamison v. Longview Power, LLC*, 493 F. Supp. 2d 786, 791 (N.D. W.Va. 2007) (abstaining from exercising jurisdiction over action where even though plaintiffs disguised their complaint as a citizen suit under the CAA, rather than a direct challenge of a state agency ruling, “the Court would necessarily have to conclude that the [state regulator’s] permitting decision … was incorrect” to rule in their favor); *Friends of Santa Fe Cty. v. LAC Minerals, Inc.*, 892 F. Supp. 1333, 1348 (D.N.M. 1995) (dismissing under *Burford* claims to enforce the federal Clean Water Act as a collateral attack on a state agency’s determination to approve a regulated entity’s discharge plan).

the rates.  Abstaining, the court noted "the state has provided elaborate administrative and judicial procedures for challenging existing rates."  *Id*.  Although past rates could no longer be challenged, the First Circuit affirmed, citing the potential interference with the state's regulatory scheme and the possibility the State Regulator would address challenges under proper procedures.  *Id*. at 13.

By comparison, Plaintiffs are asking this Court to overrule, void, or simply ignore the fact-intensive determinations made by administrative agencies in *nine* states, each of which is charged with administering comprehensive, highly technical, and complex schemes regulating the sale of bottled water as "spring water," and to permanently enjoin NWNA from labeling Poland Spring® as "spring water."  As in *Palumbo*, 989 F.2d 156, an examination of Plaintiffs' Complaint reveals that it is a collateral attack on the decisions that these agencies have been charged to make.  As in *Jamison*, 493 F. Supp. 2d 786, the agencies were required by law to, and did in fact, determine that Poland Spring® was properly labeled as "spring water" because it met the FDA Identity Standard.  As in *Ellis*, 390 F.3d 461, any consideration of Plaintiffs' claims would require this Court to revisit the administrative decisions made since 1995.  As Plaintiffs' claims collaterally attack spring water permitting determinations made by *nine* State Agencies under comprehensive regulatory regimes, the first *Bethphage* factor strongly favors *Burford* abstention.

The **_second_** *Bethphage* factor also favors abstention, as the laws at issue "contain broad terms that properly should be interpreted by a state agency and the experts in a particular field." *Bethphage*, 965 F.2d at 1243.  Each of the nine states implicated by Plaintiffs' claims imposes permitting requirements mandating compliance with the FDA Identity Standard, 21 C.F.R. §165.110(a)(2)(vi), to sell bottled water as "spring water."  Compliance with that federal

regulatory standard depends upon each State Agency's interpretation and application of that standard.  For example, State Regulators must interpret and apply the FDA Identity Standard in determining whether, "using a hydrogeologically valid method, … an appropriate hydraulic connection exists between the natural orifice of the spring and the borehole" and whether the water collected from the borehole "shall have all the physical properties" and "be of the same composition and quality" as the water that flows through the spring's orifice.[15]  *Id.*

Plaintiffs are urging this Court to disregard State Regulators' interpretations and application of the FDA Identity Standard and their determinations that Poland Spring® complies with that standard to be bottled and sold as "spring water."  If this Court were to accept Plaintiffs' challenge to these state permitting determinations, it would endanger the entire bottled water regulatory process, of which the labeling of bottled water in compliance with federal identity standards is one important part.  State Regulators would be stripped of all regulatory authority if licensing could be vitiated and voided by private lawsuits in federal court, particularly given that state procedures include the right of aggrieved parties to challenge the regulatory decisions as part of each state's scheme.   "Abstention in favor of state court adjudication is sound judicial administration where, as here, it can increase the assurance that all those affected by the statute in question, including the parties to this action, will be given the benefit of an authoritative and uniform rule of law applied alike to all businesses and grievants."  *Naylor v. Case & McGrath, Inc.*, 585 F.2d 557, 565 (2d Cir. 1978).  Consequently, the second *Bethphage* factor strongly favors *Burford* abstention.

---

[15]That the standard is federal in origin does not detract from the argument.  *Palumbo*, *Ellis*, *Jamison*, and *Friends of Santa Fe* each involved federal environmental standards whose enforcement was delegated to the states pursuant to detailed procedures developed by State Agencies.  Here, too, State Regulators took on the application and enforcement of the FDA Identity Standard and painstakingly developed procedures and modes of decision-making.

The ***third*** *Bethphage* factor—whether the field in which the State Agencies operate is an area of legitimate state interest—also strongly supports *Burford* abstention. "Considerations of comity that underlie our federal system of government make abstention appropriate." *Pineman v. Oechslin*, 637 F.2d 601, 606 (2d Cir. 1981) (citing *Burford*, 319 U.S. 315).[16] "Basic abstention doctrine requires federal courts to avoid interference with a state's administration of its own affairs." *Johnson v. Collins Entm't Co., Inc.*, 199 F.3d 710, 719 (4th Cir. 1999) (noting the importance of abstention "in our system of dual sovereignty cannot be underestimated"), *reh'g en banc denied*, 204 F.3d 573 (4th Cir. 2000).

The states have sufficient interests in regulating the use of their natural resources, such as water, to trigger *Burford* abstention. *See, e.g.*, *Colo. River Water Conservation Dist. v. U.S.*, 424 U.S. 800, 815 (1976); *Dittmer v. Cty. of Suffolk, New York*, 59 F. App'x 375, 378 (2d Cir. 2003). Furthermore, where not preempted, the regulation of the distribution of food and beverages is a legitimate area of state interest. *See Grocery Mfrs. of Am., Inc. v. Gerace*, 755 F.2d 993, 1005 (2d Cir.), *aff'd sub nom.*, *Gerace v. Grocery Mfrs. of Am., Inc.*, 474 U.S. 801 (1985). That the standard being enforced is federal does not diminish that state interest. For example, in *Coalition for Health Concern v. LWD, Inc.*, 60 F.3d 1188, 1194 (6th Cir. 1995), the state was said to have "an overriding interest in the protection of its environment from the effects of unregulated hazardous waste," even though the scheme it enacted to facilitate such protection was based on federal standards. As with federal environmental laws, in the FDCA, Congress expressly reserved to the states the power to enforce bottled water safety and sanitary quality. *See* 21 C.F.R. §129.1; 58 Fed. Reg. at 394. Congress also permitted state regulatory bodies to enforce FDA's uniform identity standards, including for bottled water. *See* 21 U.S.C. §337(b).

---

[16] *See Hachamovitch*, 159 F.3d at 697 ("*Burford* abstention respects the states' specialized and comprehensive regulatory schemes, in the way that *Rooker–Feldman* respects the judicial processes of the states.").

In so doing, Congress recognized the states' legitimate interest in ensuring the safety and proper characterization of the water consumed by their citizens.[17]  As the states have a clear interest in the water consumed by their citizens—and in Maine's case, drawn from its own lands—the third and final *Bethphage* factor also strongly favors abstention.

### D.  Timely, Adequate State-Court Review of Administrative Determinations Exists

In *Burford*, 319 U.S. at 327, the Supreme Court declined federal jurisdiction because Texas State courts were fully capable of exercising timely and adequate review over permitting decisions made by a state administrative agency.  Like Texas, each of the nine states whose permitting determinations have been collaterally attacked by Plaintiffs has robust procedures for judicial review over state administrative agency decisions.  For example, in Maine, "any person who is aggrieved by final agency action shall be entitled to judicial review thereof in the Superior Court." *Me. Rev. Stat. Ann.* tit. 5, §11001(1).  Any decision by Maine's DWP is subject to an administrative appeal process within the Maine DHHS, which includes an administrative hearing conducted by a hearing officer subject to the Maine Administrative Procedures Act.  10-144-231 *Me. Code R.* §1-B(B).  The hearing officer's decision may be appealed to the Maine Superior Court.  Me. R. Civ. P. 80C (judicial review of final agency action).  Each of the other states also provides for judicial review:

- New Jersey:  "[A]ppeals may be taken to the Appellate Division as of right ... to review final decisions or actions of any state administrative agency." N.J. R. Ct. 2:2-3(a)(2).
- New York:  Challenges to a final agency determination may be brought under Article 78 of New York's Civil Practice Law and Rules.  N.Y. C.P.L.R. 7803.
- Connecticut:  "A person who has exhausted all administrative remedies available within the agency and who is aggrieved by a final decision may appeal to the Superior Court" of Connecticut. *Conn. Gen. Stat. Ann.* §4-183(a).
- Massachusetts:  "[A]ny person ... aggrieved by a final decision of any agency in an adjudicatory proceeding, whether such decision is affirmative or negative in form, shall be entitled to a judicial review thereof...." *Mass. Gen. Laws Ann.* ch. 30A, §14.

---

[17] States have universally adopted and exclusively enforce misbranding laws. *See, e.g.*, *N.J. Stat. Ann.* §24:17-5.

- <u>Rhode Island</u>:  "Any person ... who has exhausted all administrative remedies available to him or her within the agency, and who is aggrieved by a final order in a contested case is entitled to judicial review under this chapter."  42 *R.I. Gen. Laws Ann.* §42-35-15(a).
- <u>Vermont</u>:  Actions or decisions by any state agency are reviewable in state court.  Vt. R. Civ. P. 74, 75.
- <u>New Hampshire</u>:  Orders of an administrative agency are directly reviewable by the New Hampshire Supreme Court.  N.H.R.S. Ct. 10; *N.H. Rev. Stat. Ann.* §541:2.
- <u>Pennsylvania</u>:  "Any person aggrieved by an adjudication of a Commonwealth agency who has a direct interest in such adjudication shall have the right to appeal therefrom to" a Commonwealth court.  2 *Pa. Stat. and Cons. Stat. Ann.* §702.

Plaintiffs' challenges to State Agency determinations can be adjudicated in state courts under procedures expressly designed for these purposes, without needless disruption to state regulatory schemes.  *Barry*, 555 F.2d at 13.  Compelling aggrieved parties to make use of these challenge procedures strengthens the state schemes and enhances their predictability.  Plaintiffs should not be permitted to challenge state determinations on state law grounds simply by running to a federal district court.  This federal action should be dismissed under *Burford*.

## II.  As This Court Has Held, Section 337(a) Prohibits Plaintiffs From Pursuing State-Law Claims To Privately Enforce The FDA Spring Water Identity Standard

The FDCA provides that except for certain FDCA-sanctioned state actions, "all such proceedings for the enforcement [of the FDCA] shall be by and in the name of the United States."  21 U.S.C. §337(a).  In its May 17, 2018 Order dismissing Plaintiffs' initial complaint, this Court held Section 337(a) impliedly preempts Plaintiffs' claims to privately enforce the FDA Identity Standard.  [Doc. 141 at 16].  This same reasoning compels the dismissal of Plaintiffs' Complaint, as it too alleges the exact same claims that were dismissed.

Plaintiffs' state-law claims that Poland Spring® was falsely labeled as "spring water" do not allege NWNA violated a stand-alone, independent state identity standard.  To the contrary, as pled in each count of their Complaint, Plaintiffs are suing to enjoin and declare unlawful the labeling of Poland Spring® as "spring water" solely because NWNA has failed "<u>to comply with</u>

the federal standard of identity for spring water" established by 21 C.F.R. §165.110(a)(2)(vi).

[¶¶54, 841, 860, 872, 885, 896, 911, 935, 959, 983, 1007, 1028 (emphasis added)].  More than

1,000 paragraphs covering more than 300 pages of the Complaint describe how Poland Spring®

fails to comply with the "Identity Standard," 21 C.F.R. §165.110(a)(2)(vi).  [¶54.  It makes no

difference that Plaintiffs interpret state laws as allegedly creating a "duty"[18] to comply with the

FDA Identity Standard; they seek to enforce only 21 C.F.R. §165.110(a)(2)(vi), which this Court

held they may not do.

Citing *Buckman*,[19] this Court observed that the United States Supreme Court "recognized

that the FDCA 'leaves no doubt that it is the Federal Government rather than private litigants

who are authorized to file suit for noncompliance with' FDCA requirements" and "understood

Section 337(a) to impliedly preempt a state law claim based on conduct that was wrongful solely

because it violated the FDCA."[20]  [Doc. 141 at 13].  Plaintiffs "may not simply dress up a

generic state law claim of wrongful conduct to prosecute conduct that is 'wrong' only because it

happens to violate the federal law requirements of the FDCA."  [*Id.* at 14].  This Court found that

Plaintiffs did exactly that in alleging Poland Spring® products are falsely labeled as "spring

water" "*because they do not comply with the FDA's 'standard of identity' for spring water.*"  [*Id.*

at 16-17].  Plaintiffs' claims were dismissed because "they are suing solely to enforce the

---

[18]Plaintiffs' legal conclusion as to creating a "duty" is wrong and not entitled to any assumption of truth on a motion to dismiss.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").  A "duty" is a "legal obligation that is owed or due to another and that needs to be satisfied; an obligation for which somebody else has a corresponding right."  *U.S. v. Heicklen*, 858 F. Supp. 2d 256, 265 (S.D.N.Y. 2012) (quoting *Black's Law Dictionary* (9th ed. 2009)).  The state laws cited by Plaintiffs create no duty or obligation owed by NWNA to consumers and no duty to comply with the FDA Identity Standard.  They set forth requirements utilized by State Regulators when considering the issuance of a permit to sell bottled spring water.
[19]*Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 349 n.4 (2001).
[20]*See id.* at 19 ("Section 337 makes clear that it is the federal government—not the States or private parties—that retains exclusive authority to enforce provisions of the FDCA.").

FDCA's federal 'spring water' standard, [which] is what *Buckman* and §337(a) do not allow." [*Id.* at 20].

In dismissing Plaintiffs' initial complaint, this Court noted "[t]he kind of state law claim that <u>may</u> survive preemption is well demonstrated in the California Supreme Court's decision *In re Farm Raised Salmon Cases*, 42 Cal. 4th 1077 (2008)[, *cert. denied sub nom., Albertson's, Inc. v. Kanter*, 555 U.S. 1097 (2009) ("*Salmon Case*")]."[21]  [*Id.* at 15 (emphasis added)].  The *Salmon Case* highlights why Plaintiffs' state-law claims <u>do</u> <u>not</u> survive preemption.  Plaintiffs alleged defendants violated the California Sherman Food, Drug, and Cosmetic Law's ("Sherman Law") independent state law that artificially-colored, farm-raised salmon be disclosed on the product's label.  *Salmon Case*, 42 Cal. 4th at 1086.  Reversing the determinations of the California Superior Court and Court of Appeal that the FDCA preempted plaintiffs' claims, the California Supreme Court held the FDCA neither expressly nor impliedly preempted plaintiffs' claims because they were exclusively based on a violation of the Sherman Law rather than noncompliance with an identical federal regulation.  *Id.* at 1087, 1093.  Critical to its decision that plaintiffs were not attempting "to use state laws to directly enforce the FDCA itself" in violation of Section 337(a), the Court reasoned that plaintiffs' claims "do not require referring to, or applying, the FDCA" and "are based on [a] violation of the Sherman Law and can be resolved with reference to state law alone."  *Id.* at 1096-97.

How the Court distinguished two cases, finding preemption where claims or defenses "were based on violations of the FDCA itself," points to why Plaintiffs' claims are preempted here.  *Id.* at 1097.  First, the Court distinguished *Fraker v. KFC Corp.*, No. 06-CV-1284, 2007 WL 1296571 (S.D. Cal. Apr. 30, 2007), in which plaintiffs alleged defendant violated the FDCA

---

[21]Given that no state has enacted a stand-alone law defining spring water that does not reference and is independent of the FDA Identity Standard, NWNA does not agree that the *Salmon Case* sets forth a legally accurate or relevant preemption analysis for this case.

and Sherman Law by mislabeling their high-trans fat food product as healthy in violation of 21 C.F.R. §403(a)(1) and making actionable health claims in violation of 21 C.F.R. §101.14. Recognizing violations of the FDCA and federal regulations formed the basis of the claims, the court dismissed them as impliedly preempted, *id.* at *3, explaining: "as instructed in *Buckman*, the FDCA presents a comprehensive regulatory scheme of branding and labeling of food products" and the claims would conflict with that enforcement scheme, *id.* at *4. Second, the Court distinguished *Pediamed Pharmaceuticals, Inc. v. Breckenridge Pharmaceuticals, Inc.*, 419 F. Supp. 2d 715 (D. Md. 2006), in which defendant asserted a state-law unclean hands defense claiming plaintiff mislabeled ingredients in its drug in violation of the FDCA. Rejecting the defense as impliedly preempted, the court concluded the defense "requires direct application of the FDCA, which only the FDA is entitled to enforce…." *Id.* at 727.

Unlike the *Salmon Case*, 42 Cal. 4th at 1097, in which the plaintiffs' claims were not "based on violations of the FDCA itself" and "[could] be resolved with reference to state law alone," Plaintiffs' state-law claims here do not allege a violation of a state law creating a state identity standard that can be independently enforced without specific reference to, or application of, 21 C.F.R. §165.110(a)(2)(vi). In asserting the legal conclusion that NWNA has a duty "<u>to comply with the federal standard of identity for spring water</u>," not one of the counts in Plaintiffs' Complaint seeks to directly enforce a violation of any state statute or regulation. [¶¶841, 860, 872, 885, 896, 911, 935, 959, 983, 1007, 1028 (emphasis added)]. Like *Fraker* and *Pediamed*, Plaintiffs' claims are uniformly predicated on NWNA's alleged noncompliance with a federal regulation—the federal "Identity Standard," 21 C.F.R. §165.110(a)(2)(vi)—and seek a permanent injunction prohibiting NWNA from selling Poland Spring® as "100% Natural Spring Water" solely because NWNA has not "complied" with that federal regulation. [¶¶54, 57, 59].

Plaintiffs' claims thus suffer from the same fatal defect that doomed their initial complaint: they are "premised on a common allegation" that Poland Spring® is falsely labeled as "spring water" because it "does not comply with federal law" [Doc. 141 at 3], which can only be adjudicated by applying the FDA Identity Standard and cannot be resolved under state law alone.  As this Court held, "[w]here a state law claim would not exist but for a FDCA regulation, §337(a) impliedly preempts the claim" and bars Plaintiffs' claims to enforce the federal standard.  [*Id.* at 16].

All of Plaintiffs' statutory claims are impliedly preempted because they seek to enforce the federal standard, not an independent state standard.  **Count III** alleges violation of the New Jersey Consumer Fraud Act ("NJCFA"), claiming NWNA misbranded Poland Spring® as "Spring Water" because it is not spring water as defined by "the federal standard of identity for spring water."  [¶860].  Regardless of the accuracy of Plaintiffs' legal conclusion that *N.J. Admin. Code* §8:21-5.5(a) creates a duty "to comply with the federal standard of identity for spring water [21 C.F.R. §165.110(a)(2)(vi)]" [¶860 (emphasis added)], Plaintiffs do not plead a violation of this NJDOH regulation; instead, their claim is based solely on noncompliance with the FDA Identity Standard.  They cannot plead a violation of this state regulation, as no private right of action exists for violations of New Jersey's misbranding laws,[22] and cannot circumvent that bar by asserting a misbranding claim as a violation of the NJCFA.[23]  This New Jersey regulation does not create a stand-alone, state-law identity standard that can be separately

---

[22]No private right of action exists under New Jersey law to enforce this regulation.  A product not compliant with this regulation is "deemed misbranded," *N.J. Admin. Code* §8:21-5.5(c), yet only the NJDOH and local boards of health—not private plaintiffs—may bring civil actions to enforce misbranding violations under New Jersey law, as all civil actions must be "by and in the name of the State Department of Health…," *N.J. Stat. Ann.* 24:17-5; *see R.J. Gaydos Ins. Agency, Inc. v. Nat'l Consumer Ins. Co.*, 773 A.2d 1132, 1144 (N.J. 2001) ("New Jersey courts have generally declined to infer a private right of action in statutes where the statutory scheme contains civil penalty provisions."); *see also Jarrell v. Kaul*, 123 A.3d 1022, 1030 (N.J. 2015) ("When the Legislature has expressly created specific remedies, a court should always hesitate to recognize another unmentioned remedy. Stated differently, '[i]n the absence of strong indicia of a contrary [legislative] intent, we are compelled to conclude that [the Legislature] provided precisely the remedies it considered appropriate.'" (citations omitted)).

[23]*Hampton Hosp. v. Bresan*, 672 A.2d 725, 731 (N.J. Super. Ct. App. Div.) ("[W]e can find no purpose to a requirement that [the conduct at issue] be within the purview of the Consumer Fraud Act when [that same conduct] fall[s] within the purview of the Department of Health."), *certif. denied*, 677 A.2d 760 (N.J. 1996).

enforced without referring to and applying the FDA Identity Standard.  The regulation is part of the NJDOH's regulatory scheme for bottled water certification, as to which the NJDOH—not private plaintiffs—determines and enforces compliance, including the requirement that "bottled water shall be labeled and conform with the nomenclature established under 21 C.F.R. §165.110(a) (identity)."  *N.J. Admin. Code* §8:21-5.5(a); *see* Point I(A), *supra*.  As Count III cannot be adjudicated without directly applying the FDA Identity Standard, it is impliedly preempted.

**Counts IV and V** allege violation of New York General Business Law ("GBL") §§349-350, claiming NWNA falsely labeled and advertised Poland Spring® as "spring water" when it is not spring water as defined by "the federal standard of identity for spring water."  [¶¶872, 885]. Plaintiffs again recite their erroneous legal conclusion that state regulations (*N.Y. Comp. Codes R. & Regs.* tit. 10, §§5-6.3(s) and 5-6.4(c)(5)) create a duty "to comply with the federal standard of identity for spring water" and that NWNA has violated GBL §§349 and 350 because Poland Spring® does not "comply with the federal standard of identity."   [¶¶872, 873, 885, 886 (emphasis added)].  Plaintiffs seek to enforce the federal standard, not the state regulations because, contrary to their misstatement of law, the state regulations do not "mirror" the FDA Identity Standard.  [*Id.*][24]

These NYSHD Sanitary Code regulations enforce 21 C.F.R. Part 129's bottled water sanitary quality requirements and do not create a duty owed by NWNA to Plaintiffs to comply

---

[24]Section 5.6-4(c)(5) provides that "[s]pring water shall be collected only at the natural orifice of the spring or through a bore hole that is adjacent to the natural orifice."  (Emphasis added).  New York's adjacency requirement was rejected by the FDA, is not identical to the FDA Identity Standard, and would be expressly preempted by the FDCA.  21 U.S.C. § 343-1(a)(1).  *See* 60 Fed. Reg. 57076, 57093 (Nov. 13, 1995) ("FDA concludes that the requirement of a measurable hydraulic connection between the bore hole and the spring's natural orifice adequately encompasses the intent of the proposed adjacency requirement.  Therefore, the agency is deleting the requirement in §165.110(a)(2)(vi) that the bore hole be adjacent to the point of emergence of a spring.").

with the FDA Identity Standard.[25]   Section 5-6.3(s) merely defines "spring water" as "water derived from an underground formation from which water flows naturally to the surface of the earth."  Plaintiffs are not claiming that this spring water definition has been violated.

New York has a regulatory process by which the NYSHD certifies bottled water, including spring water, for sale in New York.  *See N.Y. Comp. Codes R. & Regs.* tit. 10, §5-6.2. This regulatory scheme does not confer on Plaintiffs the right to enforce the regulations, which are enforceable only by the NYSHD Commissioner.[26]  *N.Y. Pub. Health Law* §206(1)(f).  Not only does the New York Department of Agriculture and Markets have the exclusive authority to create New York State standards of identity, but to "enforce compliance with" misbranding laws.[27]  *N.Y. Agric. & Mkts. Law* §§202-c, 214-b; *see id.* §39 (misbranding penalties).  Plaintiffs cannot circumvent the prohibition against private actions by using the GBL to bring misbranding claims.[28]  Counts IV and V are based solely on noncompliance with the FDA Identity Standard, cannot be adjudicated without applying this federal regulation, and are impliedly preempted.

**Count VI** alleges the Connecticut Uniform Trade Practices Act ("CUTPA") has been violated because Poland Spring® is falsely labeled as "Spring Water" when it does not "comply with the federal standard of identity for spring water."  [¶896].  While Plaintiffs contend *Conn. Gen. Stat. Ann.* §§21a-150(14) and 21a-150e(c) create a duty "to comply with the federal standard of identity for spring water," they have not sued to privately enforce these laws because

---

[25]The NYSHD does not have authority to prescribe New York state standards of identity; such authority is vested in the New York Department of Agriculture and Markets.  *N.Y. Agric. & Mkts. Law* §214-b.

[26]*See City of New York v. Smokes-Spirits.Com, Inc.*, 911 N.E.2d 834, 843-44 (N.Y. 2009) (rejecting a private right of action to enforce the Public Health Law, even as the predicate of a common-law nuisance claim).

[27]*See Hammer v. Am. Kennel Club*, 803 N.E.2d 766, 769 (N.Y. 2003) (rejecting a private right of action to enforce the Agriculture and Markets Law); *see also Cruz v. TD Bank, N.A.*, 2 N.E.3d 221, 226 (N.Y. 2013) (courts must reject "a private right of action in instances where '[t]he Legislature specifically considered and expressly provided for enforcement mechanisms' in the statute itself." (alteration in original) (quoting *Mark G. v. Sabol*, 717 N.E.2d 1067, 1071 (N.Y. 1999)).

[28]*See Schlessinger v. Valspar Corp.*, 991 N.E.2d 190, 192 (N.Y. 2013) (holding that a fraud claim cannot be used as a "backdoor" to circumvent a prohibition against private causes of action).

only the Commissioner of Consumer Protection is authorized to do so through license suspensions and revocations and the imposition of fines and penalties for noncompliance. *Conn. Gen. Stat. Ann.* §§21a-138, -145.   Moreover, Connecticut law does not permit private enforcement of a state identity standard.   *See Conn. Gen. Stat. Ann.* §21a-99 (providing all proceedings for the enforcement of standards of identity adopted under Connecticut law "shall be by and in the name of the state of Connecticut.").   Plaintiffs cannot circumvent the prohibition against private actions by using CUTPA as a vehicle to enforce the regulations.[29]

Moreover, the cited Connecticut laws do not create a spring water identity standard that is identical to the FDA Identity Standard.   Section 21a-150(14) defines "Spring Water" as "natural water obtained from an underground formation from which water flows naturally to the surface of the earth."   Section 21a-150e(c) does not define "spring water," but provides for how the water that meets the Connecticut definition of spring water is to be collected in order to be certified for sale as bottled spring water by the Connecticut Department of Consumer Protection.[30]   Accordingly, Count VI is premised solely on alleged noncompliance with the FDA Identity Standard, cannot be adjudicated without exclusively applying that federal regulation, and is impliedly preempted.

---

[29]*See Connelly v. Hous. Auth. of City of New Haven*, 567 A.2d 1212, 1216 (Conn. 1990) (dismissing a CUTPA claim predicated on a violation of more specific regulations, which lack a right to private action, because allowing enforcement through both schemes would "upset" the "carefully crafted equilibrium"); *Russell v. Dean Witter Reynolds, Inc.*, 510 A.2d 972, 977 (Conn. 1986) (securities transactions are exempt from CUTPA "because such transactions fall under the comprehensive regulatory umbrella of the Securities and Exchange Commission"); *Blass v. Rite Aid of Ct., Inc.*, 16 A.3d 855, 862 (Conn. Super. Ct. 2009) (holding that a plaintiff cannot use CUTPA as a vehicle to bring a private action for tax miscollection, as doing so "threatens to disrupt the administrative process that already occupies the field of tax miscollection"), *aff'd o.b.*, 16 A.3d 737, 739 (Conn. 2011); *see also Studer v. Studer*, 131 A.3d 240, 250 (Conn. 2016) ("The provisions of one statute which specifically focus on a particular problem will always, in the absence of express contrary legislative intent, be held to prevail over provisions of a different statute more general in its coverage." (citation omitted)).

[30]To the extent this provision is deemed part of the Connecticut spring water identity standard, it includes the same non-identical, expressly preempted, adjacency requirement as under New York law:  "A bottler shall collect spring water at a spring or through a bore hole adjacent to the place where a spring emerges from the ground."  *Id.*

-28-

**Count VII** alleges 105 *Mass. Code Regs.* 500.090(I)(2) creates a duty "to comply with the federal standard of identity for spring water" and that NWNA violated the Massachusetts Consumer Protection Act ("MCPA") because Poland Spring® does not "comply with the federal standard of identity for spring water."  [¶911].  Count VII does not plead a claim to enforce Section 500.090(I)(2), which is enforceable only by the MDPH and local boards of health—not private plaintiffs.[31]  *Mass. Gen. Laws Ann.* ch. 94, §§10C, 10F.  Section 500.090(I)(2) is an MDPH regulation that neither defines "spring water" nor establishes a state spring water identity standard.[32]  This MDPH regulation is a general requirement for obtaining a permit to sell bottled water in Massachusetts.  *Id.* §10A; 105 *Mass. Code Regs.* 500.090; *see* Point I(A), *supra*.  There is no Massachusetts spring water identity standard, and private plaintiffs cannot bring misbranding claims.[33]  Moreover, Plaintiffs cannot circumvent the prohibition against private actions by claiming a violation of the MCPA.[34]  Accordingly, Count VII is impliedly preempted, as it is premised solely on alleged noncompliance with the FDA Identity Standard.

**Count VIII** alleges NWNA violated the Rhode Island Deceptive Trade Practices Act ("RIDTPA") because Poland Spring® does not "comply with the federal standard of identity for spring water."  [¶935].  Plaintiffs claim 21 *R.I. Gen. Laws Ann.* §21-23-4 and 216-50 *R.I. Code*

---

[31] *See Barbuto v. Advantage Sales & Mktg., LLC*, 78 N.E.3d 37, 49–50 (Mass. 2017) ("The Legislature's provision of a separate remedy, especially, … a separate civil remedy, 'weighs heavily against recognizing' an implied private right of action in a statute.").

[32] That section does not define "spring water," but provides the term "spring water" "shall not be used as a product name or a brand name on a label unless the water source meets the definition of spring water in 21 C.F.R. §165.110(a)(2)(vi)."  105 *Mass. Code Regs.* 500.090(I)(2).

[33] Only the MDPH "shall enforce" misbranding.  *Mass. Gen. Laws Ann.* ch. 94, §192.

[34] *Animal Legal Def. Fund Boston, Inc. v. Provimi Veal Corp.*, 626 F. Supp. 278, 283 (D. Mass.) ("Massachusetts cannot confer on private persons the power to enforce a federal statute whose enforcement Congress left to federal administrative agencies. Nor can the [plaintiff] enforce chapter 94, the Massachusetts statute which parallels the FDCA, in a private action under the Massachusetts consumer protection ... statute."), *aff'd o.b.*, 802 F.2d 440 (1st Cir. 1986); *Whitehall Co. v. Merrimack Valley Distrib. Co.*, 780 N.E.2d 479, 483 n.8 (Mass. App. Ct. 2002) (private actions for violations of scheme for licenses to sell alcohol is prohibited and many Massachusetts courts have "rejected private efforts to coax a right of action out of some alleged violation of" that scheme through the MCPA); *Higgins v. Town of Swansea*, 893 N.E.2d 352, 355 (Mass. App. Ct. 2008) (Massachusetts courts "view [an issue] governed by the specific provisions of [a statute], as constituting an exception to the general practice set forth [in another statute]" (alterations in original)).

*R.* §10-4.3(A)(3)(s) create a duty "to comply with the federal standard of identity for spring water." *Id.* The Rhode Island laws cited by Plaintiffs do not establish a stand-alone, state spring water identity standard, but rather are part of the Rhode Island regulatory process for obtaining a bottler's permit. *See* 21 *R.I. Gen. Laws Ann.* §21-23-1; Point I(A), *supra.* Plaintiffs do not plead a claim to enforce these laws, as they are enforceable only by the RIDOH.[35] Misbranding claims cannot be brought by private plaintiffs, only by the Attorney General on a report by the Director of Health. 21 *R.I. Gen. Laws Ann.* §21-31-7. Plaintiffs cannot circumvent the bar against private actions by claiming a violation of RIDTPA.[36] Count VIII depends solely on alleged noncompliance with the FDA Identity Standard and is impliedly preempted.

**Count IX** alleges that NWNA violated the Vermont Consumer Fraud Act ("VCFA") because Poland Spring® does not "comply with the federal standard of identity for spring water." [¶959]. Plaintiffs allege *Vt. Stat. Ann.* tit. 10, §§1672(b) and 1673(f) and *Vf the proposf t t. Code. R.* 12-030-003 §11.1.2(c)[37] create a duty "to comply with the federal standard of identity for spring water." [*Id.*] However, neither of these Vermont statutes nor the cited VANR regulation[38] create a stand-alone, independent state spring water identity standard, as only the Vermont Department of Health, not the VANR, has been vested with the authority to establish

---

[35] *See* 21 *R.I. Gen. Laws Ann.* §21-23-3 (authorizing RIDOH to suspend or revoke permits); 216-50 *R.I. Code R.* §10-4.10.2 (RIDOH may "pursue any combination of … administrative and judicial enforcement actions depending upon the circumstances and gravity of each case"); *see also Tarzia v. State*, 44 A.3d 1245, 1258 (R.I. 2012) ("When a statute 'does not plainly provide for a private cause of action [for damages], such a right cannot be inferred.'" (citation omitted)).

[36] *Cf. Buck v. Am. Airlines, Inc.*, 476 F.3d 29, 37 (1st Cir. 2007) (refusing "to craft a private  right of action for violations of" a regulation "to circumvent the conclusion that [a federal statute], and therefore the regulations enacted pursuant to it, creates no private right of action." (citation omitted)); 43 *R.I. Gen. Laws Ann.* §43-3-26 (when statutes conflict, "the special provision shall prevail and shall be construed as an exception to the general provision).

[37] This regulation is alternatively cited as 16-3 *Vt. Code R.* §500:11.1.2(c).

[38] Plaintiffs' attempt to use this regulation to create a Vermont identity standard is based upon their erroneous legal conclusion about Maine's standards that cannot be accepted as true merely because it appears in the Complaint. *Iqbal*, 556 U.S. at 678. Plaintiffs claim the regulation "requires Maine to certify that spring water bottled there meets Maine's standards," which "are identical to" the FDA Identity Standard, meaning that Vermont has somehow enacted its own standard of identity identical to the FDA Identity Standard. [¶959]. This is illogical and incorrect.

and enforce standards of identity.  *Vt. Stat. Ann.* tit. 18, §§4053(a), 4058.  The laws cited by Plaintiffs form part of the Vermont regulatory scheme for obtaining a permit from the VANR to sell bottled water in Vermont.[39]  *See* 16-3-500 *Vt. Code R.* §11.1.1; Point I(A), *supra*.  Plaintiffs, however, cannot bring a private action to directly enforce a state spring water identity standard[40] and cannot circumvent that prohibition by claiming a violation of the VCFA.[41]  Count IX does not seek to enforce a Vermont spring water identity standard and is nothing more than a poorly-disguised attempt to enforce the FDA Identity Standard.  It is, therefore, impliedly preempted.

**Count X** alleges the New Hampshire Consumer Protection Act ("NHCPA") has been violated because Poland Spring® does not "comply with the federal standard of identity for spring water."  [¶983].  Plaintiffs allege that *N.H. Code Admin. R.* He-P 2101.01(ab), He-P 2102.03, and He-P 2104.01 create a duty "to comply with the federal standard of identity for spring water."  *Id.*  As with every other state's regulations, Plaintiffs do not sue to enforce these NHDOH regulations as they do not create a stand-alone, state spring water identity standard identical to the FDA Identity Standard.  Section He-P 2101.01(ab) defines "spring water" as "water derived from an underground formation from which water flows naturally to the surface of the earth."  While it is obvious why Plaintiffs do not claim that NWNA has not complied with this definition of "spring water," as a matter of law Plaintiffs cannot bring a misbranding claim to enforce a New Hampshire identity standard because the NHDOH is exclusively "charged with

---

[39]Private actions to enforce that regulatory scheme are barred.  *See Corbin v. Buchanan*, 657 A.2d 170, 172 (Vt. 1994) ("no private cause of action exists in Vermont for failure to enforce a regulation adopted to protect the public at large"); *Cronin v. State*, 531 A.2d 929, 931 (Vt. 1987) (dismissing complaint because "the scope of the regulation, combined with the existence of an administrative remedy for violation of the regulation, convinces us that no private right of action is created by the regulation," and because a private right of action would "frustrate the legislative scheme for the enforcement" and "interfere with the exercise of the [regulator's] discretion"), *overruled on other grounds by Libercent v. Aldrich*, 539 A.2d 981 (Vt. 1987).

[40]*Vt. Stat. Ann.* tit. 18, § 4053(a) ("The authority to enforce [misbranding] is vested in the Board [of Health].").

[41]*See Judicial Watch, Inc. v. State*, 892 A.2d 191, 195 (Vt. 2005) (When "construing conflicting statutes that deal with the same subject matter, the more specific provision controls over the more general one" (citation omitted)).

the enforcement of" state identity standards.[42] *N.H. Rev. Stat. Ann.* §§146:11(I), 146:17. Plaintiffs cannot use the NHCPA to circumvent the prohibition against private actions enforcing NHDOH regulations.[43]   The cited regulations are part of the New Hampshire regulatory scheme prescribing what a bottler must do to obtain a permit to sell bottled water in New Hampshire. *See N.H. Code Admin. R.* He-P 2107.03(a). The private action creates a conflict with the more specific NHDOH regulations governing bottled water, and those regulations must prevail over the more general NHCPA.[44]   As a result, Count X is another attempt to privately enforce the FDA Identity Standard that is impliedly preempted because it can only be resolved by enforcing the FDA Identity Standard.

**Count XI** alleges that NWNA violated the Maine Uniform Trade Practices Act ("MUTPA") and the Maine Uniform Deceptive Trade Practices Act ("MUDTPA") because Poland Spring® does not "comply with the federal standard of identity for spring water." [¶1007].  Plaintiffs allege that 10-144-231 *Me. Code R.* §2 creates a duty "to comply with the federal standard of identity for spring water," but do not claim NWNA violated this regulation. [*Id.*]  Plaintiffs affirmatively plead NWNA has not complied with the FDA Identity Standard,[45] alleging the public relies on Maine Regulators to ensure compliance with the FDA Identity Standard [¶796] and that responsibility for evaluating compliance with the FDA Identity

---

[42]Misbranding claims are enforceable exclusively by the NHDOH, not private plaintiffs.  *N.H. Rev. Stat. Ann.* §146:11(I).

[43]*Gauthier v. Manchester Sch. Dist.*, 123 A.3d 1016, 1021 (N.H. 2015) ("[I]t is unlikely that the [New Hampshire] legislature, while not intending to grant a direct private right of action under [a particular statute], did intend a private right of action to be available to anyone who took the extra step of alleging that a violation of [that statute] constituted common-law fraud." (quoting *Broder v. Cablevision Sys. Corp.*, 418 F.3d 187 (2d Cir. 2005)); *see also Blagbrough Family Realty Tr. v. A&T Forest Prods., Inc.*, 917 A.2d 1221, 1236 (N.H. 2007) ("Where there is no explicit or implicit private right of action to seek a declaration of the statute's violation, we will conclude that the statute does not do so.").

[44]*See In re Johnson*, 13 A.3d 315, 319 (N.H. 2011) ("[W]here one statute deals with a subject in general terms, and another deals with a part of the same subject in a more detailed way, the latter will be regarded as an exception to the general enactment where the two conflict." (citation omitted)).

[45]Misbranding claims are enforceable exclusively by Maine's Commissioner of Agriculture, Conservation and Forestry, not private plaintiffs.  *Me. Rev. Stat. Ann.* tit. 22, §2153.

Standard "lies exclusively with the Drinking Water Program, whose environmental engineers, hydrogeologists and staff members are alone responsible for ensuring compliance with the spring water Identity Standard [defined by Plaintiffs as 21 C.F.R. §165.110(a)(2)(vi)] in Maine." [¶¶54, 99]. The cited Maine regulation is an integral part of Maine's regulatory scheme for obtaining DWP approval and a permit to sell bottled spring water in Maine. *See* 10-144-231 *Me. Code R.* §3(J); Point I(A), *supra*; Doc. 53-3 at 13. Private actions to enforce those regulations are barred,[46] and Plaintiffs cannot use MUTPA or MUDTPA to circumvent this prohibition. Moreover, the more specific laws governing bottled water prevail over the general consumer protection statutes.[47] Count XI is based solely on alleged noncompliance with "the federal standard of identity for spring water." [¶1007]. Count XI is impliedly preempted, as it is wholly dependent on, and cannot be adjudicated without directly applying the FDA Identity Standard.

**Count XII** alleges NWNA violated the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("PUTPCPL") because Poland Spring® does not "comply with the federal standard of identity for spring water." [¶1028]. Plaintiffs claim 3 *Pa. Cons. Stat. Ann.* §§5729(a)(6) and 5736(a) create a duty "to comply with the federal standard of identity for spring water." [*Id.*] Plaintiffs do not seek to enforce these statutes. These laws do not establish a stand-alone, Pennsylvania spring water identity standard that is independent of the FDA Identity Standard, and Plaintiffs are nevertheless prohibited from bringing a private action to enforce a state standard of identity.[48] Section 5729(a)(6) provides that a food is misbranded "[i]f it is represented as a food for which a definition and standard of identity has been prescribed by

---

[46]*See* 10-144-231 *Me. Code R.* §1-C (Maine Department of Health and Human Services enforces bottled water regulations); *see also Charlton v. Town of Oxford*, 774 A.2d 366, 372 (Me. 2001) ("We are hesitant to imply a private right of action where the legislature has not expressly stated that a cause of action exists.")

[47]*First of Me. Commodities v. Dube*, 534 A.2d 1298, 1302 (Me. 1987) (dismissing a MUTPA claim because it targeted conduct "extensively regulate[d]" by a state agency pursuant to statute); *Laing v. Clair Car Connection*, No. CIV.A. CV-01-516, 2003 WL 1669624, at *3 (Me. Super. Ct. Jan. 29, 2003) (holding defendant cannot be held liable under the general MUDTPA because it complied with a more specific statute).

[48]3 *Pa. Stat. and Cons. Stat. Ann.* § 5724 (Department of Agriculture enforces misbranding).

regulation under this subchapter or under any of the Federal Acts."  The Complaint, however, does not plead a Pennsylvania spring water identity standard;[49] the only identity standard pled is the FDA Identity Standard.  [¶1028].  PDEP's determination that Poland Spring® complies with the FDA Identity Standard is part of the Pennsylvania regulatory scheme for obtaining a permit from the PDEP to sell bottled spring water in Pennsylvania.  25 *Pa. Code* §109.1005(a).  Private actions to enforce those regulations are barred.[50]  In light of the conflict created by private actions, the more specific laws regulating bottled water prevail over the PUTPCPL.[51]  As Count XII seeks to challenge the PDEP's determination of Poland Spring®'s compliance with the FDA Identity Standard, which may only be adjudicated by applying the FDA Identity Standard, this claim is impliedly preempted.

As with Plaintiffs' consumer protection act claims, Plaintiffs' common-law fraud and breach of contract claims are impliedly preempted because they also cannot be adjudicated without applying the FDA Identity Standard.  **Count I** alleges NWNA misrepresented Poland Spring® as "spring water" "because none of the water bottled as Poland Spring® was sourced complied [sic] with the Identity Standard [21 C.F.R. §165.110(a)(2)(vi)]."  [¶¶54, 839, 841].  Plaintiffs seek permanent injunctive relief and other remedies based solely on noncompliance with the FDA Identity Standard.  **Count II** alleges NWNA breached contracts with its home and office customers who purchased Poland Spring® because NWNA "did not at any time deliver genuine spring water as defined under state law to Plaintiffs."  [¶¶848, 852].  Plaintiffs do not

---

[49]The other cited statute—Section 5736(a)—provides Pennsylvania food safety laws "shall be construed in a manner that is consistent with the Federal acts and regulations promulgated under those acts."  3 *Pa. Stat. and Cons. Stat. Ann.* §5736(a).  This statute has no bearing because Plaintiffs have not cited a Pennsylvania state identity standard.

[50]*See Estate of Witthoeft v. Kiskaddon*, 733 A.2d 623, 626-27 (Pa. 1999) ("The violation of a statute and the fact that some person suffered harm does not automatically give rise to a private cause of action in favor of the injured person. This court will not engraft a private cause of action onto the statute without further guidance from the General Assembly.").

[51]*See* 1 *Pa. Stat. and Cons. Stat. Ann.* §1933 (when statutes conflict, "the special provisions shall prevail and shall be construed as an exception to the general provision").

identify or plead a state identity standard as the basis for this claim.  The only "Identity Standard" referenced throughout the Complaint[52] and in the breach of contract count is the FDA Identity Standard—21 C.F.R. §165.110(a)(2)(vi).  [¶¶848, 852].  Both claims are impliedly preempted because liability cannot be established without solely applying the FDA Identity Standard.

As this Court discerned in dismissing the initial complaint, this case remains "similar to" *Loreto v. Procter & Gamble Co.*, 515 F. App'x 576 (6th Cir. 2013), in which plaintiffs alleged violations of state consumer laws "because the [product] label did not comply with FDCA requirements."  [Doc. 141 at 18].  The *Loreto* plaintiffs' claims were dismissed as impliedly preempted because their liability theory "depends entirely upon an FDCA violation—*i.e.*, the *only* reason [the] products were allegedly illegal was because they failed to comply with FDCA labeling requirements."  [*Id.* (quoting 515 F. App'x at 579)].  As in *Loreto*, in their initial complaint and in this Complaint, Plaintiffs' state-law claims allege "Poland Spring water does not comply with federal law" because it does not "comply with the federal standard of identity for spring water" [Doc. 141 at 3]:  "none of the water bottled as Poland Spring Water was found compliant with the Identity Standard [21 C.F.R. § 165.110 (a)(2)(vi)]."  [¶¶841, 860, 872, 885, 896, 911, 935, 959, 983, 1007, 1028].  "Each and every one of plaintiffs' claims [is] wholly FDCA-dependent" [Doc. 141 at 17], as it "require[s] referring to, [and] applying" the FDA Identity Standard and "can[not] be resolved with reference to state law alone," *Salmon Case*, 42 Cal. 4th at 1097.  Where, as here, Plaintiffs' "persistent allegations" that Poland Spring®'s labeling violates the FDA Identity Standard "indicates that [their] true purpose is to privately enforce alleged violations of the FDCA," their claims are impliedly preempted.  *Verzani v.*

---

[52] ¶¶44, 49, 54, 57, 59, 78, 81-84.

*Costco Wholesale Corp.*, No. 09 CIV 2117 CM, 2010 WL 3911499, at *3 (S.D.N.Y. Sept. 28, 2010), *aff'd*, 432 F. App'x 29 (2d Cir. 2011).[53]

### III. Plaintiffs' Claims Are Barred By Express And Conflict Preemption Under The FDCA

Foods sold in interstate commerce, such as bottled water,[54] must comply with federal source approval requirements (21 C.F.R. Part 129) and federal standards of identity (21 C.F.R. §165.110). 60 Fed. Reg. at 57078-79. The states directly enforce bottled water safety and sanitary quality under Part 129, which regulates the processing, bottling, labeling, and sale of bottled water. 21 C.F.R. §129.1; 58 Fed. Reg. 393, 394 (Jan. 5, 1993). It is well-established, however, that Congress may allow states to regulate one aspect of a food, but not other aspects of the same food. *Nemphos v. Nestle Waters N. Am., Inc.*, 775 F.3d 616, 619 (4th Cir. 2015). One such matter is food labeling enforcement, which "Congress has indicated requires the FDA's expertise and uniformity in administration." *Hood v. Wholesoy & Co.*, No. 12-cv-5550-YGR, 2013 WL 3553979, at *5 (N.D. Cal. Jul. 12, 2013).

"One of the FDA's crucial tools in its regulatory effort is the standard of identity." *Nemphos*, 775 F.3d at 623. "A standard of identity specifies the defining characteristics of a given food," "regulat[ing] the ingredients of a food and its representation in interstate commerce" to ensure "that consumers will get what they may reasonably expect to receive." *Id.* at 621, 622. The FDA alone is authorized by Congress to establish "a reasonable definition and

---

[53] Plaintiffs concede in their Complaint that their "claims herein rest entirely on the three misrepresentations on Nestlé Waters' Poland Spring Water labels" alleged in paragraphs 101–103 of the Complaint. [¶106] These allegations, that Poland Spring® is not spring water [¶101], that Poland Spring® is not sourced from genuine springs [¶102], and that Poland Spring® labels misleadingly depict springs, all depend entirely on the premise that Poland Spring® fails to meet the FDA Identity Standard for the reason that Poland Spring® does not "meet all federal regulatory standards." [¶106].

[54] "Food" "includes bottled water." *Chicago Faucet Shoppe, Inc. v. Nestlé Waters N. Am. Inc.*, 24 F. Supp. 3d 750, 758 (N.D. Ill. 2014). Bottled water is "water that is intended for human consumption and that is sealed in bottles or other containers with no added ingredients except that it may optionally contain safe and suitable antimicrobial agents." 21 C.F.R. §165.110(a)(1).

standard of identity" for foods like bottled water, *id.* at 620 (quoting 21 U.S.C. §341), and to enforce that standard by declaring "misbranded" any food product represented to be a given food if it fails to conform to that FDA-prescribed standard, *id.* at 621 (quoting 21 U.S.C. §343(g)).

In 1995, the FDA adopted 21 C.F.R. §165.110, establishing bottled water standards of identity, including spring water. *See* 21 C.F.R. §165.110(a)(2)(vi). Congress has permitted State Regulators to enforce these uniform identity standards. *See* 21 U.S.C. §337(b). Exercising their enforcement authority, State Regulators have authorized NWNA to label and sell Poland Spring® as "spring water" based upon their determinations that Poland Spring® meets the FDA Identity Standard. Plaintiffs' claims seek to permanently enjoin and declare unlawful the very conduct authorized by these State Regulators. However, Plaintiffs' claims are preempted.

Under the Supremacy Clause, "Congress has the power to preempt state law," *Arizona v. United States*, 567 U.S. 387, 399 (2012), including state-law damage claims. *See Geier v. Am. Honda Motor Co.*, 529 U.S. 861, 881 (2000). The intent of Congress is the "ultimate touchstone" of preemption. *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996); *Galper v. JP Morgan Chase Bank, N.A.*, 802 F.3d 437, 443 (2d Cir. 2015). Congress manifests its intent through "the express language of a federal statute," as well as "the scope, structure, and purpose of the federal law." *N.Y. SMSA Ltd. P'ship v. Clarkstown*, 612 F.3d 97, 104 (2d Cir. 2010). In this case, both the express language of the FDCA, and the scope, structure, and purpose of the FDCA and the FDA Identity Standard, evince Congress' clear intent that government regulators—not private citizens—interpret and enforce the FDA Identity Standard.

As Plaintiffs' Complaint illustrates, determinations of compliance with the FDA Identity Standard involve the complex sciences of geology, hydrogeology, and water chemistry. [*See generally* ¶¶108-148]. In establishing the FDA Identity Standard, the FDA relied on the

scientific knowledge and expertise of "appropriate regulatory officials" to make compliance determinations.  Given the exclusive role played by these "appropriate regulatory officials," Congress did not intend for private litigants to second-guess the FDA's or State Regulators' compliance determinations by pursuing private state law causes of action.  Accordingly, Plaintiffs' state-law claims should be dismissed.

## A.  The Federal Enforcement Scheme For Food Standards Of Identity

Congress expressly provided in the FDCA for exclusive enforcement of food standards of identity by government regulators—not private litigants.  The FDCA not only provides "all such proceedings for the enforcement, or to restrain violations" of standards of identity "shall be by and in the name of the United States," but grants the FDA significant enforcement tools for misbranded products.[55]  21 U.S.C. §337(a).

In 1990, Congress enacted the Nutrition Labeling and Education Act of 1990, Pub. L. No. 101-535, 104 Stat. 2353, to "build[] on the FDCA to develop a nationwide system of uniform nutrition labeling for covered foods."  *Nemphos*, 775 F.3d at 620.  Congress balanced the interests of consumers and food manufacturers, providing the former with new labeling disclosures and the latter with "uniformity of law in a number of important areas—such as standards of identity" to enable them to operate more efficiently and cost-effectively.  136 Cong. Rec. 35095 (1990).  Concluding "it is wrong to burden the manufacturer with the fear of potentially 50 different lawsuits from 50 different State attorneys general," 136 Cong. Rec. 33428 (1990), Congress specifically included in the FDCA a "broad preemption provision prohibit[ing] states from imposing *any* requirement 'for a food which is the subject of a standard

---

[55]*See* 21 U.S.C. §332(a) (injunctive relief); *id.* §333(a) (criminal penalties); *id.* §334(a), (h) (detention and seizure of products); *id.* §335a(b) (debarment); *id.* §337(a) (expanded subpoena power).

of identity' that is not identical to the federal standard."[56]  *Chicago Faucet*, 24 F. Supp. 3d at 758-59; *see* 21 U.S.C. §343-1(a)(1).  "Congress decided that even though Federal requirements may preempt more restrictive State requirements," the benefits to interstate commerce from national uniformity outweigh any potential loss in consumer protection.  *Nemphos*, 775 F.3d at 620; 60 Fed. Reg. at 57120.  As a result, the FDA has been statutorily charged to achieve "the all-around benefits of uniform food labeling."  *Nemphos*, 775 F.3d at 623.

In recognizing the need for "a single, integrated, and coordinated system," 136 Cong Rec. 33429 (1990), Congress authorized the states to petition the FDA to authorize them to "bring in its own name and within its jurisdiction proceedings for the civil enforcement, or to restrain violations," of a standard of identity.  21 U.S.C. §337(b).  Congress also authorized the states, but not individuals, to petition the FDA for exemption from Section 343-1(a).  56 Fed. Reg. 28592, 28616 (Jun. 21, 1991); 58 Fed. Reg. 2462, 2462 (Jan. 6, 1993).

## B.  The Federal Enforcement Scheme For The FDA Identity Standard

In 1995, the FDA established a bottled water standard of identity to address the "need for uniform labeling standards to prevent or eliminate inconsistent State labeling requirements." *Nemphos*, 775 F.3d at 623.  Finding "different State requirements for labeling and testing water impose a significant burden on interstate commerce," the FDA concluded "[a] uniform Federal definition will ensure that consumers will be able to purchase bottled water products that are informatively and consistently labeled throughout the country."  58 Fed. Reg. at 395.  In adopting the FDA Identity Standard, 21 C.F.R. §165.110(a)(2)(vi), the FDA "determined that a requirement to demonstrate the hydraulic connection between the bore hole and the spring's

---

[56]*See Turek v. Gen. Mills, Inc.*, 662 F.3d 423, 426 (7th Cir. 2011) ("It is easy to see why Congress would not want to allow states to impose disclosure requirements of their own on packaged food products, most of which are sold nationwide.  Manufacturers might have to print 50 different labels, driving consumers who buy food products in more than one state crazy."), *aff'g* 754 F. Supp. 2d 956 (N.D. Ill. 2010).

natural orifice is necessary for the efficient enforcement of the [FDCA]" and that "manufacturers <u>must be able to demonstrate, upon request, to regulatory officials</u> that there is a measurable hydraulic connection between the natural spring and the bore hole."  60 Fed. Reg. at 57096 (emphasis added).

While "in all cases the processing and bottling of drinking water must comply with [21 C.F.R.] part 129" source approval requirements, there is no mandatory requirement that a state must enforce the FDA Identity Standard.  60 Fed. Reg. at 57097-98.  However, if a state elects to enforce the FDA Identity Standard, it must enforce identical requirements.  *Id.* at 57097; *see* 21 U.S.C. §343-1(a)(1).  In a February 10, 2017 guidance letter, the FDA confirmed the role of State Regulators in enforcing the FDA Identity Standard, as provided by Congress in the FDCA:

> If the state certification requirements [for designating bottled water as "spring water"] are consistent with those in [the FDA Spring Water Identity Standard], documentation that a firm is required to provide to the state would help demonstrate compliance with [that Identity Standard and] [i]f the water and its source satisfy [the requirements] for 'spring water' in [that Identity Standard], then the use of the term 'spring water' on the [Poland Spring®] product label would be appropriate.  [Doc. 53-3 at 6].

### C.  Plaintiffs' State-Law Claims Are Expressly Preempted

Congress declared its clear and manifest intent to bar Plaintiffs' state-law claims seeking to enforce their interpretation of the FDA Identity Standard when it enacted 21 U.S.C. §343-1(a)(1) to expressly preempt all state-law claims imposing "any conflicting state-law obligation" for the identity of spring water "to ensure a nationally uniform regulatory system rather than a fifty-state patchwork."  *Nemphos*, 775 F.3d at 621, 625.  21 U.S.C. §343-1(a)(1) provides:

> …**[N]o State** or political subdivision of a State **may directly or indirectly establish** under any authority or continue in effect as to any food in interstate commerce -- (1) **any requirement for food which is the subject of a standard of identity** established under section 341 of this title **that is <u>not identical to</u> such standard of identity**…. [(Emphasis added.)]

As "the language of the statute plainly indicates that Congress intended preemption, we must give effect to the plain language...."  *In re PepsiCo, Inc. Bottled Water Mktg. & Sales*

*Practices Litig.*, 588 F. Supp. 2d 527, 530 (S.D.N.Y. 2008). "[S]ubsection (a)(1) uses the unequivocal phrase **'not identical to' the standard of identity.** It does not say any state requirement merely 'differing from,' 'conflicting with,' 'inconsistent with,' or 'dissimilar to' the federal requirement. Nor does the statute employ here the more limited phrase 'in violation of'—as it does regarding the petition process, later in the same section." *Nemphos*, 775 F.3d at 621 (emphasis added). Furthermore, the preponderating term "requirement" "sweeps broadly," *Turek*, 754 F. Supp. 2d at 958 (quoting *Cipollone v. Liggett Group*, 505 U.S. 504, 521 (1992)), and "must be read broadly [to] include[] statutes, regulations, standards, and other obligations arising from state law," such as damage and injunctive relief claims, *Nemphos*, 775 F.3d at 624.

First and foremost, the FDCA expressly preempts Plaintiffs' state-law claims because they impose a requirement that is not identical to the FDA Identity Standard's requirement that NWNA "shall demonstrate, on request, to appropriate regulatory officials, using a hydrogeologically valid method, that an appropriate hydraulic connection exists between the natural orifice of the spring and the bore hole." 21 C.F.R. §165.110(a)(2)(vi) (emphasis added). Plaintiffs' claims impose the non-identical requirement that NWNA must instead demonstrate hydraulic connections to Plaintiffs and, ultimately, a federal judge or jury, whom Plaintiffs assert should decide their claims for permanent injunctive relief and damages.[57] The text of the FDA Identity Standard FDA unambiguously mandates that compliance be demonstrated to and determined by "appropriate regulatory officials," not private plaintiffs. Plaintiffs' state-law injunctive relief and damage claims impermissibly attempt to regulate NWNA's conduct by requiring it to demonstrate compliance to a federal judge and jury under penalty of a money damages award and a permanent injunction from labeling and selling Poland Spring® as "spring

---

[57]Plaintiffs allege hydraulic connections between NWNA's boreholes and springs do not exist because pump tests were flawed [¶67] and hydrogeology reports "never validly measured or proved that its wells (i) are hydraulically connected to its alleged springs" [¶¶67, 74, 91, 204, 308, 409, 577, 591, 626, 675, 725, 777].

water."[58]   *See Cipollone*, 505 U.S. at 521 ("[S]tate regulation can be as effectively exerted through an award of damages as through some form of preventive relief.  The obligation to pay compensation can be, indeed is designed to be, a potent method of governing conduct and controlling policy.").  Accordingly, the FDCA expressly preempts their state-law claims.

A separate and independent reason for preemption on this score is the Supreme Court's recognition that juries do not balance competing interests with the same degree of care and judgment as State Regulators.  *See Riegel v. Medtronic, Inc.*, 552 U.S. 312 (2008).  In concluding that state-law claims were expressly preempted by the Medical Device Amendments of 1976 to the FDCA, the Court explained that juries do not exact the learned, careful scrutiny of government regulators.  *Id.* at 325.  The Court reasoned that whereas under state laws, State Regulators could be expected to engage in a cost-benefit analysis balancing the interests of consumers and manufacturers, a jury is only concerned with the interests of consumers.  *Id.* at 324.  For this reason, the Court concluded common-law duties constitute state "requirements" because it was "implausible" to believe Congress could have intended the "perverse distinction" of permitting a single state jury more power than state officials to establish and enforce regulatory standards.  *Id.*

Plaintiffs' state-law injunctive relief and damage claims are grounded in the same "perverse distinction" rejected in *Riegel*, as they seek to substitute the judgment of a federal judge and jury for that of State Regulators, who not only have been entrusted by Congress and the FDA with enforcing compliance with the FDA Identity Standard, but have determined that Poland Spring® is spring water compliant with that standard.  Plaintiffs plead State Regulators

---

[58] ¶¶846, 856, 867, 880, 890, 903, 929, 954, 977, 1002, 1021, 1036; *see Hearring v. Sliwowski*, 806 F.3d 864, 867 (6th Cir. 2015) (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 32 (2008) (injunctions "change the party's behavior through the power of the federal courts")); *Atlantis Cmty. Inc. v. Adams*, 453 F. Supp. 825, 831 (D. Colo. 1978) ("The enforcement of a prohibition of conduct is the traditional purpose of the injunctive remedy.").

ensure compliance with the FDA Identity Standard [¶796], but allege Maine Regulators "have historically misinterpreted and misapplied the FDA Identity Standard when processing [NWNA's] spring water extraction and transportation permits" for Poland Spring® [¶86] and have been so "lax and ineffective" that permits have been "wrongly granted" [¶91]. Into this alleged breach step Plaintiffs, seeking judicial license to conduct their own inspections and hydrogeological tests—based on their own interpretations of the FDA Identity Standard—and to supplant State Regulators from their authorized role in enforcing compliance. [¶¶85, 312, 580]. Plaintiffs, however, cannot use state law "to fill what [they] perceive to be gaps in the regulatory requirements imposed by federal law." *Chicago Faucet*, 24 F. Supp. 3d at 759. Preemption shields NWNA from "be[ing] whipsawed by federal regulations delineating permissible labeling and [Plaintiffs'] state-law claims of impermissibility." *Nemphos*, 775 F.3d at 626-27.

*La Vigne v. Costco Wholesale Corp.*, 284 F. Supp. 3d 496 (S.D.N.Y. 2018), aptly demonstrates why Plaintiffs' claims are expressly preempted. In that case, the court dismissed state-law claims seeking jury review of a regulatory agency's pre-market approval of the labeling of a food product. Alleging violations of New York GBL §349 and Massachusetts and Pennsylvania consumer protection statutes—the same laws pled here—plaintiffs claimed defendant falsely labeled its canned chicken product contrary to an agency regulation adopted pursuant to the federal Poultry Products Inspection Act ("PPIA"). *Id.* at 503. Plaintiffs argued the agency's pre-market approval was "plainly erroneous and inconsistent with the regulation" and that its review process "does not have sufficient indications of reliability to justify judicial deference to any finding" of compliance. *Id.* at 510-11. Rejecting this argument as "unpersuasive and unsupported by authority," the court held the state-law claims were expressly preempted because a jury verdict for plaintiffs "would directly conflict with the [agency's]

assessment" by requiring defendant to have made a labeling disclosure not required under federal regulations.[59]  *Id.* at 511.  As in *La Vigne*, since the enactment of the FDA Identity Standard in 1995, State Regulators have reviewed and approved NWNA's applications to sell Poland Spring® as "spring water" based on their determinations that Poland Spring® is "spring water" compliant with the FDA Identity Standard.  Their determinations "[are] entitled to preemptive effect," precluding Plaintiffs' attempt to have a federal judge and jury second-guess those determinations.  *Id.*

Plaintiffs' attempt to challenge State Regulators' authority and supersede their compliance determinations is but one of several non-identical, preempted requirements imposed by their Complaint, which makes a legal argument in alleging violations of the "Identity Standard" they define as 21 C.F.R. §165.110(a)(2).[60]  [¶54].  As their redefined "Identity Standard" departs markedly from 21 C.F.R. §165.110(a)(2)(vi) by attempting to impose the following additional or different requirements for labeling spring water, their state-law claims are expressly preempted.

**"Seeps are not springs."**  Plaintiffs contend that if groundwater "seeps diffusely to the earth's surface" or does not have a "perceptible current at the spring's orifice," it is not a spring because it does not meet "consumer expectations" or the "common and scientific understanding of what constitutes a spring."[61]  [¶56].  They allege groundwater 'seeps' are not springs [¶¶56,

---

[59] *See also Brower v. Campbell Soup Co.*, 243 F. Supp. 3d 1124, 1129 (S.D. Cal. 2017) (dismissing as preempted state-law claims challenging an agency's pre-approval of defendant's product label because "a jury could conclude that the labels should disclose more information or employ different language, in which case it would introduce requirements in addition to or different from those imposed by the [agency]."); *Meaunrit v. Pinnacle Foods Grp., LLC*, No. C 09-4555 CW, 2010 WL 1838715, at *7 (N.D. Cal. May 5, 2010) (dismissing as preempted state-law claims challenging an agency's pre-approval of defendant's product label because "it does not follow that a jury would evaluate Defendant's labels in the same fashion as the [agency].").

[60] ¶¶64, 108, 184, 191, 323, 334, 394, 399, 412, 443, 448-50, 520, 535, 569, 590, 654, 701, 708, 751-53, 790, 795, 841.

[61] ¶¶213, 232, 234, 240-41, 333, 358, 385, 424, 489-90, 559-60, 603, 606, 622, 668, 684, 693, 695, 725, 732-33, 772. It is of no moment that Plaintiffs created this additional requirement in the name of "consumer expectations" or

606] and that a spring "cannot be a diffuse groundwater emission that merely seeps onto or wets the ground and does not flow from the earth in a perceptible way" [¶¶137, 138].

Plaintiffs' non-identical requirement that "seeps are not springs" is not found in the FDA Identity Standard, which requires only that water flow to the surface of the earth and does not specify that it must "perceptibly flow" or that the flow must be measurable once it reaches the surface.[62]   Water derived from an underground formation where water naturally flows to the earth's surface is spring water under the FDA Identity Standard.   Once the water flows to the earth's surface, there is no legal requirement that spring water come out at any particular speed or flow rate.   A "seep" that starts a stream is a spring, and Plaintiffs' legal contentions that a "perceptible current" must be measured or seen flowing through a "visible channel" [¶¶56, 63(a)], or that there is no "natural orifice" if water flows imperceptibly between grains of sand [¶138], cannot change that fact.   As Plaintiffs' claims are premised on a "seeps are not springs" requirement not found in the FDA Identity Standard, they are expressly preempted.

**"Same stratum."**   The FDA Identity Standard provides spring water collected with external force "shall be from the same underground stratum as shown by a measurable hydraulic connection using a hydrogeologically valid method…."   21 C.F.R. §165.110(a)(2)(vi).   This functional definition—proving water is from the same aquifer[63] or hydrologic stratum by showing there is a hydraulic connection—avoids technical quibbles about individual layers of sand or silt.   However, Plaintiffs ignore the FDA Identity Standard's requirement that whether water from a borehole is from the "same underground stratum as the spring" is determined solely

---

"common and scientific understanding."   They cannot rewrite the FDA Identity Standard to add additional requirements based on "consumer expectations" or what they claim is "common and scientific understanding."
[62]NWNA does not concede that water does not flow at its sites after it emerges from the surface.
[63]*See* 60 Fed. Reg. at 57091 (FDA defining "aquifer" by reference to stratum:  "An aquifer is a porous rock stratum that yields water in a usable quantity to a well or spring."); *see also* 60 Fed. Reg. at 57093 (hydraulic connection is important, as a borehole could "tap another water bed far below the aquifer feeding the natural spring").

by a "measurable hydraulic connection using a hydrogeologically valid method between the bore hole and the natural spring." *Id.* Plaintiffs plead "same underground stratum" is a different or additional requirement to "measurable hydraulic connection,"[64] but the FDA Identity Standard equates the two: "Spring water collected with the use of an external force shall be from the same underground stratum as the spring, as shown by a measurable hydraulic connection using a hydrogeologically valid method between the borehole and the natural spring...." *Id.* (emphasis added). Nowhere did the FDA indicate that regulators were to distinguish between layers of sand and gravel, deposited when meltwater of glaciers flowed faster or slower 13,000 years ago. The FDA Identity Standard provides that if pumping on the borehole shows a measurable impact at the spring, that measurable hydraulic connection establishes the water is from the same underground stratum. Plaintiffs' claims, based on their geologist's distinguishing underground layers of glacial deposits based on an analysis that is separate from, or additional to, a measurable hydraulic connection, is a non-identical requirement, resulting in preemption.

**"Same path."** Plaintiffs' construct of the FDA Identity Standard includes a requirement that water collected through the borehole must be intercepted on a direct and "very narrow flow path" to the spring; that it "draw[] from the exact same water flow that naturally emanates from the springs" [¶77]; that it be collected uphill or "up-gradient from the spring, capturing water *before* it emerges" [¶297 (emphasis in original)]; and that it not be from any deeper in the same aquifer than from the spring.[65] Plaintiffs' "same path" requirement is not part of the FDA Identity Standard. Plaintiffs claim their "same path" requirement prohibits drawing more water through a borehole than would naturally flow from the spring, but the FDA specifically **rejected** their theory. In considering whether allowing borehole use would "enable the pumping of larger

---

[64] ¶¶28, 59(i), 170, 243, 250-51, 294, 380, 429, 432-33, 520, 577, 637, 639, 646.
[65] General application: *see* ¶¶63(b), 65, 76, 77, 120, 126, 297. Specific application: *see* ¶¶196, 252, 393, 488, 636, 742.

volumes of water from a stratum" compared to a spring's natural discharge, the FDA decided not to "restrict the amount of water that may be extracted."  60 Fed. Reg. at 57095.  If Plaintiffs' "same path" requirement were imposed as law, the amount of water being bottled would be restricted:  water could only be bottled if it traveled the exact same path to the spring, and there would be no way to capture additional water from the aquifer.  The FDA did not include Plaintiffs' proposed "same path" requirement in the FDA Identity Standard.

**"Higher rates than the alleged springs could have flowed naturally."**  Plaintiffs argue wells should not be pumped at "high rates ... much higher rates than those at which the alleged 'springs' could have flowed naturally," meaning there is no "valid" proof of hydraulic connection.[66]  This new requirement—hydraulic connection testing can only pump at a rate "commensurate" with the original spring flow—was **twice rejected** by the FDA.  The FDA did not limit the volume of water that could be pumped, as long as the other elements of the standard are met; if Plaintiffs' requirement were law, pumping would be limited to the rate of spring flow. *Id.*  Nor did the FDA restrict the method used to determine a hydraulic connection—only that a "hydrogeologically valid method" must be used.  *Id.* at 57092-93.

**"Identical match"/"no difference"/"cannot be older water."**  Plaintiffs' claim the FDA Identity Standard includes a requirement that there be "no difference" in any characteristic between water from the spring and the borehole.  [¶¶63(b), 632].  According to Plaintiffs, water that is "older" or "deeper," "shows differences," or is "more dilute" is not spring water.[67]  Plaintiffs contend "the well must be up-gradient from the spring" and the water from boreholes

---

[66]*See, e.g.*, ¶¶59 n.2, 67, 777-78.

[67]Plaintiffs attempt to attack NWNA's showing of "compelling evidence of a similarity," "strong chemical similarity," "direct...geochemical match," "geochemical similarity," and that water samples were "essentially the same" or "very similar."  [¶¶387, 411, 498, 633, 679].

"must be 'newer' water that the spring's water.  It cannot be older water."[68]  Plaintiffs fail to recognize there are "differences" because natural waters are never exactly the same.[69]  Responding to a comment that "these requirements are too general and are undefined, leaving many questions relative to acceptable differences," the FDA stated:  "In regards to methods of testing for comparative purposes, one or more hydrogeologically valid methods may be used as appropriate to verify that the product is in compliance.  However, not all methods may be suitable for different geologic regions or for the specific bore hole site.  Therefore, the agency is not recommending or requiring any specific method or methods."  *Id.*  Regulators and hydrogeologists know that "same" in the context of natural waters is not a question of precise mathematical equivalence.  *Id.* at 57093.  The FDA was unconcerned that the requirement of "same" composition and quality would be construed as unduly restrictive, as only the FDA and State Regulators can enforce the FDA Identity Standard.  *See* 21 U.S.C. §337.  After reviewing the same chemistry information and analytical reports cited in the Complaint, State Regulators in all nine states granted NWNA permits to bottle Poland Spring® as spring water.  If the differences  alleged by Plaintiffs violated the FDA Identity Standard, no licenses would have been issued.[70]  Plaintiffs cannot impose new and different requirements by asking this Court to enforce their interpretation of the FDA Identity Standard, after the State Agencies charged with its enforcement concluded the water is similar enough to be labeled spring water.[71]

---

[68] ¶¶279, 297, 305, 393, 507, 567, 773, 779, 784-85, 790.
[69] *See, e.g.,* Doc. 73-2 (Plaintiffs' expert declaration, seeking early site inspections in late fall because of predictable seasonal variations in water characteristics).
[70] *See* ¶¶279, 296, 507, 791.
[71] *See Wachovia Bank, N.A. v. Burke*, 414 F.3d 305, 314-15 (2d Cir. 2005) (applying *Chevron* deference to agency interpretation), *cert. denied sub nom.*, *Burke v. Wachovia Bank, N.A.*, 550 U.S. 913 (2007); *see, e.g.*, *N.Y. State Rest. Ass'n v. N.Y. City Bd. of Health*, 556 F.3d 114, 126 (2d Cir. 2009) (deferring to FDA interpretation).

-48-

**New testing regime.**   Plaintiffs claim State Regulators are required to perform "independent" tests to verify NWNA's Maine spring sites' compliance with the FDA Identity Standard.[72]  This new regulatory regime imposes different requirements and is preempted.[73]

**"Altered natural orifice."**   Plaintiffs claim the place where water comes out of the ground has at some sites been altered, such as at Fryeburg, where a man-made rock wall borders the spring pool.  [¶555].  Citing no legal authority, Plaintiffs seem to assert that any alteration of the original spring orifice disqualifies the water from being labeled spring water.  Not only did the FDA recognize springs can be altered from their original natural state, it anticipated that this would often be the case, as those producers who bottle from the natural orifice will need to alter it to properly engineer the collection and avoid outside contamination.[74]

**Proximity of Wells to Surface Water.**   Plaintiffs claim certain boreholes are too close to and collect surface water.[75]  The FDA rejected Plaintiffs' attempted "proximity" requirement. *See* 60 Fed. Reg. at 57093 (rejecting adjacency requirement).  As the FDA Identity Standard does not include any reference to surface water or undue influence of surface water, there is no such requirement.  The FDA does regulate and test for direct influence of surface water, focusing on water quality.[76]  The FDA specifically rejected a rule that focused on whether surface water contributed recharge to the underground aquifer.  *Id.*  By imposing their own "proximity" and "surface water" requirements, Plaintiffs are creating additional, non-identical requirements.

---

[72]¶¶94, 100, 255, 411, 468, 509, 647-48.
[73]*Cf. In re Whole Foods Market, Inc.*, 163 F. Supp. 3d 385, 393 (W.D. Tex. 2016) (holding the FDCA preempts claims seeking to impose liability based on a different testing methodology than that provided under the FDCA).
[74]*See* 60 Fed. Reg. at 57090 ("frequently, physical alteration of the natural orifice also must be undertaken."); *id.* at 57091 ("there must be appropriate development of an approved source, whether the water is to be collected at the natural orifice or with the use of a bore hole.").
[75]¶¶9, 30, 145-48, 183, 187, 252, 289-90, 312, 322, 353, 455, 521-22, 534-35, 650, 706, 708.
[76]*See* 60 Fed. Reg. at 57097 (citing EPA Safe Drinking Water rule, 40 C.F.R. §141.2).

**Purifying Water.** Plaintiffs allege NWNA may be purifying water and should label its water from two sites as "purified" because of alleged removal of radon or manganese.[77] Plaintiffs' requirement that water cannot be spring water unless it has been completely unaltered not only does not exist in the FDA Identity Standard, but was specifically rejected by the FDA, which determined that normal processing does not preclude water from being spring water.[78]

**Municipal Source Labeling.** Plaintiffs try to impose a requirement that Poland Spring® cannot be labeled as spring water, but must be labeled "from a municipal source," by alleging NWNA buys water from a public utility that supplies tap water to a community using a different well and that the well "provided tap water before the public utility devoted it to supplying Defendant's bulk water purchases and still serves as a backup public supply well."[79] The FDA has never required that bottled water be labeled "from a municipal source" merely because of local government ownership of the source; such labeling is required only if the source is used "primarily" to supply a system serving at least 15 service connections. *See* 40 C.F.R. §141.2. Plaintiffs' non-identical requirement for municipal source labeling is expressly preempted.

**Maps and Photos.** Plaintiffs claim a spring must be evidenced by "photographic proof" and/or marking on a map by the State of Maine Geological Survey or U.S. Geological Survey, but once again, the FDA Identity Standard contains no such requirement.[80]

In alleging their vision for what spring water is or should be, Plaintiffs' dense and prolix Complaint adds additional or different requirements that are not found in 21 C.F.R. §165.110(a)(2)(vi) and which render their claims expressly preempted. 21 U.S.C. §343-1(a)(1).

---

[77]¶¶12, 317, 318, 368.
[78]*See* 60 Fed. Reg. at 57098 ("[W]ater meeting the definition of 'spring water' in §165.110(a)(2)(vi) would remain spring water after treatment, even if the physical properties and chemical composition of the water are altered from such treatment.").
[79]¶¶31, 79, 542, 546-47, 588, 590.
[80]*See* ¶¶350-52, 456, 543, 599, 664, 718 (alleging absence of markings on maps); ¶¶93, 267, 275, 365, 405, 408, 424, 562, 606, 640, 642, 682, 739, 771 (alleging absence of photos in reports).

**D.  Plaintiffs' State-Law Claims Are Conflict-Preempted**

A separate and independent ground for dismissal of Plaintiffs' state-law claims arises from their direct and unavoidable conflict with the federal enforcement scheme exclusively authorizing government regulators—not private litigants—to enforce compliance with the FDCA and the FDA Identity Standard.  *See Altria Grp., Ltd v. Good*, 555 U.S. 70, 76 (2008) ("[S]tate laws that conflict with federal law are without effect").  Implied conflict preemption occurs where state laws "stand[] as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress."  *Marentette v. Abbott Labs.,* 886 F.3d 112, 117 (2d Cir. 2018) (quoting *Arizona v. United States*, 567 U.S. 387, 399 (2012)), *aff'g* 201 F. Supp. 3d 374 (E.D.N.Y. 2016).  "What constitutes a sufficient obstacle is a matter of judgment, to be informed by examining the federal statute as a whole and identifying its purpose and intended effects."  *Id.*

Plaintiffs' state-law claims completely "disrupt the federal scheme" under which Congress intended exclusive government enforcement of the FDCA, and in particular, FDA identity standards.  *Riegel*, 552 U.S. at 325.  Pursuant to the FDA Identity Standard, the "appropriate regulatory officials" in nine states have reviewed NWNA's applications to sell Poland Spring®—complete with Poland Spring's® "spring water" labels and supporting hydrogeological reports—and approved the sale of Poland Spring® as "spring water" complying with the FDA Identity Standard.  Plaintiffs' claims, seeking to permanently enjoin and have declared unlawful the sale of Poland Spring® as spring water because it is not compliant with the FDA Identity Standard, directly and unavoidably conflict with the FDA's and State Regulators' certification and approval process and "would disrupt the federal regulatory scheme."  *Meaunrit*, 2010 WL 1838715, at *7.

The conflict posed by Plaintiffs' claims is particularly acute given that the FDA has devised a comprehensive regulatory scheme for enforcing the FDA Identity Standard that has

struck a balance between competing statutory objectives.  *Farina v. Nokia, Inc.*, 625 F.3d 97, 123 (3d Cir. 2010), *cert. denied*, 565 U.S. 928 (2011).[81]  The FDA balanced the competing statutory objectives of national uniformity, consumer protection, and interstate commerce by providing for exclusive enforcement of the FDA Identity Standard by "appropriate regulatory officials" rather than private plaintiffs.  Plaintiffs' claims divest the FDA of its congressional mandate "to use its reasoned judgment" to weigh relevant considerations and prioritize those objectives.  *Id.*

The principles recently applied by the Second Circuit in *Marentette*, 886 F.3d 112, illustrate why Plaintiffs' state-law claims, seeking to "second guess" State Regulators' certification processes and spring water compliance determinations, are conflict-preempted.  *In re Aurora Dairy Corp. Organic Milk Mktg. & Sales Practices Litig.*, 621 F.3d 781, 795 (8th Cir. 2010).  In *Marentette*, plaintiffs alleged defendant falsely labeled its infant formula product as organic in violation of state common law and consumer protection statutes.  Defendant argued the claims were impliedly preempted based on a conflict between the federal law—the Organic Foods Production Act ("OFPA"), authorizing the labeling of its formula as organic based on compliance with a certified organic plan—and plaintiffs' state-law claims, seeking to impose liability for defendant's organic labeling.  Dismissing the state-law claims as conflict-preempted, the district court concluded plaintiffs' challenge to the organic label amounted to a challenge to the certification determination made pursuant to the United States Department of Agriculture's ("USDA") certification process and thereby posed an obstacle to Congress's intent in enacting the OFPA.  *Id.* at 114.  The Court of Appeals agreed that "[t]here is simply no way to rule in

---

[81]*See, e.g., Geier*, 529 U.S. at 881 (state-law automobile design defect claim based upon the absence of an airbag held conflict-preempted by U.S. Department of Transportation regulation balancing competing statutory objectives by permitting manufacturers a range of passive restraint devices, as imposition of state-law liability would conflict with agency's policy choice); *Farina*, 625 F.3d at 133-34 (state-law claims challenging safety of cell phones' radio frequency emissions held conflict-preempted by FCC radio frequency regulations rather than permitting juries to second-guess the FCC's balancing of competing objectives).

[plaintiffs'] favor without contradicting the certification decision," and, through it, Congress' OFPA enforcement scheme. *Id.* at 118.

The Court of Appeals explained that Congress enacted the OFPA "to establish national standards governing the marketing of [organic] products; to assure consumers that organically produced products meet a consistent standard; and to facilitate interstate commerce" of organic products. *Id.* at 115. Congress accomplished these objectives by creating an organic certification process whereby products can be labeled and sold as organic if they comply with an organic plan certified by an accredited agent of the USDA. *Id.* at 115-16. A product cannot be labeled and sold as organic if the certifying agent does not confirm compliance. *Id.* at 116.

The Second Circuit found persuasive the Eighth Circuit's conflict preemption analysis in *Aurora*, which "emphasized that, 'viewed in light of the OFPA's structure and purpose, compliance and certification cannot be separate requirements.'" *Id.* at 117-18 (*quoting Aurora*, 621 F.3d at 796). In *Aurora*, 621 F.3d at 797, the Eighth Circuit held "all state-law claims which effectively challenge an OFPA organic certification are preempted by the OFPA because they directly conflict with the certifying agent's role as set out in that statute." *Marentette*, 886 F.3d at 117. Applying *Aurora*'s holding in *Marentette*, the Second Circuit held the OFPA preempted plaintiffs' claims that defendant's lawfully-certified infant formula "was not OFPA-compliant and was therefore falsely labeled." *Id.* at 118. The Court rejected plaintiffs' contention that their claim that the products violated the OFPA was somehow "distinct" from a claim that defendant falsely obtained its organic certification, reasoning it "undermine[d] Congress's purpose in enacting the OFPA, because it demands adjudication of a product's organic status separate and apart from the scheme Congress laid out in the law." *Id.* As deciding plaintiffs' claims alleging defendant violated the OFPA "requires the Court to look behind [the] certification granted

-53-

pursuant to a federal scheme," *id.* at 119, the Court found the claims "strike at the very heart of the OFPA certification process" and were conflict-preempted, *id.* at 118.

Importantly, the Second Circuit relied on the OFPA's enforcement scheme, "which allocates enforcement power to the federal agency and accredited agents," as demonstrating "Congress did not want to permit individual consumers to challenge certification decisions made pursuant to the OFPA." *Id.* at 120.  Not only did Congress grant the USDA investigatory authority, but also enforcement authority to police statutory violations. *Id.*  Citing the OFPA's lack of a private right of action, its enforcement scheme, and its purposes, the Court concluded Congress did not want individuals to challenge the merits of certification decisions. *Id.* at 121.

The striking symmetry between the FDCA and the OFPA compels the conclusion that Plaintiffs' state-law claims, like those in *Aurora* and *Marentette*, are conflict-preempted.  First, as with the OFPA, there is no private enforcement of the FDCA or the FDA Identity Standard. Not only did Congress decline to provide a private right of action to enforce the FDCA and FDA regulations and identity standards, it expressly <u>prohibited</u> private enforcement actions in Section 337(a), which the Supreme Court has stated "leaves no doubt" that only government regulators— not private litigants—are authorized to enforce the FDCA.  *Buckman*, 531 U.S. at 349 n.4.

Second, as with the OFPA, exclusive authority to enforce the FDCA and the FDA Identity Standard lies with government regulators—the FDA and State Regulators—not private citizens.  In lieu of private enforcement, Congress vested the FDA with significant investigatory and enforcement authority to police misbranded products.  "[S]ensitive to the regulatory roles played by the States," 136 Cong. Rec. 33427 (1990), Congress also authorized the States—not private litigants—to petition the FDA to be permitted to bring a proceeding in their own name to enforce or restrain violations of the FDCA.  21 U.S.C. §337(b).

Third, as with the OFPA, exclusive government enforcement serves the purposes of the FDCA and the FDA Identity Standard.  Congress sought under the FDCA to prevent state laws from interfering with interstate commerce—specifically by developing a nationwide system of uniform food labeling capitalizing on "the FDA's crucial tool[] in its regulatory effort [of] the standard of identity."  *Nemphos*, 775 F.3d at 619-20, 623.  Congress's purposes of facilitating interstate commerce through uniform national standards of identity were implemented through the adoption of the FDA Identity Standard creating an exclusive government enforcement scheme to ensure consistent, nationwide labeling and to prevent state requirements from "impos[ing] a significant burden on interstate commerce."  58 Fed. Reg. at 395.  The FDA permitted states not only to enforce source approval requirements, 21 C.F.R. §129.3(a), but also to elect to enforce the FDA Identity Standard.  21 U.S.C. §337(b).

The FDA Identity Standard expressly reflects Congressional intent that enforcement be solely by government regulators, not private plaintiffs.  In creating the FDA Identity Standard, the FDA explained that a "manufacturer[] must be able to demonstrate, upon request, <u>to regulatory officials</u> that there is a measurable hydraulic connection between the natural spring and the bore hole" or "it runs a significant risk that its product is misbranded … and will be the subject of a regulatory action."  60 Fed. Reg. at 57096.  Significantly, the FDA provided in the final sentence of 21 C.F.R. §165.110(a)(2)(vi) the requirement that "Plants shall demonstrate, on request, <u>to appropriate regulatory officials</u>, using a hydrogeologically valid method, that an appropriate hydraulic connection exists between the natural orifice of the spring and the bore hole."  (Emphasis added).  This express reference to "appropriate regulatory officials" of the FDA or the states makes clear that government regulators—not private plaintiffs—determine compliance with the FDA Identity Standard.  60 Fed. Reg. at 57097.  Plaintiffs' Complaint bears

this out in alleging states enforce compliance with the FDA Identity Standard.  [¶¶796, 799]. Consequently, when Maine Regulators, as well as other State Regulators, determined NWNA's Poland Spring® is from spring sources compliant with the FDA Identity Standard, the system worked exactly as Congress and the FDA designed.[82]

Therefore, as with the OFPA, the FDCA impliedly preempts Plaintiffs' state-law claims which, in challenging the determinations made by State Regulators certifying Poland Spring® to be sold as spring water, directly conflicts with the State Regulators' role as provided in the FDCA.  In alleging Poland Spring® has been misbranded as "spring water" because it does not comply with that standard, Plaintiffs' claims "undermine Congress's purpose" in enacting the FDCA by requiring a federal court and jury to not only "second guess the certification process" and determinations made by State Regulators, but to perform the role of State Regulators in deciding whether to permanently enjoin the sale of Poland Spring® as spring water.  *Aurora*, 621 F.3d at 795.

As in *Marentette*, 886 F.3d at 118, Plaintiffs' claims cannot be adjudicated in their favor "without contradicting the certification decision[s] [of State Regulators] and through it, the [FDA Identity Standard] certification scheme."  Allowing Plaintiffs to pursue state-law claims which directly conflict with State Regulators' certification decisions subjects the FDA Identity Standard to multifarious challenges under the common and statutory laws of all fifty states—thereby leading to conflicting interpretations and enforcement of the federal identity standard that would fragment uniformity and frustrate interstate commerce contrary to Congressional intent.  *Aurora*,

---

[82][*See* Doc. 53-3 at 13 (documenting Maine's regulatory determinations of compliance with 21 C.F.R. §165.110(a)(2)(vi) for all eight Poland Spring® sources), *id.* at 6 (FDA's February 10, 2017 guidance letter confirming State Regulators' role in determining compliance with 21 C.F.R. §165.110(a)(2)(vi))].

621 F.3d at 796-97.[83]  "Because determining whether Plaintiffs have meritorious state-law claims requires the Court [and a jury] to look behind [State Regulators' compliance] certification[s] granted pursuant to a federal scheme, those state-law claims are an obstacle to the federal scheme's objectives and are preempted."[84]  *Marentette*, 886 F.3d at 119.

### IV.  Plaintiffs' Statutory Claims Are Barred By Each State's Safe Harbor Exemption

Plaintiffs allege in Counts III through XII that consumer protection statutes in nine states have been violated because NWNA falsely labeled Poland Spring® as "100% Natural Spring Water."  [¶¶861, 873, 886, 897, 912, 938, 960, 984, 1010, 1030].  Each count is predicated upon the allegation that Poland Spring® is misbranded as "spring water" because it does not "comply with the federal standard of identity for spring water."  [¶¶860, 872, 885, 896, 911, 935, 959, 983, 1007, 1028].  In each state, the sale of bottled water is not only regulated, but State Regulators specifically authorized the sale of Poland Spring® as "spring water" after they determined it complied with the FDA Identity Standard.[85]  [Point I(A), *supra*].  Plaintiffs' attempt to utilize general consumer protection statutes to prohibit conduct that has been specifically approved and authorized pursuant to a regulatory regime administered by a dedicated regulatory agency would frustrate legislative intent and unavoidably lead to contradictory results.

---

[83]*See Organic Consumers Ass'n v. Hain Celestial Grp., Inc.*, 285 F. Supp. 3d 100, 108 (D.D.C. 2018) (OFPA conflict-preempts state consumer protection law claim "squarely obstruct[ing] the original Congressional vision of freely flowing interstate commerce enabled by a unified national standard."); *Birdsong v. Nurture, Inc.*, 275 F. Supp. 3d 384, 392, 393 (E.D.N.Y. 2018) (OFPA conflict-preempts state consumer protection law claims challenging OFPA certification decisions because it would lead to "differences in interpretation and enforcement" and thereby create "the very 'patchwork' of standards that the OFPA sought to eliminate" to promote interstate commerce).

[84]*See Trazo v. Nestlé USA, Inc.*, No. 5:12-cv-2272 PSG, 2013 WL 4083218, at *8 (N.D. Cal. Aug. 9, 2013) (dismissing, as conflict-preempted by the PPIA and the Federal Meat Inspection Act, state-law mislabeling claims challenging an agency's preapproval of the defendant's frozen meat products' labels because "[i]f a jury came to the same conclusion as the [agency], it would be a waste of effort; if a jury instead came to a different conclusion about the nature of the labels, the jury verdict would improperly 'trump' the [agency's] authority.").

[85]As to the Maine DWP's determination that Poland Spring® can be labeled and sold as "spring water" because it complies with the FDA Identity Standard, the FDA has confirmed that "[i]f the state certification requirements are consistent with 21 CFR 165.110" and "[i]f the water and its source satisfy [the requirements] for 'spring water' in 21 CFR 165.110, then the use of the term 'spring water' on the product label would be appropriate."  [Doc. 53-3 at 5-6 (February 10, 2017 FDA Letter)].

Regulated entities engaged in regulated conduct are entitled to "safe harbor" protection from state-law liability. *Tuohey v. Chenal Healthcare, LLC*, 173 F. Supp. 3d 804, 809 (E.D. Ark. 2016). Consequently, NWNA is entitled to a safe harbor exemption in each state, and Plaintiffs' state consumer fraud claims must be dismissed.[86]

**New Jersey**: Count III alleges a violation of the NJCFA, which the New Jersey Supreme Court has consistently held cannot be utilized when "a direct and unavoidable conflict exists between application of the CFA and application of the other regulatory scheme or schemes," based on "a legislative intent not to subject parties to multiple regulations that, as applied, will work at cross-purposes." *Lemelledo v. Beneficial Mgmt. Corp. of Am.*, 696 A.2d 546, 554 (N.J. 1997).[87] NJCFA claims must be dismissed when State Regulators have made determinations and the claim would create a "real possibility of conflicting determinations, rulings and regulations," *e.g.*, conduct that was approved by a regulator but "rejected and penalized" by "courts applying the CFA." *Id.* at 553 (first quotation quoting *Daaleman v. Elizabethtown Gas Co.*, 390 A.2d 566, 569 (N.J. 1978)). The NJCFA does not apply where a state agency "adopted extensive regulations governing [the conduct at issue], and is authorized to take measures against [parties engaging in that conduct] for violation of its regulations, including revocation of licensure." *Atl. Ambulance Corp. v. Cullum*, 166 A.3d 260, 266 (N.J. Super. Ct. App. Div. 2017).

---

[86]*See Mercer v. Gupta*, 712 F.3d 756, 759 (2d Cir. 2013) ("safe harbor" affirmative defense may be raised on a motion to dismiss).

[87]*Doug Grant, Inc. v. Greate Bay Casino Corp.*, 232 F.3d 173, 188 (3d Cir. 2000) (construing *Lemelledo* as recognizing the NJCFA "does not apply to a heavily regulated industry to the extent that application of the statute would create a 'real possibility' of conflict between the Consumer Fraud Act, as administered by the Division of Consumer Affairs, and the regulatory schemes of other administrative bodies"), *cert. denied*, 532 U.S. 1038 (2001); *Hampton Hosp. v. Bresan*, 672 A.2d 725, 731 (N.J. Super Ct. App. Div.) ("As in *Daaleman*, we can find no purpose to a requirement that [the challenged conduct] be within the purview of the Consumer Fraud Act when [that same conduct] falls within the purview of the Department of Health."), *certif. denied*, 677 A.2d 760 (N.J. 1996).

The sale of bottled water in New Jersey is subject to an extensive regulatory scheme.[88] The New Jersey Department of Health ("NJDOH") made multiple determinations that Poland Spring® complies with its regulations and the FDA Identity Standard, and authorized NWNA to sell Poland Spring® as "spring water."   [Point I(A), *supra*; Doc 53-3 at 16-19].   NJDOH determinations are not subject to second-guessing by any court applying the NJCFA.  Applying the NJCFA to NWNA, an entity "subject to state regulation, would create an impermissible circumstance where divergent determinations and penalties for the same subject matter may occur." *Manahawkin Convalescent v. O'Neill*, 43 A.3d 1197, 1204 (N.J. Super Ct. App. Div. 2012), *aff'd*, 85 A.3d 947 (N.J. 2014).  Because Plaintiffs' NJCFA claim directly conflicts with New Jersey's statutory scheme regulating the sale of bottled water and the NJDOH's determinations that Poland Spring® complies with the FDA Identity Standard, the safe harbor applies and Plaintiffs' NJCFA claim (Count III) must be dismissed.

**New York**:   Counts IV and V allege violations of New York GBL §§349 and 350. Section 349(d) provides "a complete defense" for any practice that is "subject to and complies with the rules and regulations of, and the statutes administered by ... any official department ... as such rules, regulations or statutes are interpreted by ... such department."   Section 350-d[89] similarly provides "a complete defense" when "the advertisement is subject to and complies with the rules and regulations of, and the statutes administered by ... any official department, division, commission or agency of the state of New York."   The rationale for these provisions "is the need for uniformity in the regulation of advertising and labeling and a deference to the expertise of the responsible regulatory agency." *Am. Home Prods. Corp. v. Johnson & Johnson*, 672 F. Supp.

---

[88]*N.J. Admin. Code* §§8:21-5.1 to -5.19.
[89]Construed as "congruent" with each other, Sections 349 and 350 "cover regulations promulgated by federal agencies other than the FTC." *Marcus v. AT&T Corp.*, 938 F. Supp. 1158, 1173 (S.D.N.Y. 1996), *aff'd*, 138 F.3d 46 (2d Cir. 1998).

135, 144 (S.D.N.Y. 1987).  For example, when a regulatory agency "has explicitly endorsed the particular facet of the labeling which is claimed to be inadequate," a "clear conflict" arises between the law as administered by that agency and "the local law as applied by the particular lay jury."  *Id.* at 145 (citation omitted).[90]

In regulating the sale of bottled water in New York,[91] the New York State Health Department ("NYSHD") has determined that Poland Spring® complies with the FDA Identity Standard and has issued certifications authorizing NWNA to sell and label Poland Spring® as "spring water."  [Point I(A), *supra*; Doc 53-3 at 21-24; *see also* Matthews Decl., Exh. C (N.Y. certification number on the Poland Spring® label)].  Counts IV and V must be dismissed, as GBL Sections 349(d) and 350-d provide complete defenses to claims that Poland Spring® was falsely labeled as "spring water."

**Connecticut**:  Count VI alleges violation of CUTPA, which provides that it does not apply to "[t]ransactions or actions otherwise permitted under law as administered by any regulatory board or officer acting under statutory authority of the state or of the United States." *Conn. Gen. Stat. Ann.* §42-110c(a)(1).   In *Connelly*, 567 A.2d at 1213, plaintiff-residential tenants alleged defendant-landlord violated CUTPA by providing inadequate heat and hot water. Defendant's actions (*i.e.*, the continued leasing of the apartments to plaintiffs) was "expressly authorized and pervasively regulated by both the state department of housing and [U.S. Department of Housing and Urban Development], and thus the claim was exempt "from CUTPA

---

[90]*See also Apotex Inc. v. Acorda Therapeutics, Inc.*, 823 F.3d 51, 64 (2d Cir. 2016) (holding that "representations commensurate with information in an FDA label generally cannot form the basis for" false advertising claims, as "[s]uch a rule reflects proper 'deference to the expertise' of the FDA as the regulatory agency responsible for issuing the label by respecting the exhaustive process preceding the issuance of a label"); *In re Fosamax (Alendronate Sodium) Prod. Liab. Litig.*, No. CIV.A. 08-08, 2013 WL 1558697, at *7 (D.N.J. Apr. 11, 2013) (applying the "complete defense" because the challenged labeling was approved by the FDA); *Cytyc Corp. v. Neuromedical Sys., Inc.*, 12 F. Supp. 2d 296, 301 (S.D.N.Y. 1998) (representations "that comport substantively with statements approved as accurate by the FDA cannot supply the basis for" claims under GBL §§349 and 350).
[91]*N.Y. Comp. Codes R. & Regs.* tit 10, §5-6.1 to -6.18.

scrutiny." *Id.* at 1215. The sale and labeling of bottled water in Connecticut is "pervasively regulated" at both the federal and state level.[92] Connecticut's Department of Consumer Protection has expressly authorized NWNA to label and sell Poland Spring® as "spring water" after determining it complied with the FDA Identity Standard. [Point I(A), *supra*; Doc 53-3 at 26-29]. Consequently, NWNA's labeling of Poland Spring® as "spring water" is exempt from CUTPA, and Count VI must be dismissed.

**Massachusetts**: Count VII alleges violation of the MCPA, which exempts "transactions or actions otherwise permitted under laws as administered by any regulatory board or officer acting under statutory authority of the commonwealth or of the United States." *Mass. Gen. Laws* ch. 93A, §3. "Chapter 93A claims are precluded when a regulator authorized to review the defendant's actions has determined that those actions, in particular, were not unfair or deceptive." *O'Hara v. Diageo-Guinness, USA, Inc.*, 306 F. Supp. 3d 441, 454 (D. Mass. 2018); *Animal Legal Def. Fund*, 626 F. Supp. at 283 ("Massachusetts cannot confer on private persons the power to enforce a federal statute whose enforcement Congress left to federal administrative agencies. Nor can the [plaintiff] enforce chapter 94, the Massachusetts statute which parallels the FDCA, in a private action under the Massachusetts consumer protection … statute." (emphasis added)). In *Cablevision of Boston, Inc. v. Public Improvement Commission of the City of Boston*, 38 F. Supp. 2d 46, 61 (D. Mass.), *aff'd* 184 F.3d 88 (1st Cir. 1999), plaintiff-telecommunications company claimed a defendant violated the MCPA by expanding the capability of its conduit in violation of municipal policy and law. Denying injunctive relief, the court held the statutory safe harbor likely applied because a municipal regulator issued defendant

---

[92] *Conn. Gen. Stat. Ann.* §§21a-150 to -150j.

a series of grants to execute the conduit modifications. *Id.*[93] The Massachusetts Department of Health ("MDOH") has made determinations here that Poland Spring® complies with the FDA Identity Standard and has issued a permit to NWNA to sell Poland Spring® as "spring water." [Point I(A), *supra*; Doc 53-4 at 2-9]. Consequently, NWNA's labeling is exempt from scrutiny under the MCPA, and Count VII must be dismissed.

**Rhode Island**: Count VIII alleges violations of the RIDTPA, which exempts "actions or transactions permitted under laws administered by [any] regulatory body or officer acting under statutory authority of this state or the United States." 6 *R.I. Gen. Laws Ann.* §6-13.1-4. The party claiming this exemption need only show "that the general activities complained of are subject to monitoring or regulation by a state or federal government agency," after which "the burden shifts to the party seeking to enforce the [RI]DTPA to establish that 'the specific acts at issue are not covered by the exemption.'" *Lynch v. Conley*, 853 A.2d 1212, 1214 (R.I. 2004) (quoting *State v. Piedmont Funding Corp.*, 382 A.2d 819, 822 (R.I. 1978) (exemption established on defendant's showing "that failure to comply with the rules and regulations promulgated by [state and federal regulators would] result in the revocation of [its] license to" engage in the conduct at issue)).[94] The labeling and sale of bottled water is subject to comprehensive monitoring and regulation by both the Rhode Island Department of Health ("RIDOH") and the FDA.[95] The RIDOH went a step further, making a determination that Poland Spring® complies with the FDA Identity Standard and authorizing NWNA to market Poland Spring® as "spring

---

[93] *See also Rogers v. Comcast Corp.*, 55 F. Supp. 3d 711, 721 (E.D. Pa. 2014) (dismissing MCPA claim predicated on allegedly anticompetitive clustering of cable television subscribers because the FCC approved the transfer of licenses among cable providers that created the clusters), *app. dismissed*, No. 14-4520 (3d Cir. June 15, 2015); *Prohias v. Pfizer, Inc.*, 490 F. Supp. 2d 1228, 1234 (S.D. Fla. 2007) (product label held exempt from the MCPA because it was approved by the FDA); *Riccio v. Ford Motors Credit Co.*, 238 F.R.D. 44, 47 (D. Mass. 2006) (dismissing complaint alleging improperly calculating sales tax violated the MCPA because defendant's "manner of assessing sales tax was governed, contemplated, and permitted by [Department of Revenue] regulations.").
[94] *See also Chavers v. Fleet Bank (RI), N.A.*, 844 A.2d 666, 670 (R.I. 2004) (same).
[95] 21 *R.I. Gen. Laws Ann.* §§21-23-1 to -7; 216 R.I. Code R. §§50-10-4.1 to -4.4, -4.9 (on and after Dec. 20, 2017); 31 *R.I. Code R.* §§31-7-3:1 to 3:16 (until Dec. 20, 2017).

water."  [Point I(A), *supra*; Doc 53-4 at 11-14].  Consequently, NWNA's labeling and sale of Poland Spring® as spring water is exempt from the RIDTPA, and Count VIII must be dismissed.

**Vermont**:  Count IX alleges violation of the VCFA, from which NWNA is entitled to a common-law exemption from liability.[96]  In Vermont, it is the Department of Health ("VDOH") that has the exclusive authority to establish standards of identity and enforce misbranding violations of those standards.  *Vt. Stat. Ann.* tit. 18, §§4053(a), 4058.  By contrast, the Vermont Agency of Natural Resources ("VANR") neither establishes standards of identity nor enforces misbranding violations; its sole role is to regulate the sale of bottled water, including spring water, in Vermont.  *See Vt. Stat Ann.* tit. 10, §1672(a); 16-3 *Vt. Code R.* §500:11.1.1.  In evaluating and granting NWNA's application for approval to sell Poland Spring® as "spring water" in Vermont, VANR verified that Poland Spring® was accurately labeled as "spring water," subject to NWNA's obligation to "continue" to "comply with all applicable federal … regulations including" 21 C.F.R. Part 165.  [Doc. 53-4 at 17].  Given that the Vermont Legislature has exclusively vested misbranding enforcement authority in the VDOH and did not provide for a private right of action to enforce the misbranding regulations of the VDOH, the Vermont Legislature did not intend for private plaintiffs to use a more general statute like the VCFA to enforce a misbranding challenge to the VANR's specific exercise of its substantial and exclusive regulatory authority to determine Poland Spring®'s compliance with the FDA Identity

---

[96]*Cf. Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 973 P.2d 527, 541-43 (Cal. 1999) (California unfair competition law does not apply where another provision "clearly permit[s] the conduct," even if that other provision does not explicitly bar the action); *Chelsea Plaza Homes, Inc. v. Moore*, 601 P.2d 1100, 1104 (Kan. 1979) (Kansas Consumer Protection Act deemed preempted where it covered "a very broad area of transactions; whereas, [the Kansas Residential Landlord and Tenant Act] covers one very specific small area of transactions, and is complete within itself for that area."); *see also Gomez v. Indep. Mgmt. of Del., Inc.*, 967 A.2d 1276, 1285 (D.C. 2009) (holding District of Columbia Consumer Protection Procedures Act inapplicable to conduct subject to alternative "comprehensive legislation" containing "detailed provisions for implementation and enforcement").

Standard.[97]  To conclude otherwise is to put the VCFA on a collision course with Vermont's regulatory scheme for approving the sale of bottled water in Vermont, creating conflict and chaos by unleashing Plaintiffs and other private citizens to contest the VANR's permitting determinations whenever they disagree with them.  Count IX must be dismissed.

**New Hampshire**:  Count X alleges violations of the NHCPA, which exempts "[t]rade or commerce that is subject to the jurisdiction of [certain regulators] who possess the authority to regulate unfair or deceptive trade practices."  *N.H. Rev. Stat. Ann.* §358-A:3(I).[98]  Bottled water is subject to comprehensive regulation in New Hampshire by the New Hampshire Department of Health and Human Services ("NHDOH").[99]  The New Hampshire Legislature adopted extensive laws for the regulation of bottled water and charged the NHDOH with exclusive responsibility to regulate bottled water compliance with its regulations concerning the sale of bottled water, including compliance with the FDA Identity Standard.[100]  The NHDOH determined that Poland Spring® complies with the FDA Identity Standard and authorized NWNA to market Poland Spring® as "spring water" in New Hampshire.  [Point I(A), *supra*; Doc 53-4 at 27-30].  The NHDOH's determination of compliance with federal and state law creates a safe harbor precluding Plaintiffs' claim that the sale of Poland Spring® as "spring water" is an "unfair or deceptive act" in violation of the NHCPA.  *Buchholz v. Waterville Estates Ass'n*, 934 A.2d 511, 516 (N.H. 2007) (holding as a matter of law that conduct explicitly allowed by the N.H. Condominium Act could not constitute unfair or deceptive acts under the NHCPA).

Moreover, the Legislature did not charge the NHDOH with the responsibility to regulate the sale of bottled water only to allow private citizens to usurp that authority through the

---

[97]*See Judicial Watch*, 892 A.2d at 195 (When "construing conflicting statutes that deal with the same subject matter, the more specific provision controls over the more general one." (citation omitted)).

[98]The NHDOH is not among the agencies identified in the NHCPA's exemption provision.

[99]*N.H. Code Admin. R.* He-P 2101.01 to 2170.02.

[100]*N.H. Code Admin. R.* He-P 2107.05 (The NHDOH enforces bottled water regulations).

NHCPA by requesting this Court to disregard New Hampshire law and supplant the NHDOH's specific determinations with its own.  Consequently, Count X must be dismissed.

**Maine**:  Count XI alleges violations of two Maine statutes: MUTPA and MUDTPA. MUTPA exempts business activities that are "subject to regulation by a state or federal agency" and "authorized, permitted or required by a state or federal agency or by applicable law, rule or regulation or other regulatory approval."  *Me. Rev. Stat. Ann.* tit. 5, §208.  In *Wyman v. Prime Discount Securities*, 819 F. Supp. 79, 87 (D. Me. 1993), the court held the sale of the securities at issue was exempt from MUTPA because such conduct "was clearly subject to licensure, was, in fact, licensed, and is clearly subject to both federal and state regulation."[101]  Similarly, MUDTPA does not apply to "[c]onduct in compliance with the orders or rules of, or a statute administered by, a federal, state or local governmental agency."  *Me. Rev. Stat. Ann.* tit. 10, §1214(1)(A).  In *Laing v. Clair Car Connection*, No. CIV.A. CV-01-516, 2003 WL 1669624, at *3 (Me. Super. Ct. Jan. 29, 2003), the court dismissed a MUDTPA claim predicated on defendant's failure to disclose the accident history of the vehicle it sold to plaintiff because defendant complied with "the statute specifically enumerating the disclosure duties of used car dealers."[102]

Bottled water is subject to extensive regulation in Maine.[103]   [¶¶89, 99, 796-800]. Maine's DWP is charged with issuing spring water permits.  In performing those duties, the DWP has determined that Poland Spring® complies with the FDA Identity Standard and has issued permits to NWNA to label and sell Poland Spring® as "spring water" in Maine.  [*Id.*;

---

[101] *See also First of Me. Commodities*, 534 A.2d at 1302 (holding real estate listing agreements are exempt from MUTPA scrutiny because the Maine Real Estate Commission "extensively regulates brokers' activities" and "may investigate and penalize licensed brokers who violate the numerous statutory restrictions on their activities").

[102] MUDTPA is construed "to make uniform the law of those states which enact it."  *Me. Rev. Stat. Ann.* tit. 10, §1215.  *See Bolinger v. First Multiple Listing Serv., Inc.*, No. 2:10-CV-211-RWS, 2014 WL 4803155, at *10 (N.D. Ga. Sept. 26, 2014) (Georgia's UDTPA does not apply to conduct subject to "an extensive regulatory regime" (citation omitted)); *Phillips v. WellPoint, Inc.*, 900 F. Supp. 2d 870, 880 (S.D. Ill. 2012) (denying liability under the Illinois UDTPA because the conduct was authorized by a regulator).

[103] 10-144-231 *Me. Code R.* §§1-11; *Me. Rev. Stat. Ann.* tit. 32, §§1751-1854.

Point I(A), *supra*; Doc 53-4 at 7-14].   As NWNA's labeling and selling Poland Spring® as "spring water" is subject to regulation by the Maine DWP and the FDA, has been specifically authorized and permitted by the DWP, and is in compliance with the permits issued by Maine, the sale of Poland Spring® as "spring water" is exempt from actions under MUTPA and MUDTPA.  Count XI must be dismissed.

**Pennsylvania**:  Count XI alleges violations of the PUTPCPL.  Bottled water is subject to specific and extensive regulation in Pennsylvania.[104]   Pursuant to these regulations, the Pennsylvania Department of Environmental Protection ("PDEP") has made determinations that Poland Spring® complies with the FDA Identity Standard and has issued NWNA permits to market its product as "spring water," as evidenced by the Pennsylvania identification number on the Poland Spring® label.  [Point I(A), *supra*; Matthews Decl., Exhs. A-C].  In *Fay v. Erie Insurance Group*, 723 A.2d 712, 715 (Pa. Super. Ct. 1999), the court held the insurance practices at issue were exempt from PUTPCPL scrutiny because they were "heavily regulated by both statute and the Insurance Commissioner" and defendant's practices were approved by that commissioner.  The court further commented that if plaintiff "deems the practice objectionable, her remedy is to bring this matter to the attention of the legislature or the Insurance Commissioner, rather than to seek a judicial solution." *Id*.[105]  *Fay* is a prime example of the fact that Pennsylvania has "explicitly adopted or applied the 'safe harbor' doctrine which precludes civil remedies for conduct that is expressly permitted under federal or state law."  *In re Anheuser-Busch Beer Labeling, Mktg. & Sales Practices Litig.*, No. 1:13 MD 2448, 2014 WL 12659447, at *6 (N.D. Ohio June 2, 2014) (citing *Fay* in dismissing a PUTPCPL claim

---

[104]25 *Pa. Code* §§109.1 to .1307.
[105]*See also In re Ins. Stacking Litig.*, 754 A.2d 702, 711 (Pa. Super. Ct. 2000) (citing *Fay* with approval), *cert. denied*, 565 Pa. 673 (Pa. 2001), *abrogated on other grounds by Craley v. State Farm Fire & Cas. Co.*, 895 A.2d 530 (Pa. 2006); *Grudkowski v. Foremost Ins. Co.*, 556 F. App'x 165, 169 (3d Cir. 2014) (same).

predicated on alleged beverage mislabeling where the label complied with a federal regulation), *aff'd*, 644 F. App'x 515 (6th Cir. 2016). As the sale of Poland Spring® has been expressly permitted under Pennsylvania law, NWNA's selling Poland Spring® as "spring water" is exempt from the PUTPCPL, and Count XII must be dismissed.

### V. Plaintiffs Fail To Plausibly State A Claim For Common-Law Fraud

Plaintiffs' common-law fraud claim in Count I alleges that NWNA has "affirmatively misrepresented to Plaintiffs on Poland Spring Water labels that Poland Spring Water is '100% Natural Spring Water'" because Poland Spring® does not contain genuine natural spring water as defined by state law. [¶839]. Count I does not identify a state law that defines "spring water." Instead, it "realleges all prior allegations" of the Complaint, which define "spring water" as set forth in 21 C.F.R. § 165.110(a)(2)(vi), the "Identity Standard." [¶54]. The Complaint is replete with allegations that Poland Spring® is not "spring water" because it does not comply with the FDA Identity Standard. Plaintiffs' fraud claim is the same claim pled in their initial complaint, which this Court has dismissed as impliedly preempted by the FDCA.[106] [Doc. 141 at 17-18].

Count I also fails as a matter of law and should be dismissed because Plaintiffs have not plausibly alleged deception, which is critical to any fraud claim.[107] As the United States Supreme Court has held, fraud signifies deception. *Husky Intern. Elec., Inc. v. Ritz,* 136 S. Ct. 1581, 1586 (2016); *see U.S. v. Ragosta*, 970 F.2d 1085, 1089 (2d Cir.) (the "essence of fraud is deception"), *cert. denied*, 506 U.S. 1002 (1992). There can be no deception as a matter of law

---

[106]Count I should be dismissed for failure to plead a state-law definition with the particularity required to provide NWNA with sufficient notice of the basis of Plaintiffs' claim. *See* Fed. R. Civ. P. 9(b); *U.S. ex rel. Chorches v. Am. Med. Response, Inc.*, 865 F.3d 71, 86 (2d Cir. 2017).

[107]The existence of deception is an indispensable element of common law fraud. *See Felis v. Downs Rachlin Martin PLLC*, 133 A.3d 836, 842 (Vt. 2015); *Stuart v. Freiberg*, 116 A.3d 1195, 1208 n.16 (Conn. 2015); *Van Der Stok v. Van Vorhees*, 866 A.2d 972, 975 (N.H. 2005); *Guiggey v. Bombadier*, 615 A.2d 1169, 1173 (Me. 1992); *Dudzik v. Leesona Corp.*, 473 A.2d 762, 766 (R.I. 1984); *Marine Midland Bank v. John E. Russo Produce Co., Inc.*, 405 N.E.2d 205, 211 (N.Y. 1980); *Union Ink Co., Inc. v. AT&T Corp.*, 801 A.2d 361, 379 (N.J. Super. Ct. App. Div.), *certif. denied*, 174 N.J. 547 (2002); *Zimmerman v. Kent*, 575 N.E.2d 70, 74 (Mass. App. Ct. 1991); *Wilson v. Donegal Mut. Ins. Co.*, 598 A.2d 1310, 1315 (Pa. Super. Ct. 1991).

where, as here, the alleged fraud is based on conduct that was expressly authorized by the State Agencies charged with regulating the sale of bottled water, which specifically approved the sale of Poland Spring® as "spring water" in their respective states.[108]

For example, in *DePriest*, 351 S.W.3d at 177, the Arkansas Supreme Court affirmed the dismissal of a common-law fraud claim based on allegedly fraudulent advertisements that were consistent with FDA-approved labels, reasoning that "[b]y approving information to be included in the drug labeling, the FDA has determined that the information complies with its rules and regulations.  Therefore, if the FDA labeling supports the statements made in advertising for an FDA-approved drug, the statements are not ... misleading as a matter of law."  Reaching the same conclusion in *Prohias*, 490 F. Supp. 2d at 1234-35, the court dismissed plaintiffs' misrepresentation claim based on defendant's allegedly fraudulent advertisements because the advertisements were authorized by the FDA and thus could not be misleading as a matter of law

This case is on all-fours with *DePriest* and *Prohias*.  The appropriate regulatory officials have determined that Poland Spring® complies with the FDA Identity Standard and have issued permits and certifications authorizing the sale of Poland Spring® labeled as "spring water."  As these State Regulators have approved the labeling and sale of Poland Spring® as "spring water" in their respective states as a matter of law, there is nothing deceptive or misleading about the labeling and sale of Poland Spring® as "spring water."  Count I should be dismissed.

---

[108] *See Prohias*, 490 F. Supp. 2d at 1235 ("[G]iven the FDA's additional approvals ... advertisements were not misleading as a matter of law."); *Adamson v. Ortho-McNeil Pharm., Inc.*, 463 F. Supp. 2d 496, 502 (D.N.J. 2006) (holding label was consistent with FDA guidance and therefore was "accurate and [did not] have the capacity to mislead"); *Doug Grant, Inc. v. Greate Bay Casino Corp.*, 3 F. Supp. 2d 518, 535 (D.N.J. 1998) (dismissing fraud claim as a matter of law because defendants were "explicitly authorized to undertake the practices plaintiffs" claimed were fraudulent), *aff'd*, 232 F.3d 173 (3d Cir. 2000), *cert. denied*, 532 U.S. 1038 (2001); *DePriest v. AstraZeneca Pharm., L.P.*, 351 S.W.3d 168, 178 (Ark. 2009) (holding advertisements based on FDA-approved labeling were "not false or misleading as a matter of law"); *Buchholz*, 934 A.2d 516 (holding conduct explicitly allowed by the N.H. Condominium Act could not constitute unfair or deceptive acts under the NHCPA).

## VI. Plaintiffs Fail To Plausibly State A Claim For Common-Law Breach of Contract

Count II alleges that "under the common law of breach of contract," NWNA breached its home and office contracts with Plaintiffs who received delivery of Poland Spring® "100% Natural Spring Water," claiming NWNA did not deliver "genuine spring water as defined under state law to Plaintiffs."  [¶¶849, 852].  As with their fraud claim, Plaintiffs do not identify a state law defining "spring water," but "reallege" in Count II that "spring water" is defined by 21 C.F.R. §165.110(a)(2)(vi), the FDA Identity Standard.  [¶¶54, 847].  Count II fails as a matter of law, as this Court has already held Plaintiffs' breach of contract claim is impliedly preempted by the FDCA.  [Doc. 141 at 17-18].

Count II also fails as a matter of law because Plaintiffs do not plead a valid legal claim "under the common law of breach of contract" where, as here, the alleged contracts involve the sale of goods and are governed by the Uniform Commercial Code ("UCC").[109]  Plaintiffs do not state a breach of contract claim when they plead that NWNA breached its contracts by delivering Poland Spring® that was not "spring water."  [¶¶849-852].  The Maine DWP and all other State Regulators have issued permits and authorizations to NWNA to label and sell Poland Spring® as "spring water."  [¶99; Doc. 53-3 at 7-11, 15-29; Doc. 53-4 at 1-30; Mathews Decl., Exhs. A-B].  Plaintiffs received what they bargained for:  "spring water."

Even under the UCC, Plaintiffs cannot state a breach of contract claim as a matter of law because they are deemed under the UCC to have accepted the goods.  Plaintiffs accepted the

---

[109]The common law is inapplicable where the claim is governed by the UCC.  *See W. Dermatology Consults., P.C. v. VitalWorks, Inc.*, 78 A.3d 167, 177 (Conn. App. Ct. 2013) (holding that "[trial court] chose the incorrect legal standard under which to analyze the breach of contract count" when it applied the common law, "because ... the UCC governs" the contract), *aff'd*, 153 A.3d 574 (Conn. 2016); *Psak, Graziano, Piasecki & Whitelaw v. Fleet Nat'l Bank*, 915 A.2d 42, 45 (N.J. Super. Ct. App. Div. 2007) ("[T]he UCC displaces the common-law....").  Federal courts sitting in diversity apply the forum state's choice of law rules.  *AEI Life LLC v. Lincoln Benefit Life Co.*, 892 F.3d 126, 132 (2d Cir. 2018).  As the three named Plaintiffs who were home and office customers received delivery of the goods in New York and New Jersey [¶35b-d], the laws of those states—both of which have adopted the UCC—apply.  *See Macomber v. Travelers Prop. & Cas. Corp.*, 894 A.2d 240, 256-57 (Conn. 2006).

bottled water they received by consuming it.[110]  Having accepted Poland Spring® bottled water,

they are precluded from rejecting the goods and are liable for the full contract price.[111]  They

cannot assert a breach of contract.[112]  As Plaintiffs' Complaint does not plead a viable breach of

contract claim, Count II should be dismissed.

### VII. This Case Should Be Referred To The FDA Under The Doctrine Of Primary Jurisdiction

Plaintiffs present a number of novel arguments based on their lengthy dissertation about

hydrogeology and how it relates to 21 C.F.R. §165.110(a)(2)(vi).  If this Court accepts Plaintiffs'

argument that they are merely "interpreting" this FDA regulation and showing specific science-

based factual applications of it (and does not otherwise dismiss the Complaint), this Court should

ask the FDA to make determinations about the federal regulation in the first instance.  As this

Court has previously discussed in *Langan v. Johnson & Johnson Consumer Cos.*, 95 F. Supp. 3d

284, 291-293 (D. Conn. 2015), under the doctrine of "primary jurisdiction," when a case

involves the intersection between regulatory intention and technical or scientific application, it

may be appropriate to refer the matter to the agency for initial determination.  The Court should

do so here.

Referral for initial decision by the FDA is a proper response when a court is faced with a

case falling within the FDA's expertise.  As the Supreme Court has stated concerning the FDA's

authority over drug safety and efficacy:

> Threshold questions within the peculiar expertise of an administrative agency are
> appropriately routed to the agency, while the court stays its hand.  As we stated in *Far*

---

[110]Under the UCC, "[a]cceptance of goods occurs when the buyer … does any act inconsistent with the seller's ownership…."  *N.J. Stat. Ann.* §12A:2-606(1)(c); *N.Y. U.C.C. Law* §2-606(1)(c); *see also Rudolph Wurlitzer Mfg. Co. v. United Rlty. & Amusement Co.*, 94 A. 630, 631 (N.J. E.&A. 1915) (usage constitutes acceptance); *Hooper Handling, Inc. v. Jonmark Corp.*, 267 A.D.2d 1075, 1075 (N.Y. App. Div. 1999) (same).

[111]*Ramirez v. Autosport*, 440 A.2d 1345, 1351 (1982) ("Acceptance creates liability in the buyer for the price … and precludes rejection."); *Shaoxing Aceco Blankets Co., Ltd. v. Aceco, Inc.*, 670 F. App'x 8, 9-10 (2d Cir. 2016) (same); *Schwartz v. Bedell*, 178 N.Y.S. 397, 398 (N.Y. App. Div. 1919) (same).

[112]*Atlanta Mach. Works v. Felthousen*, 174 A.D. 65, 69 (N.Y. App. Div. 1916) (acceptance bars breach of contract).

*Eastern Conference v. United States*, 342 U.S. 570, 574-575 (1952): "[I]n cases raising issues of fact not within the conventional experience of judges or cases requiring the exercise of administrative discretion, agencies created by Congress for regulating the subject matter should not be passed over. This is so even though the facts after they have been appraised by specialized competence serve as a premise for legal consequences to be judicially defined. Uniformity and consistency in the regulation of business entrusted to a particular agency are secured, and the limited functions of review by the judiciary are more rationally exercised, by preliminary resort for ascertaining and interpreting the circumstances underlying legal issues to agencies that are better equipped than courts by specialization, by insight gained through experience, and by more flexible procedure."

*Weinberger v. Bentex Pharms., Inc.*, 412 U.S. 645, 654 (1973). The doctrine applies "particularly when the issue involves technical questions of fact uniquely within the expertise and experience of an agency," and ensures "uniformity and consistency in the regulation of business entrusted" to the agency. *Goya Foods, Inc. v. Tropicana Prods., Inc.*, , 851 (2d Cir. 1988).[113]

Referrals to the FDA have frequently been made in recent years concerning food labeling litigation because this is a field where the goals of national uniformity, use of scientific expertise in the application of the FDA's regulations, and the FDA's exercise of administrative discretion are at a premium. *See, e.g.*, *Hood*, 2013 WL 3553979, at *5 (dismissing without prejudice pending the FDA's determination on the statement of identity for soy yogurt).[114] Thus, for

---

[113]*See also PhotoMedex, Inc. v. Irwin*, 601 F.3d 919, 928 (9th Cir. 2010) (courts should not "determine preemptively how a federal administrative agency [the FDA] will interpret and enforce its own regulations."); *Sandoz Pharms. Corp. v. Richardson-Vicks, Inc.*, 902 F.2d 222, 231 (3d Cir. 1990) ("[I]t is not for a court to force the FDA to interpret, apply and enforce its regulations in a manner determined by the court to fairly effectuate the [FDCA's] policies.") (*citing Cutler v. Kennedy*, 475 F. Supp. 838, 856-57 (D.D.C. 1979)); *Summit Tech., Inc. v. High-Line Med. Instruments Co., Inc.*, 933 F. Supp. 918, 934 (C.D. Cal. 1996) ("[T]he proper interpretation and enforcement of the relevant FDA regulation is not an issue properly decided as an original matter by a district court….").

[114]*See also, e.g.*, *Kelley v. WWF Operating Co.*, Case No. 1:17-cv-117-LJO-BAM, 2017 WL 2445836, at *7 (E.D. Cal. Jun. 6, 2017) (staying pending the FDA's determination in the first instance of the "fact-intensive" inquiry of whether "almond milk" falls under the FDA rule for labeling of "imitation" milk); *In re KIND LLC "Health and All Natural" Litig.*, 209 F. Supp. 3d 689, 694-95 (S.D.N.Y. 2016) (referring "all natural" claim about soy protein isolate and citrus pectin in snack/energy granola or nut bars to the FDA and discussing the split in authority on whether "all natural" claims "are more within the conventional experience of judges or whether they involve technical or policy considerations within the FDA's particular field of expertise"); *Reese v. Odwalla, Inc.*, 30 F. Supp. 3d 935, 941 (N.D. Cal. 2014) (referring to the FDA the question of whether evaporated cane juice is labeled contrary to standards of identity for "sugar" or "cane syrup": "The issue of proper declaration of ingredients on food labels is one as to which Congress vested the FDA with comprehensive regulatory authority."); *Greenfield v. Yucatan Foods, LP*, 18 F. Supp. 3d 1371, 1375-77 (S.D. Fla. 2014) (referring to the FDA whether "evaporated cane juice" is the

example, in *Taradejna v. General Mills*, 909 F. Supp. 2d 1128 (D. Minn. 2012), a class action claimed defendants' yogurt was falsely labeled by adding "milk protein concentrate" in violation of the standard of identity for yogurt.  The court determined it should dismiss the case and direct the parties to initiate proceedings with the FDA:  "The FDA is in the best position to resolve any ambiguity about the standard of identity for yogurt—a matter requiring scientific and nutritional expertise.... While the Court is very mindful of added expense and delay that may result from a primary jurisdiction referral, the need for scientific and technical expertise and uniformity and consistency within this field outweighs these other considerations."  *Id.* at 1135.

The FDA determined that the meaning of "spring water" is to be evaluated not by consumer beliefs, but by scientific evaluation:  the rule turns on scientific questions of geology, hydrogeology, and water chemistry.[115]  The core questions in this case are technical and scientific in nature, as the Complaint itself shows.  Meanwhile, the FDA itself repeatedly emphasized that it would need to evaluate issues on a case-by-case basis given variations in geologic contexts.[116]  Asking the FDA to help determine the issues about compliance with 21 C.F.R. §165.110(a)(2)(vi) would thus promote enforcement of the rule as it was intended:  that

---

"common or usual name" for a sweetener used in guacamole, or is otherwise misleading); *Heller v. Coca-Cola Co.*, 646 N.Y.S.2d 524, 525-26 (N.Y. App. Div.) (affirming trial court application of primary jurisdiction to plaintiffs' claims seeking expiration dates on diet sodas containing FDA-permitted sweetener aspartame, where the FDA had not included an expiration date restriction in the aspartame regulation), *leave to app. dism. in pt. & denied in pt.*, 89 N.Y.2d 856 (1996); *cf. Canale v. Colgate-Palmolive Co.*, 258 F. Supp. 3d 312, 324-26 (2017) (referring to FTC whether whitening toothpaste claims were misleading or unsupported).

[115]*E.g.*, "underground formation," "natural orifice," "measurable hydraulic connection," "hydrogeologically valid method," "same composition and quality."  21 C.F.R. §165.110(a)(2)(vi).

[116]*See* 60 Fed. Reg. at 57092 (as to hydraulic connection:  "because of differences in the mineral composition of geological strata, **no one set of analyses will apply** to all spring formations to demonstrate compliance with these criteria."); *id.* at 57094-95 (as to continued spring flow:  "FDA recognizes that occasionally a spring may cease flowing temporarily because of fluctuations in ground water levels....  **[T]he agency will consider each situation on a case-by-case basis and take into consideration all circumstances** (*e.g.*, climatic conditions and effect of pumping) causing the flow cessation."); *id.* at 57096 ("In regards to methods of testing for comparative purposes, one or more hydrogeologically valid methods may be used as appropriate to verify that the product is in compliance. However, **not all methods may be suitable for different geologic regions** or for the specific bore hole site. Therefore, the agency is not recommending or requiring any specific method or methods."); *id.* at 57098 ("The agency is not providing detailed specifications for the construction of bore holes or for the construction of spring collection boxes.  Appropriate constructions specifications **may vary according to the site**.") (all emphasis added).

the FDA would evaluate such issues after taking a closer look in the context of site-specific geological evidence, rather than creating a rule that would apply to every situation going forward.  "[S]hould the Court go forward with consideration of the Complaint, it would find itself in a position of either having no set standard to apply, or announcing a standard and thereby overstepping its proper role."  *Hood*, 2013 WL 3553979, at *6.  Nowhere is this clearer than in the last sentence of the FDA Identity Standard, which uses the word "appropriate" twice, making clear that questions about the connection between borehole and spring are a regulatory judgment call, not for jury fact-finding.  *See* 21 C.F.R. §165.110(a)(2)(vi) ("Plants shall demonstrate, on request, to appropriate regulatory officials, using a hydrogeologically valid method, that an appropriate hydraulic connection exists between the natural orifice of the spring and the bore hole.").[117]  Plaintiffs' contentions about hydrogeology are at the core of this case, and it should be the FDA, not a federal court, that decides whether Plaintiffs' arguments are valid and the State Regulators are to be overruled.  The FDA knows best how to interpret and factually apply terms like "same composition and quality" or "measurable hydraulic connection using a valid hydrogeologic method."  The Court should dismiss this case and direct the parties to seek the FDA's guidance on Plaintiffs' questions about compliance with 21 C.F.R. §165.110(a)(2)(vi).

---

[117]There is substantial reason to think that the FDA might dispose of the entire case, as other regulators, including the hydrogeologist at the Maine DWP, have found NWNA was in full compliance with 21 C.F.R. §165.110 [*see* ¶¶90, 91, 328, 439, 518-520, 648, 796-799].  *Chlorine Inst., Inc. v. Soo Line R.R.*, 792 F.3d 903, 913 (8th Cir. 2015) (affirming primary jurisdiction dismissal where agency "resolution of the referred issue would likely dispose of the entire case").

## CONCLUSION

In its May 17, 2018 Order, this Court dismissed Plaintiffs' initial complaint without prejudice to Plaintiffs' filing an amended complaint stating a legally viable claim.  [Dkt. 141 at 22].  As Plaintiffs' Amended Complaint fails to state any viable claims as a matter of law, this Court should grant NWNA's motion to dismiss the Amended Complaint with prejudice.[118]

<div style="margin-left: 40%">

Respectfully submitted,
DEFENDANT,
NESTLÉ WATERS NORTH AMERICA INC.

By: /s/ Jonathan B. Tropp

Jonathan B. Tropp (ct11295)
Day Pitney LLP
One Canterbury Green
Stamford, CT 06901
Telephone: (203) 977-7337
Fax: (203) 901-1733
jbtropp@daypitney.com

Jeffrey M. Garrod (admitted phv)
Craig A. Ollenschleger (admitted phv)
Orloff, Lowenbach, Stifelman & Siegel, P.A.
101 Eisenhower Parkway, Suite 400
Roseland, NJ 07068-1097
Telephone:  (973) 622-6200
Fax: (973) 622-3073
jmg@olss.com; co@olss.com

Thomas B. Mayhew (admitted phv)
Farella, Braun & Martel LLP
235 Montgomery St., 30th Flr.
San Francisco, CA 94104
Telephone: (415) 954-4400
Fax: (415) 954-4480
tmayhew@fbm.com
Its Attorneys

</div>

---

[118] *See Denny v. Barber*, 576 F.2d 465, 471 (2d Cir. 1978) ("Plaintiff clearly has no right to a second amendment," especially when the court, "in dismissing the initial complaint, had put plaintiff's counsel on the plainest notice of what was required."); *see also In re Star Gas Sec. Litig.*, 241 F.R.D. 428, 432 (D. Conn. 2007) (Plaintiffs have "no right to a second amendment—a third bite at the apple—particularly where ... they had ample opportunity to craft their complaints and were advised by the Court, prior to amending their complaints, of certain pleading deficiencies and what the Court would require.").