# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| MARK J. PATANE, JULIE HARDING, HEATHER HARRIGAN, STEPHEN S. SHAPIRO, CATHERINE PORTER, ERICA RUSSELL, TINA MORETTI, BRIDGET KOPET, JENNIFER S. COLE, BENJAMIN A. FLETCHER, DIANE BOGDAN and MICHAEL BROWN, Individually and on Behalf of All Others Similarly Situated, | : CIVIL ACTION NO. 17-cv-01381(JAM) : : : : : : : : : |
| Plaintiffs, | : : |
| v. | : : |
| NESTLE WATERS NORTH AMERICA, INC., | : : : |
| Defendant. | : OCTOBER 10, 2018 |

## DEFENDANT'S REPLY MEMORANDUM IN FURTHER SUPPORT OF MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(1) AND 12(b)(6)

Jonathan B. Tropp (ct11295)
Day Pitney LLP
One Canterbury Green
Stamford, CT 06901
Telephone: (203) 977-7337
Fax: (203) 901-1733
jbtropp@daypitney.com

Jeffrey M. Garrod (admitted *pro hac vice*)
Craig A. Ollenschleger (admitted *pro hac vice*)
Orloff, Lowenbach, Stifelman & Siegel, P.A.
101 Eisenhower Parkway, Suite 400
Roseland, NJ 07068-1097
Telephone: (973) 622-6200
Fax: (973) 622-3073
jmg@olss.com; co@olss.com

Thomas B. Mayhew (admitted *pro hac vice*)
Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
Telephone: (415) 954-4400
Fax: (415) 954-4480
tmayhew@fbm.com

Attorneys for Defendant
Nestlé Waters North America Inc.

# TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES .......................................................................... ii

I.    PLAINTIFFS' CLAIMS ENFORCING THE FDA IDENTITY
      STANDARD ARE IMPLIEDLY PREEMPTED ............................................ 1

II.   THE FDCA EXPRESSLY PREEMPTS PLAINTIFFS'
      STATE-LAW CLAIMS ........................................................................... 6

III.  THE FDA IDENTITY STANDARD ENFORCEMENT SCHEME
      CONFLICT-PREEMPTS THE COMPLAINT ............................................. 8

IV.   ABSTENTION PURSUANT TO THE *BURFORD* DOCTRINE
      IS APPROPRIATE IN THIS CASE .......................................................... 11

V.    NWNA IS ENTITLED TO SAFE HARBOR EXEMPTION
      FROM STATE-LAW LIABILITY ........................................................... 15

VI.   PLAINTIFFS' COMMON-LAW CLAIMS ARE NOT PLAUSIBLE
      AS A MATTER OF LAW ....................................................................... 21

VII.  THIS CASE SHOULD BE REFERRED TO THE FDA
      UNDER THE PRIMARY JURISDICTION DOCTRINE ............................... 24

CONCLUSION ....................................................................................... 26

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ABB Turbo Sys. AG v. Turbousa, Inc.*,
   774 F.3d 979 (Fed. Cir. 2014) ............................................................................23

*All. of Auto. Mfrs., Inc. v. Currey*,
   984 F. Supp. 2d 32 (D. Conn. 2013),
   *aff'd*, 610 F. App'x 10 (2d Cir. 2015)..................................................................13

*Altschuler v. Univ. of Pa. Law Sch.*,
   No. 95 Civ. 249, 1998 WL 113989 (S.D.N.Y. Mar. 13, 1998),
   *aff'd*, 201 F.3d 430 (2d Cir. 1999), *cert. denied*, 530 U.S. 1276 (2000) ..................................21

*Amerson v. Iowa*,
   94 F.3d 510 (8th Cir. 1996), *cert. denied*, 519 U.S. 1061 (1997)............................................12

*In re Anheuser-Busch Beer Labeling, Mktg. & Sales Practices Litig.*,
   No. 1:13 MD 2448, 2014 WL 12659447 (N.D. Ohio June 2, 2014),
   *aff'd*, 644 F. App'x 515 (6th Cir. 2016)...............................................................20

*Arnold Chevrolet LLC v. Tribune Co.*,
   No. 04-CV-3097, 2007 WL 2743490 (E.D.N.Y. Sept. 17, 2007) ............................................21

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)............................................................................................23

*Associated Indus. of N.Y. State v. Ickes*,
   134 F.2d 694 (2d Cir.), *vacated on other gds.*, 320 U.S. 707 (1943) ......................................14

*AT Engine Controls Ltd. v. Goodrich Pump & Engine Control Sys., Inc.*,
   No. 3:10-CV-1539, 2014 WL 810825 (D. Conn. Feb. 28, 2014)............................................23

*In re Bank of N.Y. Mellon Corp. Forex Trans. Litig.*,
   42 F. Supp. 3d 520 (S.D.N.Y. 2014) ....................................................................21

*Benyak v. Medtronic, Inc.*,
   No. 1-17-2147, 2018 WL 3005915 (Ill. App. Ct. Jun. 14, 2018) .............................................6

*Bethphage Lutheran Servs., Inc. v. Weicker*,
   965 F.2d 1239 (2d Cir. 1992) ................................................................................11

*Blass v. Rite Aid of Conn., Inc.*,
   16 A.3d 855 (Conn. Super. Ct. 2009),
   *aff'd o.b.*, 16 A.3d 737 (Conn. App. Ct. 2011).......................................................18

*Brown v. State, Dep't of Manpower Affairs,*
    426 A.2d 880 (Me. 1981)...................................................................................13

*Browning-Ferris, Inc. v. Baltimore Cty., Md.,*
    774 F.2d 77 (4th Cir. 1985) ...........................................................................12

*Buchholz v. Waterville Estates Ass'n,*
    934 A.2d 511 (N.H. 2007) .............................................................................19

*Buckman Co. v. Plaintiffs' Legal Cmte.,*
    531 U.S. 341 (2001)..........................................................................................9

*Burton v. Dominion Nuclear Conn., Inc.,*
    2009 WL 242352 (Conn. Super. Ct. Jan. 7, 2009) ...............................18

*Canale v. Colgate-Palmolive Co.,*
    258 F. Supp. 3d 312 (S.D.N.Y. 2017) ..........................................................1

*Castillo v. Rodas,*
    No. 09 Civ. 9919, 2014 WL 1257274 (S.D.N.Y. Mar. 25, 2014) ...........21

*Chrysler Capital Corp. v. Century Power Corp.,*
    778 F. Supp. 1260 (S.D.N.Y. 1991) ...........................................................23

*Cliffstar Corp. v. Elmar Indus., Inc.,*
    254 A.D.2d 723 (N.Y. App. Div. 1998) ......................................................24

*Conservation Law Found. v. Dep't of Envtl. Prot.,*
    823 A.2d 551 (Me. 2003).................................................................................13

*Corestar Int'l Pte., Ltd. v. LPB Comms., Inc.,*
    Civ. No. 05-5850, 2007 WL 2990896 (D.N.J. Oct. 10, 2007) .................24

*DePriest v. AstraZeneca Pharms., L.P.,*
    351 S.W.3d 168 (Ark. 2009)..........................................................................23

*Desrisme v. Hunt Leibert Jacobson P.C.,*
    880 F. Supp. 2d 339 (D. Conn. 2012)...........................................................5

*Ellis v. Gallatin Steel,*
    390 F.3d 461 (6th Cir. 2004) .......................................................................12

*Fair Assessment in Real Estate Ass'n, Inc. v. McNary,*
    454 U.S. 100 (1981)...............................................................................11, 12

*In re Farm Salmon Cases,*
    42 Cal. 4th 1077 (2008), *cert. denied,* 555 U.S. 1097 (2009) ...........4, 5, 6

*Fay v. Erie Ins. Grp.*,
  723 A.2d 712 (Pa. Super. Ct. 1999)................................................................16, 20

*Frompovicz v. Niagara Bottling, LLC*,
  Civ. No. 18-54, 2018 WL 4465879 (E.D. Pa. Sept. 18, 2018) ...................................3

*Geier v. Am. Honda Motor Co.*,
  529 U.S. 861 (2000)..................................................................................................10

*Gibson v. Berryhill*,
  411 U.S. 564 (1973)..................................................................................................14

*Gilmore v. Shearson/American Express, Inc.*,
  811 F.2d 108 (2d Cir. 1987), *overruled on other gds.*,
  *Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271 (1988) ..............21

*Grudkowski v. Foremost Ins. Co.*,
  No. 3:CV-12-1847, 2013 WL 816666 (M.D. Pa. Mar. 5, 2013),
  *aff'd*, 556 F. App'x 165 (3d Cir. 2014)......................................................................20

*Hachamovitch v. DeBuono*,
  159 F.3d 687 (2d Cir. 1998) .....................................................................................13

*Henderson v. Berce*,
  50 A.2d 45 (Me. 1946)..........................................................................................23, 24

*Hood v. Wholesoy & Co.*,
  No. 12-cv-5550, 2013 WL 3553979 (N.D. Cal. Jul. 12, 2013) .................................25

*Joc, Inc. v. ExxonMobil Oil Corp.*,
  Civ. No. 08-5344, 2010 WL 1380750 (D.N.J. Apr. 1, 2010) ....................................24

*KSW Mech. Servs. v. Johnson Controls, Inc.*,
  992 F. Supp. 2d 135 (E.D.N.Y. 2014) ......................................................................24

*Langan v. Johnson & Johnson Consumer Cos.*,
  95 F. Supp. 3d 284 (D. Conn. 2015).........................................................................24

*Lemelledo v. Beneficial Management Corp. of America*,
  696 A.2d 546 (N.J. 1997) .........................................................................................17

*Lessard v. Lane Bryant, Inc.*,
  2009 WL 3740692 (Conn. Super. Ct. Oct. 15, 2009)................................................18

*Lindemann v. Comm'n on Governmental Ethics & Election Practices*,
  961 A.2d 538 (Me. 2008)..........................................................................................13

*Lynch v. Conley,*
     853 A.2d 1212 (R.I. 2004) ................................................................................................18

*In re Lyon,*
     882 A.2d 1143 (Vt. 2005) .................................................................................................19

*Mallinckrodt LLC v. Littell,*
     616 F. Supp. 2d 128 (D. Me. 2009) .................................................................................14

*Marentette v. Abbott Labs.,*
     886 F.3d 112 (2d Cir. 2018) ...............................................................................8, 9, 10, 11

*Martin v. Maine Bd. of Dental Examiners,*
     No. CIV.A. AP-99-013, 2000 WL 33676116 (Me. Super. May 17, 2000) ............................14

*McClain v. Pfizer, Inc.,*
     No. 3:06-cv-1795, 2008 WL 681481 (D. Conn. Mar. 7, 2008) ..................................................5

*McLeod v. Verizon N.Y., Inc.,*
     995 F. Supp. 2d 134 (E.D.N.Y. 2014) .................................................................................5

*Md. Reclamation Assocs., Inc. v. Harford Cty.,*
     93-CIV-1291, 1993 WL 460835 (D. Md. Oct. 27, 1993) .......................................................12

*Moran v. Conn. Dep't of Pub. Health,*
     954 F. Supp. 484 (D. Conn. 1997) ....................................................................................12

*N.Y. State Rest. Ass'n v. N.Y.C. Bd. of Health,*
     556 F.3d 114 (2d Cir. 2009) .............................................................................................10

*NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.,*
     693 F.3d 145 (2d Cir. 2012), *cert. denied,* 568 U.S. 1228 (2013) ..........................................22

*Nemphos v. Nestle Waters N. Am., Inc.,*
     775 F.3d 616 (4th Cir. 2015) ........................................................................................1, 11

*O'Hara v. Diageo-Guinness, USA, Inc.,*
     306 F. Supp. 3d 441 (D. Mass. 2018) ...........................................................................15, 16

*Official Comm. of Unsecured Creditors of Color Tile, Inc. v.*
     *Coopers & Lybrand, LLP,*
     322 F.3d 147 (2d Cir. 2003) ...............................................................................................9

*Packer v. SN Servicing Corp.,*
     250 F.R.D. 108 (D. Conn. 2008) .........................................................................................5

*In re Parmalat Secs. Litig.,*
     421 F. Supp. 2d 703 (S.D.N.Y. 2006) ................................................................................21

*Planned Parenthood of Dutchess-Ulster, Inc. v. Steinhaus*,
   60 F.3d 122 (2d Cir. 1995) ................................................................... 13

*PLIVA, Inc. v. Mensing*,
   564 U.S. 604 (2011) ............................................................................... 9

*Price v. Philip Morris, Inc.*,
   848 N.E.2d 1 (Ill. 2005) ....................................................................... 16

*Prohias v. Pfizer, Inc.*,
   490 F. Supp. 2d 1228 (S.D. Fla. 2007) ................................................ 23

*Puerto Rico v. Franklin Cal. Tax-Free Tr.*,
   136 S. Ct. 1938 (2016) ............................................................................ 1

*Quackenbush v. Allstate Ins. Co.*,
   517 U.S. 706 (1996) ......................................................................... 11, 12

*Rapid Rubbish Removal, Inc. v. Ripley*,
   988 F. Supp. 414 (D. Vt. 1997) ........................................................... 12

*Reade v. Ewing*,
   205 F.2d 630 (2d Cir. 1953) ................................................................. 14

*Reid v. Johnson & Johnson*,
   780 F.3d 952 (9th Cir. 2015) ................................................................. 9

*Republic Indus., Inc. v. Teamsters Joint Council No. 83 of Va. Pension Fund*,
   718 F.2d 628 (4th Cir. 1983) ............................................................... 14

*Riegel v. Medtronic, Inc.*,
   552 U.S. 312 (2008) ............................................................................... 6

*Rodriguez-Reyes v. Molina-Rodriguez*,
   711 F.3d 49 (1st Cir. 2013) .................................................................. 23

*Salazar v. Honest Tea, Inc.*,
   74 F. Supp. 3d 1304 (E.D. Cal. 2014) ................................................... 1

*Sears Petroleum & Transp. Corp. v. Ice Ban America, Inc.*,
   217 F.R.D. 305 (N.D.N.Y. 2003) ......................................................... 21

*Shields v. Citytrust Bancorp, Inc.*,
   25 F.3d 1124 (2d Cir. 1994) ................................................................. 21

*Smith v. Globe Life Ins. Co.*,
   597 N.W.2d 28 (Mich. 1999) ............................................................... 16

*Starlink Logistics v. ACC, LLC*,
    12-CV-0011, 2013 WL 2177908 (M.D. Tenn. May 20, 2013) ...............................................12

*In re Taft Corners Assocs., Inc.*,
    632 A.2d 649 (Vt. 1993) ...............................................................................................................19

*In re Trader Joe's Tuna Litig.*,
    289 F. Supp. 3d 1074 (C.D. Cal. 2017) .....................................................................................6

*Tribune Co. v. Abiola*,
    66 F.3d 12 (2d Cir. 1995) ............................................................................................................14

*In re Verestar, Inc.*,
    343 B.R. 444 (Bankr. S.D.N.Y. 2006) ......................................................................................23

*Weinberger v. Bentex Pharms., Inc.*,
    412 U.S. 645 (1973) .......................................................................................................................25

*Wheelabrator Envtl. Sys., Inc. v. Galante*,
    No. 3:97CV01040(AVC), 2000 WL 863029 (D. Conn. Mar. 31, 2000) ................................18

**Statutes**

21 U.S.C. §337(a) ...........................................................................................................*passim*

21 U.S.C. §337(b) .................................................................................................1, 9, 10, 22

21 U.S.C. §343-1(a) ...............................................................................................................1

21 U.S.C. §343-1(a)(1) .........................................................................................................6

National Labeling and Education Act of 1990,
    Pub. L. No. 101-535, §6(c)(1), 104 Stat. 2353, 2364 (1990) .................................10

National Labeling and Education Act of 1990,
    Pub. L. No. 101-535, §6(c)(3), 104 Stat. 2353, 2364 (1990) .................................11

*Conn. Gen. Stat. Ann.* §21a-150a(a)(1) .....................................................................22

*Conn. Gen. Stat. Ann.* §21a-150a(a)(3) .....................................................................22

*Conn. Gen. Stat. Ann.* §21a-150a(b) ...........................................................................5

*Conn. Gen. Stat. Ann.* §21a-150a(c) ...........................................................................22

*Conn. Gen. Stat. Ann.* §42-110c(a)(1) .......................................................................17

*Mass. Gen. Laws* ch. 93A, §3 .......................................................................................18

*Me. Rev. Stat. Ann.* tit. 5, §208(1) ............................................................................20

*Me. Rev. Stat. Ann.* tit. 5, §11002(3) ........................................................................13

*Me. Rev. Stat. Ann.* tit. 5, §11001 ............................................................................13

*Me. Rev. Stat. Ann.* tit. 10, §1214(1)(A) ..................................................................20

*N.Y. Gen. Bus. Law* §349(d) .....................................................................................17

*N.Y. Gen. Bus. Law* §350-d.......................................................................................17

*Vt. Stat. Ann.* tit. 10, §1416(4) ...................................................................................5

**Rules**

*Fed. R. Civ. P.* 9(b) .....................................................................................................23

*Fed. R. Civ. P.* 12(b)(2) ..............................................................................................21

*Fed. R. Civ. P.* 12(b)(2)-(5) ........................................................................................21

*Fed. R. Civ. P.* 12(b)(6) ..............................................................................................21

*Fed. R. Civ. P.* 12(g)(2) ..............................................................................................21

**Regulations**

21 C.F.R. §165.110(a)(2)(vi) ................................................................................*passim*

21 C.F.R. §165.110(b) ...................................................................................................5

10-144-231 *Me. Code R.* §3(J)(1)(a)-(c)......................................................................22

*N.J. Admin. Code* §8:21-5.5(a) ...................................................................................17

*N.Y. Comp. Codes R. & Regs.*, tit. 10, §5-6.2 ...........................................................17

*N.Y. Comp. Codes R. & Regs.*, tit. 10, §5-6.16 .........................................................17

25 *Pa. Code* §109.1005(e)(6) ......................................................................................22

25 *Pa. Code* §109.1005(e)(7) ......................................................................................22

25 *Pa. Code* §109.1007(a)(2) ......................................................................................22

25 *Pa. Code* §109.1007(a)(3) ......................................................................................22

31-7 *R.I. Code R.* §3:9.1.1(a) (repealed Dec. 20, 2017) .............................................22

216-50 *R.I. Code R.* §10-4.9(A) .......................................................................................22

216-50 *R.I. Code R.* §10-4.9.2(A)(1) ..............................................................................22

**Other Authorities**

60 Fed. Reg. 57076 (Nov. 13, 1995) ...........................................................7, 10, 22, 25

136 Cong. Rec. 33429 (1990) ............................................................................................11

Victor E. Schwartz et. al., *"That's Unfair!" Says Who-the Government or the
    Litigant?: Consumer Protection Claims Involving Regulated Conduct*, 47
    Washburn L.J. 93 (2007) ............................................................................................16

## I. Plaintiffs' Claims Enforcing The FDA Identity Standard Are Impliedly Preempted

This Court has held that Plaintiffs cannot "sue under a generic state law claim (such as for fraud, breach of contract, or unfair trade practices) that would not be actionable absent a violation of the FDCA standard." [Doc. 141 at 15]. Although Plaintiffs argue their claims "will be proven according to state law definitions of 'spring water,'" their brief conspicuously fails to identify a single state-law definition of spring water under which they sue or a single allegation pled in their Complaint alleging how NWNA violated these unidentified state-law definitions. [Pb10].[1]   Plaintiffs completely ignore their Complaint, which pleads one—and only one—"Identity Standard": the federal FDA "Identity Standard," 21 C.F.R. §165.110(a)(2)(vi). [¶54]. Plaintiffs have failed to "state any proper claims not preempted by federal law," and this Court should dismiss their Complaint.[2] [Doc. 141 at 22].

The only basis for liability pled in the Complaint is the FDCA and the FDA's federal standard of identity for spring water. The Complaint recites that Congress empowered the FDA to adopt "standards of identity" to protect consumers from misbranded food products and that the FDA adopted a "standard of identity defining 'spring water' at 21 C.F.R. §165.110." [¶¶44, 49]. The Complaint alludes to unidentified state laws and regulations adopted since 1995, but only cites to the FDA spring water identity standard, 21 C.F.R. §165.110(a)(2)(vi), which the

---

[1] "Db" refers to NWNA's Moving Memorandum of Law. [Doc. 164-1]. "Pb" refers to Plaintiffs' Opposition Memorandum of Law. [Doc. 170]. Paragraph cites are to the First Amended Complaint ("Complaint"). [Doc. 160].
[2] No "presumption against preemption" applies [Pb12], as this Court has already held FDCA Section 337(a) impliedly preempts Plaintiffs' state-law claims. [Doc. 141]. No presumption can apply as a matter of law in this area "where there has been a history of significant federal presence." *Salazar v. Honest Tea, Inc.*, 74 F. Supp. 3d 1304, 1312 (E.D. Cal. 2014) (quoting *U.S. v. Locke*, 529 U.S. 89, 108 (2000)). This case directly implicates "the FDA's act of defining a food in a standard of identity" [Pb12], a subject area in which Congress has vested the FDA with exclusive authority to establish and enforce food standards of identity and has authorized State Regulators to enforce those federal standards only as permitted by the FDA. *Nemphos v. Nestle Waters N. Am., Inc.*, 775 F.3d 616, 620-21 (4th Cir. 2015) (citing 21 U.S.C. §§341, 343(g)); 21 U.S.C. §337(a), (b). Moreover, any presumption against preemption is inapplicable to the FDCA because it has an express preemption provision: 21 U.S.C. §343-1(a). *See Puerto Rico v. Franklin Cal. Tax-Free Tr.*, 136 S. Ct. 1938, 1946 (2016); *see, e.g., Canale v. Colgate-Palmolive Co.*, 258 F. Supp. 3d 312, 319 (S.D.N.Y. 2017) (presumption inapplicable to FDCA).

Complaint defines as the "Identity Standard." [¶¶52-54, 57, 59, 78].  Referring to the federal "Identity Standard" some **80** times[3] when alleging Poland Spring® is not spring water, Plaintiffs admit that all of their claims "rest entirely" on misrepresentations that Poland Spring® "meet[s] all federal regulatory standards," which Plaintiffs allege are false because "Poland Spring® Water does not meet the standard of identity for spring water." [¶106].  Plaintiffs plead that each of the eight Poland Spring® Maine springs does not meet the FDA Identity Standard[4] and that Maine Regulators have misapplied the FDA Identity Standard in pre-approving the sale of Poland Spring® as spring water [¶¶86, 91, 99, 786].  Contrary to Plaintiffs' argument, <u>each and every count</u> of their Complaint pleads that NWNA failed "to comply with the federal Identity Standard for spring water [21 C.F.R. §165.110(a)(2)(vi)]," which is the <u>only</u> "Identity Standard" pled as the basis for their generic state-law claims.[5]

In arguing their generic state-law claims "do not depend on the FDCA" and "do not seek to enforce the FDCA [Pb16], Plaintiffs do not explain how any of their claims can be resolved based on an independent state-law identity standard.  Plaintiffs do not allege that specific state-enacted definitions of spring water have been violated, but seek damages and a permanent injunction prohibiting NWNA from selling Poland Spring® as spring water based on the allegation that NWNA violated a duty to comply with the FDA Identity Standard, 21 C.F.R. §165.110(a)(2)(vi).  [¶¶841, 860, 872, 885, 896, 911, 935, 959, 983, 1007, 1028].  This is

---

[3][¶¶52, 54, 56-57, 59, 62-64, 70, 78, 81, 86, 88, 99, 108, 184, 191, 223, 234, 241, 253, 259, 263, 291, 297-98, 309, 323, 334, 383, 394, 399, 409, 412, 432, 434, 439, 442-43, 450, 493, 501-02, 517-18, 520, 563, 569, 590, 631, 648, 674, 678, 700-01, 731, 743, 751, 753, 769, 790, 795-96, 799, 808, 841, 860, 872, 885, 896, 911, 935, 959, 983, 1007, 1028].

[4][¶¶323 (Poland Spring), 448 (Clear Spring), 450, 535 (Garden Spring), 590 (Evergreen Spring), 654 (Cold Spring), 708 (White Cedar Spring), 753 (Spruce Spring), 795 (Bradbury Spring)].

[5][¶¶841, 860, 872, 885, 896, 911, 935, 959, 983, 1007, 1028].  Plaintiffs' common law claims are just as dependent on the FDA Identity Standard as their statutory claims. [Pb30, 32].  Neither the fraud nor breach of contract counts identifies a state identity standard, as both "reallege[]" the Complaint's allegations solely defining spring water by reference to the FDA Identity Standard.  [¶¶54, 836, 847].  This Court dismissed Plaintiffs' common law claims as preempted because they predicated liability by "reference solely to FDA regulation." [Doc. 141 at 17].

seeking to enforce that federal regulation, and Plaintiffs cannot deny they allege that NWNA's conduct would not be unlawful <u>but for</u> its noncompliance with that federal regulation.

Plaintiffs argue they "allege that Nestlé violates all nine states' consumer protection acts" and "<u>can rely entirely</u>" on these consumer protection statutes. [Pb16, 19-20 (emphasis added)]. In dismissing their initial complaint, this is precisely what this Court held Plaintiffs may <u>not</u> do: Plaintiffs cannot "sue under a generic state law claim (such as for fraud, breach of contract, or unfair trade practices) that would not be actionable absent a violation of the FDCA standard. Where a state law claim would not exist but for a FDCA regulation, §337(a) impliedly preempts the claim."[6] [Doc. 141 at 15, 16]. Plaintiffs' claims are thus no different than those previously dismissed as impliedly preempted. [*Id.* at 18 (citing *Loreto v. Procter & Gamble Co.*, 515 F. App'x 576 (6th Cir. 2013))]. In *Loreto*, state-law mislabeling claims based on noncompliance with FDA requirements were dismissed because the claims "depend[ed] entirely upon an FDCA violation." [*Id.* (citing 515 F. App'x at 579)]. Likewise, this Court recognized, "[a]bsent the FDA's specific standard of identity requirements for 'spring water,' plaintiffs would have no claims at all." [*Id.* at 19]. Nothing has changed: the Complaint is preempted because in alleging violations of generic state laws based on "Nestlé's recurring failure to comply with the FDA's federal standard for spring water," it is wholly dependent on noncompliance with FDA requirements and would not exist in their absence. [*Id.* at 17].

Plaintiffs' only response to NWNA's argument that Plaintiffs cannot enforce state misbranding laws (because the nine states' laws do not provide for private enforcement actions) is to claim that four states—New Jersey, New York, Connecticut, and Vermont—permit private

---

[6]Other courts have agreed with this Court. *See, e.g., Frompovicz v. Niagara Bottling, LLC*, Civ. No. 18-54, 2018 WL 4465879, at *10 (E.D. Pa. Sept. 18, 2018) (dismissing, as impliedly preempted by FDCA Section 337(a), a Pennsylvania statutory unfair competition claim alleging fraudulent labeling of well water as spring water (citing *Patane v. Nestle Waters N. Am., Inc.*, 314 F. Supp. 3d 375, 386-87 (D. Conn. 2018))).

enforcement actions, citing the *Restatement (Second) of Torts* as their only authority. [Pb19 n.7]. Plaintiffs do not address NWNA's substantial statutory and decisional authority demonstrating that not one state permits private actions to enforce misbranding laws directly or indirectly through generic consumer protection laws.[7]

Plaintiffs' attempt to squeeze their state-law claims within the "narrow gap" by relying on the unique circumstances in *In re Farm Salmon Cases,* 42 Cal. 4th 1077 (2008) ("*Salmon*"), *cert. denied,* 555 U.S. 1097 (2009), is a failure.[8]  Citing the potential health risks of consuming artificial coloring agents, the *Salmon* plaintiffs alleged defendants violated the California Sherman Law's independently-enacted state law establishing California requirements for disclosing artificial food coloring.  42 Cal. 4th at 1086.  The Sherman Law provision directing how color additives are to be disclosed set forth its own requirements that were "identical" to the FDCA regulation.  *Id.* at 1090.  Holding them neither expressly nor impliedly preempted by the FDCA, the California Supreme Court reasoned plaintiffs' claims "do not require referring to, or applying, the FDCA.  Plaintiffs' claims are based on violation of the Sherman Law and can be resolved with reference to state law alone." *Id.* at 1097 (emphasis added).

The *Salmon* Court distinguished plaintiffs' claims—based on a violation of an independent state law establishing a state's own requirements—from other cases[9] in which a party attempted to use a state law to enforce a violation of the FDCA. 42 Cal. 4th at 1097. The *Salmon* Court's reasoning is noticeably absent from Plaintiffs' discussion because they are

---

[7][Db25 n.32 (N.J.), 27 n.27, 28 (N.Y.), 28, 28 n.29 (Conn.), 31 nn.40-41 (Vt.)].

[8]Given this Court's reference to *Salmon* in its May 17 Order, NWNA discusses *Salmon's* preemption analysis without conceding it is legally correct or applicable to this case. [Doc. 141 at 15].

[9]Contrary to Plaintiffs' attempt to discredit them [Pb16 n.5], the *Salmon* Court did not disagree with these cases' basic reasoning that "directly applying the FDCA, as would have been required [in those cases and here], would run afoul of section 337." *Salmon,* 42 Cal. 4th at 1097.  It simply did not apply that reasoning to state-law claims premised on an independent state-law which made no reference to federal law.  Plaintiffs concede the validity of this reasoning by acknowledging that Section 337(a) preempts claims "seek[ing] to enforce new mislabeling violations that would not be unlawful but for the fact that the FDA declared it unlawful." [Pb15].

attempting to do precisely what *Salmon* recognizes they cannot do:  enforce an alleged violation of the FDCA.  [Pb13-15].  While *Salmon* involved claims alleging violation of an independently enacted state-law that did not refer to or even mention the corresponding federal regulation, Plaintiffs' Complaint does <u>not</u> allege that NWNA violated an independently-enacted state-law definition of spring water.

Plaintiffs' claim that they "properly allege that Nestlé violates state laws substantively identical to federal law" is demonstrably false.  [*Id.* at 22].  None of the state laws or regulations pled in the Complaint creates an independent state-law standard of identity, as in *Salmon*, let alone one that is identical to the federal standard.  Methodically proceeding count-by-count and state-by-state, NWNA has explained how each of the state laws pled by Plaintiffs does not establish an independent, stand-alone state identity standard, but is an element of each state's regulatory scheme for pre-approving the sale of bottled water as spring water.[10]  [Db25-35]. Once again, Plaintiffs have completely failed to address NWNA's analysis showing that these state laws do not establish independent state spring water identity standards and that their claims cannot succeed without referring to or applying the federal Identity Standard.[11]  [Pb22].

---

[10] Despite Plaintiffs' attempt to misrepresent the New Jersey, New York, Massachusetts, Rhode Island, New Hampshire, and Maine regulatory schemes by quoting snippets of their state laws and regulations out of context [Pb22-23 n.9], these provisions form part of each state's regulatory scheme for pre-approving the sale of spring water.  [Db26 (N.J.), 26-27 (N.Y.), 29 (Mass.), 30 (R.I.), 32 (N.H.), 33 (Me.)].  As Plaintiffs did not plead the Connecticut, Vermont, and Pennsylvania laws [¶¶896, 959, 1028], they cannot amend their Complaint by asserting in their brief that these unpled state laws create state identity standards. *Desrisme v. Hunt Leibert Jacobson P.C.*, 880 F. Supp. 2d 339, 376 (D. Conn. 2012).  Furthermore, these statutes have nothing to do with state identity standards.  Plaintiffs miscite the Connecticut statute—*Conn. Gen. Stat. Ann.* §21a-150a(b)—which pertains to compliance with federal <u>quality</u> standards under 21 C.F.R. §165.110(b).  The Vermont statute—*Vt. Stat. Ann.* tit. 10, §1416(4)—pertains to the removal of ground water in Vermont, not Maine.  [¶¶10, 28, 33].
[11] "It is well settled that a failure to brief an issue is grounds to deem the claim abandoned." *Packer v. SN Servicing Corp.*, 250 F.R.D. 108, 112 (D. Conn. 2008).  "Indeed, courts in this circuit have held that a plaintiff's failure to respond to contentions raised in a motion to dismiss claims constitute an abandonment of those claims." *McLeod v. Verizon N.Y., Inc.*, 995 F. Supp. 2d 134, 143 (E.D.N.Y. 2014).  Plaintiffs' total silence in the face of this detailed legal argument constitutes their concession of this point and abandonment of their claims.  *See, e.g., McClain v. Pfizer, Inc.*, No. 3:06-cv-1795, 2008 WL 681481, at *6 (D. Conn. Mar. 7, 2008) (inferring from plaintiff's silence her concession of statute of limitations argument as basis for dismissal).

Plaintiffs argue their claims arise under state consumer protection statutes "informed by" state laws that mirror FDCA requirements [*id.*], but that is not what *Salmon* requires. States may not confer private citizens with the authority to enforce the FDCA and the FDA Identity Standard. *See* 21 U.S.C. §337(a). *Salmon* only permitted generic state-law claims to survive implied preemption because they enforced a separate and independent state-law requirement without any reference to federal law. This is exactly what is missing from Plaintiffs' Complaint, which never identifies a state law establishing a separate state identity standard and certainly not one that can be enforced without referring to or applying the FDA Identity Standard, 21 C.F.R. §165.110(a)(2)(vi), which is the only "Identity Standard" pled. [¶54]. Plaintiffs' Complaint depends entirely on a failure to comply with a federal regulation and, therefore, is impliedly preempted. *In re Trader Joe's Tuna Litig.*, 289 F. Supp. 3d 1074, 1086 (C.D. Cal. 2017).

## II.   The FDCA Expressly Preempts Plaintiffs' State-Law Claims

Plaintiffs do not address NWNA's argument that by seeking to substitute the judgment of a federal jury for that of State Regulators, their state-law injunctive relief and damages claims are grounded in the "perverse distinction" of permitting juries more power than regulators to enforce regulatory standards, which the Supreme Court rejected in *Riegel v. Medtronic, Inc.*, 552 U.S. 312, 324 (2008). Separate from this argument, Plaintiffs' claims, as pled, show they are attempting to enforce standards that are "not identical to" the FDA Identity Standard.[12]   21 U.S.C. §343-1(a)(1). Plaintiffs impose the non-identical requirement that NWNA must demonstrate to them, this Court, and a jury the "appropriate hydraulic connection" that the FDA Identity Standard requires be demonstrated only to **"appropriate regulatory officials."**   21 C.F.R. §165.110(a)(2)(vi). Plaintiffs cite absolutely nothing in support of their erroneous

---

[12] *See In re Medtronic, Inc.*, 623 F.3d 1200, 1207 (8th Cir. 2010); *Benyak v. Medtronic, Inc.*, No. 1-17-2147, 2018 WL 3005915, at *5 (Ill. App. Ct. Jun. 14, 2018) (how allegations are pled "guides" preemption analysis).

statement that Congress and the FDA intended to permit consumers or juries, rather than regulatory officials, to evaluate hydraulic connection. [Pb27]. Consistent with its text and Congress' prohibition against private enforcement actions, *see* 21 U.S.C. §337(a), the FDA fully expected that only regulators would enforce the spring water definition.[13]

Plaintiffs defend their non-identical **"seeps are not springs"** standard—that diffuse flow through sand cannot be a spring—by citing language stating "there must be a natural force causing the water to flow to the surface through a natural orifice." [Pb28]. But the FDA did not, by this language, preclude water from being labeled spring water because the natural orifice has water diffusely seeping through grains of sand, or to require a particular flow rate after the water flows naturally to the surface. Instead, the FDA added this portion of the definition "to clearly distinguish between the definitions of 'artesian water' and 'spring water'": *i.e.*, "Artesian water does not flow to the earth's surface unless a well is drilled...." 60 Fed. Reg. at 57092.

Plaintiffs' state-law claims are expressly preempted because they seek to enforce numerous, other non-identical standards. Plaintiffs ignore [Pb28], and therefore concede, NWNA's argument that they incorrectly subdivide the phrase "shall be from the same underground stratum as shown by a measurable hydraulic connection" to create the phrase **"same underground stratum"** as a separate and distinct, non-identical requirement. [Pb46, 46 n.64]. Conceding that **"same path"** is not a part of the FDA Identity Standard, Plaintiffs now argue that this term is only evidentiary support for differences in water chemistry [Pb28], yet the Complaint pleads it as an additional, non-identical requirement [¶¶63(b)-65]. Nor do Plaintiffs defend NWNA's arguments that their **"higher rates"** or **"commensurate"** flow requirements

---

[13] *See, e.g.*, 60 Fed. Reg. 57076, 57094 (Nov. 13, 1995) ("If the manufacturer cannot establish that the water that it is calling 'spring water' is the same as that from the identified spring, it runs a significant risk that its product is misbranded, and thus, that it will be the subject of regulatory action."); *id.* at 57097 ("[F]irms must demonstrate and be able to verify to regulatory officials that there is a measurable hydraulic connection....").

are inconsistent with the FDA rule, or that their alleged requirements that State Regulators perform **"independent" tests** and that bore holes not be **proximate to surface water** are not identical to the federal standard. [Pb28-29]. And they ignore that their Complaint imposes a non-identical, **municipal source labeling** requirement. [*Id.*]

Plaintiffs' allegations about **"purifying water"** by reducing radon or manganese is another non-identical requirement. [*Id.* at 29]. Plaintiffs' argument about treated water that "differs significantly" from the source water is unsupported by any allegation stating that the water being bottled "differs significantly." [*Id.*] Plaintiffs' allegation that the water is not spring water because it is not an **"identical match,"** it **"cannot be older water,"** and there must be **"no difference"** between bore hole and spring, imposes a stricter and different standard than the FDA rule, which is another non-identical requirement Plaintiffs fail to address or rebut. [*Id.*]

## III.  The FDA Identity Standard Enforcement Scheme Conflict-Preempts The Complaint

Plaintiffs' Complaint is conflict-preempted by the FDA Identity Standard enforcement scheme and should be dismissed. *Marentette v. Abbott Labs.*, 886 F.3d 112 (2d Cir. 2018), provides a textbook illustration of how private state-law claims are impliedly preempted by the unavoidable conflict they pose to congressional objectives animating a federal enforcement scheme. In dismissing state-law claims as conflict-preempted by the Organic Foods Production Act's ("OFPA") organic certification enforcement scheme, the Second Circuit held the *Marentette* plaintiffs' state-law false labeling claims "strike at the very heart of the OFPA certification process" because they challenged the organic determinations made pursuant to the United States Department of Agriculture's ("USDA") certification process and thereby posed an obstacle to congressional objectives in devising that process as integral to the law's enforcement scheme. *Id.* at 114, 118. Critical to that decision was that Congress enacted the OFPA to

facilitate a uniform federal organic standard by "allocat[ing] enforcement power to the federal agency and accredited agents," which evinced congressional intent not to permit consumers to challenge pre-approval, certification determinations made pursuant to the OFPA. *Id.* at 120-21.

Plaintiffs' argument that *Marentette* is "distinct" from this case is unsupported by any authority. [Pb33]. Their claim that the FDA Identity Standard has no enforcement "mechanism" and "relies largely on industry self-regulation" is contradicted by their brief's acknowledgement that the FDA relies on the states to enforce the FDA Identity Standard. [*Id.* at 34]. Just as "accredited agents" are empowered to enforce the USDA's federal organic standard, *Marentette*, 886 F.3d at 120, State Regulators are empowered to enforce the FDA's federal spring water identity standard.[14]  21 U.S.C. §337(b).  It is also contradicted by Plaintiffs' Complaint, which admits that State Regulators enforce the FDA Identity Standard through their pre-approval permitting processes.[15]  Plaintiffs' own statements thus confirm regulatory pre-approval lies at the heart of both the OFPA and FDA Identity Standard enforcement schemes.

Plaintiffs misstate the law in claiming the FDA "leaves enforcement [of the FDA Identity Standard] largely to consumers." [Pb35]. Not only did Congress decline to include a private right of action under either statute, but Congress expressly prohibited private enforcement actions under FDCA Section 337(a), which "leaves no doubt" that private litigants may not enforce the FDCA. *Buckman Co. v. Plaintiffs' Legal Cmte.*, 531 U.S. 341, 349 n.4 (2001);

---

[14]The FDA has issued a guidance letter confirming that if state spring water certification requirements meet 21 C.F.R. §165.110(a)(2)(vi) and State Regulators certify that a bottled water and its source satisfy those requirements, then it is "appropriate" to label bottled water as "spring water." [Doc. 53-3 at 5-6]. The FDA's view of how its own regulation works is entitled to judicial deference. *PLIVA, Inc. v. Mensing*, 564 U.S. 604, 613 (2011); *see, e.g., Reid v. Johnson & Johnson*, 780 F.3d 952, 962 (9th Cir. 2015) (deferring to informal FDA rule interpretation).

[15]Plaintiffs are bound by their admissions that (i) it is the job of State Regulators to ensure compliance with the FDA Identity Standard as part of the state's pre-approval permitting process [¶796]; (ii) if Maine DWP determines a bottled water complies with the FDA Identity Standard, it will issue a spring water permit authorizing it to be sold as spring water [¶¶86, 91, 796]; and (iii) the Maine DWP "has continued to issue and renew Defendant's spring water permits" based on its pre-approval that Poland Spring® meets the FDA Identity Standard [¶¶91, 99]. *See Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 167 (2d Cir. 2003).

*Marentette*, 886 F.3d at 121.   Congress empowered the USDA and the FDA to investigate and enforce violations of their regulations.   *Marentette*, 886 F.3d at 120; *see* Db38 n.55.   Congress authorized states to seek FDA approval to pursue their own enforcement actions.   21 U.S.C. §337(b).   Consistent with congressional intent, the FDA Identity Standard provides for enforcement exclusively by "appropriate regulatory officials." 21 C.F.R. §165.110(a)(2)(vi).   If private litigants were authorized to enforce the FDA Identity Standard, it would not provide that bottlers must demonstrate the hydraulic connection requirement to "appropriate regulatory officials."[16]   Plaintiffs' state-law claims directly conflict with congressional intent by attempting to privately enforce the FDA Identity Standard that is only enforceable by regulators.

Plaintiffs' conclusory statement that the FDA Identity Standard "put[s] neither label approval nor enforcement firmly in federal hands" turns a blind eye to the federal control exacted over its enforcement scheme.   [Db35].   In enacting the OFPA and the FDCA, Congress empowered federal agencies and their duly-authorized agents to enforce uniform federal standards.   *Marentette*, 886 F.3d at 120; 21 U.S.C. §337(b); 21 C.F.R. §165.110(a)(2)(vi).   Exclusive federal control of these enforcement schemes was designed to foster their common congressional objectives: to facilitate interstate commerce through uniform national standards.[17]

---

[16]Nor would the FDA have advised that failure to comply exposes a bottler to "a significant risk that its product is misbranded ... and will be the subject of a regulatory action," as opposed to a civil lawsuit. 60 Fed. Reg. at 57096.

[17]Plaintiffs' argument that "Congress, the FDA, and the Second Circuit have all concluded there can be no implied preemption of any kind under the [National Labeling and Education Act of 1990 ("NLEA")] amendments to the FDCA" is irrelevant and wrong. [Pb35]. None has rendered any categorical pronouncement that "the NLEA bars implied preemption of state laws." [*Id.*] In *N.Y. State Rest. Ass'n v. N.Y.C. Bd. of Health*, 556 F.3d 114, 123 (2d Cir. 2009), the court made passing reference to Congress' uncodified statement that "[t]he [NLEA] shall not be construed to preempt any provision of State law, unless such provision is expressly preempted under section 403A [Section 343-1] of the [FDCA]," Pub. L. No. 101-535, §6(c)(1), 104 Stat. 2353, 2364 (1990). This statement is not relevant here, as NWNA's conflict-preemption argument does not require construction of the NLEA. Nor does that statement suggest an intent to save claims, like Plaintiffs', which unavoidably conflict with the FDA Identity Standard's careful regulatory scheme. *See Geier v. Am. Honda Motor Co.*, 529 U.S. 861, 869, 870 (2000) ("Moreover, this Court has repeatedly declined to give broad effect to saving clauses where doing so would upset the careful regulatory scheme established by federal law."). Congress did not intend the NLEA to change the

*Marentette*, 886 F.3d at 115; *Nemphos*, 775 F.3d at 619-20, 623.   Plaintiffs' claims directly conflict with those objectives by subjecting the FDA Identity Standard to varying interpretations by litigants, judges, and juries across the nation that will defeat uniformity and impair commerce.

Plaintiffs' state-law claims are a direct frontal assault on State Regulators' role in making pre-approval compliance determinations under the FDA Identity Standard enforcement scheme. Plaintiffs' claims are solely predicated on the alleged noncompliance of Poland Spring® with the FDA Identity Standard.  [¶¶54, 106].  Plaintiffs allege Maine's enforcement of the FDA Identity Standard has been so "lax and ineffective," its State Regulators so negligent and incompetent, and its regulatory process so "politically compromised," that its spring water permits have been the product of a "conflict of interest" tainting all other states' pre-approvals.  [¶¶81, 91-99, 796, 803, 808; Pb64].  Because Plaintiffs cannot prove their claims without voiding State Regulators' pre-approval compliance determinations, their claims "strike at the very heart" of the FDA Identity Standard enforcement scheme and are conflict-preempted.  *Marentette*, 886 F.3d at 118.

## IV.  Abstention Pursuant To The *Burford* Doctrine Is Appropriate In This Case

Plaintiffs are wrong in arguing that *Burford* abstention is inappropriate because (1) it does not apply to damages claims; (2) no state court review exists; (3) their claims do not disrupt state administrative processes; and (4) the *Bethphage*[18] factors have not been met.  [Pb36-52].

(1) *Quackenbush v. Allstate Insurance Co.*, 517 U.S. 706, 730-31 (1996), rejected a "*per se* rule ... strictly limit[ing] abstention to equitable cases," holding it could be appropriate in cases involving any form of "discretionary relief."  [Pb38-39].  *Quackenbush*, 517 U.S. at 719, preserved the abstention holding of *Fair Assessment in Real Estate Ass'n, Inc. v. McNary*, 454

---

existing preemption landscape, 136 Cong. Rec. 33429 (1990), as it "shall not be construed" to affect implied preemption under other laws or regulations, such as the FDA Identity Standard, §6(c)(3), 104 Stat. at 2364.
[18]*Bethphage Lutheran Servs., Inc. v. Weicker*, 965 F.2d 1239 (2d Cir. 1992).

U.S. 100, 115 (1981), that a damages action could be dismissed on comity grounds where the damages award turned first on what in effect a declaration that specific state action was unlawful. Since *Quackenbush*, courts have abstained where the damages remedy is dependent on a judicial finding that a state or regulatory decision is wrong or unlawful. To wit, *Amerson v. Iowa*, 94 F.3d 510, 512-13 (8th Cir. 1996), *cert. denied*, 519 U.S. 1061 (1997), upheld dismissal of a damages claim for tortious interference with parental rights, reasoning that a damages award would "in effect require a preliminary declaration that the state court judgment terminating her parental rights is invalid."[19]

Similarly, Plaintiffs are not only demanding an injunction barring the sale of Poland Spring® as "spring water" [*see, e.g.*, ¶¶839, 846, 849, 852, 856, 1010, 1021], but are demanding damages [*see, e.g.*, ¶¶844, 855, 1020], the award of which requires a "preliminary declaration" that the State Regulators wrongly issued NWNA permits to sell Poland Spring® as "spring water." "[T]he relief sought is in fact equitable and discretionary": an effective declaration that the government permits are invalid and an injunction barring their use.

(2) *Burford* abstention is often granted in permitting cases involving "complex scientific questions that must be reviewed before a permit … is approved."[20] *Browning-Ferris, Inc. v. Baltimore Cty., Md.*, 774 F.2d 77, 79 (4th Cir. 1985). Despite Plaintiffs' contrary claims [Pb45-

---

[19]*Amerson* has been followed by courts in this Circuit. *See Rapid Rubbish Removal, Inc. v. Ripley*, 988 F. Supp. 414, 415, 420 (D. Vt. 1997) (abstaining on holding that "for the damages claim to survive," a judicial declaration had to "be issued" that a Vermont Agency of Natural Resources ("VANR") solid waste facility certification procedure was unlawful, and noting that although the "damages claim exists," in substance, "the relief sought is in fact equitable and discretionary" (emphasis added)); *Moran v. Conn. Dep't of Pub. Health*, 954 F. Supp. 484, 489 (D. Conn. 1997) (abstaining because damages from suspension of plaintiff's medical license were "based entirely" on upending the state "scheme for disciplining doctors" and "[could] not be awarded … without a preliminary declaration" of unconstitutionality). By contrast, Plaintiffs cite three unpublished, trial-level "mixed" equity-damages cases from the Ninth Circuit—two in foreclosure and one in an employment context—that did not involve a state administrative process or anything remotely close to a *Fair Assessment* fact pattern. [Pb40].

[20]*See also Ellis v. Gallatin Steel*, 390 F.3d 461, 481 (6th Cir. 2004) (CAA PSD permit); *Starlink Logistics v. ACC, LLC*, 12-CV-0011, 2013 WL 2177908, at *3 (M.D. Tenn. May 20, 2013) (discharge permit); *Md. Reclamation Assocs., Inc. v. Harford Cty.*, 93-CIV-1291, 1993 WL 460835, at *4 (D. Md. Oct. 27, 1993) (landfill permit).

47], the pre-approval and issuance of permits authorizing the sale of Poland Spring® as spring water involved a complex regulatory process. Plaintiffs spend hundreds of paragraphs in their Complaint challenging the technical surveys, hydrogeologic reports, and scientific testing on which Maine Regulators relied in granting NWNA permits. [¶¶149-808]. Retention of jurisdiction would upend this regulatory process, as a judge and jury would be permitted to countermand the determinations made by Maine's and other States' Regulators authorizing Poland Spring® to be sold as "spring water."[21] Enjoining the sale of Poland Spring® as spring water would not only fundamentally disrupt the states' regulatory processes, but would completely usurp their duties and totally negate their functions.

(3) Even as non-parties to the permitting process, Plaintiffs have access to state court judicial review of NWNA's permits. [Pb43-44]. The Maine Administrative Procedure Act affords judicial review to "part[ies]" and to "other person[s] aggrieved" by "final agency action[s]." 5 Me. Rev. Stat. Ann. tit. 5, §§11002(3), 11001. The grant of a permit is a "final agency action" that may be challenged by non-parties to the permitting process.[22] *Conservation Law Found. v. Dep't of Envtl. Prot.*, 823 A.2d 551, 558 (Me. 2003). As Plaintiffs allege they suffered financial losses by overpaying for water, they could claim to be "persons aggrieved" by

---

[21]None of Plaintiffs' cases involves the complex subject of natural resource-related permitting or would displace state permitting processes as dramatically as Plaintiffs would here [Pb47]. *See Hachamovitch v. DeBuono*, 159 F.3d 687, 693 (2d Cir. 1998) (doctor's challenge to constitutionality of procedures for license suspensions only sought to modify procedures, not replace them); *Planned Parenthood of Dutchess-Ulster, Inc. v. Steinhaus*, 60 F.3d 122, 125, 127 (2d Cir. 1995) (federal court was required to interpret municipal law, clearly within its competency); *All. of Auto. Mfrs., Inc. v. Currey*, 984 F. Supp. 2d 32, 53 (D. Conn. 2013), *aff'd*, 610 F. App'x 10 (2d Cir. 2015) (challenging constitutionality of statute, not attacking "discrete actions" or determinations "by the Commissioner").
[22]Plaintiffs miss the critical distinction between "adjudicative proceedings" and other types of "final agency action." *Brown v. State, Dep't of Manpower Affairs*, 426 A.2d 880, 883 (Me. 1981) ("final agency action" is a broader category than "adjudicative proceeding"). "Adjudicative proceedings" are conducted between "parties," *id.* at 885 (construing 5 Me. Rev. Stat. Ann. tit. 5, §8002(7)), so only a "party" may seek judicial review, *Lindemann v. Comm'n on Governmental Ethics & Election Practices*, 961 A.2d 538, 544 (Me. 2008). But other "final agency actions" have no "parties," only "persons aggrieved." *Brown*, 426 A.2d at 885. The permitting processes here were not "adjudicative proceeding[s]," but a type of "final agency action" to which one need not be a "party" to appeal.

the issuance of NWNA's permits.  *See Martin v. Maine Bd. of Dental Examiners*, No. CIV.A. AP-99-013, 2000 WL 33676116, at *2 (Me. Super. May 17, 2000).[23]

The notion that state court review would be inadequate here is also without basis. [Pb45].  Whereas in *Tribune Co. v. Abiola*, 66 F.3d 12 (2d Cir. 1995), the court declined to abstain from a massive RICO conspiracy because most of the conspirators could not be made parties to or held liable in worker's compensation proceedings, NWNA would be a party to any permitting challenge.  Further, there is no known bar to Plaintiffs seeking injunctive relief or damages in state court were they successful in overturning NWNA's permits.[24]

(4) Plaintiffs fail to rebut NWNA's showing that the *Bethpage* factors support *Burford* abstention:  (a) failure to abstain would allow a judge and jury to entirely displace Maine's and other states' regulatory and permitting processes for the sale of bottled water;  (b) State Regulatory Agencies are charged with interpreting the definition of "spring water" and determining whether Poland Spring® water meets that definition;  and (c) the states enforce bottled water safety and sanitary quality, as expressly delegated by Congress and the FDA;[25] regulate locally-consumed food and water;  and police local advertising through enforcement of state misbranding laws.  [Db13-20].

---

[23]Consumers claiming to be affected by the price or quality of a good impacted by an agency decision have been held to be "aggrieved" under various federal laws.  *See Associated Indus. of N.Y. State v. Ickes*, 134 F.2d 694, 705 (2d Cir.), *vacated on other gds.*, 320 U.S. 707 (1943); *see also Reade v. Ewing*, 205 F.2d 630, 632 (2d Cir. 1953). Plaintiffs' cases in which there was insufficient injury for standing involved citizens complaining about the diffuse effects of government acts, not consumers of specific goods complaining about the prices they paid.  [Pb44].

[24]Maine Regulators are not parties accused of fraudulently acting for their own personal gain.  [Pb51-52].  Ties to a regulated industry, *Republic Indus., Inc. v. Teamsters Joint Council No. 83 of Va. Pension Fund*, 718 F.2d 628, 640 (4th Cir. 1983), or payment of fees to a state, *Mallinckrodt LLC v. Littell*, 616 F. Supp. 2d 128, 146-47 (D. Me. 2009), do not preclude abstention, particularly where regulators are governed by federal standards and do not individually control the funds.  Moreover, abstention would not result in regulators reviewing their own decisions. *See Gibson v. Berryhill*, 411 U.S. 564, 581 (1973).

[25]Indeed, Plaintiffs tout the states' traditional "police powers" in order to avoid preemption.  [Pb11-16].

## V.   NWNA Is Entitled To Safe Harbor Exemption From State-Law Liability

Contrary to Plaintiffs' mischaracterization of NWNA's argument, NWNA does not claim safe harbor exemptions merely because bottled water is subject to regulation.  It is entitled to exemptions because NWNA's sale of Poland Spring® as "spring water" was pre-approved and authorized by determinations made by State Regulatory Agencies in all nine states.

Plaintiffs plead that Maine determined that the source water for Poland Spring® is spring water and concede in their brief that "the other eight states relied on Maine's permit approvals."[26]  While NWNA has permits from each state that "certify [it] to bottle and sell water," Plaintiffs urge this Court not to consider anything beyond the face of those permits. [Pb52].  It is simply absurd for Plaintiffs to ask this Court to ignore all of the statutory requirements for the issuance of those permits merely because a determination of compliance with all such requirements is not literally printed on the permits themselves.[27]  [Id.]

In *O'Hara v. Diageo-Guinness, USA, Inc.*, 306 F. Supp. 3d 441, 449 (D. Mass. 2018), plaintiff alleged a beer label was deceptive regarding product origin in violation of the Massachusetts CPA.  Defendant attached to its motion to dismiss a Certificate of Label Approval ("COLA") granted by the Alcohol Tobacco Tax and Trade Bureau ("TTB"), which required the product label to comply with applicable laws and regulations.  *Id.* at 455-56.  Recognizing that "to issue the COLA, the TTB was required to find" that the label complied with the product origin regulations, the court held the label was "not misleading" as a matter of law and applied the Massachusetts CPA's safe harbor.  *Id.* at 463-64.

NWNA has provided a regulatory road map demonstrating how each State Regulator must verify that bottled water sold as spring water complies with the FDA Identity Standard

---

[26][*See, e.g.,* ¶¶293-302, 394, 400, 412, 439, 569, 647-48, 703, 767; Pb47 n.25, 52].
[27]Plaintiffs ignore New York's permits state the boreholes are certified as spring water sources [Doc. 53-3 at 21-24].

before issuing a permit authorizing its sale. [Db10-12]. The law is clear: these determinations are specific authorizations to sell Poland Spring® as spring water. [Pb52-53].

Plaintiffs demonstrate their obvious misunderstanding of safe harbors by arguing they do not apply because NWNA was not authorized to "make false representations." [Pb53]. In exempting from consumer protection statutes acts that are "specifically authorized" by a regulator administering its laws, the states clearly "intended to include conduct the legality of which is in dispute." *Smith v. Globe Life Ins. Co.*, 597 N.W.2d 28, 38 (Mich. 1999). "[T]he relevant inquiry is not whether the specific misconduct alleged by the plaintiffs is 'specifically authorized.' Rather, it is whether the general transaction is specifically authorized by law, regardless of whether the specific misconduct alleged is prohibited." *Id.* If a regulator has authorized the sale of bottled water as spring water, the seller cannot be liable under a consumer fraud statute with a safe harbor, "even if the terms might be deemed false, deceptive, or misleading." *Price v. Philip Morris, Inc.*, 848 N.E.2d 1, 38 (Ill. 2005). Authorized conduct is exempt from liability "without regard to the possible merits of the asserted claim." *Id.*[28]

---

[28]*See O'Hara*, 306 F. Supp. 3d at 454 (The safe harbor "enables a defendant to rely on regulators' authoritative and particularized determination that its product or conduct is not unfair or deceptive."); *Price*, 848 N.E.2d at 38-39 ("[A] safe harbor provision], by exempting certain conduct from liability even if the conduct itself is objectionable, serves to channel objections to agency policy and practice into the political process rather than into the courts. Parties who desire to bring about change in agency policies or rules can take their complaints to the agency itself and can participate in the formal rulemaking process. If their concerns are not addressed by the agency, they may seek assistance from their legislators and may use the political process, including the power of the ballot box, if their voices are not heard."); *Fay v. Erie Ins. Grp.*, 723 A.2d 712, 715 (Pa. Super. Ct. 1999) (explaining, in dismissing a consumer fraud claim due to Pennsylvania's safe harbor exemption, that if plaintiff still "deems the practice objectionable, her remedy is to bring this matter to the attention of the legislature or the [regulator that authorized the practice] rather than to seek a judicial solution"); *see also* Victor E. Schwartz et. al., *"That's Unfair!" Says Who—the Government or the Litigant?: Consumer Protection Claims Involving Regulated Conduct*, 47 Washburn L.J. 93, 100-01 (2007) ("Private CPA lawsuits may not only damage the credibility of government agencies having jurisdiction over the practice at issue, but they also result in a lack of predictability for businesses. Regulated actors reasonably rely on the decisions, instructions, and guidance of government officials. If a government agency authorizes or permits a certain marketing or business practice, then a business that complies with the law would not expect to later find itself subject to liability on the basis that a plaintiff's lawyer, a judge, and individuals on a particular jury panel have reached a different conclusion.").

Plaintiffs are equally misguided in their state-specific arguments. Plaintiffs misconstrue NWNA's argument by claiming that different interests underlying the **New Jersey** CFA and bottled water regulations somehow render the New Jersey Supreme Court's decision in *Lemelledo v. Beneficial Management Corp. of America*, 696 A.2d 546 (N.J. 1997), inapplicable. [Pb55-56]. New Jersey law is clear: an act that has been approved by a regulator is exempt from NJCFA scrutiny where allowing such a claim would create a "real possibility of conflicting determinations" between the agency and "the courts applying the CFA." *Lemelledo*, 696 A.2d at 553. The New Jersey Department of Health determined Poland Spring® complied with its requirements to obtain a bottled water certification, including *N.J. Admin. Code* §8:21-5.5(a),[29] and Plaintiffs have alleged that Poland Spring® does not comply with that same regulation [¶860]. Whether Poland Spring® complies with this regulation creates a direct potential conflict with that determination exempting NWNA from the NJCFA (Count III).

When issuing licenses, the **New York** Commissioner of Health certifies bottlers' compliance with its bottled water requirements.[30] Plaintiffs offer no authority for claiming that the certifications granted year-after-year to NWNA "say nothing about [NWNA's] compliance with spring water regulations" because it is patently false. [Pb57]. The New York State Department of Health licenses authorizing the sale of Poland Spring® bottled water in New York give NWNA a "complete defense" to Counts IV and V. *N.Y. Gen. Bus. Law* §§349(d), 350-d.

**Connecticut** courts have <u>not</u> held the CUTPA exemption, *Conn. Gen. Stat. Ann.* §42-110c(a)(1), "applies almost exclusively to governmental defendants, not to private parties like [NWNA]." [Pb57-58]. This Court has recognized this exemption "applies not according to the

---

[29][Db10; Doc. 53-3 at 16-19 (N.J. Dep't of Health certifications "ISSUED PURSUANT TO N.J.A.C. 8:21-5.15")].
[30]Plaintiffs do not dispute that the Commissioner granted licenses to NWNA. *See N.Y. Comp. Codes R. & Regs.*, tit. 10, §§5-6.2, -6.16; Db10; Doc. 53-3 at 21-24 (approvals "to bottle and distribute bottled water in the State of New York issued under the provisions of 10 NYCRR, Part 5").

identity of the party but rather to the transaction at issue." *Wheelabrator Envtl. Sys., Inc. v. Galante*, No. 3:97CV01040(AVC), 2000 WL 863029, at *9 (D. Conn. Mar. 31, 2000).[31]  As the sale of Poland Spring® as spring water was "permitted under law as administered by" Connecticut's Department of Consumer Protection, NWNA is exempt from CUTPA (Count VI).

The **Massachusetts** Department of Health issued a license to NWNA to sell Poland Spring®, which it could not have done without determining NWNA complied with all Massachusetts bottled water licensing regulations.[32]  Actions that are "permitted under laws as administered by" a State Regulator are exempt from Massachusetts CPA liability. *Mass. Gen. Laws* ch. 93A, §3.  As NWNA was permitted to sell Poland Spring® as spring water in Massachusetts, NWNA is exempt from the Massachusetts CPA (Count VII).

Under *Lynch v. Conley*, 853 A.2d 1212, 1214 (R.I. 2004), NWNA is exempt from the **Rhode Island** DTPA (Count VIII) unless Plaintiffs can prove the specific act at issue, *i.e.*, the sale of Poland Spring®, was not regulated.  Plaintiffs do not dispute that the sale of Poland Spring® is regulated by Rhode Island [Pb60], as their Complaint admits it.[33]

The **Vermont** Supreme Court has recognized that it is fundamentally unfair for the government to assure a business that a proposed activity complies with its regulations, only to penalize the business for that activity: "While as a general rule [a civil defendant's] ignorance of the law would not excuse failure to comply with [VANR] requirements," Vermont "will not

---

[31] *See also Blass v. Rite Aid of Conn., Inc.*, 16 A.3d 855, 857 (Conn. Super. Ct. 2009) (exempting drug store chain), *aff'd o.b.*, 16 A.3d 737 (Conn. App. Ct. 2011); *Lessard v. Lane Bryant, Inc.*, 2009 WL 3740692, at *7 (Conn. Super. Ct. Oct. 15, 2009) (exempting retail clothing store chain);  *Burton v. Dominion Nuclear Conn., Inc.*, 2009 WL 242352, at *4 (Conn. Super. Ct. Jan. 7, 2009) (exempting private nuclear power station operator).

[32] [Doc. 53-4 at 2 (application reviewed and approved "pursuant to the requirements of 105 CMR 570.000"); *id.* at 3, 7, 9 (permits issued "In Accordance with Massachusetts General Laws Chapter 94 Sections 10A, 10B"); *id.* at 4, 6, 8 (application reviewed and approved "pursuant to the requirements of 105 CMR 500.090")].

[33] [¶52 ("Since 1995, the nine relevant states have adopted regulations and labeling requirements for bottled spring water that are identical to the FDA's standard of identity for spring water."); *see also* Doc. 53-4 at 11-14 (certifying that the Rhode Island Department of Health had determined that NWNA has "given satisfactory evidence that [it] is qualified in conformity with Chapter 21-23 of the General Laws of 1956")].

require permit applicants to know the law better than the government agency charged with administering it, particularly where" it is undisputed the permittee "reasonably relied on the expectation that the permit was issued in compliance with the [law]." *In re Lyon*, 882 A.2d 1143, 1149 (Vt. 2005). Unless a permitting decision is first appealed to that regulator, "the findings, conclusions and permits are final and are not subject to attack in a subsequent ... proceeding, whether or not they were properly granted in the first instance. To hold otherwise would severely undermine the orderly governance of development and would upset reasonable reliance on the process." *In re Taft Corners Assocs., Inc.*, 632 A.2d 649, 654 (Vt. 1993). As NWNA reasonably relied on the VANR's orders specifically authorizing the sale of Poland Spring® bottled spring water,[34] subjecting NWNA to Vermont CFA liability (Count IX) for that conduct would upset Vermont's orderly governance in regulating the sale of bottled water and would be contrary to the law of the Vermont Supreme Court. *In re Taft*, 632 A.2d at 654.

In *Buchholz v. Waterville Estates Ass'n*, 934 A.2d 511, 516 (N.H. 2007), defendant-condominium association's efforts to collect plaintiff-homeowners' dues were held not to violate the **New Hampshire** CPA because those collection efforts were "explicitly allowed" by law. Similarly, after reviewing documentation establishing that Poland Spring® source water was spring water, the New Hampshire Department of Health approved NWNA's sale of Poland Spring® as spring water.[35] To avoid nullifying the permits specifically allowing the conduct at issue, NWNA must be exempted from the New Hampshire CPA (Count X).

Plaintiffs fail to address the two-step exemption analysis that **Maine** created when it amended MUTPA in 2007. [Pb53]. Given that NWNA's marketing of Poland Spring® as

---

[34][Doc. 53-4 at 17 ("The Secretary of the [VANR] finds that [NWNA's] distribution of bottled water in Vermont will comply with the standards adopted under Chapter 56 of Title 10 of V.S.A.....")].

[35][Db11; Doc. 53-4 at 27-30 (licenses issued"[u]nder provisions of" *N.H. Rev. Stat. Ann.* ch. 143)].

spring water is "subject to regulation by a state or federal agency," that activity is exempt because it was authorized by a state agency through the permitting process, as well as through "other regulatory approval," even if NWNA's activity "would otherwise constitute a violation of [MUTPA]." *Me. Rev. Stat. Ann.* tit. 5, §208(1). Similarly, MUDTPA does not apply to conduct that complies with laws "administered by" a state agency. *Me. Rev. Stat. Ann.* tit. 10, §1214(1)(A). NWNA does not claim the exemptions solely because it is regulated, but because (1) the Maine Department of Agriculture, Conservation and Forestry grants it permits to bottle and sell Poland Spring®; and (2) the Maine DWP authorized NWNA to sell Poland Spring® after determining it complied with the FDA Identity Standard.[36] Because NWNA's actions were authorized by two State Regulators, NWNA is exempt from MUTPA and MUDTPA (Count XI).

The court in *In re Anheuser-Busch*[37] dismissed a Pennsylvania UTPCPL claim because **Pennsylvania** had adopted the safe harbor in *Fay*, 723 A.2d 712, and the critical statement on defendant's beverage labels was permitted by a State Regulator. Affirming, the Sixth Circuit noted Pennsylvania "would not enforce general legislation that would prohibit conduct specifically permitted" by that State Regulator. *In re Anheuser-Busch*, 644 F. App'x at 527.[38] NWNA is entitled to the safe harbor from the Pennsylvania UTPCPL (Count XII), as the Pennsylvania Department of Environmental Protection ("PADEP") specifically permitted NWNA to sell Poland Spring® as spring water.[39]

---

[36][Db8-9; Doc. 53-3 at 8-11, 13].

[37]*In re Anheuser-Busch Beer Labeling, Mktg. & Sales Practices Litig.*, No. 1:13 MD 2448, 2014 WL 12659447, at *6, *15 (N.D. Ohio June 2, 2014), *aff'd*, 644 F. App'x 515 (6th Cir. 2016).

[38]Plaintiffs misstate the law by mischaracterizing these dispositive district court and Sixth Circuit holdings as "*dicta*." [Pb63 n.32]. *See also Grudkowski v. Foremost Ins. Co.*, No. 3:CV-12-1847, 2013 WL 816666, at *12 (M.D. Pa. Mar. 5, 2013) (citing *Fay* in dismissing a Pennsylvania UTPCPL claim because a State Regulator had approved the challenged conduct), *aff'd*, 556 F. App'x 165 (3d Cir. 2014).

[39][Doc. 164-2 at 6 (PADEP permit approved NWNA to operate as a "Bottled Water System" with "Spring(s)" as the source), 9 (PADEP specifically authorized NWNA to use the identified sources in Poland Spring®)].

## VI.  Plaintiffs' Common-Law Claims Are Not Plausible As A Matter Of Law

Plaintiffs' argument that NWNA waived its challenge to the legal sufficiency of their common-law claims defies Second Circuit precedent.  [Pb65].  Concluding defendants did not waive their challenge to the legal sufficiency of fraud claims in an amended complaint under Fed. R. Civ. P. 12(b)(6), the Second Circuit held in *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994), that only defenses "involv[ing] the core issue of a party's willingness to submit a dispute to judicial resolution" can be waived if not made on a motion to dismiss directed to an initial complaint.[40]  NWNA's challenge to Plaintiffs' common-law claims seeks "to achieve judicial resolution of the controversy, not to foreclose it," and should be considered by this Court.  *Shields*, 25 F.3d at 1128.  Plaintiffs claim their amended complaint pleads claims based on a different legal theory than those dismissed by this Court.  These different claims were not "available" to NWNA when it successfully moved to dismiss Plaintiffs' initial complaint.  *Fed. R. Civ. P.* 12(g)(2).  Circuit law and common sense dictate that NWNA must be "allowed to plead anew as though it were the original complaint filed by the Plaintiff."  *In re Bank of N.Y. Mellon Corp. Forex Trans. Litig.*, 42 F. Supp. 3d 520, 524 (S.D.N.Y. 2014).[41]

---

[40]Plaintiffs misstate Second Circuit law in arguing *Gilmore v. Shearson/American Express, Inc.*, 811 F.2d 108, 112 (2d Cir. 1987), *overruled on other gds.*, *Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271 (1988), and *Sears Petroleum & Transport Corp. v. Ice Ban America, Inc.*, 217 F.R.D. 305 (N.D.N.Y. 2003) (which relied on *Gilmore*), which establish a different rule of law.  [Pb65].  *Gilmore* identified the jurisdictional, venue, and service defenses enumerated in Fed. R. Civ. P. 12(b)(2)-(5) as waivable, not the failure to state a claim defense under Fed. R. Civ. P. 12(b)(6).  *See Castillo v. Rodas*, No. 09 Civ. 9919, 2014 WL 1257274, at *15 n.15 (S.D.N.Y. Mar. 25, 2014).  *Sears*, 217 F.R.D. at 307, is distinguishable, as the court declined to consider a Fed. R. Civ. P. 12(b)(2) motion to dismiss for lack of personal jurisdiction because defendants had already answered.

[41]*In re Parmalat Secs. Litig.*, 421 F. Supp. 2d 703, 713 (S.D.N.Y. 2006) (citing *Shields*, 25 F.3d at 1128); *see, e.g.*, *Arnold Chevrolet LLC v. Tribune Co.*, No. 04-CV-3097, 2007 WL 2743490, at *3, *3 n.4 (E.D.N.Y. Sept. 17, 2007) (rejecting, as "without merit," claim that Rule 12(b)(6) motion, "target[ing]" a second amended complaint filed after dismissal of a prior complaint, was barred); *Altschuler v. Univ. of Pa. Law Sch.*, No. 95 Civ. 249, 1998 WL 113989, at *2 (S.D.N.Y. Mar. 13, 1998), *aff'd*, 201 F.3d 430 (2d Cir. 1999), *cert. denied*, 530 U.S. 1276 (2000) (rejecting, under *Shields*, claim that arguments in Rule 12(b)(6) motion directed to second amended complaint were waived because they were not made in motion to dismiss prior complaint).  NWNA's later analysis of the amended claims as being "the same as pled in Plaintiffs' initial complaint" is not a waiver of its right to challenge them.  [Pb65].

Plaintiffs' implausible fraud claim should be dismissed.   Contrary to their conclusory

assertion that "serious questions of fact exist as to whether Nestlé acted deceptively" [Pb68], as a

matter of law, the nine states' pre-approvals to sell Poland Spring® as spring water pled in the

Complaint dispel any possible deception in the sale of Poland Spring® as spring water.[42]   [Db67

n.107].   The FDA <u>does</u> rely on State Regulators to enforce the proper labeling and sale of spring

water [Pb66].   21 U.S.C. §337(b); 60 Fed. Reg. at 57097.   To obtain approval to sell bottled

spring water in Maine, NWNA had to submit hydrogeologic reports "necessary for source

approval."   10-144-231 *Me. Code R.* §3(J)(1)(a)-(c).   The Complaint alleges that if the Maine

DWP determines bottled water complies with the FDA Identity Standard, it will issue a spring

water permit, and that since 1998, the Maine DWP has issued permits certifying Poland Spring®

as meeting the FDA Identity Standard and authorizing its sale as spring water.[43]   [¶¶86, 99].

Plaintiffs do not dispute that State Regulators in the nine states at issue have determined that

Poland Spring® meets the FDA Identity Standard and have issued permits authorizing its sale as

spring water.[44]   [Doc. 53-3 at 7-11, 15-29; Doc. 53-4 at 1-30; Doc. 164-2 at 3-9].   The FDA's

guidance letter states that if State Regulators determine that the Poland Spring® sources "satisfy

---

[42]In pleading their issuance, Plaintiffs have not disputed the authenticity of the state spring water permits issued to NWNA. [*See* ¶¶254-55, 302, 310, 400, 412, 439, 624, 646, 648, 703, 749, 767, 798].   Plaintiffs cannot rely on any allegations that are contradicted by these uncontroverted documents. *See NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145, 149 n.1 (2d Cir. 2012), *cert. denied*, 568 U.S. 1228 (2013) (factual allegations are assumed true on a motion to dismiss "unless conclusory or contradicted by more specific allegations or documentary evidence").

[43]The Maine DWP has determined all eight Poland Spring® spring water sources "[m]eet the U.S. FDA definition of 'spring water' according to 21 CFR 165.110(a)(2)(vi)."   [Doc. 53-3 at 13].

[44]Each state requires proof of spring water source approval to obtain certification to sell bottled water as spring water.   [Db8-12].   Plaintiffs are wrong in claiming three states do not require the type of water source (*i.e.*, spring) to be identified to obtain approval [Pb67-68].   *See Conn. Gen. Stat. Ann.* §21a-150a(a)(1), (a)(3) (requiring bottler to submit a "current license or approval" of an out-of-state "approved source," defined at §21a-150(2) to include a "spring"), (c) (further requiring bottler to comply with §21a-141, requiring all bottles to "comply with all labeling requirements for bottles and containers specified by the [FDCA]"); 216-50 *R.I. Code R.* §§10-4.9(A), -4.9.2(A)(1) (eff. Dec. 20, 2017); 31-7 *R.I. Code R.* §3:9.1.1(a) (repealed Dec. 20, 2017) (requiring bottler to submit out-of-state source approval and bottle labels, and to identify the type of water source); 25 *Pa. Code* §§109.1005(e)(6), (7), .1007(a)(2), (3) (requiring bottler to submit out-of-state source approval and a copy of each bottle label identifying the spring water source and including the agency's identification number); *see* Doc. 164-2 at 2(¶5), 11.

[the requirements] for 'spring water' in 21 CFR 165.110, then the use of the term 'spring water' on the product label would be appropriate."[45]  [Doc. 53-3 at 5-6].  This Court should dismiss Plaintiffs' fraud claim because it is not plausible, based on Plaintiffs' allegations, that NWNA's pre-approved label and sale of Poland Spring® as spring water was deceptive.[46]

Plaintiffs' implausible breach of contract claim should also be dismissed.  As plausibility is a "context-specific task," *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009), this Court must determine whether Plaintiffs' allegations "mak[e] relief under the governing law plausible." *ABB Turbo Sys. AG v. Turbousa, Inc.*, 774 F.3d 979, 984 (Fed. Cir. 2014).  Plaintiffs' conceded failure to plead the governing law of the UCC bars their breach of contract claim because they have not (i) pled a state-enacted spring water identity standard [¶852]; and (ii) given NWNA notice of which UCC provision it allegedly violated by not complying with that standard.[47]  *AT Engine Controls Ltd. v. Goodrich Pump & Engine Control Sys., Inc.*, No. 3:10-CV-1539, 2014 WL 810825, at *9 (D. Conn. Feb. 28, 2014).  The Complaint pleads only one spring water identity standard—21 C.F.R. §165.110(a)(2)(vi) [¶54]—and State Regulators have authorized Poland Spring® to be sold as spring water.[48]  Admitting they consumed and thereby accepted the

---

[45]Plaintiffs' attempt to distinguish NWNA's authorities is specious. [Pb66-67]. Nothing in *Prohias v. Pfizer, Inc.*, 490 F. Supp. 2d 1228 (S.D. Fla. 2007), or *DePriest v. AstraZeneca Pharms., L.P.*, 351 S.W.3d 168 (Ark. 2009), indicates that drug labels are reviewed for veracity, but food labels are not. That the FDA will deny a new drug application if it determines that its proposed label is false or misleading does not mean that State Regulators do not review and deny bottled water certification applications (including labels, hydrogeologic reports, and out-of-state approvals) if they are false or misleading. As *DePriest*, 351 S.W.3d at 177, reasoned, FDA-approved labeling cannot be deceptive as a matter of law because the agency's approval signifies it has determined the labeling "complies with its rules and regulations." The same is true for the sale of Poland Spring® as spring water, which cannot be deceptive because State Regulators have certified its compliance with the FDA Identity Standard.

[46]Plaintiffs ignore NWNA's argument that they have not pled the "what" of the alleged fraud with particularity. [Pb68]. Plaintiffs fail to comply with Fed. R. Civ. P. 9(b), as their Complaint does not plead a single state law identifying any independent state-law identity standard. *Cf. Chrysler Capital Corp. v. Century Power Corp.*, 778 F. Supp. 1260, 1270 (S.D.N.Y. 1991); *In re Verestar, Inc.*, 343 B.R. 444, 470-71 (Bankr. S.D.N.Y. 2006).

[47]Plaintiffs' reliance on pre-*Iqbal* case law for a contrary view is misplaced [Pb9], as *Iqbal* "effected a sea change in the law of federal pleading." *Rodriguez-Reyes v. Molina-Rodriguez*, 711 F.3d 49, 53 (1st Cir. 2013).

[48]*Henderson v. Berce*, 50 A.2d 45 (Me. 1946), lends no aid to Plaintiffs' cause. [Pb71-72]. *Henderson* concerned a specific Maine statute regulating the certification of potato seeds. For plaintiff to prevail on his breach of warranty

Poland Spring® water they purchased, Plaintiffs received the benefit of their bargain and have no plausible breach of contract claim.[49] [Pb72].

## VII.   This Case Should Be Referred To The FDA Under The Primary Jurisdiction Doctrine

Because "the case involves technical or policy considerations within the agency's particular field of expertise," or because "the question at issue is particularly within the agency's discretion," this Court should invoke the doctrine of primary jurisdiction to allow the FDA to resolve whether Poland Spring® is "spring water" meeting 21 C.F.R. §165.110(a)(2)(vi). *Langan v. Johnson & Johnson Consumer Cos.*, 95 F. Supp. 3d 284, 292 (D. Conn. 2015).

Unlike *Langan*, this case is far more about science than it is about whether a label is misleading.[50]   Despite Plaintiffs' assertion that this case does not "entail sufficient technical expertise" to benefit from a referral [Pb74], the preemption analysis alone shows that this case turns not on consumer perceptions of "spring water," but on scientific and technical questions

---

claim—a claim not pled by Plaintiffs here—the Maine Supreme Court held that he had to prove that the potato seeds sold to him by defendant "had a varietal mixture beyond that allowed by the rules or regulations of the commissioner of agriculture under the authority of the statute," *i.e.*, that defendant violated the regulation, a fact which defendant admitted. *Henderson*, 50 A.2d at 49. Unlike potato seeds, bottled water cannot be sold as spring water in Maine unless it has been pre-approved to be sold as spring water meeting the FDA Identity Standard. [Db65 n.103]. *Henderson* did not address the law on the preemptive effect of a federal statute. In this case, Plaintiffs cannot prove their breach of contract claim without running afoul of Congress' prohibition against private enforcement of the FDA Identity Standard. *See* 21 U.S.C. §337(a). As Plaintiffs' breach of contract claim is governed by New Jersey and New York law [Db69 n.109], Maine's law as to enforcement of its 1942 "seed law" is neither relevant nor applicable here. The laws of New Jersey and New York are clear on prohibiting private actions enforcing bottled water misbranding laws. [*Id.* at 25 n.22, 27, 27 n.27].

[49]Plaintiffs have not plausibly stated a breach of contract claim based on an alleged nonconformity [Pb72], as they have not pled that any plaintiff timely notified NWNA of the nonconformity in the Poland Spring® bottled water products they accepted [*see* ¶¶848-56]. *KSW Mech. Servs. v. Johnson Controls, Inc.*, 992 F. Supp. 2d 135, 143 (E.D.N.Y. 2014) (citing *N.Y. U.C.C. Law* §2-714); *Corestar Int'l Pte., Ltd. v. LPB Comms., Inc.*, Civ. No. 05-5850, 2007 WL 2990896, at *3 (D.N.J. Oct. 10, 2007) (citing *N.J. Stat. Ann.* §12A:2-714(1)); *accord Cliffstar Corp. v. Elmar Indus., Inc.*, 254 A.D.2d 723, 724 (N.Y. App. Div. 1998), *cited at* Pb72. Plaintiffs are "barred from any remedy" by their failure to comply with this statutory notice requirement. *KSW Mech.*, 992 F. Supp. 2d at 144 n.10 (citing *N.Y. U.C.C. Law* §2-607(3)(a)); *Joc, Inc. v. ExxonMobil Oil Corp.*, Civ. No. 08-5344, 2010 WL 1380750, at *4 (D.N.J. Apr. 1, 2010) ("[P]roviding notice pursuant to [*N.J. Stat. Ann.* §12A:2-607(3)(a)] is a condition precedent to filing any suit for breach of contract under Article 2 of the U.C.C. or its state counterparts.")

[50]In *Langan*, 95 F. Supp. 3d at 294, this Court declined an agency referral because determining whether a reasonable consumer would be misled by an "all-natural" claim on sunscreen products that indisputably had synthetic ingredients was "far less about science than it is about whether a label is misleading."

flowing from an FDA standard of identity.[51]  The spring water standard of identity is expressed in decidedly scientific terms.[52]  Plaintiffs' Complaint recognizes that the disputes in this case are matters of scientific interpretation, devoting fourteen pages to "Fundamental Concepts of Hydrogeology" and "Commercial Wells and Well-Related Hydrology" [¶¶108-147], before launching into 212 pages of parsing through decades of hydrogeologic reports to challenge the FDA Identity Standard compliance of the eight spring water sites.  [¶¶164-795].  There is more than "sufficient" science at issue to benefit from a referral to an agency with suitable expertise.

In asserting that the FDA Identity Standard is so "well-settled" that primary FDA review could be of no benefit [Pb75], Plaintiffs wholly ignore that the FDA fully expected, in enforcing this rule, to make regulatory judgment calls about "appropriate" hydraulic connections; about which set of analyses would best apply in different geologic contexts; and even about when and whether temporary cessation of spring flow was acceptable on a case-by-case basis.  [Db72-73].  Neither this Court nor a jury should have to guess how the FDA would evaluate NWNA's sources under these flexible and contextual standards where primary jurisdiction provides the mechanism to have the FDA provide the answers in advance of litigation.[53]  A referral does not question this Court's adjudicative experience or expertise [Pb75], but wisely uses judicial and administrative competence to promote uniformity and consistency by obtaining initial review of the facts by an "agenc[y] that [is] better equipped ... by specialization, by insight gained through experience, and by more flexible procedure."  *Weinberger v. Bentex Pharms., Inc.*, 412 U.S. 645, 654 (1973).  This Court should avail itself of FDA review here.

---

[51][*See* Pb71, 71 n.13].  The FDA itself recognized this.  *See* 60 Fed. Reg. at 57090.
[52]*See* 21 C.F.R. §165.110(a)(2)(vi) ("underground formation," "natural orifice," "measurable hydraulic connection," "hydrogeologically valid method," "same composition and quality").
[53]*See Hood v. Wholesoy & Co.*, No. 12-cv-5550, 2013 WL 3553979, at *6 (N.D. Cal. Jul. 12, 2013) ("Should the Court go forward ... it would find itself in a position of either having no set standard to apply, or announcing a standard and thereby overstepping its proper role.").

## CONCLUSION

For the reasons set forth in NWNA's Memoranda of Law and at oral argument, this Court should grant NWNA's motion to dismiss the Amended Complaint with prejudice.

Respectfully submitted,

DEFENDANT,
NESTLÉ WATERS NORTH AMERICA INC.

By: _/s/Jonathan B. Tropp_
     Jonathan B. Tropp (ct11295)
     Day Pitney LLP
     One Canterbury Green
     Stamford, CT 06901
     Telephone: (203) 977-7337
     Fax: (203) 901-1733
     jbtropp@daypitney.com

     Jeffrey M. Garrod (admitted phv)
     Craig A. Ollenschleger (admitted phv)
     Orloff, Lowenbach, Stifelman & Siegel, P.A.
     101 Eisenhower Parkway, Suite 400
     Roseland, NJ 07068-1097
     Telephone:  (973) 622-6200
     Fax: (973) 622-3073
     jmg@olss.com; co@olss.com

     Thomas B. Mayhew (admitted phv)
     Farella, Braun & Martel LLP
     235 Montgomery St., 30th Flr.
     San Francisco, CA 94104
     Telephone: (415) 954-4400
     Fax: (415) 954-4480
     tmayhew@fbm.com

     Its Attorneys