## ORLOFF, LOWENBACH, STIFELMAN & SIEGEL, P.A.
Attorneys at Law

Joel D. Siegel*
Laurence B. Orloff*
Stanley Schwartz*
Jeffrey M. Garrod*
Sanders M. Chattman
Samuel Feldman*
Edmund A. Mikalauskas
Susan M. Holzman*
William J. Adelson*
Eugenia Yudanin*
Philip C. Corbo*
Adam M. Haberfield
Craig A. Ollenschleger
Matthew T. Aslanian
David Gorvitz*

44 Whippany Road - Suite 100
Morristown, New Jersey 07960
973.622.6200  •  Fax: 973.622.3073

830 Third Avenue - 5th Floor
New York, New York 10022
212.600.9535
www.olss.com

Azriel J. Baer*
Laura N. Wilensky*
Xiao Sun*
Devin A. Cohen*
Alexander S. Firsichbaum*
Samantha T. Alexander*
Edward J. Pudup*

Of Counsel
Ralph M. Lowenbach*
Floyd Shapiro

Frank L. Stifelman
1937-2015

* MEMBER NJ & NY BARS

32605-161

November 26, 2018

**BY ECF**
Hon. Jeffrey A. Meyer, U.S.D.J.
Richard C. Lee United States Courthouse
141 Church Street
New Haven, Connecticut 06510

> Re: Patane, et al. v. Nestle Waters North America, Inc.
>     Civil Action No. 3:17-cv-01381-JAM

Dear Judge Meyer:

Pursuant to Your Honor's direction at oral argument, Defendant Nestlé Waters North America Inc. ("NWNA") submits this letter responding to Plaintiffs' November 20, 2018 letter "(i) to correct a citation in footnote 4 of their Memorandum In Opposition To Defendant's Motion to Dismiss Plaintiffs' Complaint [("Memorandum")], Dkt. 170, at 14 n. 4, and (ii) to advise the Court of a Rhode Island Supreme Court decision on the safe harbor issue that post-dates that court's decisions cited on that issue in the parties' briefs." [Doc. 175 at 1].

(i)   *Silva v. Unique Beverage Co.*, LLC, No. 3:17-CV-00391-HZ, 2017 WL 2642286 (D. Or. Jun. 15, 2017) (*Silva I*)

It is a total mystery why Plaintiffs have sought "to correct a citation in footnote 4 of their Memorandum," as they did not miscite the June 15, 2017 *Silva* decision. Plaintiffs' Memorandum provided the correct citation to the June 15, 2017 *Silva I* decision—2017 WL 2642286 [Doc. 170 at 14 n. 4]—so why did their counsel have to request permission from the Court to submit a letter to correct a citation that was correct? Plaintiffs' November 20, 2018 letter not only misstates that Plaintiffs' Memorandum miscited *Silva I*, but then introduces for the first time a subsequent *Silva* decision and miscites that decision as "2017 WL 2642286." *See Silva v. Unique Beverage Co., LLC*, No. 3:17-CV-00391-HZ, 2017 WL 4896097 (D. Or. Oct. 30, 2017) (*Silva II*). [Doc. 175 at 1 n. 1].[1]

---

[1] Plaintiffs' miscited reference to *Silva II* is also of no moment here. In its May 17, 2018 Opinion dismissing Plaintiffs' initial complaint, this Court noted "Plaintiffs do not mention these pictorial-based allegations in their briefing or suggest that these allegations may withstand preemption even if their other allegations do not." [Doc.

ORLOFF, LOWENBACH, STIFELMAN & SIEGEL, P.A.

Hon. Jeffrey A. Meyer, U.S.D.J.      -2-      November 26, 2018

It appears that Plaintiffs' request to correct a cite that was correct may have been a ruse to obtain an unauthorized sur-reply to re-argue that *Silva I* somehow exempts their state-law claims from implied preemption under Section 337(a) of the federal Food, Drug and Cosmetics Act ("FDCA"). This Court should reject Plaintiffs' attempt at a second bite at the apple that is not permitted by this Court's Local Rules. *See* L. Civ. R. 7(d).

In any event, Plaintiffs' reliance upon *Silva I* remains wholly misplaced. Unlike here, *Silva I* did not involve state consumer fraud law claims seeking to enforce a standard of identity of a food regulated by the Food and Drug Administration ("FDA"). In *Silva I*, plaintiff alleged defendant's beverage product label violated the Oregon Unlawful Trade Practices Act ("OUTPA") because it deceived consumers into believing the product "tasted like coconut and had at least some actual coconut or coconut-related health properties." 2017 WL 2642286, at *1. In suing to enforce violations of the OUTPA, plaintiff did not predicate the alleged violations on noncompliance with a federal standard (such as the federal spring water "Identity Standard," 21 C.F.R. § 165.110(a)(2)(vi), pled by Plaintiffs in this case, *see* Doc. 160, ¶54) or even an independent state-law standard (as was the case in *In re Farm Salmon Cases*[2]).

As the court in *Silva I* stated, "the plaintiff must not be suing <u>because</u> the conduct violates the FDCA (such a claim would be impliedly preempted under *Buckman*)." 2017 WL 2642286, at *6 (emphasis added). As is evident from the amended complaint in this case, the Patane Plaintiffs are suing <u>because</u> the alleged conduct violates the FDA spring water "Identity Standard," 21 C.F.R. § 165.110(a)(2)(vi). [Doc. 160, ¶¶54, 841, 860, 872, 885, 896, 911, 935, 959, 983, 1007, 1028]. "That is what *Buckman* and § 337(a) do not allow." [Doc. 141 at 20]. Plaintiffs' claims are, therefore, impliedly preempted.

    (ii)    <u>*Long v. Dell*, 984 A.2d 1074 (R.I. 2009)</u>

This Court should also reject Plaintiffs' attempt to engage in a sur-reply on the safe harbor issue by arguing a 2009 decision that could have been referred to in their Memorandum [Doc. 175 at 1]. *See* L. Civ. R. 7(d). *Long* is not relevant, as the issues decided in *Long* had to do with jurisdictional issues. *Long* does not support Plaintiffs' argument that NWNA is not entitled to invoke the safe harbor provision of the Rhode Island Deceptive Trade Practices Act ("RIDTPA"), as Rhode Island Regulators pre-approved the sale of Poland Spring® as "spring water" compliant with the federal spring water Identity Standard, 21 C.F.R. § 165.110(a)(2)(vi).

In *Long*, plaintiffs brought RIDTPA claims alleging defendant charged and collected state sales taxes contrary to Rhode Island sales tax regulations. 984 A.2d at 1076. Appealing the

---

141 at 19 n.10]. The same is true for Plaintiffs' amended complaint, as to which they did not make any argument about "pristine scenes" in their brief or at oral argument. As their amended complaint predicates Plaintiffs' state consumer fraud law claims on Poland Spring's alleged noncompliance with the federal spring water "Identity Standard," the only conclusion that can be drawn is that Plaintiffs' state-law claims are impliedly preempted. Plaintiffs do not offer any explanation how *Silva II* alters that conclusion and, indeed, it does not.

[2] *In re Farm Salmon Cases*, 42 Cal. 4th 1077 (2008), *cert. denied*, 555 U.S. 1097 (2009).

ORLOFF, LOWENBACH, STIFELMAN & SIEGEL, P.A.

Hon. Jeffrey A. Meyer, U.S.D.J.                -3-                    November 26, 2018

denial of their motion to dismiss, defendant and the state tax administrator argued the trial court lacked subject matter jurisdiction because plaintiffs failed to exhaust their administrative remedies by not having first raised the issue with the Division of Taxation ("Division") before suing in state court. *Id.* at 1078-79. Rejecting that argument, the Rhode Island Supreme Court concluded plaintiffs were allegedly aggrieved by the conduct of defendant rather than the tax administrator and, therefore, the RIDTPA claim was properly brought in state court without initially seeking administrative remedies before the Division. *Id.* at 1080-81.

Plaintiffs have erroneously attempted to seize on dictum in *Long* concerning the RIDTPA's safe harbor exemption that has no relevance to its application in this case. The *Long* Court declined to conclude that the RIDTPA's safe harbor exemption required plaintiffs to exhaust their administrative remedies, observing the statute "does not exempt the fraudulent collection of taxes from its provisions." *Id.* at 1081. *Long* is totally distinguishable from this case, as the safe harbor exemption was not applicable there because neither the Division nor its regulations had authorized the tax collection practice at issue. In stark contrast here, NWNA cannot sell its Poland Spring® bottled water product in Rhode Island without first applying for and obtaining a bottlers' permit from the Rhode Island Department of Health ("RIDOH").[3] To obtain that permit, RIDOH regulations required NWNA to submit bottle labels with its permit application and to disclose the type of source water.[4] Bottled water may not be sold as "spring water" in Rhode Island without complying with 21 C.F.R. § 165.110(a)(2)(vi).[5] The RIDOH determined Poland Spring® complied with 21 C.F.R. § 165.110(a)(2)(vi) and issued a bottlers' permit authorizing its sale as "spring water" in Rhode Island.[6] At oral argument, Plaintiffs conceded that it is undisputed that NWNA obtained permits from the "appropriate regulatory officials" in Rhode Island, Maine, and each of the other seven states authorizing the sale of Poland Spring® bottled water in those jurisdictions. 21 C.F.R. § 165.110(a)(2)(vi). Accordingly, *Long* does not contradict the conclusion that RIDTPA's safe harbor exempts NWNA from state-law liability based upon Rhode Island State Regulators' pre-approval of the sale of Poland Spring® as "spring water" in that jurisdiction.

                              Respectfully submitted,

                              */s/ Jeffrey M. Garrod*
                              Orloff, Lowenbach, Stifelman & Siegel, P.A.
                              Attorneys for Nestlé Waters North America Inc.

cc: All Counsel of Record (By ECF)

---

[3] 21 *R.I. Gen. Laws* § 21-23-1.
[4] 216-50 *R.I. Code R.* § 10-4.9.2(A)(1) (eff. Dec. 20, 2017); 31-7 *R.I. Code R.* § 3:9.1.1(a) (repealed Dec. 20, 2017). Importantly, those regulations also mandate that the source of Poland Spring® water "must be approved by the agency having jurisdiction": the Maine Drinking Water Program. 216-50 *R.I. Code R.* § 10-4.9(A) (eff. Dec. 20, 2017); 31-7 *R.I. Code R.* § 3:3.0 (repealed Dec. 20, 2017).
[5] 216-50 *R.I. Code R.* §§ 10-4.3(A)(3)(s), -4.10.1 (eff. Dec. 20, 2017)
[6] [Doc. 53-4 at 10-14].