UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF CONNECTICUT

- - - - - - - - - - - - - - - - - x
                                  :
MARK J. PATANE, JULIE HARDING,    : No. 3:17CV1381(JAM)
HEATHER HARRIGAN, STEPHEN S.      :
SHAPIRO, CATHERINE PORTER,        :
ERICA RUSSELL, TINA MORETTI,      :
BRIDGET KOPET, JENNIFER S. COLE,  :
BENJAMIN A. FLETCHER and DIANE    :
BOGDAN, Individually and on Behalf :
of All Others Similarly Situated,  :
                                  :
              Plaintiffs          :
        v.                        :
                                  :
NESTLE WATERS NORTH AMERICA, INC., :
                                  :
              Defendant           :
                                  :
- - - - - - - - - - - - - - - - - x
                                  :
AND ALL CONSOLIDATED CASES        : Nos. 3:17CV1474(JAM)
                                  :       3:17CV1566(JAM)
                                  :       3:17CV1746(JAM)
                                  :       3:17CV1944(JAM)
                                  :
                                  : New Haven, CT
                                  : November 19, 2018
- - - - - - - - - - - - - - - - - x

MOTION HEARING

B E F O R E:

THE HONORABLE JEFFREY ALKER MEYER, U.S.D.J.

Diana Huntington, RDR, CRR
Official Court Reporter

```
 1   A P P E A R A N C E S:

 2        FOR THE PLAINTIFFS:

 3             ALEXANDER H. SCHMIDT, ESQ.
                    Fairways Professional Plaza
 4                  5 Professional Circle, Suite 204
                    Colts Neck, New Jersey 07722
 5
               IZARD KINDALL & RAABE LLP
 6                  29 South Main Street, Suite 305
                    West Hartford, Connecticut 06107
 7             BY:  ROBERT A. IZARD, JR., ESQ.

 8             SUSMAN GODFREY
                    1900 Avenue of the Stars
 9                  Suite 1400
                    Los Angeles, California 90067-4405
10             BY:  OLEG ELKHUNOVICH, ESQ.

11             JOSEPH SAVERI LAW FIRM
                    601 California Street
12                  Suite 1000
                    San Francisco, California 94104
13             BY:  V. CHAI OLIVER PRENTICE, ESQ.

14             WOLF HALDENSTEIN ADLER FREEMAN HERZ
                    270 Madison Ave.
15                  New York, New York 10016
               BY:  JEFFREY G. SMITH, ESQ.
16

17        FOR THE DEFENDANT NESTLÉ WATERS NORTH AMERICA, INC.:

18             ORLOFF LOWENBACH STIFELMAN & SIEGEL
                    101 Eisenhower Pkwy
19                  Roseland, New Jersey 07068
               BY:  JEFFREY M. GARROD, ESQ.
20                  CRAIG A. OLLENSCHLEGER, ESQ.

21             DAY PITNEY LLP
                    One Canterbury Green
22                  201 Broad Street
                    Stamford, Connecticut 06901
23             BY:  JONATHAN B. TROPP, ESQ.

24             FARELLA BRAUN & MARTEL LLP
                    235 Montgomery Street, 30th Floor
25                  San Francisco, California 94194
               BY:  THOMAS B. MAYHEW, ESQ.
```

1                        **2:03 P.M.**

2              THE COURT:  We're here today for argument on

3     motion to dismiss in Patane v. Nestlé Waters North

4     America.

5              May I have appearance of counsel, please, for

6     plaintiffs.

7              MR. SCHMIDT:  Alexander Schmidt.  Good

8     afternoon, Your Honor.

9              THE COURT:  Good afternoon.

10             MR. IZARD:  Robert Izard.  Good afternoon,

11    Your Honor.

12             THE COURT:  Good afternoon.

13             MR. ELKHUNOVICH:  Good afternoon, Your Honor.

14    Oleg Elkhunovich from Susman Godfrey for plaintiffs.

15             MR. PRENTICE:  Good afternoon, Your Honor.

16    V. Prentice.

17             MR. SMITH:  Jeffrey Smith, Your Honor.

18             THE COURT:  Great.  Good to see you all.

19             Mr. Garrod.

20             MR. GARROD:  Jeffrey M. Garrod, Orloff Lowenbach

21    Stifelman & Siegel, for the defendant Nestlé Waters.

22             MR. OLLENSCHLEGER:  Craig A. Ollenschleger, also

23    Orloff Lowenbach Stifelman & Siegel, for defendant Nestlé

24    Waters North America Inc.

25             MR. MAYHEW:  Tom Mayhew, Farella Braun & Martel,

1   also for defendant.

2           MR. TROPP:  Good afternoon, Your Honor.

3   Jonathan Tropp of Day Pitney.

4           THE COURT:  So lots of people here.  We'll start

5   with Nestlé, if you'd like to proceed with the argument.

6           MR. GARROD:  Good afternoon, Your Honor.

7           THE COURT:  Good afternoon.

8           MR. GARROD:  As Yogi Berra has made famous, this

9   is like déjà vu all over again, because the amended

10  complaint is no different than the complaint that

11  Your Honor has dismissed.  And in Your Honor's prior

12  ruling, you said that the plaintiffs cannot bring state

13  law claims under the guise of state consumer protection

14  type actions where they claim that the label is not spring

15  water or is false because it does not comply with the FDA

16  standard of identity for spring water.  And that's exactly

17  what this amended complaint does.

18          In fact, on Page 1 of the plaintiffs' brief in

19  opposition to the motion, they say, and I'll quote, "The

20  FDCA thus affects what Plaintiffs must prove to prevail on

21  their claims – without the FDCA Plaintiffs would have

22  simply relied on the jury's commonsense understanding that

23  ordinary groundwater ... is not 100 percent natural spring

24  water."

25          And when you read the complaint, the complaint

1    is -- I believe the original complaint had 160 references

2    to the FDCA standard of identity.  This complaint only has

3    80, but what it does have is it's exclusive.  That is,

4    there is no claim that a particular state standard of

5    identity, independent state standard of identity has been

6    violated and therefore the label is false.  In fact --

7            THE COURT:  So let me see if I can try to

8    understand what your core argument is here.  I take it

9    that simply because the complaint makes reference to the

10   federal standard, that doesn't mean you're entitled to

11   dismissal, does it?

12           MR. GARROD:  Well, I think it -- in this context

13   it probably does, because there is no independent state

14   regulation --

15           THE COURT:  Well, basically you've got

16   essentially express preemption and implied preemption,

17   right?

18           MR. GARROD:  We have a conflict preemption too,

19   but that's -- for what we're talking about --

20           THE COURT:  If we look at express and implied,

21   which is the focus of my last ruling in the case --

22           MR. GARROD:  Right.

23           THE COURT:  -- there's an express preemption

24   problem if plaintiffs try to enforce a standard that is

25   actually different from the federal standard, right?

1         MR. GARROD:  Yeah.  I mean, I would say,

2    Your Honor, that it's -- the term is not identical to.

3    Some of the preemption provisions in the FDA talk about

4    "different from" or "in addition to."  But this is, I

5    think, even a tougher standard in terms of "not identical

6    to."

7         THE COURT:  So to the extent, then, that the

8    complaint is referencing the federal standard, isn't that

9    pretty understandable because the complaint wants to avoid

10   a suggestion that somehow there's express preemption here

11   because the standard is different than the federal

12   standard?

13        MR. GARROD:  Well, if the reference to the

14   federal standard is because you're seeking to enforce that

15   federal standard, then that would be preempted.  That's

16   consistent with what Your Honor's first opinion stated.

17        THE COURT:  Sure.  Okay.

18        So if I proceed from the presumption simply that

19   simply the fact that they reference the federal standard

20   doesn't mean that the complaint is preempted, I want to

21   understand to what extent you believe a complaint could

22   possibly allege a claim that's not preempted, apart from

23   your other arguments, apart from safe harbor and *Burford*

24   and all that.

25        MR. GARROD:  Under these set of circumstances,

1   okay, under these states, it may not exist.  In other

2   words, if you do the analogy to the *Salmon* case, the

3   statute that exists in the *Salmon* case that Your Honor

4   made reference to in the opinion, that, you know, it's

5   clear from what the court did in that case, the California

6   Supreme Court did in that case, they had ruled that

7   this -- there was this independently adopted statute

8   dealing with disclosure of color in salmon.

9           THE COURT:  California Sherman Act.

10          MR. GARROD:  Yes.  Well, there were two

11  provisions in there, one they made passing reference to as

12  incorporation by reference of the FDA standard, but then

13  there was a separate provision which is what they talk to

14  and what they cite to in the opinion, okay.  When they

15  talk about the independent standard for disclosure in the

16  *Salmon* case, the court there only cites to the one that

17  was independently adopted.  And they went on at great

18  length to make it known that a claim under that regulation

19  can be made without any reference to or without applying

20  in any way the federal standard of identity, okay --

21  strike that.  It wasn't standard of identity, but the

22  federal regulation that was identical to that California

23  one.  And even the cases they distinguished as not

24  being -- that had held that there was preemption, they

25  said those cases really may be direct or indirect ways of

1    attempting to enforce the federal regulations.

2              THE COURT:  I remember the *Salmon* case.

3              So is your argument, then, if a state expressly

4    adopts the federal standard as its own, says now as a

5    matter of state law the federal standard is expressly

6    adopted, is your argument that if there is a state law

7    claim based upon an underlying state law provision that

8    adopts the federal standard, that that is also preempted?

9              MR. GARROD:  Well, when you're talking about a

10   standard of identity, which is different than the type of

11   regulation that was the subject of the California, I think

12   under the FDA scheme for standard of identity, yes, that

13   might be preempted, because if not impliedly preempted,

14   certainly expressly preempted.  Because you have 337(a)

15   and (b).  337(a) says only in the name of the United

16   States.  337(b) gives the states some limited right to

17   enforce that regulation and, you know, talks about having

18   to petition the FDA and if they actually bring a suit to

19   enforce that federal regulation, that they have to give

20   notice to the FDA and the FDA has rights and so forth.

21   The state doesn't have a greater authority to provide a

22   private right of action to enforce that standard than it

23   has itself.  The FDCA didn't give the state the right to

24   adopt the standard or give private litigants the right to

25   enforce that standard when the state itself has a very

1  limited and secondary right to the FDA to enforce that

2  standard.  So I think you have to look at the standard of

3  identity and the statutory --

4          THE COURT:  So is your argument, if I'm

5  understanding it correctly, if state X decides to

6  expressly adopt the federal law standard as a part of

7  state law, essentially has a written positive law

8  enactment adopting the federal law standard, that if a

9  state in turn -- if there's a state cause of action that's

10  based upon that state standard which because of its

11  adoption of the federal standard clearly mirrors the

12  federal standard and is not expressly preempted, then you

13  would still say it's preempted?

14          MR. GARROD:  I would say in this case for the

15  standard of identity for spring water, the answer is yes,

16  it would be expressly preempted.  Under *Riegel*, the United

17  States Supreme Court decision in *Riegel*, they clearly said

18  that a negligence tort-type state cause of action or state

19  duty, okay, arising under state common law duty, for

20  example, creates another requirement.  So you have to be

21  identical to the spring water definition and the whole

22  scheme that's resulted in that spring water definition.

23  You talk about enforcement by appropriate regulatory

24  officials.  That's directly from the regulation itself.

25  There is no indication -- so if a state were to adopt that

1    regulation, say, word-for-word, certainly they'd have to

2    have that requirement in it, they couldn't then if they

3    then created or gave the right to some private right of

4    action to enforce that regulation, that would be a

5    different requirement not only under -- comparing the

6    regulations themselves, but also under *Riegal* which

7    acknowledges that a state --

8            THE COURT:  So it's a different regulation

9    because the states simply give a private right of action?

10           MR. GARROD:  Oh, I think because a private

11    litigant -- yes, a private litigant enforcing that

12    standard, it's contrary to the whole scheme of what

13    Congress intended to do by creating in the FDA the right

14    to create standards of identity so you had one regulatory

15    body really supervising --

16           THE COURT:  So basically really what your

17    argument is, there's no such thing as a private right of

18    action to enforce a spring water standard.  You're saying

19    it's impossible.  If we go to the hypothetical state of

20    Nirvana, Nirvana cannot possibly craft any kind of

21    regulatory structure that would allow for a claim to

22    proceed without it being preempted, because either it

23    would differ from what the federal standard is or it would

24    otherwise intervene with essentially what you say is a

25    governmentally administered enforcement scheme.

1          MR. GARROD:  Well, Your Honor, I can't say that

2     there's no way possible.  I mean, I can only deal with and

3     what I focused on is what is in this complaint, this

4     amended complaint, and what the specific regulation

5     provides for.

6          THE COURT:  I understand I have to deal with

7     that, what's in this complaint.  But ultimately to do

8     that, I have to decide and figure out what's the

9     underlying rule or the principle that applies.  And what

10    I'm having trouble with is, with respect to your

11    arguments, I'm wondering what limits there are to your

12    arguments.

13         MR. GARROD:  Well, the first limit is,

14    Your Honor, and this complaint doesn't offer you that

15    analysis, they don't sue for violation of a state

16    regulation.  They don't sue for violation of a state

17    identity standard for spring water that you could say is

18    identical to the federal standard.  That's not in the

19    complaint.  And probably -- frankly, in these nine states,

20    I don't think it exists.  If you look at some of the

21    states have in fact adopted spring water identity

22    standards and clearly they are different and conflict

23    with, such as New York, Connecticut, they both have these

24    adjacency requirements.  But they don't sue.  When you

25    read their complaint, their complaint is you have a duty

1    to comply with the federal regulation and because you have

2    not complied with that federal regulation, you falsely

3    labeled that product.  They're very cute -- the complaint

4    is very cute in the way it's phrased, but there is no

5    claim, as Your Honor suggests, that if there's an

6    identical state standard and they sue under that state

7    standard, can they do that?  Well, we haven't addressed

8    that in our brief because that's not any of the factual --

9          THE COURT:  Under your view -- I want to make

10   sure what your answer is on this -- is there any kind of

11   state regulatory structure or statutory scheme that would

12   allow for a lawsuit to proceed on a state law basis

13   without being preempted on the circumstances that we have

14   here?

15         MR. GARROD:  Well, I would say that the answer

16   is no, that with this particular standard of identity

17   which has the requirement of only regulatory approval --

18   not approval, but only questioning or proving to a

19   regulatory official.  And if you read the FDA's comments

20   when the regulation was adopted back in 1995, you will see

21   replete with comments referring only to state regulators

22   having the delegated authority to do source approval.

23   There's absolutely zero reference to private litigants

24   being able to enforce or police that FDA standard of

25   identity.  So this case presents some unique circumstances

1    that I would not suggest applies across the board.

2            THE COURT:  I see.  Okay.

3            So to the extent that you have -- to the extent

4    that you have a state regulation that does not itself

5    provide an independent cause of action for its violation,

6    isn't it common for states to have unfair trade practices

7    or similar consumer protection statutes that, in turn, do

8    allow for a cause of action on the basis of a regulation

9    that otherwise is not independently actionable?

10           MR. GARROD:  Well, if you had a standard of -- I

11   think that's almost the same question Your Honor asked

12   before, that is if you have an independent identical state

13   standard of identity --

14           THE COURT:  It's not at all the same question.

15           MR. GARROD:  What?

16           THE COURT:  It's not at all the same question.

17   I'll phrase it again.

18           MR. GARROD:  Maybe I misunderstood then, I'm

19   sorry.

20           THE COURT:  The last was a preemption question.

21   This question is essentially because there's state law

22   claims and I also have to think about whether there's a

23   valid state law cause of action, my question is, apart

24   from any preemption --

25           MR. GARROD:  Okay.

1            THE COURT:  -- my question is as a matter of

2    pure state law -- not the supremacy clause, not

3    preemption; federal law, state law -- if a state has a

4    regulation, some sort of consumer-related regulation that

5    it does not itself provide for private right of action, it

6    doesn't have, you know, a statute saying this particular

7    regulation is enforceable by any aggrieved consumer,

8    instead, however, it has kind of general consumer

9    protection statutes that allow, as in Connecticut, a suit

10   for unfair trade practices, is it your contention that for

11   lack of an express private right of action under the

12   regulation that that means a general consumer protection

13   statute cannot be predicated upon a violation of the

14   otherwise non-actionable private regulation?

15           MR. GARROD:  As a universal general proposition,

16   I would say no, we don't make that claim.  However, in

17   this context, okay, where these regulations are part of a

18   regulatory scheme devised by states to regulate bottled

19   water, both the safety, whatever source approval, and

20   there were specific licensing requirements and

21   pre-approval requirements, in fact each state has a

22   statutory provision or regulation that says you cannot

23   sell bottled water until you get our certificate, and you

24   certainly can't sell it as spring water unless you get our

25   certificate.  So in that context, okay, and that's where

1    the regulations cited in the complaint are pulled from,

2    there are provisions.  Some states have specific

3    provisions, like Connecticut, that any claim for violation

4    of any of those regulations must be in the name of the

5    state; some have no private right of action; and some have

6    case law that say there's no private right of action.  For

7    example, New Jersey.  New Jersey Supreme Court has

8    specifically said that where you have an administrative

9    body that has basically approved or determined that you

10   can do A, you cannot bring a claim, a private litigant

11   cannot bring a claim under the state consumer fraud act

12   that, A, you've done A and A is in violation of that

13   statute.  So in this case, under these particular

14   statutes, there is no private right of action to enforce

15   any such regulation and given the scheme of how the states

16   have regulated the bottled water.

17            THE COURT:  I see.  Okay.

18            And on your argument about identicality, I think

19   you frame it the state regulation has to be identical --

20            MR. GARROD:  Yes.

21            THE COURT:  -- if you have a situation -- and

22   again, hypothetical situation, I'm not saying that's

23   what's presented here, although I'd like to hear your

24   perspectives also whether this is presented here, how

25   severe the issue is -- but if you have a regulation that

1   itself overlaps maybe 85 percent with the federal

2   regulation, is a plaintiff able to avoid preemption by

3   saying and pointing to and saying we only want to enforce

4   the statute or the state regulation to the extent to which

5   it is identical to the federal regulation, but to the

6   extent that it says, you know, you've got to do who knows,

7   add some other very technical measuring equipment kind of

8   thing that the plaintiff doesn't even say is the basis for

9   the claim but it happens to be part of the state

10  regulation, does the fact that a state regulation happens

11  to have this extra bell and whistle that plaintiff doesn't

12  even seek to ring or blow on as part of the cause of

13  action, does that mean, well, plaintiff's out of luck?

14          MR. GARROD:  I would say that if you only meet

15  80 percent of the standard of identity, you need to meet

16  100 percent of the standard of identity, whether it's

17  state or federal.  So that -- I mean, how do you know

18  which criteria the legislature or administrative agency

19  that adopted the regulation, they didn't say -- I assume

20  in your hypothetical they didn't assume you have to meet

21  four or five requirements, they put these requirements in.

22  So to be spring water, you must meet all of the

23  requirements that are in the standard of identity.  And I

24  don't know how you would weight them, and in fact if that

25  were the -- if that were possible, okay, then that only

1   points to other arguments we've made that only the

2   administrative agency, the regulators that are charged

3   with enforcing that statute and ruling on whether or not

4   the standard of identity has been met can make the

5   judgment as to whether or not -- well, since they've only

6   met four of the five requirements, that's good enough and

7   we'll give them the license for spring water.  I mean, how

8   would you -- what would you tell a jury?  Well, if you

9   think that four of the five is enough, we leave it to your

10  discretion, then you can say there's spring water.  Or if

11  they don't make all five of the requirements, then, you

12  know, they're not spring water.  I don't think you can

13  start parsing.  As I understand it, there's no

14  separability clause in the definitions.

15          THE COURT:  You have basically an inconsistency,

16  because I think, as I understand what your response is,

17  federal standard says it's got to be five requirements met

18  and the state is saying only four requirements.  And

19  somehow, of course, it would be inconsistent.  But suppose

20  you had a regulation in the hypothetical state of Nirvana

21  again where it was identical in wording to the federal

22  standard but there was one additional requirement that the

23  water had to be tested on a Tuesday, okay?  Just one

24  additional requirement there.  If plaintiffs were suing

25  and saying, okay, well, we want to apply it and try to

1    apply this standard is the predicate for our state law

2    claim and if there weren't preemption or other sort of

3    concerns you might have, would the fact simply that the

4    state has this additional got-to-test-the-water-on-Tuesday

5    requirement mean that the state standard could not be

6    used?

7              MR. GARROD:  Yes.  Yeah, absolutely.

8              THE COURT:  And that's even if plaintiffs stand

9    up and say, "We don't care about the Tuesday testing

10   requirements because that's not the basis of our claim"?

11             MR. GARROD:  Because what they're saying in that

12   instance, Your Honor, is we're really relying and we're

13   suing under the federal standard.  Because we're not suing

14   under the state standard, okay, because we know this fifth

15   requirement is different, okay, and therefore to meet the

16   state standard you have to meet that fifth requirement.

17   So it works the same.

18             Let's look the opposite way.  Let's suppose

19   they're suing for a violation of the state standard, okay,

20   which has five requirements, four of which are identical

21   to the federal standard.  And we say, "You know what,

22   Judge?  We meet four.  The four that are identical to the

23   federal standard we meet, but we can't meet that fifth

24   one."  You think the plaintiffs are going to say you're in

25   compliance with that state standard of identity when you

1    can't meet the specific fifth requirement?  I don't

2    think -- I mean, I don't think that works, Your Honor.  I

3    think if they're suing under a state standard of identity,

4    then it's the state standard of identity independent of

5    the federal regulation that must stand on its own.  And

6    you've got to either meet it or not meet it.

7              THE COURT:  All right.  I see your point.

8              What else would you like me to know?

9              MR. GARROD:  Well, you know, in terms of the

10   complaint and again whether they're enforcing the identity

11   standard, they define in the complaint -- and I'm sure

12   Your Honor knows this from our brief.  But Paragraph 54

13   identifies the identity standard as a federal identity

14   standard.  And then they go on in the course of their 300

15   pages of the complaint to argue why we don't meet the

16   federal identity standard.  You won't find an allegation

17   in the complaint that says the Poland Spring or Hollis

18   Spring cite doesn't meet the state of Massachusetts

19   standard of identity blank, blank, blank because of A, B,

20   or C.  In fact, to the contrary.  Paragraph 654, Denmark

21   doesn't meet the identity standard for spring water, the

22   federal identity standard for spring water.  The federal

23   identity standard is a defined term in the complaint.  So

24   every time they use Identity Standard, capital I, capital

25   S, that's the federal standard at which they define as

1    such.  That goes on and on for each of the counts in the

2    complaint.  You don't comply with the federal standard of

3    identity, so you falsely labeled your product under the

4    Massachusetts Consumer Fraud Act because you do not

5    comply.

6            And I think the case law, including Your Honor's

7    decision, said in allegations that you failed to comply,

8    that you're in violation of some state consumer fraud or

9    some state duty because you failed to comply with the

10   federal standard is no good.  It's an indirect way of

11   enforcing it, it's preempted.  And I don't think there's

12   any real difference -- there is no difference between the

13   allegations in their amended complaint what they claim and

14   the amended complaint.

15           And I think the reason for that is sort of

16   obvious.  If you look at the state regulations that they

17   claim there's a duty to comply with the federal statute

18   arises under, they can't sue under those regulations.

19   Either the regulations don't say what they say because

20   they clearly don't mirror and are not identical to the

21   federal regulation or, two, they have a provision in the

22   statutory scheme in which the regulation is included that

23   doesn't permit a private right of action, it can only be

24   enforced by the regulatory agency.  And then we have the

25   so-called safe harbor arguments and provisions which are

1    statutory in nature relating directly to the Consumer

2    Fraud Act which says that if a regulator or agency has

3    approved the conduct, it's exempt from the state consumer

4    fraud act.

5            I know Your Honor maybe in your last opinion

6    said that it was -- asked a question whether that was a

7    fact sensitive argument.  I don't think it is.  It's a

8    question of just looking at the statutory -- each state's

9    statutory regulatory scheme in terms of its licensing, its

10   misbranding, and as a matter of law those statutes each

11   provide for regulatory agency action and each case has

12   been all preapproved, that includes labels, includes

13   source approval of spring water, so these agencies have

14   all approved the labeling for years.  And we're not just

15   talking about Maine.  We're talking about nine different

16   states and their regulatory agencies which have approved

17   it.  And what the plaintiff wants to do here is have this

18   Court, which to me whether it's this Court or any court

19   say to the state regulators, you know what?  Whatever you

20   did, whatever you said really doesn't count, because we're

21   now going to determine not only damages, because we think

22   that what you did was wrong, but also injunctive relief.

23   Plaintiff claims that they're not asking Your Honor to

24   enjoin the state regulators, but doesn't that show the

25   obvious conflict between them pursuing their claims?  If

1    Your Honor were to enter an order that Nestlé was enjoined

2    from labeling Poland Spring as spring water, what does

3    that say to state regulators who are doing their job going

4    forward --

5            THE COURT:  For the most part, though, these

6    state regulators outside of Maine essentially are just

7    taking Maine's word for it, right?

8            MR. GARROD:  No, not necessarily.  New York --

9    for example, New York we actually submit our own hydro

10   reports to them.  Most of the states do require the

11   certification from the state of Maine.  New York is an

12   example is an exception to that.  New York itself

13   actually, they look at their own hydro reports.  Any of

14   these states can do the same as well.  But they all go

15   back to complying with the federal regulation.  There is

16   no independent state standard of identity that any of the

17   plaintiffs have identified in their complaint under which

18   they sue.

19           THE COURT:  Thank you.

20           MR. SCHMIDT:  Your Honor, I'd like to start with

21   some basics.

22           The first thing I'd like to talk about is what

23   precisely does Section 337 preempt.  And it's pretty clear

24   from the cases that it preempts any kind of a claim that

25   is a direct effort to enforce the FDA or the FDCA.  That's

1   preempted.

2           THE COURT:  This is pursuant to *Buckman*?

3           MR. SCHMIDT:  Pursuant to *Buckman*.

4           And I gather what we've been talking about is

5   Section 337 type of preemption.

6           THE COURT:  Right.

7           MR. SCHMIDT:  So we can't bring a claim that

8   says Poland Spring water labels are false and misleading

9   because they don't comply with the FDA standard.  That we

10  can't do under *Buckman*.  That's not what we do in this

11  complaint.

12          Under 337, there are two kinds of claims that

13  are not preempted.  First and foremost is when the claim

14  is brought pursuant to an independent state duty, one that

15  parallels or overlaps the federal duty.  Nestlé has a duty

16  under the FDA not to mislabel its product as spring water

17  when it's not.  It has an identical duty under state law,

18  under state laws that prohibit false advertising, under

19  state laws that prohibit fraud on consumers.  So those are

20  parallel and overlapping duties, and we are permitted and

21  we're not preempted from bringing a claim like that.

22  That's the type of claim that we brought in this case.

23          THE COURT:  I see the argument.  But here isn't

24  your lawsuit based on the notion that what Poland Spring

25  is selling here is just not spring water?

```
 1              MR. SCHMIDT:  It is.  But the crux of our claim
 2    and what we're suing -- we didn't need to mention the FDA
 3    standard or, for that matter, the state standards at all
 4    in our complaint to plead the elements of our claim.  Our
 5    claim is that Nestlé has committed fraud and Nestlé has
 6    violated the consumer protection laws by falsely labeling
 7    its product something that it's not.  It's pawning off an
 8    inferior product --
 9              THE COURT:  It's not spring water?
10              MR. SCHMIDT:  It's not spring water, that's
11    right.
12              THE COURT:  And so to decide what is spring
13    water, do I have to look somewhere?
14              MR. SCHMIDT:  Well, that's a very critical
15    distinction.
16              Our claim is for false advertising.  Our claim
17    is for fraud because they're representing a product to be
18    something that it's not.  That's the type of claim that
19    could have been brought even without the FDCA --
20              THE COURT:  So it's fraud because it's not
21    spring water.
22              MR. SCHMIDT:  That's right.
23              THE COURT:  And so how do I --
24              MR. SCHMIDT:  They made a representation that's
25    not true.
```

1          THE COURT:  Okay, I understand fraud.  But I'm

2    asking you the reason why it's fraud.  The reason it's

3    fraud is because it's not spring water, correct?

4          MR. SCHMIDT:  It's fraud because it's not spring

5    water.

6          THE COURT:  And where do I look out there to try

7    to find out what spring water is?

8          MR. SCHMIDT:  You look somewhere that has

9    nothing to do with preemption.

10          If we were subject to a Rule 8 notice pleading,

11    all we would have had to say is this is not spring water.

12    This is a fraudulent attempt to pawn off a product, an

13    inferior product as a superior product.  The fact that

14    spring water is defined by the FDA shouldn't distinguish

15    our claim from the claim of someone who is suing as to the

16    label of a food product that's not defined by the FDA.  If

17    it was some product that had no federal definition, had no

18    corresponding state definition, we would be allowed to

19    bring that claim, and we could articulate our claim and we

20    could establish all of the elements of our claim without

21    any reference to the FDA --

22          THE COURT:  So let me see -- hold on a second.

23    Let me see if I can get an answer.

24          Where do I look to find the definition of spring

25    water?

1           MR. SCHMIDT:  You look to the state standards

2    for spring water that mimic and mirror the federal

3    standards.  But that has nothing to do with preemption.

4    What that does is it demonstrates the proof by which we

5    must substantiate our claim.

6           What the preemption laws focus on and preemption

7    principle focuses on is the elements of the cause of

8    action.  Can we state a cause of action based purely on a

9    parallel state law duty.  It doesn't ask do we need to

10   prove our claim by reference to federal law.  The fact

11   that the FDA has defined spring water means that to prove

12   our claim of falsity under our parallel state law claim,

13   we have to refer to it.  But we shouldn't be out of court

14   simply because that definition exists.  If we would have a

15   claim for a product that isn't defined, we would be able

16   to proceed, we would have no preemption problem.  The mere

17   fact that it's defined means that we have to prove it by

18   reference to --

19          THE COURT:  Do I have to look at how the state

20   law defines spring water?

21          MR. SCHMIDT:  I'll answer it in two parts.

22   Let's assume there's no federal definition.  Then what

23   would happen in all 50 states is that you'd bring your

24   experts in and you'd bring in your state specific case

25   law, and you'd have potentially 50 different results in

1   those state court actions.  But I think we all agree if

2   the federal definition didn't exist, we would be able to

3   bring those cases under state law.

4           THE COURT:  Well, if the federal definition

5   didn't exist, there wouldn't be much of a preemption

6   claim, would there?

7           MR. SCHMIDT:  That's correct.  No issue about

8   preemption so we could bring the claim.

9           THE COURT:  So let's talk real world for a

10  moment.  Since we do have a federal government and a

11  federal definition here and we have a lot of federal

12  preemption authority, what's your view on this issue in

13  terms of whether the federal law definition ends up

14  mattering here?  Or is the state free to adopt its own

15  standard that's different?

16          MR. SCHMIDT:  Well, the state is not free to

17  adopt its own standard because that's what the FDCA did.

18  That's what the NLEA did.  It requires the states to adopt

19  the federal definition but only for uniformity purposes so

20  that you wouldn't have the potential for 50 different

21  results.  There's no intent in the FDCA, no congressional

22  intent at all to eviscerate those parallel state law

23  causes of action.  In fact, in the *Salmon* cases, the

24  *Medtronic v. Lohr* case, the *Desiano v. Warner-Lambert* case

25  in the Second Circuit, they all say the same thing, that

1   there was no intent by Congress to prevent private

2   litigants from enforcing state law claims just because

3   there is federal regulation in the area.  That was not

4   Congress's intent.  Nestlé would prefer to, just because

5   it's regulated federally, that it's immunized.  But that

6   was not the intent of these statutes.  The intent of these

7   statutes was to protect consumers, not to immunize and

8   shield defendants.

9          THE COURT:  You have nine states here, right,

10  that's the basis of your complaint?

11          MR. SCHMIDT:  Yes.  Pennsylvania through Maine.

12          THE COURT:  Pardon?

13          MR. SCHMIDT:  Pennsylvania through Maine.

14          THE COURT:  Are the state standards identical to

15  the federal standards in every single one of those states?

16          MR. SCHMIDT:  In terms of are they literally

17  identical, the answer is no.  Some of them are; some of

18  them aren't.  The ones that repeat it verbatim are.  The

19  ones that incorporate by reference are.  But then there's

20  some variation among the states.  But in terms of how do

21  we enforce the state standards, then it is identical

22  because we can't enforce a state standard that's not

23  consistent with the federal standard.  So when we prove

24  our case, if we're in a state that has a slightly

25  different definition, and frankly they really don't,

1    they're not materially different, but if there's a

2    slightly different definition, we still rely on how the

3    federal government has defined spring water.  We have to

4    do that.  But again, that's not a preemption issue.

5    That's evidence.

6            The only reason we mention the standard in our

7    complaint is because we have an I.D. requirement.  We had

8    to particularize how and where and when and why this

9    didn't -- these products aren't spring water.  If we

10   didn't have to do that, we never would have had to mention

11   the standard at all.  That's the only reason they're in

12   the complaint.  We're not saying that there's been a fraud

13   because it doesn't comply with the federal definition.

14   We're saying there's been a fraud because they

15   misrepresented the product to us.

16           An example that we cite on Page 20 of our brief

17   is the *Volkswagen* cases.  Under the Clear Air Act, states

18   cannot enforce emission standards.  But as Judge Breyer

19   wrote, consumers aren't trying to enforce emissions

20   standards.  What they're doing is they're suing because

21   they were deceived into buying a product, a premium

22   product that wasn't what the manufacturer represented it

23   to be.

24           THE COURT:  So do I understand your argument

25   then that when push comes to shove, you not only don't

1   have to show a violation of the federal spring water

2   standard, you don't even have to show a violation of the

3   state spring water standard?

4           MR. SCHMIDT:  That is not right, Your Honor.

5   What I'm saying is we don't need to allege a violation to

6   state a cause of action.  When we come to proving the

7   claim, yes, as evidence, we have to rely on the federal

8   definition and state definition.

9           Let me give you case examples that will flesh

10  this out.

11          THE COURT:  I want to make sure I understand

12  kind of a legal premise here.  So you're saying for a

13  cause of action, you don't have to allege the law that's

14  being violated?

15          MR. SCHMIDT:  Well, we do.  But the law that's

16  being violated is the false advertising law which has

17  specific elements, none of which refer to the federal

18  standard or even state standard of identity.

19          Let's take the *Volkswagen* case.  The claim in

20  the *Volkswagen* case for consumers is we were misled and

21  deceived into buying a car that we thought met emissions

22  standards but didn't.  That claim is not preempted.  Now,

23  when they prove that claim, what do they have to prove in

24  order to prove the falsity, the outright falsity?  Of

25  course they have to show that the EPA standard was not

1    complied with.  That's evidence.  It's not an element of

2    their claim.  They have no choice but to use that because

3    that's how they prove their independent but parallel state

4    law claim.

5            The *Stewart v. Smart Balance* case in the

6    District of New Jersey, that's where the milk was alleged

7    not to be fat free.  The court there held there was no

8    preemption problem.  Again, this was an independent claim

9    of falsity, of false advertising.  Now, how do you prove

10   that it was false advertising?  How do you prove it wasn't

11   fat free milk?  You've got to look at the federal

12   definition of what fat free is.  So there they alleged

13   that the milk had more than .5 milligrams of milk fat in

14   it.  That's what defines fat free.  Since it had more than

15   that, they were able to, by using that as evidence, prove

16   their claim that they were lied to on the labels.

17           There's a distinction, a very critical

18   distinction for preemption purposes between what the

19   elements of the claim are and how you have to prove it.

20           THE COURT:  You just said in that *Stewart* case

21   that they alleged .15 --

22           MR. SCHMIDT:  I think they alleged something

23   like .1 instead of .05.

24           THE COURT:  That would have been unnecessary,

25   right, or superfluous.  By your sort of reckoning, all you

1   have to do is allege a violation of the standard.  All the

2   requisites of the standard, why, that's something for

3   later, you know, evidentiary hearing, right?

4            MR. SCHMIDT:  All they have to do is allege that

5   this is not fat free milk.

6            THE COURT:  And they don't have to allege the

7   .15?

8            MR. SCHMIDT:  They wouldn't have to.  Under

9   Rule 8 they wouldn't.  You're not penalized on

10  preemption -- there's no preemption distinction based on

11  whether you're subject to Rule 8 or Rule 9(b).  Under

12  Rule 9(b), they have to show why it was not fat free.

13  That's why they relied on the federal standard.  That's

14  why they said this is .1 instead of .05.  That's exactly

15  what happened in *Volkswagen*.  That's why the consumer

16  claims are sustained and not preempted in *Volkswagen*

17  because the elements of the claim are we got sold a car

18  that didn't meet emissions standards and we were told we'd

19  get a car that met them.  That's the claim.  That doesn't

20  incorporate -- it's not an effort to enforce the federal

21  standard because it's a parallel state law duty and claim

22  that they're seeking to enforce.  I think that's a

23  critical distinction.

24            There's other cases.  We cite in Footnote 14 the

25  *Bausch v. Stryker Corp.* case from the Seventh Circuit.

1    It's the same thing.  They had alleged that there was a

2    breach of the duty of due care in connection with

3    manufacturing a medical device and that was adulterated.

4    That's an independent claim.  That was not preempted.

5    Even though in order to prove that it was adulterated,

6    they had to rely on the federal FDA definition of an

7    adulterated medical device.  That's why that case came out

8    the way it did.  And we're doing the exact same thing

9    here.

10          Now, let me just take it one step further.  The

11   second type of claim that is not preempted, we agree that

12   you can't sue to enforce the federal standard.  That's

13   preempted.  But even that kind of a claim is not preempted

14   if there's a Sherman law type of law in the state.  So,

15   yes, you can sue to enforce the federal standards as long

16   as there's an identical standard under state law.

17          And if you look at the *Salmon* cases, you know,

18   that's what happened.  The plaintiffs had the Sherman law,

19   they went straight to it.  So it wasn't a case -- while

20   the analysis is 100 percent correct on preemption theory

21   and 100 percent correct explanation of Congress's intent,

22   factually the case is not on point with ours.  Because

23   there they were suing to enforce a specific FDA standard

24   that happened to be incorporated into the Sherman law.

25   The court there never reached this question about whether

1    is there an independent parallel or overlapping state law

2    claim.  Because that's our case.  Independent parallel

3    overlapping state law claim.  That wasn't the case in the

4    Sherman law —— in the *Salmon* cases.

5              THE COURT:  Let me understand this.  The Sherman

6    law was a state law.

7              MR. SCHMIDT:  Yes, it was brought under several

8    state statutes.

9              THE COURT:  And as I recall, the *Salmon* case was

10   looking at whether the cause of action could proceed under

11   the Sherman law that, in turn, incorporated the federal

12   standard.

13             MR. SCHMIDT:  Correct, yes.

14             THE COURT:  So why is that different than what

15   your cause of action claims are?

16             MR. SCHMIDT:  Because, as Your Honor noted in

17   your order, there's —— there's a difference between a case

18   where you could have brought it without the existence of

19   the federal rule and one that you could not have brought

20   but for the existence of the federal rule.

21             Now, in the *Salmon* cases, the federal rule

22   prohibited the use of chemicals and food coloring in and

23   the Sherman law paralleled that.  But ——

24             THE COURT:  It doubly ——

25             MR. SCHMIDT:  —— there was no indication that

1    prior to the enactment of the federal act and the

2    subsequent enactment of the state act that that case could

3    have been brought.  I think the words Your Honor used in

4    the order are is it unlawful, is the conduct unlawful only

5    because the federal act exists.

6           Now, in the *Salmon* cases, we don't know if

7    California state law prior to the enactment of the FDCA

8    would have made food coloring unlawful.  We don't know

9    that.  It may not have.  So maybe you had to have a

10   Sherman law.

11          Now, if the *Salmon* cases weren't about food

12   colorings and chemical additives but the claim was this is

13   not salmon at all, this is paddock, this is inferior fish,

14   I don't think you need the Sherman law to bring that case.

15   You could have brought that case before the FDCA, you

16   could have brought the case before the Sherman law was

17   even enacted, because you have a common law duty not to

18   falsely misrepresent your food product.

19          And the *Trader Joe's Tuna* cases are the same

20   thing.  There they were looking at this very specific

21   weight standard that was incorporated into the FDCA.  And

22   the Sherman law incorporated that specific standard.

23   Again, if the claim weren't about that specific weight

24   standard that was perhaps not actionable before those

25   federal state laws were enacted, but rather is it tuna or

1    is it paddock, you wouldn't have needed the Sherman law.

2    Because again, you're pawning off an inferior product as a

3    superior product in order to obtain a premium from your

4    consumer.  You're cheating the consumer by lying to them.

5              THE COURT:  And you're not doing that if you're

6    coloring the salmon?

7              MR. SCHMIDT:  Well, we don't know.  We don't

8    know.  Factually in terms of procedure --

9              THE COURT:  But you don't think a plaintiff

10   would bring that claim with salmon?

11             MR. SCHMIDT:  We don't know if they had a cause

12   of action for that.  The plaintiffs there went straight to

13   the Sherman law.  The court never reached the question of

14   whether there would have been an independent parallel --

15             THE COURT:  So what we're looking at here is a

16   situation in which your case is different than the *Salmon*

17   case because of the lack of essentially a state statute

18   that both provides a cause of action and also expressly

19   incorporates a substantive standard that is fully

20   consistent with federal law.

21             MR. SCHMIDT:  That's right.

22             THE COURT:  And instead, what you're doing is

23   you're seizing upon general unfair trade practices

24   statutes in many of your counts to say that those statutes

25   themselves make actionable a violation of state

1    regulations that are fully consistent with federal law.

2             MR. SCHMIDT:  Yes.  That's right.

3             Let me just talk about the *Loreto* case for a

4    second because that illustrates both kinds of cases.

5             Now, if you look at the district court opinion

6    there, you can see that the federal rule that was violated

7    was a rule that required the manufacturer to obtain FDA

8    approval before marketing the product.  The claim was that

9    DayQuil and NyQuil with vitamin C couldn't be marketed

10   without federal approval.  That's like *Buckman*.  That's

11   not a claim that could have been brought without reliance

12   for the cause of action, for stating the cause of action,

13   for the elements of the cause of action under preexisting

14   state law.  It couldn't have been brought.  So that claim

15   was properly preempted.  But the other claim, which was

16   that vitamin C helps blunt the effects of colds, that was

17   actionable.  That was not preempted.  And that's what our

18   case is like.  We're saying you have a misrepresentation

19   on your label that's inducing consumers to buy your

20   product and pay more for it than it's worth.  That's what

21   our claim is.  That's what was the non-preempted claim in

22   *Loreto*.  That's the distinction there.

23            THE COURT:  And they're paying more because it's

24   not really spring water?

25            MR. SCHMIDT:  They're paying more because, I

1    mean, factually Nestlé Pure Life water, which is a

2    purified water, comes -- some of it comes from the exact

3    same aquifers in plants in Maine, and one case came from

4    the same well in Maine as the spring water.  Nestlé Pure

5    Life water sells for less across the board than Poland

6    Spring water.  So it's basic ordinary groundwater that a

7    consumer would pay X for.  And they're misleading the

8    consumer into thinking it's premium spring water and

9    causing them to pay X plus five for.  That's the theory.

10           So let me come to *Medtronic v. Lohr*.  This is

11   where this comes from.  In *Medtronic*, you had a device

12   that was preapproved by the FDA, you had a device that the

13   FDA approved the warning labels for.  The plaintiffs, the

14   device went bad and injured the plaintiff, and they

15   brought a state law negligence claim.  There's no parallel

16   state law statute that talked about medical device.  But

17   that claim was not preempted.  Why is that?  Because under

18   state negligence law, the manufacturer had a continuing

19   duty to make sure that the device was safe and that the

20   warnings were properly approved.

21           Now, the *Riegel* case which came later was

22   factually different.  There the FDA had to approve any

23   change to the label.  So because the FDA had to preapprove

24   any change, the claim was preempted.  Where the FDA

25   preapproved but did not have to approve any changes in

1    *Lohr* was not preempted.  Because there the independent

2    state duty not to be negligent was the duty being sued

3    upon.  That parallels what we're doing.  We have fraud

4    claims and unfair competition claims that are parallel to

5    the duty that Nestlé has under the FDA not to mislabel its

6    product.  We're just like *Lohr*.  We're just like all the

7    cases where there was a parallel duty and the only

8    reference to the FDA and the FDCA was as evidence that was

9    necessary under those statutes to prove the case.  Before

10   those statutes came into place, those claims would be

11   proved pursuant to state law, evidence permissible under

12   state law.  What the FDCA did with respect to food

13   labeling is just create uniformity.  So now we have

14   to rely --

15          THE COURT:  So the legal standard isn't law;

16   it's evidence now.  That's what you're saying, right?

17          MR. SCHMIDT:  Well, I'm saying for preemption

18   purposes, you look to the claim and the elements of the

19   claim.  And if the elements could be pleaded and the claim

20   brought without reference to the federal standard, it's

21   not preempted.  If you have to look to the federal

22   standard to prove the claim, it's not preempted, because

23   if the federal standard didn't exist you could have proved

24   the claim.  You would have both had the claim and could

25   have proved the claim without reference to it.  But if the

1    government comes in and says, okay, going forward you have

2    to define a product this way, you have no choice as a

3    litigant but to rely on that definition.  But that doesn't

4    preempt you.  That wasn't Congress's intent.  Congress's

5    intent was to reinforce consumer protection through these

6    statutes, not to give immunity to defendants that

7    mislabeled their products.  That's the distinction that I

8    think --

9              THE COURT:  I see your points.

10             Do you want to talk about the safe harbor

11   arguments, if you can?

12             MR. SCHMIDT:  I'd like to talk generally about

13   them, give an overview, and then Mr. Elkhunovich is going

14   to talk about them more specifically.

15             I think you can summarize the law there by

16   reading the Michigan case that Nestlé cited in its brief

17   *Smith v. Globe Life Ins.* case.  Now, Michigan isn't one of

18   our states.  But what that case does is it really defines

19   the two kinds of approaches that states have to safe

20   harbors.  One, which is the very conservative Michigan

21   approach, is that so long as the general transaction has

22   been approved -- in other words, if you have authorization

23   to provide a service or sell a product, you're okay.  And

24   whether in a specific transactional situation you commit a

25   violation, you deceive, you commit fraud, too bad for the

consumer.  That's the Michigan approach.  But the Michigan

case also talks about the other approach, which is the

approach that seven of our nine states have and the other

two don't have any safe harbors at all.  So the approach

that all of our nine states have is what the Michigan

court calls the common sense approach.  And that is they

don't look to the general transaction that's been

permitted, they look to the specific transaction.  They

use a common sense approach to safe harbor, because the

legislature decided to create safe harbors but the

legislature did not want to immunize permitted defendants,

manufacturers, from committing fraud.  They'd want to

immunize them against committing fraud or deceiving the

public.  So the common sense approach is it looks at the

specific transaction at issue here, the specific label

we're talking about, and if it's false, it's fraudulent,

it's not within the safe harbor.

           The state that came the closest to Michigan of

our nine was Rhode Island.  Rhode Island has this burden

shifting, that if a defendant can show that the general

transaction, their ability generally to sell spring water,

was proved, then the burden shifts to the plaintiff to

show for specific transaction that there was fraud here,

there was falsity here, and the safe harbor wouldn't

apply.  Now, we cited and Nestlé cited a few Rhode Island

```
 1    Supreme Court cases that found safe harbor applied.
 2    There's actually a later Rhode Island Supreme Court case
 3    that I'd like to give you the citation, it's called Long
 4    v. Dell, and that's 984 A.2d 1074, it's a 2009 case.
 5    Nobody cited it.  That's a situation where it's pretty
 6    clear that the Rhode Island Supreme Court does look at the
 7    common sense or uses the common sense approach and looks
 8    at the specific transaction there.  The safe harbor was
 9    found not to apply to fraudulent tax collection, sales
10    tax.  Sales tax is highly regulated in Rhode Island.
11    Under the general transaction approach, that would have
12    been within the safe harbor.  But if you collected the
13    sales taxes fraudulently, then you're out of the safe
14    harbor.  That's the ruling in that case.  Rhode Island is
15    now consistent with all of the other states, take the
16    common sense approach.
17              THE COURT:  When you say the common sense
18    approach, you mean a transaction --
19              MR. SCHMIDT:  The specific transaction.  In
20    other words, the common sense approach is we're going to
21    permit you to engage in business and sell your products,
22    but we're not going to permit you to commit fraud or
23    deceive the public.
24              THE COURT:  Thank you.
25              MR. SCHMIDT:  Thank you, Your Honor.
```

1          MR. ELKHUNOVICH:  Good afternoon, Your Honor.

2    Oleg Elkhunovich.  I'll try to be brief since part of the

3    subject matter has been covered.

4          And I'd like to start off with the New Jersey

5    Supreme Court decision which I believe opposing counsel

6    referred to during his argument, the *Lemelledo* case.  If I

7    may, I'm just going to briefly quote from that decision

8    portions that I think are critical to answer the question

9    that you asked last time we were here when we were talking

10   about safe harbors, and that was, roughly speaking, does

11   it make sense that a company would go through a regulatory

12   approval process and then a plaintiff can come in and

13   bring a case challenging a finding of that agency.

14         And what the *Lemelledo* court said was "When

15   remedial power is concentrated in one agency,"

16   underenforcement may result because of lack of resources,

17   concentration on other agency responsibilities, lack of

18   expertise, agency capture by regulated properties, or a

19   particular ideological bent by agency decisionmakers."

20   And, "The primary risk of underenforcement the

21   victimization of a protected class can be greatly reduced

22   by allocation of enforcement responsibilities among

23   various agencies and among members of the consuming public

24   in the forms of judicial and administrative proceedings

25   and private causes of action."

1          And with these observations in mind, the Supreme

2    Court of New Jersey in that case found that the challenged

3    loan packing practice by the lenders was not entitled to

4    safe harbor even though the lending practices were

5    regulated by four different statutes in that case.

6          THE COURT:  So let me back up.

7          I take it you don't contest that each and every

8    year in the nine -- each and every year that's at issue in

9    this lawsuit, that in those nine states a certification

10   was issued as represented by Nestlé here, right, approving

11   on an annual basis?

12         MR. ELKHUNOVICH:  Yes, Nestlé received a permit

13   or certification.

14         THE COURT:  And it wasn't kind of a general to

15   do business, for Nestlé to do business, right?  It was a

16   certification that was spring water specific, right?

17         MR. ELKHUNOVICH:  No.  It varies state by state.

18   But if you look at the permits themselves, most of them

19   are what they call bottler permit which allows them to

20   bottle water.  Some of them are more specific to spring

21   water.

22         THE COURT:  Which are specific to spring water,

23   if you recall?

24         MR. ELKHUNOVICH:  Well, obviously Maine.  Maine

25   actually has a process.  All the other states pretty much

1   rely on Maine.  I believe the New York permit has a

2   reference to spring bores, but other than that, I don't

3   believe any of them do.  I could be wrong on that.

4            THE COURT:  So then your argument is largely, to

5   the extent that there's permits being issued, they're

6   bottling permits that aren't for the most part -- and

7   we're not holding you to particular states at this

8   point -- but for the most part aren't adopting or I should

9   say referring to spring water standard; is that what

10  you're saying?

11           MR. ELKHUNOVICH:  That's a small part of the

12  argument.  But the argument really is that eight of the

13  nine states do not make any independent determination of

14  whether or not the water that Poland Spring sells complies

15  or does not comply with any identity standard or whether

16  it is or is not spring water.  They have an application

17  process by which Nestlé submits its certification from

18  Maine, a agency that, quote/unquote, has jurisdiction over

19  it, and they rely on that.

20           THE COURT:  Isn't that a determination?

21           MR. ELKHUNOVICH:  It's a determination that

22  Nestlé should get a permit, yes.  It is not a

23  determination or at least there's no evidence that there's

24  any determination that those agencies actually engaged in

25  any type of analysis whatsoever of whether or not --

1          THE COURT:  So basically what you're saying is

2     unless the agency in each state is undertaking hiring its

3     own scientist and doing its own independent investigation,

4     it's not making a real determination.

5          MR. ELKHUNOVICH:  Well, those agencies don't,

6     but I'm not sure that the law necessarily requires that.

7     And that varies state by state.  There are two states that

8     don't have safe harbor at all.  So in Pennsylvania and

9     Vermont, for example, it doesn't matter what their

10    agencies determine or do not determine or maybe they don't

11    even issue permits -- it doesn't matter, there's no safe

12    harbor.  In other states, there are two types of safe

13    harbors and they vary in scope.  There are statutory safe

14    harbors, and in some states where a statute does not exist

15    they're judicially created safe harbors.  So New Jersey,

16    for example, in the *Lemelledo* case with which I began does

17    not have a statutory safe harbor but it has a judicial one

18    that in *Lemelledo* and cases upon which it relied was very

19    narrowly construed to actions that were compliant with

20    regulation or state law, and in some cases may have been

21    permitted -- and there's a little bit of play on words

22    here between the permits that are provided by the agency

23    and the action being permitted, as in authorized, as in

24    legalized.

25          So, for example, there was a New Hampshire case

1    cited in the briefing where there was a regulation or a

2    statute that specifically stated that the defendant

3    condominium association was allowed to charge what the

4    plaintiffs contended was an illegal fee.  Well, in that

5    case there was a safe harbor because there was a

6    regulation that says you can do exactly what we're

7    alleging you're doing.

8         We are alleging that Nestlé is misrepresenting

9    what it is selling.  There's no statute that says you can

10   do that.  There are statutes that say you can sell water,

11   you can get a permit to sell water, but it doesn't mean

12   that if the underlying finding that the water qualifies to

13   be spring water is either incorrect or was induced through

14   regulatory capture, for example, as the *Lemelledo* case

15   talks about and we have alleged in our case, at a minimum

16   there is a fact issue as to safe harbor.

17        THE COURT:  So to the extent, then, what you're

18   saying is even if a state says you can sell spring water

19   here to Nestlé, that doesn't -- that permission does not

20   immunize Nestlé if in fact it's not actually selling

21   spring water.

22        MR. ELKHUNOVICH:  Yes, Your Honor.  And to take

23   it -- I mean, I believe Nestlé's argument is that the

24   regulations that permit it to sell water immunize it from

25   liability for selling that water.  Taking that to the

1    extreme, these regulations require the water to be safe,

2    for example, right?  They provide a variety of

3    requirements of how the water should be handled, how it

4    should be stored, et cetera.  If something were to happen

5    and Nestlé's water was to get contaminated and people were

6    to start getting sick, is Nestlé immunized because the

7    state gave it a permit and determined that the water was

8    safe even though it turned out that it was not at any

9    given point of time and a plaintiff bringing a personal

10   injury action cannot bring their claim because of that

11   state determination?  That can't be right.  But the

12   arguments are the same.

13             THE COURT:  Okay.

14             MR. ELKHUNOVICH:  Thank you, Your Honor.

15             THE COURT:  Mr. Garrod.

16             MR. GARROD:  I'll just be very brief.

17             Counsel has -- I don't want to mischaracterize

18   their argument, but most importantly I think they've

19   mischaracterized by focusing on the literal wording on the

20   permits.  I think if Your Honor looks at the statutory

21   regulatory structure of each state -- we've set forth and

22   summarized for each state on pages 10 through 12 of our

23   brief -- you will find that states require, mandate that

24   before you can sell bottled water, you must get the state

25   certificate of approval.  That regulatory process is not

1    just selling bottled water, but it specifically includes

2    submission of labels and including how you label or what

3    you call your product.  So the fact that spring water is

4    on the label and it's called spring water, that's been

5    specifically authorized and certified by the states.  How

6    they get to that decision really is what the safe harbor

7    provision is about.  It's not to permit some private

8    litigant under a state consumer fraud act to now go and

9    challenge the decision of the -- or how the state

10   regulator --

11                THE COURT:  Okay.

12                MR. GARROD:  In terms of the New Jersey case,

13   Your Honor, the Supreme Court in New Jersey was very clear

14   that where the claim of the private litigant under the

15   state consumer fraud act would be in conflict with the

16   determination made by the regulatory agency dealing with

17   that particular product at issue, that's when you don't

18   get to bring the private cause of action under the state

19   consumer fraud act.

20                THE COURT:  So if Nestlé had filled the water

21   with essentially contaminated water in some way that was

22   harmful and made people sick or worse, I think your

23   argument would be that the safe harbor protects them.

24   They could be prosecuted by a governmental authority, but

25   private plaintiffs couldn't sue?

1          MR. GARROD:  In that scenario, I'm not saying

2     safe harbor would apply.  Because the certificate doesn't

3     say that you can sell, you know, water that has X, Y, or Z

4     in it.  The certificate says, yes, you got a label that

5     says spring water and that's what they've approved, okay,

6     as part of their process.  There's a lot of reasons why a

7     bottle of water that is consumed might have some

8     contamination and a lot of times it's not because of when

9     it left the factory it was contaminated.  So that type of

10    claim would not involve the standard of identity.  I don't

11    think it would involve regulatory action.

12         THE COURT:  At the end of the day, if Nestlé

13    poisons the water and sells it, you wouldn't be protected

14    by the safe harbor, right?

15         MR. GARROD:  That's correct.  That's correct,

16    Your Honor.

17         THE COURT:  And you'd be subject to a suit for

18    not selling spring water.

19         MR. GARROD:  I think that's clear.  And those

20    suits have existed and they exist.  You know, that's why

21    they have some insurance in product liability because

22    people make those claims if they got sick over consuming a

23    bottle of water.  I don't think we've ever made a

24    preemption or safe harbor argument as a defense in those

25    cases, Your Honor.  That's totally different, obviously,

1   from what we have here.

2           THE COURT:  Why exactly is it different?  Both

3   cases, the claim would be:  You told me this was spring

4   water; it's not.

5           MR. GARROD:  No, but how you get to determine

6   whether it's spring water is based on a federal standard

7   of identity or some independent state regulation, neither

8   of which exists here, Your Honor.  So you're not talking

9   about a quality issue, okay?  Or whether or not the

10  product was contaminated.  The fact that it's spring water

11  doesn't mean that it's contaminated.  And, you know, we

12  don't get a seal of approval.  I don't think we get a

13  certificate that says your product is X, Y, or Z.  But one

14  of the things we do get in permitting us to sell it is

15  they do say you can sell it as spring water.

16          THE COURT:  Okay.  So looking at the arguments

17  you raised in the briefing, I take it that with respect to

18  the statutory claims, you're not arguing as a matter of

19  state law that there's no statutory right of action here

20  apart from your preemption claim?

21          MR. GARROD:  You mean under the consumer fraud

22  statutes -- I mean the claims?

23          THE COURT:  Under the various consumer fraud --

24  lots of times you have folks coming in and saying

25  something has happened here, plaintiffs have brought a

1    consumer fraud or essentially in Connecticut it's commonly

2    under the CUTPA statute.  And defendants say, well, this

3    action is not actionable under the statute.

4          I don't interpret or understand the many

5    arguments you've raised in your motion to dismiss or I

6    think in the last go-round we had to be alleging that as a

7    matter of pure state law there's no cause of action.

8          MR. GARROD:  Well, in one respect, certainly in

9    Connecticut we know Connecticut has a statutory provision

10   that says that for violation of those state regulations it

11   must be brought in the name of the State of Connecticut.

12   So there are -- in Connecticut there's a case, and that

13   may be related to --

14         THE COURT:  You may be thinking of those things

15   right now.  But I'm looking at a very hefty brief here.

16   This is our second go-round.

17         MR. GARROD:  Well, I know we cite that statute.

18   And we may have made it in the safe harbor argument.  I

19   know we cite -- I'm almost positive we cite that very

20   statute and point that out, Your Honor, that there's no

21   cause of action under the Connecticut statute.  We do make

22   that argument.  It's in our brief.  It may be under the

23   safe harbor.

24         THE COURT:  As a matter of your safe harbor

25   argument.  But you're not making otherwise --

1          MR. GARROD:  Well, that's --

2          THE COURT:  I'm sorry, just let me finish, if

3   you don't mind.

4          You're not making an argument that there's no

5   state law cause of action to begin with.

6          MR. GARROD:  Well, in the case of Connecticut,

7   Connecticut has a safe harbor provision.  But Connecticut

8   also has this provision that these regulatory provisions

9   that they cite can only be brought in the name of the

10  State of Connecticut.  And that's probably not broken out

11  as a separate argument.  It may be part and parcel of --

12  but it's really two separate issues.  And we do make that

13  argument in our --

14         THE COURT:  Remind me where that is.

15         MR. GARROD:  Page 28, I'm told, Your Honor, of

16  the moving brief.

17         THE COURT:  Okay.  So that's for Connecticut,

18  you have that one claim there.  And otherwise you're not

19  making that argument.

20         MR. GARROD:  I think that's probably correct,

21  just based on the consumer fraud sections themselves other

22  than safe harbor.  And that's, I think, part of our

23  implied preemption argument, we put that in there.

24         THE COURT:  Hold on a second.  Counsel wants to

25  talk to you.

1              (Pause.)

2              MR. GARROD:  And when we talk about the

3    individual regulations that they talk about, we do make

4    the claim, and we argue and it's briefed, there is no

5    private right of action to enforce those state regulatory

6    provisions.  We make that argument in our brief.

7              THE COURT:  I understand that argument.  That's,

8    to me, distinct from an argument that an unfair trade

9    practices general statute can rely in part on otherwise

10   non-actionable regulations that couldn't be used.

11             MR. GARROD:  Yeah, okay.

12             THE COURT:  Thank you all.

13             If there's nothing else at this time --

14             MR. SCHMIDT:  Your Honor, may I correct a

15   citation in our brief?  It's for an important case.

16             THE COURT:  Okay.  What's that?

17             MR. SCHMIDT:  In Footnote 4 we cite a case from

18   the District of Oregon called *Accord Silva v. Unique Bev.*

19   *Co.*  And we cite an opinion dated June 15 of 2017 that

20   actually goes through the analysis that I went through and

21   found that you don't need a separate statute in our kind

22   of case, but we cited a Westlaw citation that's actually

23   to a later decision in that same case.  And so I want to

24   give you the --

25             THE COURT:  I'll tell you what I'm going to do.

 1  And you also mentioned another Rhode Island case here.

 2  The appropriate thing to do is simply to file something on

 3  the docket that has the citation, explains why you're

 4  citing it, so that the other side can appropriately

 5  respond and also take a look at it.  If you have any

 6  additional citation you want me to know about, you can

 7  file something by the end of the day tomorrow, that would

 8  be great.  And defendants are welcome to respond to that

 9  by a week from today.

10              MR. SCHMIDT:  Thank you.

11              MR. GARROD:  Thank you, Your Honor.

12              THE COURT:  Thank you all.

13              Stand in recess.

14                  (Proceedings adjourned at 3:25 p.m.)

15

16

17

18

19

20

21

22

23

24

25

1

2                        C E R T I F I C A T E

3

4    RE: MARK J. PATANE, ET AL. v. NESTLÉ WATERS NORTH AMERICA,
                       INC., No. 3:17CR1381(JAM)
5

6              I, Diana Huntington, RDR, CRR, Official Court

7    Reporter for the United States District Court for the

8    District of Connecticut, do hereby certify that the

9    foregoing pages 1 through 55 are a true and accurate

10   transcription of my shorthand notes taken in the

11   aforementioned matter to the best of my skill and ability.

12

13

14

15

16                    _____/s/_____

17                    DIANA HUNTINGTON, RDR, CRR
                        Official Court Reporter
18                    United States District Court
                       141 Church Street, Room 147
19                    New Haven, Connecticut 06510
                          (860) 463-3180
20

21

22

23

24

25