## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| MARK J. PATANE, JULIE HARDING, HEATHER HARRIGAN, STEPHEN S. SHAPIRO, CATHERINE PORTER, ERICA RUSSELL, TINA MORETTI, BRIDGET KOPET, JENNIFER S. COLE, BENJAMIN A. FLETCHER, DIANE BOGDAN and MICHAEL BROWN, Individually and on Behalf of All Others Similarly Situated, | : CIVIL ACTION NO. 17-cv-01381(JAM)<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: |
| Plaintiffs, | :<br>: |
| v. | :<br>: |
| NESTLE WATERS NORTH AMERICA, INC., | :<br>:<br>: |
| Defendant. | : APRIL 22, 2019 |

### DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTIONS TO CERTIFY AND STAY PENDING INTERLOCUTORY APPEAL OF MARCH 28, 2019 ORDER

Jonathan B. Tropp (ct11295)
Day Pitney LLP
195 Church Street, 15th Floor
New Haven, CT 06510
Telephone: (203) 752-5000
Fax: (203) 752-5001
jbtropp@daypitney.com

Jeffrey M. Garrod (admitted *pro hac vice*)
Craig A. Ollenschleger (admitted *pro hac vice*)
Orloff, Lowenbach, Stifelman & Siegel, P.A.
44 Whippany Road, Suite 100
Morristown, NJ 07960
Telephone: (973) 622-6200
Fax: (973) 622-3073
jmg@olss.com; co@olss.com

Thomas B. Mayhew (admitted *pro hac vice*)
Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
Telephone: (415) 954-4400
Fax: (415) 954-4480
tmayhew@fbm.com

Attorneys for Defendant
Nestlé Waters North America Inc.

## TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES ........................................................................................... ii

PRELIMINARY STATEMENT ..................................................................................... 1

STATEMENT OF FACTS ............................................................................................. 1

QUESTION PRESENTED FOR INTERLOCUTORY APPELLATE REVIEW ....................... 5

ARGUMENT ............................................................................................................... 5

I.   THIS COURT SHOULD CERTIFY ITS MARCH 28 ORDER TO ALLOW
     THE SECOND CIRCUIT TO DECIDE WHAT LEGAL STANDARDS APPLY
     TO DETERMINE THE PREEMPTIVE EFFECT OF FDCA SECTION 343-1(A)(1)'S
     PROHIBITION OF "ANY" STATE-LAW REQUIREMENT THAT IS "NOT
     IDENTICAL TO" THE FDA'S SPRING WATER IDENTITY STANDARD ............. 5

     A.   The March 28 Order Involves A Controlling Question Of Preemption Law,
          As To Which An Immediate Appeal May Materially Advance The Ultimate
          Termination Of This Suit .......................................................................... 5

     B.   Substantial Grounds Exist For A Difference Of Opinion With The March 28
          Order As To What Legal Standard Applies To FDCA Section 343-1(a)(1) ................. 8

     C.   This Court Should Certify The March 28 Order In Light Of The Serious
          Consequences It Poses For The Orderly State Regulatory Enforcement Of Spring
          Water Identity Standards And Unfettered Interstate Commerce ................................ 14

II.  THIS COURT SHOULD STAY THESE PROCEEDINGS PENDING THE
     OUTCOME OF NWNA'S INTERLOCUTORY APPEAL OF THE MARCH 28
     ORDER TO THE SECOND CIRCUIT ........................................................ 17

     A.   NWNA Has A Substantial Probability Of Success On Appeal .................................. 17

     B.   NWNA Will Be Irreparably Harmed Absent Issuance Of A Stay .............................. 18

     C.   Granting The Stay Will Not Substantially Injure Plaintiffs ........................................ 19

     D.   Staying The Action Is In The Public Interest ............................................................. 20

CONCLUSION ............................................................................................................. 21

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*In re Aggrenox Antitrust Litig.*,
No. 3:14-md-2516 (SRU), 2018 WL 834228 (D. Conn. Feb. 12, 2018) .................................. 9

*APCC Servs., Inc. v. AT & T Corp.*,
297 F. Supp. 2d 101 (D.D.C. 2003) ................................................................................. 9

*Balintulo v. Daimler AG*,
727 F.3d 174 (2d Cir. 2013) ....................................................................................... 15

*Bates v. Dow Agrosciences LLC*,
544 U.S. 431 (2005) ..............................................................................................*passim*

*Chavez v. Blue Sky Nat. Bev. Co.*,
340 F. App'x 359 (9th Cir. 2009) ............................................................................... 15

*Chi. Faucet Shoppe, Inc. v. Nestle Waters N. Am. Inc.*,
24 F. Supp. 3d 750 (N.D. Ill. 2014) ............................................................................ 14

*Cipollone v. Liggett Grp., Inc.*,
505 U.S. 504 (1992) ................................................................................................. 10

*Cipollone v. Liggett Grp., Inc.*,
789 F.2d 181 (3d Cir. 1986), *cert. denied*, 479 U.S. 1043 (1987) ............................ 6

*Consub Del. LLC v. Schahin Engenharia Limitada*,
476 F. Supp. 2d 305 (S.D.N.Y. 2007), *aff'd*, 543 F.3d 104 (2d Cir. 2008),
*abrogated in part on other grounds by*
*Shipping Corp. of India, Ltd. v. Jaldhi Overseas Pte Ltd.*,
585 F.3d 58 (2d Cir. 2009) ........................................................................................ 8

*Cooper v. U.S. Postal Serv.*,
246 F.R.D. 415 (D. Conn. 2007) ............................................................................... 18

*CSX Transp., Inc. v. Easterwood*,
507 U.S. 658 (1993) ................................................................................................. 10

*In re Duplan Corp.*,
591 F.2d 139 (2d Cir. 1978) ....................................................................................... 5

*Gerber Sci. Int'l., Inc. v. Satisloh AG*,
No. 3:07-cv-1382 (PCD), 2009 WL 10689138 (D. Conn. Sept. 25, 2009) ................ 7

*Gestion Proche, Inc. v. Dialight Corp.*,
 No. 4:16-CV-407, 2017 WL 2834695 (E.D. Tex. June 30, 2017) ...........................................14

*Glatt v. Fox Searchlight Pictures, Inc.*,
 No. 11 Civ. 6784 (WHP), 2013 WL 5405696 (S.D.N.Y. Sept. 17, 2013) ...............................9

*Gorenstein v. Ocean Spray Cranberries, Inc.*,
 No. CV 09-5925-GAF, 2009 WL 10201128 (C.D. Cal. Dec. 18, 2009)................................14

*Gulino v. Bd. of Educ. of City Sch. Dist. of City of N.Y.*,
 907 F. Supp. 2d 492 (S.D.N.Y. 2012) .........................................................................9, 16, 17

*Hall v. Wyeth, Inc.*,
 Civ. No. 10-738, 2010 WL 4925258 (E.D. Pa. Dec. 2, 2010)...................................................7

*Hongkong & Shanghai Banking Corp. Ltd. v. Brandt, Jr.*,
 No. 17-cv-6672 (VEC), 2017 WL 6729191 (S.D.N.Y. Dec. 29, 2017) ....................................7

*Jock v. Sterling Jewelers, Inc.*,
 738 F. Supp. 2d 445 (S.D.N.Y. 2010) ...................................................................................18

*Jones v. Midland Funding, LLC*,
 No. 3:08-cv-802 (RNC), 2012 WL 1204716 (D. Conn. Apr. 11, 2012) ...................................8

*Koehler v. Bank of Bermuda Ltd.*,
 101 F.3d 863 (2d Cir. 1996) ....................................................................................................8

*In re Lorazepam & Clorazepate Antitrust Litig.*,
 208 F.R.D. 1 (D.D.C. 2002)....................................................................................................19

*Louis Vuitton Malletier S.A. v. LY USA, Inc.*,
 676 F.3d 83 (2d Cir. 2012) .....................................................................................................18

*McMahon v. Bumble Bee Foods LLC*,
 148 F. Supp. 3d 708 (N.D. Ill. 2015).......................................................................................14

*Mills v. Giant of Maryland, LLC*,
 441 F. Supp. 2d 104 (D.D.C. 2006), *aff'd*, 508 F.3d 11 (D.C. Cir. 2007)...............................11

*Nat. Res. Def. Council, Inc., v. U.S. Food & Drug Admin.*,
 884 F. Supp. 2d 108 (S.D.N.Y. 2012) .....................................................................................18

*Nat'l Immigration Project of the Nat'l Lawyers Guild v. U.S. Dep't of Homeland Sec.*,
 842 F. Supp. 2d 720 (S.D.N.Y. 2012) .....................................................................................18

*Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Coric*,
 167 F.R.D. 356 (N.D.N.Y. 1996) .............................................................................................20

*Nemphos v. Nestle Waters North America, Inc.*,
    775 F.3d 616 (4th Cir. 2015) ..............................................................................13, 15

*Patane v. Nestlé Waters N. Am., Inc.*,
    314 F. Supp. 3d 375 (D. Conn. 2018)..............................................................................2, 3

*In re PepsiCo, Inc., Bottled Water Mktg. & Sales Pracs. Litig.*,
    588 F. Supp. 2d 527 (S.D.N.Y. 2008) ...........................................................................11, 12

*Philip Morris USA Inc. v. Scott*,
    561 U.S. 1301 (2010) (Scalia, J., in chambers) .......................................................19

*Phillip Morris Inc. v. Harshbarger*,
    957 F. Supp. 327 (D. Mass.), *aff'd*, 122 F.3d 58 (1st Cir. 1997)................................6

*Red v. The Kroger Co.*,
    No. CV 10-01025 DMG MANX, 2010 WL 4262037 (C.D. Cal. Sept. 2, 2010)..............12, 13

*Reynolds v. Time Warner Cable, Inc.*,
    No. 16-CV-6165W, 2017 WL 362025 (W.D.N.Y. Jan. 25, 2017)..........................................19

*Richards v. FleetBoston Fin. Corp.*,
    No. CIV A 304-CV-1638 JC, 2006 WL 3000768 (D. Conn. Oct. 16, 2006) ............................5

*Rothstein v. GMAC Mortg., LLC*,
    No. 12 Civ. 3412 (AJN), 2014 WL 1329132 (S.D.N.Y. Apr. 3, 2014)...................................8

*S.E.C. v. Citigroup Global Markets Inc.*,
    673 F.3d 158 (2d Cir. 2012) .......................................................................................17, 19

*Southwell v. Mortgage Investors Corp. of Ohio, Inc.*,
    No. C13-1289 MJP, 2014 WL 12102273 (W.D. Wash. Mar. 14, 2014)...................................6

*Texaco Inc. v. Pennzoil Co.*,
    784 F.2d 1133 (2d Cir. 1986), *rev'd on other grounds*, 481 U.S. 1 (1987)............................19

*Trotter v. Perdue Farms, Inc.*,
    168 F. Supp. 2d 277 (D. Del. 2001)..............................................................................6

*Turek v. Gen. Mills, Inc.*,
    662 F.3d 423 (7th Cir. 2011) .......................................................................................13

*United States v. Apple Inc.*,
    992 F. Supp. 2d 263 (S.D.N.Y. 2014), *aff'd*, 787 F.3d 131 (2d Cir. 2015)............................17

*United States v. N.Y.C. Bd. of Educ.*,
    620 F. Supp. 2d 413 (E.D.N.Y. 2009) ..........................................................................20

*United States v. Suarez*,
   880 F.2d 626 (2d Cir. 1989) ..................................................................................20

*WNET v. Aereo, Inc.*,
   871 F. Supp. 2d 281 (S.D.N.Y. 2012) ..................................................................14


**Statutes**

7 U.S.C. § 136v(b) ........................................................................................................10

21 U.S.C. § 343-1(a)(1)-(3) ..........................................................................................14

21 U.S.C. § 343-1(a)(1)-(5) ..........................................................................................12

28 U.S.C. § 1292(b) ...............................................................................................1, 5, 7

*Conn. Gen. Stat.* § 21a-150e(c)......................................................................................4


**Regulations**

21 C.F.R. § 165.110(a)(2)(vi) ...............................................................................*passim*

*N.Y. Comp. Codes R. & Regs.* tit. 10, § 5-6.4(c)(5) ........................................................4


**Other Authorities**

60 Fed. Reg. 57076 (Nov. 13, 1995) ..................................................................7, 15, 16

## PRELIMINARY STATEMENT

In its March 28, 2019 Order [Doc. 179], this Court substantially denied defendant Nestlé Waters North America Inc.'s ("NWNA") motion to dismiss Plaintiffs' First Amended Consolidated Complaint ("Complaint"). [Doc. 160]. Pursuant to 28 U.S.C. § 1292(b), NWNA moves to certify that Order and stay these proceedings pending an interlocutory appeal to the Second Circuit Court of Appeals with regard to a controlling and dispositive question of law.

The Food, Drug, and Cosmetic Act ("FDCA") preempts any relevant state law that is "not identical to" the federal standard of identity for spring water. However, relying on *Bates v. Dow Agrosciences LLC*, 544 U.S. 431 (2005), the Court used "substantively equivalent" as its preemption standard, importing to the FDCA the preemptive standard featured in the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA"). Several other courts have specifically rejected that approach and held that the FIFRA standard is not applicable to an FDCA preemption analysis. Indeed, this Court, in its Order granting NWNA's first motion to dismiss, expressly *rejected* reliance on *Bates* for this very reason. [Doc. 141 at 19-20.] This Court's reliance on the *Bates* standard in the FDCA context is an issue of first impression in this Circuit and will impact all subsequent FDCA preemption cases. Consequently, the Court should certify the Order for appellate review and issue a stay until this critical issue is fully resolved.

## STATEMENT OF FACTS

Plaintiffs are residents of nine northeastern States who have purchased NWNA's Poland Spring® bottled water products since November 5, 2003. [¶35].[1] They allege the United States Food and Drug Administration ("FDA") adopted standards of identity for bottled drinking water products in 1995, which "included a definition of 'spring water,' and appear currently at 21

---

[1] All paragraph citations are to Plaintiffs' Complaint [Doc. 160].

C.F.R. § 165.110(a)(2)(vi)." [¶49].  To be "labeled lawfully as spring water," Poland Spring®

must satisfy the requirements set forth in 21 C.F.R. § 165.110(a)(2)(vi).  [¶54].  Defining 21

C.F.R. § 165.110(a)(2)(vi) as the "Identity Standard," the Complaint refers to the FDCA

definition some 80 times and claims NWNA has not complied with the "Identity Standard."

[*See, e.g.*, ¶¶52-54, 57, 59, 78].

In their initial complaint, Plaintiffs predicated their consumer protection and unfair trade

practices claims for permanent injunctive relief and money damages on the common allegation

that NWNA fraudulently labeled and sold its Poland Spring® products as "100% Natural Spring

Water" when it is not "spring water" because it did not meet the federal Identity Standard.

*Patane v. Nestlé Waters N. Am., Inc.*, 314 F. Supp. 3d 375, 379 (D. Conn. 2018).  In its May 17,

2018 Opinion and Order, this Court granted NWNA's motion to dismiss Plaintiffs' state-law

claims without prejudice, finding they are impliedly preempted by the FDCA.  *Id.* at 391.  This

Court reasoned that FDCA Sections 343-1(a)(1) and 337(a)—"[t]aken together"—"have a broad

preemptive effect on state law claims."  *Id.* at 385.  First, FDCA Section 343-1(a)(1) "expressly

preempts the States from imposing any 'standard of identity' for food products (such as spring

water) that is '<u>not identical to</u> the FDCA standard of identity.'"  *Id.* at 384 (emphasis added)

(footnote omitted) (quoting 21 U.S.C. § 343-1(a)(1)).  Second, FDCA Section 337(a) "provides

that 'all such proceedings for the enforcement, or to restrain violations, of this chapter shall be by

and in the name of the United States."  *Id.* at 385 (quoting 21 U.S.C. § 337(a)).  From the

interplay of these statutes, this Court reasoned:

> The upshot is that only a narrow range of state law claims involving mislabeling of
> "spring water" may escape preemption by the FDCA.  In order to survive preemption, a
> state law claim must rely on an independent state law duty that parallels or mirrors the
> FDCA's requirement for "spring water," but must not solely and exclusively rely on
> violations of the FDCA's own requirements.

As Judge Posner has put it in a similar context, a State "can impose the *identical* requirement or requirements, and by doing so be enabled … to enforce a violation of the [FDCA] as a violation of state law." *Turek v. Gen. Mills, Inc.*, 662 F.3d 423, 426 (7th Cir. 2011). [*Id.* at 386 (alterations in original) (emphasis added).]

This Court found that "Plaintiffs allege that Poland Spring's labels are fraudulent and misleading because they violate the FDA spring water identity regulation." *Id.* at 388. As Plaintiffs "are suing solely to enforce the FDCA's federal 'spring water' standard," this Court held that their state-law claims were impliedly preempted by FDCA Section 337(a). *Id.* at 389.

After Plaintiffs filed their amended complaint [Doc. 160], NWNA moved to dismiss on various legal grounds, including FDCA preemption [Doc. 164]. In a March 28, 2019 Opinion and Order, this Court dismissed Plaintiffs' Vermont-law claims as impliedly preempted by the FDCA because Vermont had not "independently and affirmatively adopted the federal identity standard as its own law," but otherwise denied NWNA's motion. [Doc. 179 at 14, 15, 18].

This Court recounted that "a court must first determine if the state law standard that is relied on by a plaintiff *mirrors* the federal law identity standard. Then a court must determine if the state law standard is indeed an *independent legal standard*, even if the State has chosen simply to mirror or track the standard already set forth by the FDCA." [*Id.* at 8]. Noting "it is important to clarify to what degree any state standard must mirror or be identical to the federal standard," this Court stated that the statutory phrase "not identical" in FDCA Section 343-1(a)(1) "contemplates differences in *meaning* as opposed to differences in words." [*Id.* at 9]. This Court pointed out that in *Bates*, 544 U.S. 431,

the Supreme Court has made clear that "[i]n undertaking a pre-emption analysis at the pleadings stage of a case, the court should bear in mind the concept of "equivalence," and that "[t]o survive pre-emption, the state-law requirement need not be phrased in the *identical* language as its corresponding [federal] requirement," and "[i]f a case proceeds to trial, the court's jury instructions must ensure that <u>nominally equivalent labeling requirements are *genuinely* equivalent</u>." [Doc. 179 at 10 (underline added) (quoting *Bates*, 544 U.S. at 454).]

Respecting Vermont law, this Court observed that Plaintiffs had identified a general consumer protection statute and two other water-related provisions, none of which expressly defined spring water or affirmatively adopted a state-law definition of spring water. [*Id.* at 13-14]. This Court held that Plaintiffs' Vermont claims are impliedly preempted by the FDCA because they "do[] not rest on any independent state law of Vermont that defines a state standard for spring water" and are "just an attempt to sue for a violation of federal law, which is the type of claim that is subject to implied preemption." [*Id.* at 15].

However, this Court determined that the laws of five States—Massachusetts, New Hampshire, New Jersey, Pennsylvania, and Rhode Island—"expressly incorporate the federal standard without material changes in wording." [*Id.* at 10]. This Court further determined that the laws of three other States—Connecticut, Maine, and New York—have spring water standards that "include at least some language that does not also appear in the federal standard." [*Id.* at 12]. In particular, the Court noted that Connecticut law refers to an "adjacency" requirement that the FDA had rejected when it adopted the Spring Water Identity Standard. [*Id.* at 12 n. 4]; *see Conn. Gen. Stat.* § 21a-150e(c).[2]

Applying the *Bates* equivalent standard to Plaintiffs' remaining statutory claims, this Court concluded that, despite "differences between the language in the laws of these eight States and the wording of the federal identity standard, it appears that the state standards are <u>substantively equivalent</u> to the federal law standard" and, therefore, are not preempted by the FDCA. [Doc. 179 at 13 (emphasis added) (citing *Bates*, 544 U.S. at 454), 18]. Similarly, this Court concluded that except for their Vermont-law claims, each of Plaintiffs' common-law

---

[2] New York law contains the same requirement. *N.Y. Comp. Codes R. & Regs.* tit. 10, § 5-6.4(c)(5).

claims is predicated on a violation of a state-law standard for 'spring water' that is <u>equivalent</u> to the federal standard and, therefore, is not preempted by the FDCA. [*Id.* at 16].

## QUESTION PRESENTED FOR INTERLOCUTORY APPELLATE REVIEW

I.   What legal standards must a court apply to determine the preemptive effect of FDCA Section 343-1(a)(1)'s prohibition of "any" State-law requirement that is "not identical to" the FDA's Spring Water Identity Standard?

## ARGUMENT

I.   **This Court Should Certify Its March 28 Order To Allow The Second Circuit To Decide What Legal Standards Apply To Determine The Preemptive Effect Of FDCA Section 343-1(a)(1)'s Prohibition Of "Any" State-Law Requirement That Is "Not Identical To" The FDA's Spring Water Identity Standard**

Pursuant to the Interlocutory Appeals Act of 1958, this Court should certify the March 28 Order because it (1) involves a controlling question of law respecting FDCA preemption, as to which (2) there is substantial ground for difference of opinion with the order, and (3) as to which an immediate appeal may materially advance the ultimate termination of this litigation.   28 U.S.C. § 1292(b).

A.   **The March 28 Order Involves A Controlling Question Of Preemption Law, As To Which An Immediate Appeal May Materially Advance The Ultimate Termination Of This Suit**

Considering the first (controlling question of law) and third (materially advance the ultimate termination of the litigation) certification requirements together, this Court should conclude they are satisfied. *See In re Duplan Corp.*, 591 F.2d 139, 148 n.11 (2d Cir. 1978) (noting courts treat the first and third requirements as one); *Richards v. FleetBoston Fin. Corp.*, No. CIV A 304-CV-1638 JC, 2006 WL 3000768, at *1–2 (D. Conn. Oct. 16, 2006) (same).

The March 28 Order presents a controlling question of law:  what legal standards should be applied to determine if Plaintiffs' state-law consumer protection and unfair trade practices

claims, alleging noncompliance with state-law requirements defining spring water, are preempted by the FDCA? *See Southwell v. Mortgage Investors Corp. of Ohio, Inc.*, No. C13-1289 MJP, 2014 WL 12102273, at *1 (W.D. Wash. Mar. 14, 2014) ("Whether a federal statute preempts a state-law claim is a controlling question of law appropriate for interlocutory review under 1292(b)." (citing *Total TV v. Palmer Commc'ns, Inc.*, 69 F.3d 298 (9th Cir. 1995))); *Trotter v. Perdue Farms, Inc.*, 168 F. Supp. 2d 277, 288 (D. Del. 2001) ("The preemption of state law claims is a controlling question of law."). Indeed, "preemption is an issue naturally appropriate for interlocutory appeal." *Phillip Morris Inc. v. Harshbarger*, 957 F. Supp. 327, 330 (D. Mass.), *aff'd*, 122 F.3d 58 (1st Cir. 1997); *see Cipollone v. Liggett Grp., Inc.*, 789 F.2d 181, 183 (3d Cir. 1986), *cert. denied*, 479 U.S. 1043 (1987).

The preemption question is controlling because there is a material difference between the FIFRA-based "substantively equivalent" standard applied by the March 28 Order and the FDCA-based "not identical to" standard set forth in 21 U.S.C. § 343-1(a)(1). For example, the FDA's Spring Water Identity Standard, 21 C.F.R. § 165.110(a)(2)(vi), provides that "[p]lants shall demonstrate, on request, to appropriate regulatory officials, using a hydrogeologically valid method, that an appropriate hydraulic connection exists between the natural orifice of the spring and the bore hole." None of the state-law claims alleged in the Complaint identifies an independently-enacted and affirmatively-adopted state-law statute or regulation defining "spring water," imposing a requirement that is "identical to" this FDA Spring Water Identity Standard requirement. [*See* Doc. 164-1 at 8-12]. At least three states—Connecticut, Maine, and New York—impose non-identical licensing requirements, including an adjacency requirement that spring water collected through a bore hole has to be "adjacent to" the natural orifice of the spring. The adjacency requirement was rejected by the FDA when it adopted the FDA's Spring

Water Identity Standard in 1995.  *See* 60 Fed. Reg. 57076, 57093 (Nov. 13, 1995).  If the Second Circuit holds that the strict FDCA "not identical to" standard, rather than the far more permissive, *Bates'* "substantively equivalent" standard, governs the preemptive scope of FDCA preemption, then the March 28 Order will be reversed and Plaintiffs' state-law claims, none of which is predicated upon independently-enacted and affirmative state-laws that define "spring water" with requirements "identical to" the FDA Identity Standard, will be dismissed.  *See, e.g., Hall v. Wyeth, Inc.*, Civ. No. 10-738, 2010 WL 4925258, at *1 (E.D. Pa. Dec. 2, 2010) (noting "[t]he preemption issue here is undoubtedly a controlling question of law" because reversal of the order denying defendant's motion to dismiss on that ground would "spare[] [the parties] the cost and time of both engaging in pretrial practice and possibly a lengthy jury trial.").

At a minimum, resolution of this preemption question is controlling here because it will shape the focus of future discovery in this case.  Discovery will proceed according to how Plaintiffs' state-law claims are defined, and this necessarily depends upon whether "identical" requirements or "equivalent" requirements govern those claims.  As those standards "w[ill] materially affect the outcome of the litigation," a controlling question of law exists.  *Hongkong & Shanghai Banking Corp. Ltd. v. Brandt, Jr.*, No. 17-cv-6672 (VEC), 2017 WL 6729191, at *4 (S.D.N.Y. Dec. 29, 2017).

An immediate appeal of the March 28 Order may also materially advance the ultimate termination of this lawsuit.  *See Gerber Sci. Int'l., Inc. v. Satisloh AG*, No. 3:07-cv-1382 (PCD), 2009 WL 10689138, at *2 (D. Conn. Sept. 25, 2009) ("[I]f the Court of Appeals overturns the ruling, the case will be dismissed, saving the parties time and money, and promoting judicial economy.").  In enacting Section 1292(b), the House Committee on the Judiciary specifically considered that interlocutory appeals are particularly appropriate in cases such as this, where an

early appeal could resolve a legal defense to Plaintiffs' individual and class claims and thereby avoid a potentially protracted litigation and long trial to determine liability and damages. *Koehler v. Bank of Bermuda Ltd.*, 101 F.3d 863, 865-66 (2d Cir. 1996). If the Second Circuit were to reverse the March 28 Order and dismiss the Complaint as preempted by the FDCA, the parties will be spared time-consuming and costly pretrial documentary, written, and deposition discovery, including discovery of State Regulators in eight States, as well as class certification and summary judgment motion practice. *See Rothstein v. GMAC Mortg., LLC*, No. 12 Civ. 3412 (AJN), 2014 WL 1329132, at *3 (S.D.N.Y. Apr. 3, 2014) (concluding certification "has the potential to advance materially the final termination" of class action litigation where potentially protracted discovery, class certification, and dispositive motion practice "might be avoided by an immediate appeal"); *cf. Jones v. Midland Funding, LLC*, No. 3:08-cv-802 (RNC), 2012 WL 1204716, at *5 (D. Conn. Apr. 11, 2012) (concluding an "order is well-suited for interlocutory appeal" where reversal would render class action proceedings unnecessary, "saving both sides of this case significant time and expense"). Even if the Second Circuit were to affirm the March 28 Order, the parties will be spared an appeal on this purely legal issue at the conclusion of the proceedings in this Court. Under either scenario, certification of the March 28 Order will materially advance the ultimate termination of this class action lawsuit by deciding a controlling question of federal preemption law.

## B. Substantial Grounds Exist For A Difference Of Opinion With The March 28 Order As To What Legal Standard Applies To FDCA Section 343-1(a)(1)

Substantial grounds exist for a difference of opinion with the March 28 Order, as there is a genuine doubt as to whether it applied the correct legal standard in concluding that Plaintiffs' state-law claims are not preempted by FDCA Section 343-1(a)(1). *See Consub Del. LLC v. Schahin Engenharia Limitada*, 476 F. Supp. 2d 305, 309 (S.D.N.Y. 2007), *aff'd*, 543 F.3d 104

(2d Cir. 2008), *abrogated in part on other grounds by Shipping Corp. of India, Ltd. v. Jaldhi Overseas Pte Ltd.*, 585 F.3d 58 (2d Cir. 2009).

First, the controlling legal question decided by the March 28 Order—what legal standard determines whether a State-law requirement in a State's independently-enacted, affirmatively-adopted definition of "spring water" is preempted by FDCA Section 343-1(a)(1)—is one of first impression within the Second Circuit. *See In re Aggrenox Antitrust Litig.*, No. 3:14-md-2516 (SRU), 2018 WL 834228, at *6 (D. Conn. Feb. 12, 2018) (quoting *In re Complete Retreats*, No. 3:07-mc-152, 2008 WL 220752, at *3 (D. Conn. Jan. 23, 2008) (citing *Klinghoffer v. S.N.C. Achille Lauro ed Altri-Gestione Motonave Achille Lauro in Amministrazione Straordinara*, 921 F.2d 21, 25 (2d Cir. 1990))). Indeed, the March 28 Order does not cite any Second Circuit law supporting its application of the "substantively equivalent" standard to FDCA Section 343-1(a)(1). Nor has research uncovered any such authority.

Second, the existence of authority conflicting with how the March 28 Order decided this controlling legal question demonstrates substantial grounds exist to certify the order for interlocutory appeal. *See Glatt v. Fox Searchlight Pictures, Inc.*, No. 11 Civ. 6784 (WHP), 2013 WL 5405696, at *2 (S.D.N.Y. Sept. 17, 2013) ("[I]ntra-district split and decisions from other circuits show a substantial basis exists for difference of opinion"); *APCC Servs., Inc. v. AT & T Corp.*, 297 F. Supp. 2d 101, 107 (D.D.C. 2003) ("A substantial ground for difference of opinion is often established by a dearth of precedent within the controlling jurisdiction and conflicting decisions in other circuits."); *see, e.g., Gulino v. Bd. of Educ. of City Sch. Dist. of City of N.Y.*, 907 F. Supp. 2d 492, 526 (S.D.N.Y. 2012) (substantial ground shown by other circuits' law).

In applying *Bates'* FIFRA-based "substantively equivalent" standard to preemption analysis pursuant to the FDCA, the March 28 Order not only differs from this Court's approach

in its first motion to dismiss order [Doc. 141 at 19-20], but it also starkly conflicts with cases both in this circuit and across the country.  [Doc. 179 at 13].  In *Bates*, 544 U.S. 431, the Supreme Court interpreted the scope of a preemption provision in FIFRA that provided that States "shall not impose or continue in effect any requirements for labeling or packaging <u>in addition to or different from</u> those required under this subchapter." *Id.* at 436 (emphasis added) (quoting 7 U.S.C. § 136v(b)).  Importantly, in construing FIFRA's plain language, the Supreme Court observed that courts of appeals had relied too hastily on *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 515 (1992), in which the Court had held similar claims were expressly preempted by the Public Health Cigarette Smoking Act of 1969 ("Smoking Act"), "without paying attention to the rather obvious textual differences between the two pre-emption clauses." *Bates*, 544 U.S. at 446.  Highlighting the more narrow scope of preemption under FIFRA than the Smoking Act, the Court held that a state-law labeling requirement is not pre-empted by § 136v(b) if it is equivalent to, and fully consistent with, FIFRA's misbranding provisions." *Id.* at 447.

*Bates* reflects the well-accepted principle of statutory construction of an express preemption provision:  "If the statute contains an express pre-emption clause, the task of statutory construction must in the first instance focus on the plain wording of the clause, which necessarily contains the best evidence of Congress' pre-emptive intent." *CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 664 (1993).  In so closely hewing to what *Bates* said about FIFRA's specific express preemption provision, the March 28 Order commits the very error identified in *Bates*: ignoring the plain language of the specific preemption provision at issue, and instead applying the standard articulated in another case interpreting a different preemption clause in a different statute.  [*See also* Doc. 179 at 18 (recognizing that "preemption is primarily an inquiry about Congress's specific intent as to a specific statutory scheme")].

No other court has held that a state-law requirement was not preempted by FDCA Section 343-1(a)(1) merely because it was "substantively equivalent" to a federal standard of identity. The March 28 Order conflicts with decisions of other courts holding that the plain language of FDCA Section 343-1(a)(1) provides that state-law requirements must be nothing short of "identical to" federal identity requirements to survive preemption.

For example, *Mills v. Giant of Maryland, LLC*, 441 F. Supp. 2d 104, 107 (D.D.C. 2006), *aff'd*, 508 F.3d 11 (D.C. Cir. 2007), recognized that *Bates* "was moored tightly to the specific preemption clause at issue," and it therefore found that *Bates* did not provide the preemptive standard applicable to the FDCA:

> Rather, *Bates* merely underscores the need to pay close attention to the scope of the FDCA's preemption clause and assists the court in framing the questions to be addressed: first, whether the duty imposed by the relief which plaintiffs seek is "a requirement for a food which is the subject of a standard of identity," and second, whether this duty "is identical" to the labeling requirements of the FDCA. The court answers both questions in the affirmative. [*Id.* at 107-08 (footnote omitted) (citing *Bates*, 544 U.S. at 444).]

Shortly after *Mills*, the Southern District of New York applied FDCA preemption in a case specifically dealing with standards of identity. *In re PepsiCo, Inc., Bottled Water Mktg. & Sales Pracs. Litig.*, 588 F. Supp. 2d 527 (S.D.N.Y. 2008) ("*PepsiCo*"). The plaintiffs brought state-law claims alleging that since PepsiCo's bottled water products were sourced from a community water system, the label should identify the source of the water. *Id.* at 529. Because the label clearly stated it was "purified drinking water," the defendant moved to dismiss on the basis of FDCA Section 343-1(a)(1)—the preemption provision at issue here—arguing that the plaintiffs' state-law claims conflicted "with the statutory scheme related to the labeling of purified water." *Id.* at 530-31 (citing 21 U.S.C. § 343-1(a)(1)). The *PepsiCo* court agreed with *Mills* that *Bates* was distinguishable because the "scope of the FDCA's preemption clause is much broader than FIFRA's." *Id.* at 531-33 (quoting *Mills*, 441 F. Supp. 2d at 108). The court

"construe[d] the term according to its plain meaning (a construction supported by the relevant regulations): where the product is the subject of a federal standard of identity, state requirements are not permitted unless they are identical to federal standards." *Id.* at 539; *see also id.* at 538 ("Where federal requirements address the subject matter that is being challenged through state law claims, such state law claims are preempted to the extent they do not impose identical requirements." (emphasis added)).

Both parties agreed in *PepsiCo* that while bottled water sourced from a community water system generally must disclose that fact on the label, "the applicable standard of identity explicitly exempts from this source disclosure requirement water [that meets] the definition of purified drinking water." *Id.* at 534 (citing 21 C.F.R. § 165.110(a)(3)(ii)). The plaintiffs argued their claim was not preempted because the FDCA is silent on whether the source disclosure exemption remains applicable where the label allegedly mispresents the source and because the FDCA generally prohibits misrepresentations as to the source of bottled water products. *Id.* at 534-35. The court nonetheless dismissed the plaintiffs' claims as preempted "because the state causes of action Plaintiffs wish to pursue would impose requirements in addition, and not identical, to federal requirements." *Id.* at 537 (emphasis added).

This Court's order also conflicts with *Red v. The Kroger Co.*, No. CV 10-01025 DMG MANX, 2010 WL 4262037 (C.D. Cal. Sept. 2, 2010). In *Red*, the defendant moved to dismiss as preempted by the FDCA[3] the plaintiffs' state consumer protection claims challenging nutritional content statements appearing on the defendant's product label. *Id.* at *1, *3. Relying upon the

---

[3] Added to the FDCA by the Nutrition Labeling and Education Act of 1990 ("NLEA"), FDCA Section 343-1(a) contains five preemption provisions, all of which provide that "any" State-law requirement that is "not identical to" the applicable federal requirement is preempted. 21 U.S.C. § 343-1(a)(1)-(5). *Red* dealt with FDCA Section 343-1(a)(5), which bars the enforcement of any nutrient content-food labeling requirement that is "not identical to" the applicable federal requirements. Hence, *Red* dealt with the same "not identical to" language at issue in this case.

Supreme Court's analysis of the FIFRA preemption provision in *Bates*, the plaintiffs argued their state-law claims were not preempted because they imposed requirements that were "equivalent to" federal requirements. *Id.* at *7. Rejecting the plaintiffs' reliance upon *Bates'* FIFRA preemption standard, the court reasoned that whether the plaintiffs' claims were preempted "depends on the text of each pre-emption clause," *id.*:

> In this case, the question is not whether resolution of Plaintiffs' state law claims would result in requirements "equivalent to" or "fully consistent with" federal law. Rather, the NLEA pre-emption clause in 21 U.S.C. § 343-1(a)(5) prohibits any state from "directly or indirectly establish[ing] ... any requirement ... made in the label or labeling of food that is *not identical* to the requirement of section 343(r)...." 21 U.S.C. § 343-1(a)(5) (emphasis added). *See In re Farm Raised Salmon Cases*, 42 Cal.4th at 1090, 72 Cal.Rprt.3d 112, 175 P.3d 1170 (section 343-1 "clearly and unmistakably evince[s] Congress's intent to authorize states to establish laws that are 'identical to' federal law, which California did by enacting the Sherman Law). [*Id.* (alterations in original).]

These cases reject application of the *Bates* standard in the FDCA context, contrary to this Court's decision. Moreover, Federal Courts of Appeals have emphasized that the FDCA's plain and unambiguous language—preempting any state-law requirement that is "not identical to" a federal standard of identity—means what is says. For example, in *Turek*, 662 F.3d at 427, Judge Richard Posner, writing for Seventh Circuit Court of Appeals, held that regardless of whether the requirements urged by the plaintiffs "would be consistent with the requirements imposed by the Food, Drug, and Cosmetic Act, consistency is not the test; identity is." In *Nemphos v. Nestle Waters North America, Inc.*, 775 F.3d 616, 621 (4th Cir. 2015), the Fourth Circuit Court of Appeals read FDCA Section 343-1(a)(1) to mean precisely what it says:

> [S]ubsection (a)(1) [of 21 U.S.C. § 343-1] uses the unequivocal phrase "not identical to" the standard of identity. *Id.* It does not say any state requirement merely "differing from," "conflicting with," "inconsistent with," or "dissimilar to" the federal requirement. Nor does the statute employ here the more limited phrase "in violation of"—as it does regarding the petition process, later in the same section. *Id.* § 343–1(b). The four subsequent preemption provisions use the same "not identical to" phrasing toward other categories of labeling requirements. *Id.* § 343–1(a)(2)–(5). Put simply, then, we can understand subsection (a)(1) this way:  for a food that is the subject of a federal standard

-13-

of identity, this provision preempts any pertinent state requirement that is not identical to the federal requirement. *Id.* § 343–1(a)(1).

Similarly, district courts have held that state-law claims imposing state-law requirements that are "not identical to" federal-law requirements are preempted by the FDCA. *See, e.g.,* *McMahon v. Bumble Bee Foods LLC*, 148 F. Supp. 3d 708, 712 (N.D. Ill. 2015) ("[A] state can impose requirements that are identical to those imposed by the FDCA, but if state law requirements differ from federal requirements—whether they are more or less onerous—then the state law is deemed preempted."); *Chi. Faucet Shoppe, Inc. v. Nestle Waters N. Am. Inc.*, 24 F. Supp. 3d 750, 758 (N.D. Ill. 2014) ("A state can impose requirements that are identical to those imposed by the FDCA, but not different from or additional to those requirements."); *Gorenstein v. Ocean Spray Cranberries, Inc.*, No. CV 09-5925-GAF, 2009 WL 10201128, at *3 (C.D. Cal. Dec. 18, 2009) (holding claim was preempted by 21 U.S.C. § 343-1(a)(1)-(3) because it was "attempting to impose duties that are 'not imposed' by the federal regulatory scheme or that 'differ from' the obligations of federal statutes or regulations").   And, needless to say, "equivalent" does not mean the same thing as "identical." *See Gestion Proche, Inc. v. Dialight Corp.*, No. 4:16-CV-407, 2017 WL 2834695, at *9 (E.D. Tex. June 30, 2017) ("the word 'equivalent' is somewhat broader than 'identical'"); *WNET v. Aereo, Inc.*, 871 F. Supp. 2d 281, 285 (S.D.N.Y. 2012) (quoting the Merriam-Webster Dictionary's definition of "equivalent" and holding that "the 'equivalent to' language need not be read to require that the rights at issue be identical").

### C. This Court Should Certify The March 28 Order In Light Of The Serious Consequences It Poses For The Orderly State Regulatory Enforcement Of Spring Water Identity Standards And Unfettered Interstate Commerce

As one circuit court has already recognized, FDCA preemption of state-law claims—the controlling legal question animating the March 28 Order—"raises an important issue of apparent

first impression in this circuit that would have far-reaching consequences." *Chavez v. Blue Sky Nat. Bev. Co.*, 340 F. App'x 359, 362 (9th Cir. 2009). These serious consequences are magnified in this case, as the March 28 Order challenges the regulatory authority and actions of officials who are charged by the laws of each of their States to regulate the labeling and sale of bottled water (specifically bottled spring water), and who, for at least the past 15 years, have issued permits and licenses for Poland Spring® to be labeled and sold as "spring water." Looking forward, the March 28 Order will disrupt and destabilize State Regulators' orderly and supposedly exclusive enforcement of the FDA's Spring Water Identity Standard, 21 C.F.R. § 165.110(a)(2)(vi). The March 28 Order certainly frustrates Congress' objective of promoting unfettered interstate commerce through government enforcement of that nationally-uniform standard so that members of the food industry can conduct their business in an efficient and cost effective manner. *Nemphos*, 775 F.3d at 619-20, 623. Given these "special consequences" for State Officials' regulatory enforcement interests and the public interest in the free flow of interstate commerce, this Court "should not hesitate to certify an interlocutory appeal" of the March 28 Order. *Balintulo v. Daimler AG*, 727 F.3d 174, 186 (2d Cir. 2013) (quoting *N. Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 111 (2009)).

Consistent with Congressional and FDA intent, one critical requirement of the FDA's Spring Water Identity Standard is that "[p]lants shall demonstrate, on request, to appropriate regulatory officials, using a hydrogeologically valid method, that an appropriate hydraulic connection exists between the natural orifice of the spring and the bore hole."[4] 21 C.F.R. §165.110(a)(2)(vi); *see, e.g.*, 60 Fed. Reg. 57076, 57094 (Nov. 13, 1995) ("If the manufacturer cannot establish that the water that it is calling 'spring water' is the same as that from the

---

[4] Plaintiffs admit as much in their Complaint. [*See* ¶796 (admitting it is the job of State Regulators to ensure compliance with the FDA Identity Standard as part of the State's pre-approval permitting process)].

-15-

identified spring, it runs a significant risk that its product is misbranded, and thus, that it will be the subject of regulatory action."); *id.* at 57097 ("[F]irms must demonstrate and be able to verify to regulatory officials that there is a measurable hydraulic connection...."). Although the FDA's Spring Water Identity Standard does not provide for private citizens to determine or challenge what is an appropriate hydraulic connection, or for "litigants," "judges," or "juries" to enforce this hydraulic connection requirement, Plaintiffs seek to impose the unprecedented, non-identical requirement that NWNA must demonstrate hydraulic connection to them, this Court, and a jury. Through their state-law claims, Plaintiffs are directly challenging State Regulators' pre-approval compliance determinations under the FDA's Identity Standard enforcement scheme, seeking not only money damages but a permanent injunction barring the sale of Poland Spring® as "spring water." [*See, e.g.*, ¶¶839, 846, 849, 852, 856, 1010, 1021]. Plaintiffs seek a "preliminary declaration" that State Regulators wrongly issued NWNA permits to sell Poland Spring® as "spring water," alleging the permits are invalid and void. [*See, e.g.*, ¶¶844, 855, 1020].

In holding that the FDCA does not preempt Plaintiffs' state-law claims, the March 28 Order will disrupt and destabilize the orderly, structured and exclusive government regulatory process that Congress carefully and thoughtfully devised to enforce the FDA's Spring Water Identity Standard. Contrary to Congressional intent to enforce a nationally-uniform Identity Standard, the March 28 Order has exposed State Regulators—not only in the eight States at issue, but in each State which makes official determinations pre-approving the labeling and sale of bottled water—to "continued doubt regarding the validity" of their official acts pre-approving compliance with the FDA's Identity Standard. *Gulino*, 907 F. Supp. 2d at 527. Contrary to Congressional intent to facilitate interstate commerce, the March 28 Order has exposed consumers—not only in the eight States remaining at issue, but in each State as to which

permitting determinations enforcing the FDA's Identity Standard are being made—to "continued doubt regarding the validity" of the compliance determinations upon which they rely in making their purchasing decisions.  *Id.*  These special consequences for State Regulators in regulating the sale and labeling of bottled water, the commercial interests in interstate commerce, and the public interest as a whole justify certification of the March 28 Order.

## II. This Court Should Stay These Proceedings Pending The Outcome Of NWNA's Interlocutory Appeal Of The March 28 Order To The Second Circuit

This Court should stay these proceedings pending the disposition of NWNA's interlocutory appeal of the March 28 Order to the Second Circuit.  As demonstrated below, NWNA easily satisfies the four factors guiding the issuance of a stay pending appeal:  "(1) whether the stay applicant has made a strong showing that [it] is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *S.E.C. v. Citigroup Global Markets Inc.*, 673 F.3d 158, 162 (2d Cir. 2012).

### A. NWNA Has A Substantial Probability Of Success On Appeal

When assessing the first factor, "the court is put in the odd position of deciding the likelihood that the [order] is somehow improper, even though the court obviously believes that the [order] is proper." *Id.*  Consequently, courts regularly grant "a stay pending appeal where the likelihood of success is not high but the balance of hardships favors the applicant." *Id.* (quoting *Mohammed v. Reno*, 309 F.3d 95, 101 (2d Cir. 2002)); *see United States v. Apple Inc.*, 992 F. Supp. 2d 263, 279 (S.D.N.Y. 2014) (stay only requires "'a substantial possibility, although less than a likelihood, of success' on appeal" (quoting *Mohammed*, 309 F.3d at 101)), *aff'd*, 787 F.3d 131 (2d Cir. 2015).  A finding that the first factor weighs in favor of NWNA does not entail a concession that this Court believes it ruled incorrectly, but it merely recalls the same analysis on

whether to certify the March 28 Order: whether a substantial ground for difference of opinion exists. *See Nat'l Immigration Project of the Nat'l Lawyers Guild v. U.S. Dep't of Homeland Sec.*, 842 F. Supp. 2d 720, 733 (S.D.N.Y. 2012) (granting stay after noting that where "the appellate courts have provided little direct guidance, the likelihood that an appellate court will take a different approach increases"). Courts "may properly stay their own orders when they have ruled on an admittedly difficult legal question and when the equities of the case suggest that the status quo be maintained." *Cooper v. U.S. Postal Serv.*, 246 F.R.D. 415, 418 (D. Conn. 2007) (quoting *Wash. Metro. Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 844–45 (D.C. Cir. 1977)). The lack of authority in the Second Circuit and the conflicting decisional law on the controlling question of law presented are well-established in Point I, *supra*. As this legal question raises a substantial possibility of success on appeal, the first factor favors NWNA.

**B. NWNA Will Be Irreparably Harmed Absent Issuance Of A Stay**

When considering the second factor, "courts have held that the likelihood of unnecessary, duplicative litigation can warrant a stay." *Jock v. Sterling Jewelers, Inc.*, 738 F. Supp. 2d 445, 448 (S.D.N.Y. 2010) (citing *Woodlawn Cemetery v. Local 365, Cemetery Workers & Greens Attendants Union*, 930 F.2d 154, 156 (2d Cir. 1991)). The power to issue a stay arises from the need for a court "to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 96 (2d Cir. 2012) (alteration in original) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)). Consequently, "the potential for irreparable injury should be evaluated taking into account the possibility that the ruling sought to be stayed is erroneous." *Nat. Res. Def. Council, Inc., v. U.S. Food & Drug Admin.*, 884 F. Supp. 2d 108, 123 (S.D.N.Y. 2012).

The prospect of unnecessary discovery presents compelling circumstances for the issuance of a stay. NWNA will be irreparably harmed if it succumbs to a time-consuming and

expensive discovery process in this multi-state class action regarding its compliance with state-law requirements that this Court held evaded preemption by being "substantively equivalent" to federal standards [Doc. 179 at 13], when the enforceable state requirements may shift entirely as a result of appellate review. *See Reynolds v. Time Warner Cable, Inc.*, No. 16-CV-6165W, 2017 WL 362025, at *2 (W.D.N.Y. Jan. 25, 2017) (granting a stay pending an appellate ruling because "the scope of the issues in dispute and the discovery relating thereto may be narrowed"). If the Second Circuit moves the goalposts by reframing the applicable preemption standard, the parties and the Court would be forced to restart the litigation. While "[n]ormally the mere payment of money is not considered irreparable, ... that is because money can usually be recovered from the person to whom it is paid[,] [i]f expenditures cannot be recouped, the resulting loss may be irreparable." *Philip Morris USA Inc. v. Scott*, 561 U.S. 1301, 1304 (2010) (Scalia, J., in chambers). The Federal Rules of Civil Procedure provide no mechanism for NWNA to recoup the costs it will incur in proceedings later rendered unnecessary by an appellate ruling, hollowing out a victory. *See Texaco Inc. v. Pennzoil Co.*, 784 F.2d 1133, 1153 (2d Cir. 1986) ("The irreparability of the harm increases in proportion to its irreversibility."), *rev'd on other grounds*, 481 U.S. 1 (1987).

### C. Granting The Stay Will Not Substantially Injure Plaintiffs

The third factor weighs in favor of issuing a stay where "maintain[ing] the status quo existing prior to the district court's order" would produce "no appreciable harm to anyone." *Citigroup Glob. Markets*, 673 F.3d at 168. NWNA would support expedited briefing in the Court of Appeals, and "any inherent harm" from the stay, "when juxtaposed to the potential magnitude of a decision by the Court of Appeals on the issues before it, is simply *de minimis*." *In re Lorazepam & Clorazepate Antitrust Litig.*, 208 F.R.D. 1, 6 (D.D.C. 2002).

Plaintiffs remain able to develop their case due to the extensive discovery already conducted, which they have had for many months.  Their lawyers and team of experts were permitted to spend a full week inspecting NWNA's spring sites [*see* Doc. 90], and NWNA provided approximately 10,000 pages of documents responsive to Plaintiff's initial discovery requests.  This early discovery mitigates the impact of a relatively short stay of this lawsuit.  Indeed, any perceived harm will not be substantial, considering that Plaintiffs pled allegations reaching back as far as 2003, yet did not file their Complaint until 2017.  Therefore, Plaintiffs will not be substantially prejudiced if a stay were granted.

### D.  Staying The Action Is In The Public Interest

Consistent with the interests of the parties, the public has a similar interest in resolving the controlling question of law raised by the March 28 Order before the parties and the Court become embroiled in time-consuming and costly discovery, class certification, dispositive motion practice, and a potential jury trial.  *See Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Coric*, 167 F.R.D. 356, 359 (N.D.N.Y. 1996) (finding "a stay would be in the public interest in that it would avoid needless litigation").  Federal taxpayers have an interest in ensuring that funds appropriated to the courts are not wasted on discovery and class certification proceedings in cases where the plaintiffs had failed to state a claim from the start.[5]  Additionally, the extensive discovery required by this class action will entail scores of subpoenas for document productions and deposition testimony from the State Regulators in the agencies in each of the eight States at issue that granted NWNA permits to label and sell Poland Spring® as "spring water."  Not only will that impact State taxpayers, who will have to foot the legal bills incurred

---

[5] *See United States v. Suarez*, 880 F.2d 626, 630 (2d Cir. 1989) ("there is an obvious legitimate public interest in how taxpayers' money is being spent"); *United States v. N.Y.C. Bd. of Educ.*, 620 F. Supp. 2d 413, 417 (E.D.N.Y. 2009) (expenses by governmental bodies "can be seen as affecting the public interest because, ultimately, they will be borne by the taxpayer").

by State governments for responding to that discovery, but it will distract the operations of those State regulatory agencies from their core missions. The public has a significant interest in resolving the viability of Plaintiffs' claims now.

## **CONCLUSION**

For these reasons, this Court should certify the March 28, 2019 Order and stay these proceedings pending the outcome of NWNA's interlocutory appeal to the Second Circuit.

Respectfully submitted,

DEFENDANT,
NESTLÉ WATERS NORTH AMERICA INC.

By: */s/ Jonathan B. Tropp*
    Jonathan B. Tropp (ct11295)
    Day Pitney LLP
    195 Church Street, 15th Floor
    New Haven, CT 06510
    Telephone: (203) 752-5000
    Fax: (203) 752-5001
    jbtropp@daypitney.com

    Jeffrey M. Garrod (admitted phv)
    Craig A. Ollenschleger (admitted phv)
    Orloff, Lowenbach, Stifelman & Siegel, P.A.
    44 Whippany Road, Suite 100
    Morristown, NJ 07960
    Telephone:  (973) 622-6200
    Fax: (973) 622-3073
    jmg@olss.com; co@olss.com

    Thomas B. Mayhew (admitted phv)
    Farella, Braun & Martel LLP
    235 Montgomery St., 30th Flr.
    San Francisco, CA 94104
    Telephone: (415) 954-4400
    Fax: (415) 954-4480
    tmayhew@fbm.com

    Its Attorneys