UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| MARK PATANE *et al.*,<br>  *Plaintiffs*,<br><br>  v.<br><br>NESTLÉ WATERS NORTH AMERICA, INC.,<br>  *Defendant*. | No. 3:17-cv-1381 (JAM) |

**ORDER GRANTING IN PART AND DENYING IN PART
MOTION FOR SUMMARY JUDGMENT**

  The plaintiffs are purchasers of Poland Spring water. They have sued defendant Nestlé Waters North America alleging claims for fraud, breach of contract, and unfair trade practices with respect to Nestlé's marketing of Poland Spring water as genuine "spring water."[1]

  Nestlé now moves for partial summary judgment on statute of limitations grounds, seeking to curb the time period for which the plaintiffs may seek damages. I will grant the motion as to the plaintiffs' claim under the Connecticut Unfair Trade Practices Act but will deny the motion as to the plaintiffs' other causes of action, either because there remains a genuine issue of fact whether the limitations period should be equitably tolled for reasons of fraudulent concealment or because Nestlé has failed to properly identify the controlling statute of limitations.

---

[1] The defendant's briefing refers to the defendant as BlueTriton Brands Inc. Although the defendant has filed a supplemental corporate disclosure, Doc. #319, no party has filed a motion to amend the case caption or to substitute parties pursuant to Fed. R. Civ. P. 25, and therefore I will continue to refer to Nestlé as the named defendant in this action.

1

## BACKGROUND

The plaintiffs allege that they paid extra for Poland Spring water because Nestlé has long marketed it as "100% Natural Spring Water." But they believe that Poland Spring water is not really "spring water" as that term is defined by federal and state law.[2]

On August 15, 2017, they filed this lawsuit against Nestlé. They seek to represent a class of customers from numerous States who bought Poland Spring water since November 2003.[3] They bring claims for common law fraud, breach of contract, and violation of the general consumer protection statutes of seven different States. *See generally Patane v. Nestlé Waters N. Am., Inc.*, 478 F. Supp. 3d 318, 326–27 (D. Conn. 2020).[4]

Nestlé has moved for partial summary judgment. It seeks to enforce the statutes of limitations for each of the plaintiffs' claims in order to limit the applicable time period for this action.

## DISCUSSION

The principles governing my review of a motion for summary judgment are well established. Summary judgment may be granted only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). I must view the facts in the light most favorable to the party who opposes the motion for summary judgment and then decide if those facts would be enough—if

---

[2] Doc. #160 at 4–5 (¶¶ 1–3).
[3] *Id.* at 278 (¶ 819).
[4] *Id.* at 283–321 (¶¶ 836–1036). The consumer protection statutes are the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. §§ 42-110a, *et seq.*; the Maine Unfair Trade Practices Act, Me. Rev. Stat. tit. 5, §§ 205-A–214; the Maine Uniform Deceptive Trade Practices Act, Me. Rev. Stat. tit. 10 §§ 1211–1216; the Massachusetts Consumer Protection Act, Mass. Gen. Laws ch. 93A, §§ 1–11; the New Hampshire Consumer Protection Act, N.H. Rev. Stat. §§ 358-a:1–358-a:13; the New Jersey Consumer Fraud Act, N.J. Stat. §§ 56:8-1, *et seq.*; the New York General Business Law, N.Y. Gen. Bus. Law. §§ 349, 350; and the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.A. Stat. §§ 201-2, 201-3. I have dismissed the plaintiffs' Vermont and Rhode Island claims. Docs. #179, #274.

eventually proven at trial—to allow a reasonable jury to decide the case in favor of the opposing party. My role at summary judgment is not to judge the credibility of witnesses or to resolve close contested issues but solely to decide if there are enough facts that remain in dispute to warrant a trial. *See generally Tolan v. Cotton*, 572 U.S. 650, 656–57 (2014) (*per curiam*); *Benzemann v. Houslanger & Assocs., PLLC*, 924 F.3d 73, 78 (2d Cir. 2019).[5]

In a diversity case like this one, I must assess the timeliness of the plaintiffs' claims using the same principles that a Connecticut state court would apply. *See Guarantee Trust Co. v. York*, 326 U.S. 99, 108–112 (1945). But that does not necessarily mean that I must apply the Connecticut statute of limitations. Instead, I will look to Connecticut's choice-of-law rules to determine which State's timeliness rules govern each claim. *See Thea v. Kleinhandler*, 807 F.3d 492, 497 (2d Cir. 2015).

Absent a controlling decision from a State's highest court on a question of state law, a federal court's role is to carefully predict how the state court would rule on the issue presented. *See Haar v. Nationwide Mut. Fire Ins. Co.*, 918 F.3d 231, 233 (2d Cir. 2019). In so doing, a federal court should give proper regard to the relevant rulings of the State's lower courts and may also consider decisions from other jurisdictions on the same or analogous issues. *See In re Thelen LLP*, 736 F.3d 213, 219 (2d Cir. 2013).

### *Common law fraud (Count One)*

I will deny summary judgment on the plaintiffs' common law fraud claim. The parties agree that the timeliness of this claim is governed by Connecticut law. In Connecticut, "[n]o action founded upon a tort shall be brought but within three years from the date of the act or omission complained of." Conn. Gen. Stat. § 52-577; *see Kidder v. Read*, 93 A.3d 599, 603

---

[5] Unless otherwise indicated, this opinion omits internal quotation marks, alterations, citations, and footnotes in text quoted from court decisions.

(Conn. App. 2014) (applying § 52-577 to a fraud claim). Because the plaintiffs sued on August 15, 2017, they normally could recover only for fraudulent acts since August 15, 2014.

To reach back to 2003, however, the plaintiffs rely on another Connecticut statute, § 52-595. Under this section, if a defendant "fraudulently conceals from [the plaintiff] the existence of [a] cause of … action, [the] cause of action shall be deemed to accrue … at the time when the [plaintiff] first discovers its existence." According to the plaintiffs, Nestlé has long tried to deter lawsuits like this one by hiding the origin of its water. Because of these efforts, the plaintiffs say, they did not learn about the false advertising until 2015 or later.[6] So they think that the three-year clock did not start running until at least 2015, and thus that when they sued in 2017, their claims were timely.

I conclude that there is a genuine dispute over whether Nestlé fraudulently concealed the origin of its water. For example, the plaintiffs offer evidence that Nestlé has maintained artificial ponds and tried to pass them off as natural springs. The plaintiffs even attach a picture of what they say is the rusty pipe that Nestlé has put in one of the fake springs to make it seem like water is bubbling up from the ground.[7] If a jury believed this evidence, it could reasonably find that Nestlé built the fake springs to mislead third parties about the origin of its water, and thus to delay being sued.

Nestlé argues that because the plaintiffs ultimately pieced together their claims based on public records, it must not have concealed anything. I do not agree. To conceal is to hide, not necessarily to hide *forever*. If a party could not claim fraudulent concealment unless a claim was hidden so well that it was never discovered, the doctrine would not be of any use. In the plaintiffs' telling, there were two ways they could have discovered the false advertising. First,

---

[6] Doc. #335-1 at 11 (¶¶ 11–12).
[7] Doc. #335-2 at 43.

they could have simply noticed that the company operated no springs. Or, they could have spent years poring over maps, aerial photos, property records, and geology reports.[8] By building the fake springs, the plaintiffs say, Nestlé forced them to resort to the second method, keeping the plaintiffs' claims hidden much longer. If a jury believes this, I see no reason why Nestlé's acts would not count as concealment.

Nestlé's authorities do not say otherwise. Those cases hold only that a defendant could not have concealed information that is plain from the face of an easy-to-access document. *See Johnson v. State Jud. Dep't*, 2012 WL 3176431, at *2 (Conn. Super. Ct. 2012) (declining to find fraudulent concealment when the information needed to bring a claim was discussed explicitly in a court record that the plaintiff possessed); *Epperson v. Ent. Express, Inc.*, 338 F. Supp. 2d 328, 345–46 (D. Conn. 2004) (same when the information was immediately clear from a public filing), *aff'd,* 159 Fed. App'x 249, 252 (2d Cir. 2005). They do not hold that publicly available information can *never* be concealed, no matter how deeply buried.

Next, Nestlé argues that because this controversy has been in the news since 2003, the plaintiffs have been on "inquiry notice" of their claims for years.[9] *See Vill. Mortg. Co. v. Veneziano*, 167 A.3d 430, 442 (Conn. App. 2017) ("[T]here is case law rejecting the claim of fraudulent concealment … [when] a plaintiff of ordinary prudence [would have] ma[d]e reasonable efforts to discover information leading to the discovery of a cause of action."). But the plaintiffs say that they did not suspect that the water was mislabeled until at least 2015.[10] And Nestlé points to no evidence that they knew about the controversy before then. So there is at least a genuine dispute over when the plaintiffs knew or should have known about their claims.

---

[8] Doc. #323-1 at 30.
[9] *Id.* at 34.
[10] Doc. #335-1 at 11 (¶¶ 11–12).

Nestlé is therefore not entitled to summary judgment for the statute of limitations on its fraud claim.

### *Breach of contract (Count Two)*

The plaintiffs sue for breach of contract under the Uniform Commercial Code. Nestlé argues that because this claim has been brought only by named plaintiffs from New York and New Jersey, I should analyze it under only those State's timeliness rules. The plaintiffs reply that I should consider the law of all States in their class definition.

I need not take sides on this argument. Nestlé is not entitled to summary judgment even under New Jersey and New York law. The parties agree that for both States the contract claims would normally be subject to a four-year limitations period. *See* N.J. Stat. § 12A:2-725; N.Y. U.C.C. § 2-725. But like Connecticut plaintiffs, New Jersey plaintiffs may sue after the limitations period if the defendant fraudulently concealed the cause of action. *See Trinity Church v. Lawson-Bell*, 925 A.2d 720, 725 (N.J. App. Div. 2007); *Argabright v. Rheem Mfg. Co.*, 258 F. Supp. 3d 470, 485 (D.N.J. 2017) (applying this doctrine to a UCC claim). And in New York, under the similar doctrine of equitable estoppel, plaintiffs may sue after the limitations period if they were "induced by fraud, misrepresentations or deception to refrain from filing a timely action." *Zumpano v. Quinn*, 849 N.E.2d 926, 929 (N.Y. 2006); *see also Soroof Trading Dev. Co. v. GE Microgen Inc.*, 2013 WL 5827698, at *10 (S.D.N.Y. 2013) (applying this doctrine to a UCC claim).[11]

---

[11] Nestlé cites one case which suggests that under New York law, equitable estoppel does not apply to UCC claims. *See Catalano v. BMW of North America, LLC*, 167 F. Supp. 3d 540, 558 (S.D.N.Y 2016). But *Catalano* cites no New York authority for this point and seems to be an outlier. Other cases have applied or entertained applying the doctrine of equitable estoppel in UCC cases. *See, e.g.*, *Soroof*, 2013 WL 5827698, at *10; *Rubin v. Sabharwal*, 99 N.Y.S.3d 17, 19 (N.Y. App. Div. 2019); *McCormick v. Favreau*, 919 N.Y.S.2d 572, 576–77 (N.Y. App. Div. 2011).

Nestlé argues that these exceptions do not apply, but it does not make any specific argument about New Jersey or New York law. Instead, it asserts in conclusory terms that "fraudulent concealment or 'equitable tolling' is the same in New York and New Jersey as it is in Connecticut," and thus that it should win "for the same reasons [the] claims governed by Connecticut law cannot be tolled."[12] But because I have already ruled that summary judgment is not warranted under Connecticut law on the issue of fraudulent concealment as to the Connecticut common law fraud claim, there is no basis to reach a different conclusion under New Jersey or New York law. Accordingly, I will deny the motion for summary judgment on the contract claim.

### *Connecticut Unfair Trade Practices Act (Count Six)*

Nestlé moves for summary judgment on the plaintiffs' claim under the Connecticut Unfair Trade Practices Act (CUTPA). Again, the parties agree that the Connecticut timeliness rules apply. In Connecticut, "[a]n action under [CUTPA] may not be brought more than three years after the occurrence of a violation." § 42-110g. Therefore, the parties agree, the CUTPA claim would normally be limited to sales since August 15, 2014.

The Connecticut Supreme Court has ruled that CUTPA claims are not subject to equitable tolling for reasons of fraudulent concealment. *See Willow Springs Condo. Ass'n, Inc. v. Seventh BRT Dev. Corp.*, 717 A.2d 77, 100–01 (Conn. 1998) (citing *Fichera v. Mine Hill Corp.*, 541 A.2d 472, 477–78 (Conn. 1988)). Still, the plaintiffs try to reach back to 2003 under another rule, the "continuing course of conduct" doctrine. This doctrine applies when a plaintiff's injuries were "the consequence of a numerous and continuous series of events," and thus "it would be unreasonable to require or even permit him to sue separately over every incident of the

---

[12] Doc. #346 at 19.

defendant's unlawful conduct." *Watts v. Chittenden*, 22 A.3d 1214, 1222 (Conn. 2011). The events are then deemed to be a "continuing course of conduct," and the plaintiff may sue over *all* of them as long as *any* happened within the limitations period. *Ibid*. By contrast, when "repeated events give rise to discrete injuries … [t]here would be no excuse for the delay[ ] [a]nd so the violation would not be deemed 'continuing.'" *Ibid*.

The Connecticut Supreme Court has left open whether the continuing course of conduct doctrine applies to CUTPA claims. *See Normandy v. Am. Med. Sys., Inc.*, 262 A.3d 698, 711 n.18 (Conn. 2021). But even if it does, the plaintiffs cannot rely on it here. They are complaining about discrete acts. Each time they bought a bottle of Poland Spring water, they had a mature claim for false advertising. If they bought a second bottle, then they might have suffered the same *type* of harm. But the second sale did not affect whether the first sale was legal or compound the damages from the first sale.

So, as other courts have recognized in similar contexts, the continuity of separate sales does not trigger the continuing course of conduct rule to allow recovery for sales that are outside the three-year statute of limitations. *See Klehr v. A.O. Smith Corp*., 521 U.S. 179, 189 (1997) (noting federal law principle that each sale of an unlawfully over-priced item re-starts the limitations period for such sale but that each new sale "does not permit the plaintiff to recover for the injury caused by old overt acts outside the limitations period"); *Willard v. Tropicana Mfg. Co., Inc.*, 2021 WL 6197079, at *18 (N.D. Ill. 2021) (holding under California law that sales of allegedly mislabeled juice bottles were "discrete, independently actionable" events, and thus that "the continuing violation doctrine does not apply"); *Cupersmith v. Piaker & Lyons P.C.*, 2016 WL 5394712, at *10–11 (N.D.N.Y. 2016) (holding under New York law that repeated sales of

8

allegedly fraudulent investment products did not form a "continuing violation"). I will therefore grant Nestlé's motion to limit the CUTPA claim to sales since August 15, 2014.

### Consumer protection statutes of other States
### (Counts Three, Four, Five, Seven, Ten, Eleven, and Twelve)

The plaintiffs also sue under the consumer protection statutes of six other States. Nestlé moves to limit these claims—like the CUTPA claim—to sales since August 2014.

The parties disagree over which timeliness rules govern these claims. Nestlé argues that all the statutory claims should be analyzed under Connecticut's timeliness rules (and makes no effort to identify the limitations periods that generally apply to these consumer protection statutes under the laws of other States). The plaintiffs maintain that each State's consumer protection statute is governed by that State's own timeliness rules.

I agree with the plaintiffs. To be sure, Connecticut courts usually apply Connecticut's timeliness rules to all claims before them, even claims based on events that happened elsewhere, because a limitations period is ordinarily considered to be no more than a procedural limitation on a substantive right. *See Thomas Iron Co. v. Ensign-Bickford Co.*, 42 A.2d 145, 146 (Conn. 1945). But there is an exception: when a plaintiff sues under "a new right created by statute," then the limitation is considered to be substantive rather than procedural in nature, such that the *lex loci* rather than *lex fori* applies. *Baxter v. Sturm, Ruger & Co.*, 644 A.2d 1297, 1299 (Conn. 1994).

For example, in *Reclaimant Corp. v. Deutsch*, 211 A.3d 976 (Conn. 2019), a Delaware partnership thought that it had overpaid its former partners and sued them for unjust enrichment. Because "unjust enrichment claims have a common-law origin," the Connecticut Supreme Court applied the Connecticut doctrine of equitable laches. *Id.* at 593, 606–07, 613–14. But if the partnership had tried to recover the same money under Delaware's limited partnership act, then

9

the Delaware timing rules would have applied. *Id*. at 607 n.11. "[T]he theory of recovery chosen by the plaintiff is dispositive of whether a statute of limitations is deemed procedural or substantive for choice of law purposes." *Ibid*.

All the statutes at issue here from States other than Connecticut create new rights that did not exist at the common law:

- **New York.** "While [New York] General Business Law § 349 may cover conduct 'akin' to common-law fraud, it encompasses a far greater range of claims that were never legally cognizable before its enactment." *Gaidon v. Guardian Life Ins. Co. of Am.*, 750 N.E.2d 1078, 1082 (N.Y. 2001). And "General Business Law § 350, while specific to false advertising, is otherwise identical to section 349." *Goshen v. Mut. Life Ins. Co. of New York*, 774 N.E.2d 1190, 1195 n.1 (N.Y. 2002).
- **Massachusetts.** The Massachusetts Consumer Protection Act "created new substantive rights by making conduct unlawful which was not unlawful under the common law or any prior statute." *Com. v. DeCotis*, 316 N.E.2d 748, 755 n.8 (Mass. 1974).
- **New Hampshire.** The New Hampshire Consumer Protection Act "creates new statutory rights which did not exist in New Hampshire common law." *Hair Excitement, Inc. v. L'Oreal USA, Inc.*, 965 A.2d 1032, 1037 (N.H. 2009).
- **Pennsylvania.** The Pennsylvania Consumer Protection Law "is based upon the Federal Trade Commission Act …. Under the FTCA, deception is a broader concept of misconduct than common law fraud." *Gregg v. Ameriprise Fin., Inc.*, 245 A.3d 637, 647 (Pa. 2021).
- **Maine.** The courts of Maine must interpret the Maine Unfair Trade Practices Act to mirror the FTCA. Me. Rev. Stat. tit. 5, § 207. And the Maine Deceptive Trade Practices Act "remov[es] undue restrictions on the common-law action for deceptive trade practices," for example by "mak[ing] unnecessary proof of competition between the parties, monetary damages or intent to deceive." *Sebago Lake Camps, Inc. v. Simpson*, 434 A.2d 519, 521 (Me. 1981).

- **New Jersey.** The New Jersey Consumer Fraud Act and common law fraud "differ," for example, because the Act creates liability even when there is no "proof of reliance." *Varacallo v. Mass. Mut. Life Ins. Co.*, 752 A.2d 807, 813–14 (N.J. App. Div. 2000).

The fact that these statutes create new rights to relief that did not exist at common law distinguishes this case from one where a statute has been enacted merely to codify a pre-existing common law right. *See King v. Volvo Excavators AB*, 215 A.3d 149, 157 (Conn. 2019) (statute of repose for claims under Connecticut Product Liability Act was procedural because the Act "was merely recasting an existing cause of action and was not creating a wholly new right for claimants harmed by a product").

Nestlé does not dispute that each of these consumer protection laws bans acts that were otherwise legal under the common law. It offers two other responses instead. First, it argues that although the statutes are broader than common law fraud, they still "sound in fraud."[13] Thus, even though the laws might create a new "statutory cause of action," they do not create a new "right"; they are just new ways to vindicate the old common law right against fraud.[14]

I do not agree. By letting consumers recover for acts that would not have been forbidden under the common law, each of these consumer protection statutes does create new rights. So to rule for Nestlé, I would have to conclude that the new rights are nevertheless *close enough*. But I will decline the invitation. I am not sure how to tell when a statute is close enough to its common law analogue to still "sound" like it. The State legislatures that passed all these statutes evidently thought that they were different enough to be worth passing. I will respect that judgment.

---

[13] Doc. #323-1 at 20.
[14] Doc. #346 at 10–11.

Nestlé does not cite any Connecticut precedent holding that a foreign statute was governed by Connecticut's timeliness rules because the statutory right "sounded in" a common law tort. The company cites *Thomas Iron*, a case in which the Connecticut Supreme Court applied a Connecticut statute of limitations to a New Jersey workers' compensation claim. But there, the plaintiff had brought a common law negligence claim; although New Jersey had a workers' compensation statute, that statute was purely procedural and did not create any causes of action. *See* 42 A.3d at 145–46. So *Thomas Iron* does not support Nestlé's position.

Nestlé presses a different argument based on *Thomas Iron*. It notes that the Connecticut Supreme Court stated that a foreign statute of limitations governs a foreign right only when the limit is "directed to the … liability" so clearly that it "qualifie[s] the right." 42 A.3d at 147. And while the plaintiffs' foreign consumer protection claims are all covered by foreign statutes of limitations, those limitations statutes are themselves *general* statutes of limitations that cover many other claims arising under the laws of the other States. *See, e.g.*, *Corsello v. Verizon New York, Inc.*, 967 N.E.2d 1177, 1184 (N.Y. 2012). Therefore, Nestlé reasons, the foreign timeliness rules are not "directed" to the foreign consumer protection laws and should not govern them.

If *Thomas Iron* were the Connecticut Supreme Court's last word on this topic, Nestlé might have a point. But the Connecticut Supreme Court has long since refined what it means by "directed." Today, it considers a foreign State's timeliness rules to be "so integral a part of the cause of action as to warrant saying that [they] qualif[y] [a foreign] right" *whenever* the foreign "right is newly created by [a] statute." *Baxter*, 644 A.2d at 1302. Thus, "the nature of the underlying right" is "dispositive," rather than the nature or pedigree of the underlying statute of limitations. *Reclaimant*, 211 A.3d at 987–88; *see, e.g.*, *Blue Cross of Calif. v. SmithKline Beecham Clinical Labs.*, 108 F. Supp. 2d 116, 122 & n.3 (D. Conn. 2000) (applying

12

Pennsylvania's general statute of limitations to a Pennsylvania statutory claim); *Daniels v. Esson*, 2001 WL 100306, at *2–3 (Conn. Super. Ct. 2001) (same for a New York statutory claim).

Because the non-Connecticut consumer protection laws create new rights, they are all governed by the other States' timeliness rules rather than by any Connecticut statute of limitations. And because Nestlé has not argued that it deserves summary judgment under any law but the law of Connecticut, I have no cause to address any of the other State's statutes of limitations and will deny the motion for summary judgment on these other statutory claims.

## CONCLUSION

The Court GRANTS in part and DENIES in part Nestlé's motion for summary judgment. The Court GRANTS the motion for summary judgment on the plaintiffs' CUTPA claim (Count Six) to the extent of liability for sales occurring before August 15, 2014. The Court DENIES the motion for summary judgment in all other respects.

It is so ordered.

Dated at New Haven this 4th day of February 2022.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge