## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| MARK J. PATANE, JULIE HARDING, HEATHER HARRIGAN, STEPHEN S. SHAPIRO, CATHERINE PORTER, ERICA RUSSELL, TINA MORETTI, BRIDGET KOPET, JENNIFER S. COLE, BENJAMIN A. FLETCHER, and DIANE BOGDAN and PARESHKUMAR BRAHMBHATT, Individually and on Behalf of All Others Similarly Situated, Plaintiffs, v. NESTLE WATERS NORTH AMERICA, INC., Defendant. | : CIVIL ACTION NO. 17-cv-01381(JAM) : : ECF CASE : : CLASS ACTION : : : : ALL CASES : : : : : : : : : : February 1, 2023 |

### DECLARATION OF THOMAS MAYHEW IN OPPOSITION TO MOTION TO COMPEL FURTHER SEARCH FOR PHOTOS AND VIDEOS [ECF 524]

THOMAS MAYHEW, of full age, declares as follows:

1. I am one of the attorneys representing defendant Nestlé Waters North America Inc., which is now known as BlueTriton Brands, Inc. I make this declaration based on my own personal knowledge.

2. My law firm, Farella, Braun + Martel, LLP, has had responsibility for collecting, reviewing, and producing NWNA's documents in response to plaintiffs' discovery requests. My law firm also has had responsibility for working with NWNA's subpoenaed consultants ("Consultants," including Woodard & Curran; Drumlin Environmental; Luetje Geological Services; Stantec Consulting ("Stantec"); and C.C. Dorion Geological Services) to collect and produce their responsive documents. As described below, I supervised my law firm's collection, review, and production of NWNA's documents responsive to plaintiffs' discovery requests and from NWNA's Consultants.

**Determination Of Where To Search For Photos And Videos**

3. With respect to photos and videos of springs in NWNA's possession, we determined that the place to find responsive documents was in the possession of the Natural Resource Management team for Maine (custodians Josh Bowe, Tom Brennan, Mark Dubois, and Mark Laplante). We arranged for a copy of each of their laptops to be made for review and obtained a copy of the "shared" file on the NWNA network, and reviewed each to locate photos and videos with images of the springs.

4. In addition, we also assisted with the review and production of photos and videos of the springs from NWNA's Consultants in response to subpoenas directed to each of them.

5. An electronic count of file types used for photos or videos, as opposed to other documents, was performed by my litigation support team for purposes of this declaration. Counting "image" file types bmp, jpeg, jpg, gif, mp4, mpeg, mov, mpg, png, tiff and tif, the total number of images or videos reviewed was 12,014. Of these, 3,799 were determined after attorney review to be responsive. This number is not a precise count of photos and videos only, because these file types could also include map images, which were also requested and produced; we did not take the time to re-review the documents to determine the exact count of photos and videos. However, for video file types alone (.mov or .mp4), there were over 1,000 videos reviewed, and over 300 produced.

6. Identifying which photos or videos were responsive to the request, as opposed to non-responsive photos or videos (e.g., personal photos, photos of pipeline construction, photos of sites that have not been used for producing Poland Spring® spring water) was a time-intensive and laborious task. Distinguishing between the spring areas at issue in the case and other photos of features elsewhere on the company's properties required the reviewing attorneys to become highly familiar with the geographic or other identifying features that would help them determine that the photo or video was of a spring area as opposed to some other photo from a natural environment.

7. We did not collect photos or videos of the spring sources from the marketing department. The marketing department generally does not have interest in photos or videos of the

springs themselves, as opposed to images of nature, including the natural area in the vicinity of the springs.  While the marketing department may have taken some photos or videos at spring sites, documentation of the springs' appearances is rarely their focus.  By contrast, the geologists who work both in the Natural Resource Management team in Maine and the outside consulting firms document compliance with the standard of identity and other regulatory requirements associated with the spring sites (for example, biological monitoring of the wetland and near-wetland environments created by the springs), and so often do document the springs' appearance as part of their work in preparing reports.  In addition, two of the geology firms subpoenaed by plaintiffs assist with searches for new spring sources and as part of that work take photos and videos that were sent to the Natural Resource Management team, which were produced in discovery.

**Agreement With Plaintiffs' Counsel Concerning ESI Search Of Marketing Department**

8. Compliance with Plaintiffs' motion to compel would require NWNA to go beyond what Plaintiffs themselves agreed would constitute a reasonable search of custodians connected to the marketing of Poland Spring® spring water.

9. The Court may recall that there was an earlier dispute regarding the scope and extent of the search required for electronically stored information (ESI) regarding spring water issues, resulting in motion practice (including about whether the term "orange jump suit" was an appropriate search term) that was resolved by NWNA's agreement to perform a further electronic search.  Given this history, when plaintiffs later asked for an electronic search of the marketing department for responsive documents, I took care to negotiate and document a detailed agreement before commencing the search.

10. Over a series of months, including discussion of the custodians that NWNA proposed and the addition of custodians that plaintiffs requested, and a back-and-forth negotiation concerning how to conduct the electronic search to ensure proportionality (i.e., balancing burden vs. yield of relevant information), I reached an agreement with plaintiffs' counsel concerning searches of the marketing department for responsive documents.  Attached as Exhibits A and B to this declaration are copies of a lengthy email chain between plaintiffs' counsel Jesse-Justin Cuevas

and myself, in which we agreed on the eleven custodians from the marketing department that would be searched (*see* August 13 for plaintiffs' requested additions, and October 21 for my confirmation that we had gathered them as requested) and a search methodology.  At no time during that process did plaintiffs indicate that they wanted a search of the marketing department for photos or videos of springs, or any other photos or videos at all.  This made sense to me, since the case is about the labeling of the product, and not its advertising.  (A consumer class action based on advertising is unlikely to be certified as a class, because different class members would have seen different advertising).

## Plaintiffs Have Also Taken Their Own Photos Of The Springs During Multiple Site Inspections

11. Plaintiffs have also had the opportunity to document through photos and videos the appearance of the spring sites.  Their team spent a total of 21 days at the spring sites during numerous court-ordered site inspections in December 2017, May 2018, November 2019, and October 2020.  Based on an electronic count, Plaintiffs' experts and lawyers took 1,186 photos and videos during the site inspections.

12. Attached as Exhibit C, for example, is a photo taken by one of Plaintiffs' experts of Mr. Schmidt and me at one of the borehole structures at the Poland Spring site in Poland, Maine during the site inspection in December 2017.  This photo was produced by Plaintiffs as 20171206_085110.jpg.

I declare under penalty of perjury that the forgoing is true and correct.

Executed on February 1, 2023, in Berkeley, California.

THOMAS B. MAYHEW