# EXHIBIT A

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

-------------------------------------------------------X

MARK J. PATANE, JULIE HARDING,
HEATHER HARRIGAN, STEPHEN S.
SHAPIRO, CATHERINE PORTER,
ERICA RUSSELL, TINA MORETTI,
BRIDGET KOPET, JENNIFER S. COLE,
BENJAMIN A. FLETCHER, DIANE
BOGDAN and PARESHKUMAR
BRAHMBHATT, Individually and on
Behalf of All Others Similarly Situated,

Civ. No.: 3:17-cv-01381-JAM

Plaintiffs,

-v-

NESTLE WATERS NORTH AMERICA, INC.,

Defendant.

-------------------------------------------------------X

## NOTICE OF RULE 30(b)(6) DEPOSITION

TO:   Defendant Nestlé Waters North America, Inc. c/o Jeffrey M. Garrod, Craig A. Ollenschleger, ORLOFF, LOWENBACH, STIFELMAN & SIEGEL, P.A., 44 Whippany Road, Suite 100, Morristown, NJ 07960.

PLEASE TAKE NOTICE that, pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, at 9:30 a.m. Eastern on October 22, 2020 or another mutually agreeable date, counsel for Plaintiffs Mark J. Patane, et al., will take the video deposition of the designated representative(s) of Nestlé Waters North America, Inc. ("Nestlé"), who are able to testify fully as to the topics listed in Exhibit 1. To the extent that Nestlé's designated representative(s) are not available on October 22, please provide another date within two weeks of service of this notice.

Nestlé has a duty to designate one or more officers, directors, managing agents, or other persons with sufficient knowledge to testify for Nestlé on all information known to Nestlé or reasonably available to Nestlé on the topics listed in Exhibit 1.

1

otherwise mirrored the Food and Drug Administration's standard of identity for "spring water" codified at 21 C.F.R. § 165.110(a)(2)(vi).

13. "Type of Water" and "Types of Water" mean ground water; filtered, sterilized, distilled, deionized, reverse osmosis, or otherwise purified water; spring water; mineral water; well water; artesian water; glacial water; volcanic water; or any other form of potable water.

14. "Water Source" means the location from which water is drawn for bottling, such as a well.

15. "You," "Your," and "Nestlé" shall mean Defendant Nestlé Waters North America and any of its corporations, businesses, subsidiaries, parents, divisions, subdivisions, affiliated entities, predecessors, successors, parents or related entities, and their respective officers, directors, employees, partners, representatives, agents, attorneys, accountants, or other persons acting or purporting to act, or previously acting on behalf of Nestlé and sources within the control of Nestlé.

## TOPICS OF TESTIMONY

## FINANCE AND MARKETING

1. Your labelling of Nestlé Waters North America products sold in the United States, including Poland Spring Water and Pure Life.

2. Your marketing of Poland Spring Water, including but not limited to any marketing of Poland Spring Water as "Spring Water" or "100% Natural Spring Water," the effectiveness of individual marketing plans and campaigns since November 4, 2003, and the value of the Poland Spring brand.

3. Your distribution of Poland Spring Water and other brands of Bottled Water owned by You, including sales to distributors, retailers, and consumers.

4. Your competitors for Poland Spring Water in the Markets including other brands of Bottled Water owned by You that compete with Poland Spring Water.

5. Your understanding of consumer preferences, beliefs, or preferences concerning Bottled Water, including Your understanding of those preferences, beliefs or perceptions from any studies, surveys, focus groups, or data concerning consumer preferences, beliefs or perceptions concerning different Types of Water and consumer willingness to pay different prices for different Types of Water, including spring water.

6. Studies of consumer preferences for different Types of Water conducted by You or others at Your request.

7. The price charged (including MSRP) for Your brands of certain Types of Water as compared to the price charged for brands of one or more other Types of Water, including the amount of the difference between those prices and the reasons for that difference.

8. The history of Poland Spring Water labels since November 4, 2003, including the reasons for changes to the labels and material differences between labels, if any.

9. The variety of products sold by You, for all Types of Water, including the brands, bottle sizes, pack sizes, and other attributes of Bottled Water sold by You in Retail, wholesale, and Home & Office Markets.

10. The revenues, costs, profits, profit margins, and net sales of Poland Spring Water, including the profitability of Poland Spring Water as compared to the profitability of Your other brands of one or more other Types of Water.

11. The methodology, systems, and databases with which You track sales of Poland Spring Water and Your other brands of one or more other Types of Water, as well as the prices at which Poland Spring Water and Your other brands of one or more other Types of Water are sold.

# EXHIBIT B

**From:** Craig A. Ollenschleger <co@olss.com>
**Sent:** Wednesday, May 11, 2022 5:49 PM
**To:** Jesse-Justin Cuevas <JCuevas@susmangodfrey.com>
**Cc:** Alexander H. Schmidt (alex@alexschmidt.law) <alex@alexschmidt.law>; bcaforio@susmangodfre.com; Christopher Young <cyoung@saverilawfirm.com>; Craig Raabe (craabe@ikrlaw.com) <craabe@ikrlaw.com>; MStraus@susmangodfrey.com; oelkhunovich@SusmanGodfrey.com; Robert Izard (rizard@ikrlaw.com) <rizard@ikrlaw.com>; Steve Williams (SWilliams@saverilawfirm.com) <SWilliams@saverilawfirm.com>; Steven G. Sklaver (ssklaver@SusmanGodfrey.com) <ssklaver@SusmanGodfrey.com>; 'Anna-Patrice Harris' <aharris@saverilawfirm.com>; Sean Robertson <srobertson@saverilawfirm.com>; Sofia Jordan <sjordan@saverilawfirm.com>; Tania-Lee Bayliss (TBayliss@susmangodfrey.com) <TBayliss@susmangodfrey.com>; 'Vanesa Keller' <VKeller@susmangodfrey.com>; Jeffrey M. Garrod <JMG@olss.com>; TMayhew@fbm.com; jbtropp@daypitney.com; Alexander S. Firsichbaum <ASF@olss.com>; Rosemarie Priolo <RP@olss.com>
**Subject:** Patane v. NWNA re: Rule 30(b)(6) Deposition

Jesse-Justin,
This will confirm that Defendant will produce Laetitia Allexant as its Rule 30(b)(6) designee for deposition on Topics 1 (reasons for labeling changes), 2, 5, and 6 of plaintiffs' Rule 30(b)(6) Notice of Deposition at the Stamford, Connecticut offices of Day Pitney LLP on Tuesday, June 7, 2022, commencing at 10:00 a.m. Eastern. For COVID-19 protocol and security purposes, kindly advise which of plaintiffs' counsel will be attending the deposition.
Thank you,
Craig Ollenschleger
OLS&S

# EXHIBIT C

UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| MARK J. PATANE, JULIE HARDING, HEATHER HARRIGAN, STEPHEN S. SHAPIRO, CATHERINE PORTER, ERICA RUSSELL, TINA MORETTI, BRIDGET KOPET, JENNIFER S. COLE, BENJAMIN A. FLETCHER, DIANE BOGDAN, and PARESHKUMAR BRAHMBHATT, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br>vs.<br>NESTLE WATERS NORTH AMERICA, INC.,<br>Defendant. | Case No. 17-cv-01381-JAM<br><br>ECF Case<br><br><u>CLASS ACTION</u><br><br><br>**<u>PLAINTIFFS' STATUS REPORT RE DISCOVERY</u>**<br><br><br>December 21, 2021 |

On November 19, 2021, Plaintiffs Mark J. Patane, et al. (collectively, "Plaintiffs") and Defendant Nestle Waters North America, Inc. ("Defendant" and, together with Plaintiffs, the "Parties") filed a Supplemental Report on Parties' Planning Meeting Pursuant to Fed. R. Civ. P. 26(f) that enclosed the Parties' competing proposed pretrial schedules. Dkt. 385. Prior to that filing, during the October 25, 2021 Follow-Up Discovery Hearing, the Court requested the parties provide an update regarding discovery, including "what discovery has taken place to date, what discovery [the parties] contemplate needing going forward, what depositions [the parties] need going forward, how many, who, [and] what substantive motions remain," in order to assist the Court in issuing a new discovery scheduling order and general scheduling order. Dkt. 381 at 24:13–20. Pursuant to that request, Plaintiffs, through counsel, hereby provide the requested information regarding completed discovery and contemplated discovery and motion practice.[1]

---

[1] Plaintiffs intended to include the requested information in the Parties' November 19, 2021 Supplemental Report. *See* Attachment B at 7 (Nov. 18, 2021 8:50PM S. Williams Email, attaching Plaintiffs' original draft report); Attachment A at 1 (Dec. 16, 2021 12:20PM J. Tropp Email, stating "at the time the parties submitted their joint

1

10251006v1/015403

On December 13, 2021, Plaintiffs served Defendant with a substantially similar copy of this Report, invited Defendant to insert its position regarding completed discovery and contemplated discovery and motion practice so that this would be a joint report, and notified Defendant that Plaintiffs would file the joint report in eight (8) days, on December 21, 2021. Defendant refused to participate and objects to this filing as indicated in the attached correspondence.

## PLAINTIFFS' POSITION REGARDING COMPLETED DISCOVERY AND CONTEMPLATED DISCOVERY AND MOTION PRACTICE

**A.      Completed Discovery**

**1.      Party Discovery**

***Plaintiffs' Discovery of Defendant.*** Plaintiffs have taken three Rule 30(b)(1)[2] depositions of Defendant's fact witnesses and one Rule 30(b)(6) deposition of Defendant regarding one topic (out of Plaintiffs' 23 topics noticed, *see, e.g.*, Dkt. 307-8). Plaintiffs served seven sets of Rule 34 Requests for Production of Documents ("RFP"). To date, Defendant has produced 5,311 non-privileged documents. Defendant has represented it will complete production of marketing-related electronically stored information ("ESI") based on the Parties' agreed-upon search terms by February 28, 2022. Between November 2017 and October 2020, Plaintiffs conducted physical inspections of Defendant's ten Poland Spring well sites in Maine. Plaintiffs also served 733 Requests for Admission ("RFA") and 20 Interrogatories ("Rog").

***Plaintiffs' Produced Discovery.*** Defendant served two sets of RFPs. Plaintiffs completed their production of responsive, non-privileged documents. Defendant noticed the depositions of

---

report, plaintiffs proposed to include a lengthy discussion similar to that which appears in this new draft."). When Defendant claimed to have insufficient time to prepare its position regarding these issues, and to avoid further dispute, Plaintiffs joined Defendant's proposed "neutral" report that was filed at Dkt. 385. *See* Attachment B at 1–3 (Nov. 19, 2021 2:12PM C. Ollenschleger Email), 6–7 (Nov. 19, 2021 8:13AM J. Tropp Email).

[2] References to "Rule[s]" refer to the Federal Rules of Civil Procedure unless otherwise indicated.

2

10251006v1/015403

all Plaintiffs and completed the in-person depositions of Tina Moretti and Erica Russell. Defendant served 15 interrogatories. Plaintiffs responded to eight and are in the process of amending their responses to the seven contention interrogatories served on January 29, 2021.

2.     **Non-Party Discovery**

***Document Discovery.*** Plaintiffs served 28 non-party subpoenas and are still in the process of negotiating and receiving responsive productions from several non-parties. Plaintiffs have cross-produced to Defendant all non-party responsive productions received to date. Plaintiffs also purchased data from non-party Information Research, Inc. ("IRI") pursuant to a contract negotiated after Plaintiffs served IRI with a subpoena. To date, Plaintiffs have served eight public records requests under various state freedom of information and freedom of access laws and received responsive documents, which Plaintiffs have cross-produced to Defendant.

***Depositions.*** Plaintiffs have taken four non-party fact depositions.

**B.    Contemplated Discovery**

1.     **Depositions**

***Party Depositions.*** Plaintiffs served a Rule 30(b)(6) notice on September 22, 2020 and contemplate taking Defendant's Rule 30(b)(6) depositions on the noticed topics. Out of 23 noticed topics, Defendant has identified its corporate designees on topics 1, 3-11, 14-16, and 19 (or portions thereof). Defendant has agreed to produce its corporate representative regarding topics 1 and 8 between January 3 and 14, 2022, and its corporate representative regarding topics 5 and 6 between April 18 and 29, 2022, and the Parties are in the process of scheduling those depositions. Plaintiffs also seek to take Defendant's Rule 30(b)(6) depositions on the remaining topics, two of which are subject to pending discovery motions, *see supra* Part C, and up to four of which may be the subject of discovery motions, *see supra* Part B.2. At this time, Plaintiffs

# EXHIBIT D

Case 3:17-cv-01381-JAM Document 407-1 Filed 02/02/23 Page 15 of 64
Case 3:17-cv-01381-JAM Document 504-1 Filed 02/03/23 Page 12 of 13
15

Colloquy

1 to what his testimony really means.

2     THE COURT: I understand that.

3     (Pause)

4     THE COURT: So I reviewed your report, Attorney
5 Tropp, and I had also reviewed Attorney Cuevas' report
6 regarding the Lord deposition. And I think everything you've
7 stated in your report is my understanding and it's certainly
8 accurate. Your document 342 I think properly explains what
9 Mr. Lord indicated was the necessary process for option 3 that
10 I've identified, but it didn't mention what the cost was. I'm
11 just interpreting what occurred on 127 and 128 as that's the
12 process he was referring to in paragraphs 13 and 14 of his
13 declaration that would cost 100,000 dollars.

14     Now, I'll note also that it is the defendant's burden
15 to establish that the discovery sought is disproportionate.
16 Certainly, everyone has had the opportunity to address that
17 issue. So we have the record -- and I appreciate that the
18 deposition of Mr. Lord was done because I will say, frankly, I
19 found Mr. Lord to be quite forthcoming in the deposition. I
20 think he clarified a lot of issues. He gave me a much greater
21 understanding. So I think it was a very helpful deposition to
22 some of the issues that are before the Court on motion 307.

23     Let me move on to one of my other questions which is
24 is there any issue relating to the IRI information that is
25 still in dispute? I thought in a recent filing, Attorney

Case 3:17-cv-01381-JAM Document 407-1 Filed 02/02/23 Page 16 of 64
Case 3:17-cv-01381-JAM Document 534-1 Filed 02/03/23 Page 13 of 13
16

Colloquy

1   Cuevas -- maybe the best solution is that if you're not
2   speaking, can you put yourself on mute?  As much as I like to
3   hear myself speak, I don't need to hear it twice.  So
4   appreciate that.
5           So Attorney Cuevas, you had filed a report I think
6   about the status of discovery where I thought there was
7   mention that the plaintiffs have purchased from IRI the
8   information that they wanted to receive.  So is that still an
9   issue that is in dispute for motion 307?
10          MS. CUEVAS:  Jesse-Justin Cuevas for plaintiffs.
11  Your Honor, it's not.  The IRI data is no longer an issue.  I
12  believe that that was clarified -- as Your Honor notes in our
13  joint -- excuse me -- our status report, as well as some of
14  the briefing on the motion to compel related to Nielson (ph.).
15          THE COURT:  Okay.  And the other question I had -- I
16  had two other questions.  One is relating to information on
17  sales data that has already been provided for 2013 to 2000- --
18  I think to present.  In the oral argument that we had some
19  time ago, I think, Attorney Cuevas, you mentioned that the
20  problem with that information was that it was missing the
21  volume of sales so that price could not be calculated.  And I
22  thought I saw, perhaps in Mr. Lord's deposition, a reference
23  that that sales data included volume.  So I wanted to just
24  clarify that and see if that's still an issue.
25          MS. CUEVAS:  Your Honor, it is still an issue.  The